**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| State of Texas, <br><br> *Plaintiff*, <br><br> v. <br><br> United States Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services; and Melanie Fontes Rainer, in her official capacity as Director of the Office for Civil Rights of the United States Department of Health and Human Services, <br><br> *Defendants*. | Civil Action No. 5:24-cv-00204-H |

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR LEAVE TO INTERVENE**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

PROPOSED INTERVENORS .............................................................................................. 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

    I.    Proposed Intervenors are entitled to intervention as of right. ............................... 5

        a.    Proposed Intervenors' motion is timely. ......................................................... 5

        b.    The Proposed Intervenors have a legally protectable interest in this matter. ................. 7

        c.    Resolution of this action would practically impair and impede Proposed Intervenors' interests. ............................................................................................................ 15

        d.    The government's representation of Proposed Intervenors' interests is inadequate..... 16

    II.    Alternatively, this Court should permit Proposed Intervenors to intervene under Rule 24(b). ................................................................................................................... 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z,
 2024 WL 1260639 (N.D. Tex. Jan. 12, 2024) ......................................................... 5, 7, 8, 18

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) .................................................... 4, 8, 15, 16, 19

*City of Houston v. Am Traffic Sols., Inc.*, 668 F.3d 291 (5th Cir. 2012) ........................................ 9

*Cook County v. Mayorkas*, 340 F.R.D. 35 (N.D. Ill. 2021) .......................................................... 6

*Cook County v. Texas*, 37 F.4th 1335 (7th Cir. 2022) ................................................................. 6

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) ...................................... 10

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc) .................... 4, 5, 6, 7, 14, 16

*Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019) ................................... 8

*Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416 (5th Cir. 2002) ........ 16, 17, 18

*Huntington Ingalls, Inc. v. Director, Office of Workers' Compensation Programs,*
 *U.S. Dep't of Labor*, 70 F.4th 245 (5th Cir. 2023) ..................................................................... 10

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) .......................................... 12

*John Doe No. 1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001) .................................................... 5, 17

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) .......................... 4, 14, 15, 17

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) ............................................. 8

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H,
 2022 WL 974335 (N.D. Tex. Mar. 31, 2022) .......................................................................... 8, 9

*NBIS Constr. & Transp. Ins. Servs. v. Kirby Smith Mach., Inc.*, No. 5:20-CV-182-H,
 2021 WL 4227787 (N.D. Tex. Apr. 8, 2021) ............................................................................ 4, 7

*Newby v. Enron Corp.*, 443 F.3d 416 (5th Cir. 2023) ................................................................ 20

*Rotstain v. Mendez*, 986 F.3d 931 (5th Cir. 2021) .................................................................... 20

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ......................................... 2, 7, 15, 16, 18

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1196) ............................................................... 15

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ........................................................ 5

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ................................................. 2, 4, 8, 9, 17

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .......................................................... 18

*U.S. ex rel Hernandez v. Team Finance, LLC*, 80 F.4th 571 (5th Cir. 2023) .............................. 19

*W. Energy Alliance v. Zinke*, 877 F.3d 1157 (10th Cir.  2017)................................................... 17

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562
    (5th Cir. 2016)............................................................................................................. 7, 8, 9

**Constitutional Provisions**
Ohio Const. art. XVIII ............................................................................................................ 2

**Statutes**
Health Insurance Portability and Accountability Act (Pub. L. 104-191, 110 Stat. 1936) .............. 1

42 U.S.C. § 1320d-5 ................................................................................................................ 8

42 U.S.C. § 1320d-6 ................................................................................................................ 8

5 U.S.C. § 706............................................................................................................................ 1

Wis. Stat. Ch. 66 ...................................................................................................................... 3

**Regulations**
45 C.F.R. § 160.103 ............................................................................................................... 8, 9

65 Fed. Reg. 82462 (Dec. 28, 2000)............................................................................ 1, 11, 13, 16, 17

89 Fed. Reg. 32976 (Apr. 26, 2024) ........................................................ 1, 10, 11, 12, 13, 17, 19

**Rules**
Fed. R. Civ. P. 24 ................................................................................................................... 4, 19

**Other Authorities**

Am. Med. Ass'n, *Opinion 1.1.1: Patient-Physician Relationships*, Code of Medical Ethics (Aug. 2022), https://code-medical-ethics.ama-assn.org/sites/default/files/2022-08/1.1.1%20Patient-physician%20relationships--background%20reports_0.pdf ................................................... 10

Am. Med. Ass'n, *Opinion 3.1.1: Privacy in Health Care, Code of Medical Ethics*, https://code-medical-ethics.ama-assn.org/sites/amacoedb/files/2024-12/3.1.1.pdf (last visited Jan.16, 2025) ................................................................................................................................... 12

Amanda Becker, *How Trump's nominees could make Project 2025 a reality*, News from the States (Jan. 2, 2025), https://www.newsfromthestates.com/article/how-trump-nominees-could-make-project-2025-reality ......................................................................................... 19

Eric Cortellessa, *How Far Would Trump Go*, TIME (Apr. 30, 2024), https://time.com/magazine/us/6979410/may-27th-2024-vol-203-no-17-u-s/ ........................... 18

Megan Messerly et al., *Anti-abortion groups have 2 asks. RFK Jr. is listening*, Politico (Nov. 20, 2024), https://www.politico.com/news/2024/11/20/anti-abortion-rfk-jr-00190552 ................. 18

Members of Congress, Comment on Proposed HIPAA Privacy Rule To Support Reproductive Health Care Privacy (June 16, 2023), https://www.regulations.gov/comment/HHS-OCR-2023-0006-0171 .................................................................................................................... 18

Texas's Memo. In Support of Mot. to Intervene, *Commonwealth of Pennsylvania et al. v. Devos et al.*, 1:20-cv-01468 (D.D.C. Jan. 19, 2021), ECF No. 130-1 .................................................. 6

The Heritage Foundation, *Mandate for Leadership: The Conservative Promise* (2023), https://tinyurl.com/55dbtvkx ...................................................................................................... 19

Tyler Arnold, *Trump's HHS nominee Robert F. Kennedy Jr. reassures pro-life senators with policy plans*, Catholic News Agency (Dec. 19, 2024), https://www.catholicnewsagency.com/news/261111/trump-hhs-nominee-robert-kennedy-jr-reassures-pro-life-senators .................................................................................................... 18

## INTRODUCTION

Proposed Intervenor-Defendants, the City of Columbus, Ohio ("Columbus"), the City of Madison, Wisconsin ("Madison"), and Doctors for America ("DFA") (collectively, "Proposed Intervenors") move to intervene as of right as defendants under Rule 24(a) of the Federal Rules of Civil Procedure to protect their legal interests in upholding the two regulations at issue in this case. In the alternative, Proposed Intervenors seek permissive intervention under Rule 24(b).

Texas challenges two regulations promulgated by the Department of Health and Human Services (the "Department") under the Health Insurance Portability and Accountability Act ("HIPAA"), Appx. 0037 (Pub. L. 104-191, 110 Stat. 1936). Texas alleges they exceed the Department's statutory authority and are arbitrary and capricious, an abuse of discretion, and not in accordance with law, all in violation of the Administrative Procedure Act. Appx. 0162 (5 U.S.C. § 706(2)). Texas asks this Court to declare both violative of the APA and vacate and set them aside.

The first challenged rule, the *Standards for Privacy of Individually Identifiable Health Information*, is a 24-year-old regulation that serves as the foundation for medical privacy nationwide. Appx. 0164 (65 Fed. Reg. 82462-01 (Dec. 28, 2000) (codified at 45 C.F.R. pts. 160, 164)) (the "2000 Privacy Rule"). If it were vacated, it would drastically increase levels of medical mistrust, inhibit the ability of health care providers to protect the confidentiality of patient information, impair the ability of public health authorities to protect the public health, and throw the nation's health care system into chaos.

The Department promulgated the second challenged rule, the *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, to provide heightened protections for sensitive medical information sought to investigate the provision and reception of lawful reproductive health care. Appx. 0776–934 (89 Fed. Reg. 32976-01 (Apr. 26, 2024) (codified at 45 C.F.R. pts. 160,

164) (the "2024 Rule") (both rules together, the "Privacy Rules"). The 2024 Rule offers providers and their patients additional critical assurances and protections at a time when patients are increasingly concerned about the confidentiality of their discussions with and treatment by health care providers.

Proposed Intervenors are entitled to intervene as of right to defend both Privacy Rules. The Rules regulate health care providers such as the public health departments of the City of Columbus and the City of Madison and, in the case of DFA, its members. They are vital for protecting patient confidentiality and, in turn, ensuring that patients trust their clinicians and that their clinicians can provide them with needed medical care. And fostering trust and honesty between clinicians and their patients is essential to overall public health: accurate data allows providers and public health departments to identify and address troubling public health trends. Proposed Intervenors' motion is timely; absent successful intervention, Proposed Intervenors' interests will be impaired by the relief Texas seeks; and these unique interests cannot be adequately defended by the federal government, both because Proposed Intervenors and the government have divergent interests in this litigation and because the government is unlikely to defend the Privacy Rules after President-Elect Donald J. Trump takes office. In the alternative, Proposed Intervenors should be permitted to intervene.

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). These two principles dictate one result here: the Court should grant Proposed Intervenors' motion.

## PROPOSED INTERVENORS

***City of Columbus, Ohio.*** Proposed Intervenor City of Columbus is a municipal corporation organized under Ohio law. *See* Appx. 0936 (Ohio Const. art. XVIII § 1). Columbus has all the

2

powers of local self-government and home rule under the constitution and laws of the State of Ohio, which are exercised in the manner prescribed by the Charter of the City of Columbus. Columbus's public health department, Columbus Public Health, operates HIPAA-covered clinics, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide range of health care services on behalf of its residents, including sexual and reproductive health care. Because Columbus Public Health relies on HIPAA protections to preserve trust between its clinicians and patients as well as to protect the public health, the City of Columbus opposes Plaintiff's efforts to erode the privacy protections in the HIPAA Rules.

*City of Madison, Wisconsin.* Proposed Intervenor City of Madison is a municipal corporation organized under Wisconsin law. *See* Appx. 1023–29 (Wis. Stat. Ch. 66.0201–03). Madison has all the powers of local self-government and home rule under the constitution and laws of Wisconsin, which are exercised in the manner prescribed in the ordinances of the City of Madison. Madison's public health department, Public Health Madison and Dane County,[1] operates as a HIPAA-covered entity, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide variety of health care services to its residents, including sexual and reproductive health care. Because Public Health Madison and Dane County relies on HIPAA protections to preserve trust between its clinicians and patients as well as to protect the public health, the City of Madison also opposes Plaintiff's efforts to erode the privacy protections in the HIPAA Rules.

*Doctors for America.* Proposed Intervenor DFA is a nonpartisan, nonprofit organization comprised of more than 27,000 physicians, medical students, and other health professionals across the country, representing all medical specialties. DFA members are subject to HIPAA, and they

---

[1] The City of Madison jointly operates Public Health Madison and Dane County with Dane County.

rely on the law's protections to help preserve the physician-patient relationship and maintain trust with their patients.  Because trust between providers and their patients is a critical component to delivering effective care, DFA vehemently opposes Plaintiff's efforts to erode the privacy protections in the Privacy Rules.

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right and requires intervention be granted where (1) the motion to intervene is timely; (2) the movant claims an interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties to the suit.  Fed. R. Civ. P. 24(a)(2); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022); *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc).  These factors are "measured by a practical rather than technical yardstick."  *Edwards*, 78 F.3d at 999 (internal quotation marks and citation omitted); *see Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) ("Rule 24 is to be liberally construed."); *NBIS Constr. & Transp. Ins. Servs. v. Kirby Smith Mach., Inc.*, No. 5:20-CV-182-H, 2021 WL 4227787, at *1 (N.D. Tex. Apr. 8, 2021) (citation omitted)  ("The inquiry is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate.").  While would-be intervenors bear the burden of establishing all four elements, that burden is "minimal."  *Texas*, 805 F.3d at 661.

Federal Rule of Civil Procedure 24(b) allows a court to permit intervention where the movant makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

Proposed Intervenors satisfy all requirements for intervention as of right and, accordingly, are entitled to intervene.  Alternatively, Proposed Intervenors should be permitted to intervene, as their motion is timely, their defense of the Privacy Rules shares common questions of law and fact with this case, and their intervention will not delay or prejudice the existing parties' rights.

### I.    Proposed Intervenors are entitled to intervention as of right.

#### a.    Proposed Intervenors' motion is timely.

Whether a motion to intervene is timely is assessed on (1) the length of time the movant waited to file after knowing its interests were unlikely to be protected; (2) the prejudice to existing parties resulting from any delay in the movant's filing; (3) the prejudice to the movant that would result if intervention were denied; (4) and the existence of any other unusual circumstances weighing for or against timeliness.  *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263–66 (5th Cir. 1977).  Courts do not assess these factors in a rote manner.  They are "a framework and not a formula," and a motion may be timely even where all factors do not weigh in favor of timeliness. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

On all counts relevant here, Proposed Intervenors' motion is timely. [2]

*First*, start with an easy metric:  Motions, such as this one, made before a trial or final judgment are generally considered timely.  *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001); *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[M]ost of our case law rejecting petitions for intervention as untimely concerns motions filed after judgment was entered in the litigation."); *Alliance for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2024 WL 1260639, at \*2 (N.D. Tex. Jan. 12, 2024).

---

[2] No unusual factors militate against timeliness here.  *Stallworth*, 558 F.2d at 266.

Proposed Intervenors seek to join this case in its still early stages, and before anything of substance has occurred, because the government—obligated to consider a diverse array of interests in defense of this rule—cannot adequately represent the more specific interests of Proposed Intervenors in this litigation. *See infra* Section I(d).

Proposed Intervenors have another reason to intervene at this time: The statements and actions of leaders in the incoming administration have made it apparent that, following the change in presidential administration on January 20, 2025, the federal government will likely cease defending the challenged regulations and will not adequately represent Proposed Intervenors' interests moving forward. *See infra* Section I(d). This anticipated change in defensive posture is something that Proposed Intervenors have been able to glean as the incoming administration has moved from election to office—announcing cabinet nominees and firming up its policy agenda. *See* Appx. 1415 (Texas's Memo. In Support of Mot. to Intervene at 4, *Commonwealth of Pennsylvania et al. v. Devos et al.*, 1:20-cv-01468 (D.D.C. Jan. 19, 2021), ECF No. 130-1) ("The motion is timely because it was filed close in time to the change in circumstances requiring intervention: President-elect Biden's inauguration on January 20."); *Cook County v. Mayorkas*, 340 F.R.D. 35, 45 (N.D. Ill. 2021), aff'd sub nom. *Cook County v. Texas*, 37 F.4th 1335 (7th Cir. 2022) (noting that until the end of the "administration that soon would leave office, Texas could count on [the federal agency] to defend the challenged regulation").

*Second*, intervention will not cause any prejudice to the existing parties as a result of "delay." *Edwards*, 78 F.3d at 1002. Proposed Intervenors move before any responsive pleading has been filed. The only activity in this litigation so far has been on a proposed schedule for the resolution of the case, with which Proposed Intervenors intend to comply. Proposed Intervenors concurrently file a proposed dispositive motion—on the date the Court had originally ordered the

existing parties to file theirs—to avoid disruption to the briefing schedule. *See* ECF No. 15, Order Granting Motion to Enter Briefing Schedule and Hold Defendants' Deadline to Respond to Complaint In Abeyance. If this motion is granted, no deadlines will need to be moved, no portions of the litigation that have already occurred will need to be rehashed or delayed, and no discovery will be disrupted. *See Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016); *NBIS Constr. & Transp. Ins. Servs.*, 2021 WL 4227787, at *1 ("Here, the second factor weighs in favor of timeliness because no deadlines will need to be moved, no additional discovery will be necessary, and no delay will occur, and, therefore, the parties will not be prejudiced by [the applicant's] intervention."); *Alliance for Hippocratic Med.*, 2024 WL 1260639, at *3 ("Any delay in filing a motion to intervene 'cause[s] no prejudice whatsoever' where, during the period in question, 'the parties to [the] litigation did nothing except anticipate and prepare to address' arguments to be presented later on." (quoting *Edwards*, 78 F.3d at 1002)).

*Third*, by contrast, Proposed Intervenors' interests will be severely prejudiced if intervention is denied at this juncture. Without intervention, Proposed Intervenors will lose out on the "legal rights associated with formal intervention," such as the ability to brief the issues, appeal, and raise objections to a settlement (and appeal a decision granting a settlement agreement). *See Espy*, 18 F.3d at 1207. And without the participation of Proposed Intervenors actively defending the rules at stake, a decision in this case could result in significant harm to Columbus, Madison, and DFA and its members, parties with interests that are not adequately defended by the federal government. *See infra* Section I(d).

### b.  The Proposed Intervenors have a legally protectable interest in this matter.

To intervene under Rule 24(a)(2), an intervenor must have a "direct, substantial, legally protectable interest in the proceedings." *Edwards*, 78 F.3d at 1004 (internal quotation marks and citation omitted). This requirement is less stringent than that of Article III standing. *Texas*, 805

F.3d at 659; *see Alliance for Hippocratic Med.*, 2024 WL 1260639, at *3 (citation omitted).

Instead, the inquiry "turns on whether the intervenor has a stake in the matter that goes beyond a

generalized preference that the case come out a certain way." *Id.* at 657.  And where, as here, the

case involves a public interest question, "the interest requirement may be judged by a more lenient

standard." *Brumfield*, 749 F.3d at 344 (citation omitted) (noting that the en banc Fifth Circuit has

compared the interest requirement to the "zone of interest" test in public law cases); *Alliance for

Hippocratic Med.*, 2024 WL 1260639, at *4 (quoting *id.*).

Organizational intervenors may seek to intervene to protect the interests of their

organization, and they may also seek to intervene to assert the "interests of their individual

members." *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928, 937 (N.D. Tex. 2019).  DFA

seeks to do both.

### i.    *The Cities of Columbus and Madison and DFA's members are regulated by the Privacy Rules.*

Parties, like the Cities of Columbus and Madison and DFA's members, plainly have an

interest in a suit "challenging the regulatory scheme that governs" them. *Wal-Mart*, 834 F.3d 562;

*see Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2022 WL

974335, at *5 (N.D. Tex. Mar. 31, 2022); *accord Michigan State AFL-CIO v. Miller*, 103 F.3d

1240, 1244–48 (6th Cir. 1997).

DFA's members include providers who themselves are "covered entities" subject to the

Privacy Rules.  Appx. 1429–30 (45 C.F.R. § 160.103); Appx. 0008 (Petrin Decl. ¶ 10).  DFA's

members are subject to both civil and criminal liability for violating HIPAA.  *See* Appx. 1438–43

(42 U.S.C. § 1320d-5); Appx. 1444–45 (42 U.S.C. § 1320d-6(b)).  They may also be subject to

professional discipline for violating the patient privacy rules of the hospitals and practices in which

they work.  *See* Appx. 0008 (Petrin Decl. ¶ 11).  And they expend significant time and money on

HIPAA compliance and training. *See* Appx. 0009 (Petrin Decl. ¶ 14); Appx. 0015 (Oller Decl. ¶ 14); *Texas*, 805 F.3d at 658 (citation omitted); *Wal-Mart*, 834 F.3d at 567–68.

Similarly, Columbus and Madison operate public health departments that are "covered entities" subject to the HIPAA rules. Appx. 1429–30 (45 C.F.R. § 160.103); Appx. 0018 (Mitchell Decl. ¶ 5); Appx. 0025 (Johnson Decl. ¶ 15); Appx. 0032 (Heinrich Decl. ¶ 15). Columbus Public Health and Public Health Madison and Dane County operate a number of outpatient clinics and treat thousands of patients each year. Appx. 0024 (Johnson Decl. ¶ 10); Appx. 0032 (Heinrich Decl. ¶ 10). They too spend a significant amount of time and money on HIPAA compliance and training. *See* Appx. 0018 (Mitchell Decl. ¶ 6); Appx. 0025 (Johnson Decl. ¶ 16); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 2022 WL 974335, at *5 (N.D. Tex. Mar. 31, 2022) (citing *Texas*, 805 F.3d at 658). Columbus Public Health has already devoted staff time toward implementing the 2024 Rule. Appx. 0020 (Mitchell Decl. ¶ 14). "If the [Rules are] overturned, their time and money will have been spent in vain." *City of Houston v. Am Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (finding that proposed intervenors were sufficiently interested to justify mandatory intervention where architects of a successful campaign to change a city's charter sought to intervene in litigation that threatened to overturn the change).

That the public health departments of Columbus and Madison and DFA's members are regulated by the Privacy Rules gives them "real, concrete stake[s] in the outcome of this litigation." *Texas*, 805 F.3d at 661. No further inquiry is needed.

### ii.    *The Cities of Columbus and Madison and DFA's members have an interest in the provider-patient relationship.*

Proposed Intervenors' interests go beyond their status as regulated parties. They also have an interest in the challenged Privacy Rules because of their interest in maintaining and strengthening the provider-patient relationship by promoting trust between patients and providers.

As the Fifth Circuit has recognized, "[t]he doctor-patient relationship requires trust and confidentiality to facilitate the candid disclosure of sensitive health information." *Huntington Ingalls, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 70 F.4th 245, 251 (5th Cir. 2023) (citation omitted).[3]

DFA members know first-hand how difficult it can be to build a relationship with a patient and how quickly a relationship can be fractured. *See* Appx. 0009 (Petrin Decl. ¶ 13); Appx. 0014–15 (Oller Decl. ¶¶ 9–12, 15). Patients have a "reasonable expectation" that the medical information they share with their providers will be used only to treat them. Appx. 0789 (89 Fed. Reg. 32985 (Apr. 26, 2024)). If patients believe their sensitive health information will be used by law enforcement for non-health care purposes, it endangers the very relationships that DFA members and all health care providers work so hard to build. *See* Appx. 0010 (Petrin Decl. ¶ 16); Appx. 0014 (Oller Decl. ¶ 12); Appx. 0789 (89 Fed. Reg. 32984 (Apr. 26, 2024)). This risk has only increased since the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), as patients find some health care banned, and providers and patients may face investigations into the legal treatment they provide and receive. *See* Appx. 0010 (Petrin Decl. ¶ 16); Appx. 0014 (Oller Decl. ¶ 12); Appx. 0789 (89 Fed. Reg. 32984 (Apr. 26, 2024)).

Patient trust is especially vital to the Columbus and Madison public health departments which serve as providers of last resort in their communities. Appx. 0025 (Johnson Decl. ¶ 19); Appx. 0031 (Heinrich Decl. ¶ 12). Many of the patients that Columbus Public Health and Public Health Madison and Dane County treat come from historically marginalized populations. Appx.

---

[3] For centuries, the patient-clinician relationship has been at the heart of medical practice. This relationship has an ethical foundation and is built on confidentiality, trust, and honesty. *See* Appx. 1446–52 (Am. Med. Ass'n, *Opinion 1.1.1: Patient-Physician Relationships*, Code of Medical Ethics (Aug. 2022), https://code-medical-ethics.ama-assn.org/sites/default/files/2022-08/1.1.1%20Patient-physician%20relationships--background%20reports_0.pdf).

0025 (Johnson Decl. ¶ 19); Appx. 0033 (Heinrich Decl. ¶ 22). "[M]edical mistrust—especially in communities of color or other communities that have been marginalized or negatively affected by historical and current health care disparities—can create damaging and chilling effects on individuals' willingness to seek appropriate and lawful health care for medical conditions that can worsen without treatment." Appx. 0789–90 (89 Fed. Reg. 32985 (Apr. 26, 2024)). Patients seek out care from Columbus Public Health and Public Health Madison and Dane County instead of a family physician to preserve their anonymity and avoid stigma that can be associated with particular statuses (e.g., sex work) or health conditions (e.g., sexually transmitted infections). *See* Appx. 0026 (Johnson Decl. ¶ 20); Appx. 0033 (Heinrich Decl. ¶ 23). Trust that their personal health information will remain confidential is paramount.

Preserving this relationship of trust between providers and their patients is an aim of the Privacy Rules. *See, e.g.*, Appx. 0169 (65 Fed. Reg. 82463 (Dec. 28, 2000)) (noting that "improv[ing] the quality of health care in the U.S. by restoring trust in the health care system among consumers, health care professionals, and the multitude of organizations and individuals committed to the delivery of care" is a "major purpose[]" of the 2000 Privacy Rule); Appx. 0781 (89 Fed. Reg. 32978 (Apr. 26, 2024)) (specifying that the 2024 Rule was necessary to "continue to protect privacy in a manner that promotes trust between individuals and health care providers" in light of the "changing legal landscape").

Strong privacy protections on patient medical information and the trust they engender between patients and their providers, in turn, allow Columbus Public Health, Public Health Madison and Dane County, and DFA's members to provide competent care and comport with their ethical obligations to do so. *See* Appx. 0009 (Petrin Decl. ¶ 13); Appx. 0014–15 (Oller Decl. ¶¶ 9, 11–13); Appx. 0019 (Mitchell Decl. ¶ 8); Appx. 0032 (Heinrich Decl. ¶ 17); Appx. 1453 (Am.

Med. Ass'n, *Opinion 3.1.1: Privacy in Health Care, Code of Medical Ethics*, https://code-medical-ethics.ama-assn.org/sites/amacoedb/files/2024-12/3.1.1.pdf (last visited Jan.16, 2025)). The provision of effective care depends on the sharing of sensitive health information, which will only happen where patients trust that their information will be kept confidential. Appx. 0009 (Petrin Decl. ¶ 13); Appx. 0014–15 (Oller Decl. ¶¶ 9–13); Appx. 0025 (Johnson Decl. ¶ 18); Appx. 0032–33 (Heinrich Decl. ¶ 20); *see* Appx. 0019 (Mitchell Decl. ¶ 9); Appx. 0789 (89 Fed. Reg. 32985 (Apr. 26, 2024)). When patients fear sharing their medical history or other relevant sensitive information with their providers, it risks misdiagnosis or mistreatment and puts patients' lives at risk. Put simply, "high-quality health care cannot be attained without patient candor." Appx. 0789 (89 Fed. Reg. 32985 (Apr. 26, 2024)).

As discussed, the Privacy Rules protect against that. More fundamentally, the provision of competent care is only possible where patients actually seek such care. Without robust privacy protections, patients may be afraid to seek certain health care because they are concerned about how their sensitive medical information will be used or shared. Appx. 0010 (Petrin Decl. ¶ 17); Appx. 0014 (Oller Decl.¶ 11); Appx. 0027 (Johnson Decl. ¶ 25); Appx. 0035 (Heinrich Decl. ¶ 29).

### iii.    *The Cities of Columbus and Madison have an interest in the promotion of public health.*

Columbus and Madison additionally have an interest in promoting the public health of their communities. Courts have long recognized the interest of local governmental bodies to protect public health. *See, e.g.*, *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905)

("Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members.").

Protecting individual privacy while promoting public health is an express purpose of the Privacy Rules. Robust privacy protections engender accurate reporting and "[a]ccurate medical records assist communities in identifying troubling public health trends and in evaluating the effectiveness of various public health efforts." Appx. 0177 (65 Fed. Reg. 82467 (Dec. 28, 2000)). Put differently, "[b]arriers that undermine the willingness of individuals to seek health care in a timely manner or to provide complete and accurate health information to their health care providers undermine the overall objective of public health." Appx. 0789 (89 Fed. Reg. 32985 (Apr. 26, 2024)).

Columbus Public Health and Public Health Madison and Dane County are the public health authorities for their jurisdictions, responsible not just for treating individual patients but also for preventing disease and improving the overall health of their residents as a whole. *See* Appx. 0023 (Johnson Decl. ¶ 8); Appx. 0030 (Heinrich Decl. ¶ 7); Appx. 0789 (89 Fed. Reg. 32985 (Apr. 26, 2024)). The cities' ability to identify and address concerning health trends depends, in part, on the willingness of patients to seek care and be honest with public health department providers. Appx. 0026 (Johnson Decl. ¶ 22); Appx. 0034 (Heinrich Decl. ¶ 26). The cities' interest in vindicating

their public health mandates gives them sufficient interest in this litigation. *See Edwards*, 78 F.3d at 995.

### iv.    *DFA will have to expend significant resources if either Privacy Rule is undone.*

An organization satisfies Rule 24(a)(2)'s interest requirement where it "expend[s] significant resources" on efforts that may be impacted by the outcome of the proceedings. *La Union del Pueblo Entero*, 29 F.4th at 306.  There is no question that DFA surpasses this threshold.

DFA spends significant resources advocating on behalf of providers for accessible, equitable health care at the local, state, and federal levels.  It also works to increase the physician voice in health policy decisions. *See* Appx. 0007–08 (Petrin Decl. ¶¶ 7–8).  In addition to advocating for legislative and regulatory change, DFA provides resources and trainings, including HIPAA-specific resources, for its members on legal and policy issues. *See* Appx. 0007–08 (Petrin Decl. ¶¶ 7–8).  And in 2022, DFA co-founded the Reproductive Health Coalition—a group of more than a hundred health professional organizations—specifically focused on protecting access to reproductive care.  Appx. 0009 (Petrin Decl. ¶ 9).

If either of the Privacy Rules were to fall, DFA would be required to expend significant resources advocating for increased privacy protections elsewhere (for example, at the state level) and educating and training its members on the reworked legal landscape. *See* Appx. 0010 (Petrin Decl. ¶ 17).  "This interest goes beyond a purely 'ideological' reason for intervention and amounts to a 'direct' and 'substantial' interest in the proceedings." *La Union del Pueblo Entero*, 29 F.4th at 306.

    **c.  Resolution of this action would practically impair and impede Proposed Intervenors' interests.**

An intervenor must demonstrate that the disposition of the case "may, as a practical matter" impair or impede its ability to protect its interests.  *Brumfield*, 749 F.3d. at 344.  This threshold is low—a party "need only show that if [it] cannot intervene, there is *a possibility* that [its] interest could be impaired or impeded."  *La Union del Pueblo Entero*, 29 F.4th at 307 (citing *Brumfield*, 749 F.3d at 344–45) (emphasis added).

It takes little imagination to see how a partial or complete resolution of the case in favor of Texas would impair Proposed Intervenors' interests.  If either Privacy Rule is vacated, Proposed Intervenors will face severe costs, in both time and money, to understand and comply with the new legal landscape in which they operate.  And patients' trust will be compromised, harming the provider-patient relationship, endangering Proposed Intervenors' ability to provide effective care to their patients, and undermining the public health missions of Columbus and Madison.

If Texas is afforded even part of its broad-sweeping requests for relief, Proposed Intervenors will be bound by the judgment.  There will be no way to appeal or—depending on the grounds upon which this Court would hypothetically rule—advocate for the agency to revive the rules.  *See Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1196) ("[T]he *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." (citing *Espy*, 18 F.3d at 1207)).  And if the Proposed Intervenors are prevented from joining this litigation, they will have no other recourse—such as affirmative litigation—through which to vindicate their interests.  *See Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994) ("Intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." (citation omitted)).  Precluding Proposed Intervenors from involvement in this

litigation would significantly impede and impair their abilities to protect the interests they have outlined.

### d. The government's representation of Proposed Intervenors' interests is inadequate.

To make the "minimal" showing required for this factor, Proposed Intervenors need only demonstrate that the government's representation of their interests "*may* be inadequate," *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002) (emphasis added), which Proposed Intervenors can more than do here. Indeed, intervention has been permitted even in cases where the movant's interest "may diverge in the future, even though, at [the time of intervention] they appear to share common ground." *Id.*

Although adequacy of representation will be presumed (1) where the existing party is a government charged by law with representing a putative intervenor's interests; or (2) where the putative intervenor has the same "ultimate objective" as a party to the lawsuit, *Edwards*, 78 F.3d at 1005, the federal government is not entitled to either presumption of adequacy here. To begin, this case is not one in which the government defendants are "charged by law" with representing Proposed Intervenors' interests. *Id.* Although the Department has considered the interests of covered entities in crafting the Privacy Rules, *see, e.g.*, Appx. 0182 (65 Fed. Reg. 82471 (Dec. 28, 2000)), "there is no suggestion" that it is their "legal representative," *Brumfield*, 749 F.3d at 345*; see also Espy*, 18 F.3d at 1207–08. Moreover, if the government, as expected, imminently abandons its defense of either Privacy Rule, Proposed Intervenors and the existing defendants will not share the same ultimate goal of maintaining them.

If either presumption of adequacy did apply, Proposed Intervenors could easily rebut them. An intervenor overcomes the government-representative presumption by showing that the intervenors' interests are distinct from the existing governmental party and thus may not be

16

adequately represented by it. *La Union del Pueblo Entero*, 29 F.4th at 308 (citations and internal quotation marks omitted). An intervenor overcomes the same-objective presumption by showing "adversity of interest." *Id.* In this case, the same facts rebut both. *See Texas*, 805 F.3d at 662 (analyzing both under "adversity of interest").

Proposed Intervenors have outlined their specific interests in this case. *See* Section I(b) *supra*. The government's potential interests—in balancing patient privacy with the public interest in using health information and law enforcement needs, defending the integrity of its rulemaking process, managing its relationship with the states, and implementing the agenda of a new administration—are both broader and distinct. These competing interests are something the Department itself recognized in both Privacy Rules. *See, e.g.*, Appx. 0781 (89 Fed. Reg. 32978 (Apr. 26, 2024)) ("This final rule balances the interests of society in obtaining PHI for non-health care purposes with the interests of the individual, the Federal Government, and society . . . ."); Appx. 0527 (65 Fed. Reg. 82685 (Dec. 28, 2000)) ("The final rule seeks to strike a balance in protecting privacy and facilitating legitimate law enforcement inquiries."). These more extensive interests that the Department was obliged to consider at the rulemaking stage may lead to divergent legal strategies, such as a willingness to settle, agree to an injunction limited in scope, or not appeal relief ordered against it. *See Glickman*, 256 F.3d at 381 ("The USDA is a governmental agency that must represent the broad public interest, not just the [intervenors'] concerns.").

If that were not enough to overcome the presumption, the imminent change in administration "raises 'the possibility of divergence of interest' or a 'shift' during litigation." *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017) (citation omitted); *see Heaton*, 297 F.3d at 425 ("That the [intervenor's] interests and [existing party's] may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the

[intervenor's] burden on this issue."). *Alliance for Hippocratic Med.*, 2024 WL 1260639, at *6

("[I]n any event, 'it is enough' for the purposes of this factor that the Intervenors' broader interests

'may diverge' from Plaintiffs' interests 'in the future.'" (citing *Heaton* , 297 F.3d at 425)).  This

possibility alone satisfies the minimal requirement that the government's representation "may be"

inadequate.  *Espy*, 18 F.3d at 1207 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538

n.10 (1972)).    Proposed Intervenors note abundant recent evidence that the incoming

administration will abandon its defense of the challenged Privacy Rules.  For example, the

Nominee for Department Secretary, Robert F. Kennedy, Jr., has indicated his willingness to

rescind Department regulations related to reproductive health care, including the 2024 Rule.  *See*

Appx. 1454–59 (Megan Messerly et al., *Anti-abortion groups have 2 asks. RFK Jr. is listening*,

Politico (Nov. 20, 2024), https://www.politico.com/news/2024/11/20/anti-abortion-rfk-jr-

00190552); Appx. 1460–64 (Tyler Arnold, *Trump's HHS nominee Robert F. Kennedy Jr.*

*reassures pro-life senators with policy plans*, Catholic News Agency (Dec. 19, 2024),

https://www.catholicnewsagency.com/news/261111/trump-hhs-nominee-robert-kennedy-jr-

reassures-pro-life-senators) (noting that Kennedy has told Senators that he "will back certain pro-

life policies if the Senate confirms him," and that abortion should go "back to the states").[4]  Further,

---

[4] President-Elect Trump and his administration have demonstrated that they believe the federal
government should not take any actions to protect access to abortion.  *See* Appx. 1462 (Arnold,
*supra*) (quoting Senator Tommy Tuberville as saying, "Basically, [Kennedy] and President Trump
have sat down and talked about it and both of them came to an agreement," and "Roe v. Wade is
gone, [abortion has] gone back to the states").  Within the past year, President-Elect Trump has
indicated that he "would let red states monitor women's pregnancies," a sentiment completely
diametric to the 2024 Rule's intent and Proposed Intervenors' interests.  Appx. 1467 (Eric
Cortellessa, *How Far Would Trump Go*, TIME (Apr. 30, 2024),
https://time.com/magazine/us/6979410/may-27th-2024-vol-203-no-17-u-s/).    Vice President-
Elect Vance opposed the new rule from its inception, submitting a comment that makes many of
the same arguments that Texas does here.  *See* Appx. 1477–87 (Members of Congress, Comment
on Proposed HIPAA Privacy Rule To Support Reproductive Health Care Privacy 9 (June 16,
2023), https://www.regulations.gov/comment/HHS-OCR-2023-0006-0171).

opposed similar HHS efforts to protect reproductive health information.  Appx. 1490  (The Heritage Foundation, *Mandate for Leadership: The Conservative Promise* 497 (2023), https://tinyurl.com/55dbtvkx).[5]

Although the incoming administration has been less outspoken on the 2000 Privacy Rule, Texas's opposition to the 2000 Privacy Rule appears to be focused on provisions that it argues inhibit its ability to receive unlimited patient information pursuant to an administrative subpoena or investigative demands:  requests that have increased following *Dobbs*.  *See* Appx. 0792 (89 Fed. Reg. 32988 (Apr. 26, 2024)).  Given the incoming administration's opposition to robust protections for reproductive care, its leaders may very well agree with Texas that the limits in the 2000 Privacy Rule overreach and also cease to defend that Rule.

Although Proposed Intervenors "cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, . . .  surely they might, which is all that the rule requires."  *Brumfield*, 749 F.3d at 346 (emphasis in original).

## II.    Alternatively, this Court should permit Proposed Intervenors to intervene under Rule 24(b).

Federal Rule of Civil Procedure 24(b) provides that a court may permit intervention where an intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1), (3). "The 'claim or defense' portion of Rule 24(b) . . . [is to be] construed liberally.'"  *U.S. ex rel Hernandez v. Team Finance, LLC*, 80 F.4th 571, 577 (5th Cir. 2023) (quoting *Newby v. Enron*

---

[5] Although President-Elect Trump has endeavored to distance himself from Project 2025, he has since picked "major architects" of the blueprint for key posts in his next administration.  Appx. 1491 (Amanda Becker, *How Trump's nominees could make Project 2025 a reality*, News from the States (Jan. 2, 2025), https://www.newsfromthestates.com/article/how-trump-nominees-could-make-project-2025-reality).

*Corp.*, 443 F.3d 416, 422 (5th Cir. 2023)).  On all counts, Proposed Intervenors should be permitted to intervene permissively if they are not entitled to under Rule 24(a)(2).

First, as explained above, Proposed Intervenors motion is timely.  *See* Section I(a) *supra*. Although timeliness is analyzed with more scrutiny in the context of permissive intervention, *Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir. 2021), Proposed Intervenors move to intervene promptly, before the matter proceeds substantively, to protect their interests.  Second, Proposed Intervenors seek to take up the position (defending the Privacy Rules) and arguments that they believe the federal government will shortly abandon; their claims and defenses do not just share a common question of law or fact with the main action, they are practically identical.  If the incoming administration does not abandon its defense of the rules, Proposed Intervenors' specific interests still easily satisfy this requirement.  *See* Section I(b) *supra*.  Lastly, intervention here would not cause any delay or prejudice, as this litigation is in its nascent stages.  *See* Section I(a) *supra*.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grants their motion for leave to intervene under Rule 24(a), or, in the alternative, Rule 24(b).

Date:   January 17, 2025                                  Respectfully submitted,

                                                          */s/ Jennifer R. Ecklund*
                                                          Jennifer R. Ecklund
                                                          THOMPSON COBURN LLP
                                                          2100 Ross Avenue Suite 3200
                                                          Dallas, Texas 75201
                                                          (972) 629-7100 (phone)
                                                          (972) 629-7171 (fax)
                                                          jecklund@thompsoncoburn.com

                                                          *Counsel to Intervenor-Defendants*

Shannon Rose Selden – *Pro Hac Vice Pending*
Adam Aukland Peck – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (phone)
(212) 909-6836 (fax)
srselden@debevoise.com
aauklandpeck@debevoise.com

*Counsel to Intervenor-Defendants*

-and-

Anna A. Moody – *Pro Hac Vice Pending*
Gabriel A. Kohan – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
amoody@debevoise.com
gakohan@debevoise.com

*Counsel to Intervenor-Defendants*

-and-

Carrie Y. Flaxman – *Pro Hac Vice Pending*
Madeline H. Gitomer – *Pro Hac Vice Pending*
Emma R. Leibowitz – *Pro Hac Vice Pending*
DEMOCRACY FORWARD
P.O. Box 34553
Washington, DC 20043
(202) 448-9090 (phone)
cflaxman@democracyforward.org
mgitomer@democracyforward.org
eleibowitz@democracyforward.org

*Counsel to Intervenor-Defendants*

-and-

Aisha Rich – *Pro Hac Vice Pending*
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, California 94609
(510) 214-6960 (phone)
aisha@publicrightsproject.org

*Counsel to City of Columbus and City of Madison*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2025, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

<u>/s/ Jennifer R. Ecklund</u>
Jennifer R. Ecklund
