IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>                *Plaintiff*,<br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, *et al.*,<br><br>                *Defendants*. | No. 5:24-cv-204-H |

**DEFENDANTS' OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS'
MOTION FOR LEAVE TO INTERVENE**

A coalition of two Midwest cities and a nonprofit organization have moved to intervene in this lawsuit, seeking to defend the rules that the State of Texas challenges, *Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg. 82462 (Dec. 28, 2000) ("2000 Rule"), and *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024) ("2024 Rule"). But although the proposed intervenors support these rules, they have not satisfied the requirements for intervention, whether as of right or permissively. As defendants' motion to dismiss explains, *see infra*, this Court lacks jurisdiction over this case, a threshold barrier to intervention. Moreover, intervention of right is limited to cases where a non-party has such a direct stake in the dispute that it is a real party in interest, a showing the proposed intervenors have not made here. Nor is permissive intervention warranted, as the proposed intervenors do not seek to advance a claim or defense common to those of the parties; rather, their desire to offer arguments in support of the challenged rules at most justifies their participation as amicus curiae. Another court within this District recently denied the proposed intervenors' intervention in a similar challenge to the 2024 Rule. *See Purl v. HHS*, 2025 WL 1117477 (N.D. Tex. Apr. 15, 2025). This Court should do the same here.

1

**BACKGROUND**

**1.** Last year, the State of Texas filed this Administrative Procedure Act ("APA") suit to challenge the 2000 Rule and 2024 Rule (together, the "Privacy Rules"), claiming that they unlawfully interfere with the state's authority to investigate violations of state law and are otherwise arbitrary and capricious. *See* Compl. ¶¶ 65–103, ECF No. 1. Defendants moved to dismiss this case for lack of subject-matter jurisdiction on the grounds that Texas lacks Article III standing to challenge the Rule, and also moved for summary judgment in the alternative. *See* Defs.' Br. in Supp. of MTD or, in the Alternative, for Summ. J. ("MTD"), ECF No. 20. Texas is expected to cross-move for summary judgment on or before June 9, 2025. *See* ECF No. 48.

**2.** In January of this year, the Doctors for America ("DFA") and the cities of Columbus, Ohio, and Madison, Wisconsin, jointly moved to intervene as defendants in this matter. *See* Mem. in Supp. of Prop. Intervenor-Defs.' Mot. for Leave to Intervene ("Mot."), ECF No. 27. Although they are not parties to this lawsuit, the proposed intervenors simultaneously submitted a motion to dismiss or, alternatively, for summary judgment. *See* Prop. Mem. of Law in Supp. of Intervenor-Defs.' MTD or, in the Alternative, for Summ. J. ("Prop. Intervenors' MSJ"), ECF No. 26-3.

**ARGUMENT**

**I.    This Court's lack of jurisdiction precludes intervention.**

As a threshold matter, the proposed intervenors cannot intervene in a case over which this Court lacks jurisdiction. "[A]n existing suit within the court's jurisdiction is a prerequisite" to intervention, *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985)—an "ancillary proceeding" that "cannot create jurisdiction" where none exists, *Lopez v. Sw. Airlines Co.*, 2013 WL 12121233, at *5 (N.D. Tex. July 10, 2013) (citations omitted); *accord Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160–61 (2d Cir. 2012) ("[T]his rule is so deeply entrenched in our jurisprudence that it is an axiomatic principle of federal jurisdiction in every circuit to have addressed

the question." (collecting cases)). Because no jurisdiction exists here, where Texas lacks Article III standing, *see* MTD at 10–13, the Court "simply has no power to decide [the] motion to intervene," *see Vill. of Oakwood v. State Bank & Tr. Co.*, 481 F.3d 364, 367 (6th Cir. 2007), and should therefore dismiss this case without resolving the merits of the proposed intervenors' motion, *see id.* ("In the absence of jurisdiction over the existing suit, a district court['s] … only option is to dismiss.").[1]

## II. The proposed intervenors are not entitled to intervene as of right.

Even if this Court had jurisdiction, the proposed intervenors have not established a right to intervene. Federal Rule of Civil Procedure 24(a)(2) allows an entity that is not a party to a lawsuit to intervene as of right only if, upon timely motion, it shows that (i) it has a protectable interest in the lawsuit's subject matter, (ii) the lawsuit's disposition would impair its ability to protect that interest absent intervention, and (iii) the parties inadequately represent its interest. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025).[2] An aspiring intervenor bears the burden of establishing each requirement, and failure to satisfy any one of them precludes intervention of right. *Id.*

None of the proposed intervenors' asserted interests confer a right to intervene. To have such a right, an interest must be direct, substantial, and legally protectable, such that the aspiring intervenor is a "real party in interest" in the proceeding. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463–64 (5th Cir. 1984); *accord Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996). The scattershot interests the proposed intervenors assert come nowhere close to meeting that standard. *See Purl*, 2025 WL 1117477, at *2–4 (finding that the proposed intervenors' asserted interests were insufficient to confer a right to intervene in a similar challenge to the 2024 Rule).

---

[1] At a minimum, the Court should resolve defendants' dispositive motion before addressing the proposed intervenors' motion.

[2] The proposed intervenors do not contend that a federal statute grants them an "unconditional right to intervene," so Rule 24(a)(1) is inapplicable.

3

*First*, the proposed intervenors cannot establish a sufficient interest in this litigation based merely on the fact that the Rule regulates certain DFA members and the health departments of Columbus and Madison, *contra* Mot. 8–9, and the cases they cite say nothing to the contrary. Take *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, 834 F.3d 562 (5th Cir. 2016), and *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015). In both cases, the Fifth Circuit held that aspiring intervenors had a right to intervene in a lawsuit challenging a government regulation or program of which they were the "*intended beneficiaries.*" *Wal-Mart*, 834 F.3d at 567, 569 (emphasis added); *Texas*, 805 F.3d at 660. Neither case supports the proposition that the proposed intervenors advance—*i.e.*, that being regulated or affected by a law is alone sufficient to create a protectable interest in litigation challenging the law. *See Purl*, 2025 WL 1117477, at *2 ("If a challenged program or regulation does nothing more than regulate movants, movants show nothing more than a generalized interest."). And as the court in *Purl* explained, neither the health departments of Columbus and Madison nor DFA members can claim to be the "intended beneficiaries" of the Privacy Rules, which are designed to benefit healthcare *patients* "whose information [they] protect[]," not healthcare *providers*. *Id.*

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), is even further afield. There, a state chapter of the Chamber of Commerce ("Chamber") sought to intervene as a defendant in a lawsuit challenging campaign-finance legislation that applied existing expenditure restrictions to labor unions—legislation that the Chamber helped draft. *Id.* at 1244; *see also Mich. St. AFL-CIO v. Miller*, 891 F. Supp. 1210, 1216 (E.D. Mich. 1995), *rev'd*, 103 F.3d 1240 (6th Cir. 1997). Though the Sixth Circuit thought it was a "close" call, the court found that the Chamber had shown a sufficient interest to support its intervention *not* because the Chamber was merely regulated by the challenged legislation, *contra* Mot. at 8, but because four distinct criteria were present: the Chamber was (i) "a vital participant in the political process that resulted" in the adoption of the challenge legislation, (ii) "a repeat player in Campaign Finance Act litigation," (iii) "a significant party" that is "adverse to" the plaintiff "in the

4

political process surrounding" the state's regulation of campaign finance, *and* (iv) "an entity also regulated by at least three of the four statutory provisions" that were challenged.[3] *Miller*, 103 F.3d at 1246–47; *accord Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 344–45 (6th Cir. 2007) (noting that *Miller*'s interest analysis turned on these "four significant factors"). The proposed intervenors have thus cited no authority adopting their position that Rule 24(a)(2)'s interest requirement is satisfied whenever an aspiring intervenor is merely regulated or affected by a challenged law.[4]

In any event, the proposed intervenors identify no adverse regulatory consequences that Columbus, Madison, or any DFA member would face if the Privacy Rules were vacated. While they vaguely assert that these entities devote "time and money to HIPAA compliance and training," *see* Mot. 8–9, they do not contend—much less submit any evidence showing—that vacatur of the Privacy Rules would require that they expend *additional* time or resources beyond what they would otherwise devote to HIPAA compliance. Nor is it relevant that, as a general matter, a covered entity may face liability for violating HIPAA's requirements, *see id.* at 8, because the proposed intervenors do not suggest that vacating the Privacy Rules—thus lifting their requirements—would *increase* the likelihood that any covered entity would be held liable for violating HIPAA.

**Second,** relying on *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012), the proposed intervenors suggest that the "staff time" Columbus's health department has allegedly invested in implementing the 2024 Rule gives the city a sufficient interest in this litigation. *See* Mot. at 9. But *City of Houston*'s reasoning is inapplicable here. There, the Fifth Circuit held that the organizers

---

[3] Moreover, none of the determinative factors in *Miller* are present here. DFA does not claim that it played a serious role in the promulgation of either Privacy Rule, that it routinely litigates cases concerning access to or use of reproductive health information, or that the Privacy Rules directly regulate it.

[4] The proposed intervenors also cite *National Horsemen's Benevolent and Protective Association v. Black*, 2022 WL 974335 (N.D. Tex. Mar. 31, 2022). But there, this Court found that the State of Texas's interest in preserving its *own* regulations conferred a right to intervene in a lawsuit challenging a federal statute that purportedly preempted those regulations. *Id.* at *5.

5

of a successful campaign in support of a city charter amendment had a right to intervene in a lawsuit challenging that amendment because they had a "unique" and "particular interest in cementing their electoral victory." *City of Houston*, 668 F.3d at 292–94. That's not the case here, where the proposed intervenors played no meaningful role in the promulgation of either Privacy Rule. And for that reason, the court in *Purl* rightly rejected the proposed intervenors' reliance on *City of Houston*, explaining that any proposed intervenor's prior expenditure of time or resources was insufficient to create a protectable interest in that litigation. 2025 WL 1117477, at *3. So too here.

*Third*, DFA cannot establish a direct and substantial interest in this litigation based on the threadbare assertion that it would need to expend resources on advocacy and education if the Privacy Rules were vacated. *Contra* Mot. 14. For one, DFA cites no authority supporting the proposition that voluntarily expending resources to advance an organization's "policy goals is sufficient to establish a legally protectable interest for purposes of Rule 24(a)(2)." *See Def. Distributed v. U.S. Dep't of State*, 2018 WL 3614221, at *3 (W.D. Tex. July 27, 2018); *cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing …."). To the contrary, as *Purl* explains, organizations like DFA "have no legally-protected interest in *not* expending their resources" advocating for their selected causes or on behalf of their members. 2025 WL 1117477, at *3 (quoting *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994), and citing *All. for Hippocratic Med.*, 602 U.S. at 394). But either way, vaguely alluding to the possibility of "expend[ing] some undefined amount of … resources if" either Privacy Rule were vacated gets DFA nowhere. *See Cigar Ass'n of Am. v. FDA*, 323 F.R.D. 54, 62–63 (D.D.C.). Whether an aspiring intervenor has a direct and substantial interest depends on a fact-intensive inquiry. *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001); *accord Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996); *see also Brumfield v. Dodd*, 749 F.3d 339, 342 (5th Cir.

6

2014) (whether intervention under Rule 24(a)(2) is appropriate depends on an "analysis of the facts and circumstances of each case"). Yet DFA submits no *facts* to support its claim that it would need to expend resources if either Privacy Rule were upended, instead citing only a declarant's conclusory assertion to that effect. *See* Mot. 14 (citing App'x 10, Decl. of Dr. Christine Petrin ¶ 17). Indeed, DFA never explains, *e.g.*, what specific resources it actually intends to expend on any relevant advocacy and education, much less whether any of those resources would otherwise be conserved or go to other purposes if the Privacy Rules were upheld. *Cf. All. for Hippocratic Med.*, 602 U.S. at 395 (rejecting the theory that "standing exists when an organization diverts its resources in response to a defendant's actions," noting that "relaxing regulation" of a drug imposed no relevant "impediment to the medical associations' advocacy"). And it's hard to imagine what resources DFA would actually need to expend to educate its members on at least the pre-2024 Rule "legal landscape," as it claims it would need to do, *see* Mot. 14, given that the 2024 Rule's compliance date was less than six months ago. *See, e.g.*, *Liebert v. Wisc. Elections Comm'n*, 345 F.R.D. 169, 173 (W.D. Wisc. 2023) ("[The proposed intervenors] say that they will need to expend additional resources to educate Republican voters if the witness requirement is invalidated, but they point to no evidence … that such education will be needed if plaintiffs prevail."). Regardless, without sufficient facts, the Court has no way to meaningfully evaluate whether DFA's asserted interest is real and not merely theoretical. *See Chambers Med. Found. v. Petrie*, 221 F. App'x 349, 351 (5th Cir. 2007) (holding that an aspiring intervenor failed to show a "direct, substantial and legally protectable interest" because it did not "sufficiently specify" its alleged interest or "describe in detail how and to what degree" the litigation would impact that interest (cleaned up)); *see also, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) ("A court must carefully analyze whether the proposed intervenor's asserted interest really is bound up with the subject matter of the litigation.").

7

*Finally,* the proposed intervenors offer no clear explanation how the disposition of this lawsuit will have any appreciable, real-world effect on their ability to "promot[e] the public health" or "promot[e] trust between patients and [health care] providers." *See* Mot. 9–13. Although the proposed intervenors try to draw a link between this litigation and their asserted interests, any such connection is too abstract and attenuated to establish the direct, substantial, and legally protectable interest needed to confer a right to intervene, much less that this case's resolution would actually impair the proposed intervenors' ability to protect their asserted interests. *See Purl*, 2025 WL 1117477, at *3 (finding these purported interests insufficient under Rule 24(a)(2)); *see also, e.g.*, *Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015) ("[A] legally protectable interest" must be so "direct and immediate … that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."); *Chambers Med. Found.*, 221 F. App'x at 351 (rejecting an "abstract interest" under Rule 24(a)(2)); *Metro. St. Louis*, 569 F.3d at 839 ("[An aspiring intervenor] must … demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way."); *Vt. All. for Ethical Healthcare, Inc. v. Hoser*, 2016 WL 7015717, at *1–2 (D. Vt. Dec. 1, 2016) ("A concern in the abstract … is insufficient" to establish "a direct, substantial and legally protectable interest in the lawsuit.").[5]

\*    \*    \*

---

[5] In separately addressing Rule 24(a)(2)'s impairment prong, the proposed intervenors contend that, absent intervention, any adverse judgment this Court enters will bind them. *See* Mot. at 15. But as non-parties to this lawsuit, it's unclear how a final judgment in this case would "bind" the proposed intervenors. *See, e.g.*, *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996) ("[T]he general consensus in Anglo–American jurisprudence [is] that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party …." (cleaned up)). Moreover, contrary to what they suggest, *see* Mot. at 15, any adverse decision from this Court would have no *stare decisis* effect, whether within this District or elsewhere. *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). And even assuming otherwise, that alone would not satisfy Rule 24(a)(2)'s impairment prong. *See, e.g.*, *Britto v. ATF*, 2023 WL 11957195, at *4 (N.D. Tex. Apr. 14, 2023) (rejecting the notion that any *stare decisis* effect of the court's judgment would impair the aspiring intervenor's ability to protect their

In sum, because the proposed intervenors have not identified a direct, substantial, and legally protectable interest that could be impaired absent their intervention, they lack a right to intervene.

### III.  The proposed intervenors have not justified permissive intervention.

Permissive intervention should likewise be denied. Upon timely motion, a court may permit intervention under Rule 24(b) where the movant has a "claim or defense" that shares "a question of law or fact in common" with the main action, and where intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991) (citation omitted). But even when these requirements are met, the court retains discretion to deny intervention. *New Orleans Pub. Serv., Inc.*, 732 F.2d at 470–71.

The proposed intervenors have no "claim or defense" that shares a common legal or factual question with those of the parties, thus precluding permissive intervention. "The words 'claim or defense" in Rule 24(b) "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law[]suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (adopting the *Diamond* concurrence's interpretation of "claims or defenses" in interpreting those same words in Rule 23(a)(3)). That interpretation is "confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a motion … 'accompanied by a pleading setting forth the claim or defense for which intervention is sought.'" *Diamond*, 476 U.S. at 76 (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.) (quoting Fed. R. Civ. P. 24(c)). So, to permissively intervene, one must have "a legal claim or defense … founded upon" an "actual, present interest that would permit" an aspiring intervenor "*to sue* or *be sued*" in a lawsuit "sharing common questions of law or fact with those at issue in this litigation." *Id.* (emphasis added); *accord, e.g.*,

---

interests); *Villas at Parkside Partners v. City of Farmers Beach*, 245 F.R.D. 551, 554–55 (N.D. Tex. 2007) (same).

9

*DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019). But the proposed intervenors have no such claim or defense. While they seek to intervene as defendants in this lawsuit, they do not suggest that Texas could bring an APA claim challenging the Rule against them, nor is it clear how the proposed intervenors could assert a defense to a claim that cannot conceivably be brought against them. *See DeOtte*, 332 F.R.D. at 186 ("A 'defense' is a particular type of legal argument that *the targets of a claim* assert to explain why the court should not grant relief against them." (emphasis added) (quoting parenthetically Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 274 (Apr. 2020)); *see also* Fed. R. Civ. P. 8(b)(1) ("In responding to a pleading, a party must state … its defenses to each claim *asserted against it* …." (emphasis added)). And although the proposed intervenors wish to assert various legal theories in support of the Rule's validity, *see* Mot. 20 ("Proposed Intervenors seek to take up … arguments" "defending the Privacy Rues …."), mere "legal theories are not 'claims or defenses' …, as envisioned by Rule 24(b)," *United States v. Apple, Inc.*, 2012 WL 4513541, at *2 (S.D.N.Y. Oct. 2, 2012); *accord DeOtte*, 332 F.R.D. at 186–87 (denying permissive intervention because the aspiring intervenor-defendant "simply ha[d] no claim or defense," as interpreted in the *Diamond* concurrence, despite asserting legal theories relevant to the merits of the plaintiffs' claims).[6]

Other factors also counsel against permissive intervention. First, there are no underlying factual issues that the proposed intervenors could help develop in this APA case, which raises pure questions of law that would need to be resolved based on the administrative record if the Court were to reach the merits. *See, e.g., Purl*, 2025 WL 1117477, at *6 (denying permissive intervention because the proposed intervenors could not "contribute to the development of [any] factual issues" in an APA

---

[6] *See also, e.g., United States v. Microsoft Corp.*, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) (denying permissive intervention because the court could find no "assertion by [the aspiring intervenor] of a cognizable claim fitting the parameters of Rule 24(b)(2)," as interpreted in the *Diamond* concurrence) (cleaned up)); *Choice Fashion, Inc. v. ATF*, 2009 WL 1658047, at *2 (E.D. Mich. June 10, 2009) (same); *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, 2011 WL 13221046, at *3 (N.D. Ga. Nov. 1, 2011) (same); *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (same).

case raising pure questions of law); *Britto v. ATF*, 2023 WL 11957195, at *5 (N.D. Tex. Apr. 14, 2023) (same). And to the extent the proposed intervenors wish to be heard on any of the issues raised in this litigation, they are free to seek this Court's leave to participate as amicus curiae, a request that defendants would not oppose. *See Burgum*, 132 F.4th at 924 ("[W]here the movants express a unique view offered by neither party that they want heard, the proper procedure is to move to appear as *amici curiae*, not to move to intervene." (cleaned up)).

## CONCLUSION

The Court should deny the proposed intervenors' motion to intervene.

Dated: June 3, 2025                    Respectfully submitted,

                                       YAAKOV M. ROTH
                                       Acting Assistant Attorney General

                                       ERIC B. BECKENHAUER
                                       Assistant Branch Director

                                       */s/ Jody D. Lowenstein*
                                       JODY D. LOWENSTEIN
                                       Mont. Bar No. 55816869
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street NW
                                       Washington, DC 20005
                                       Phone: (202) 598-9280
                                       Email: jody.d.lowenstein@usdoj.gov

                                       *Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

On June 3, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
