# EXHIBIT 1

Appx. 001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>　　　*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES;<br>XAVIER BECERRA, in his official capacity<br>as Secretary of the United States<br>Department of Health and Human Services;<br>MELANIE FONTES RAINER, in her<br>official capacity as Director of the<br>Department of Health and Human Services<br>Office for Civil Rights,<br>　　　*Defendants*. | CIVIL ACTION No. 5:24-cv-00204 |

**DECLARATION OF RUTH THORNTON**

My name is Ruth Thornton, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters stated herein, and they are true and correct.

1.  I am the Director of Child Support at Texas Office of the Attorney General (OAG) and have been in my current position since 2019. In this capacity, I oversee the daily operations of the state's Title IV-D child support program and ensure the program's compliance with relevant state and federal laws and regulations. I have worked for OAG since 2008.

2.  I am aware of the existence of the "HIPAA Privacy Rule To Support Reproductive Health Care Privacy" (2024 Rule). 89 Fed. Reg. 32,976. I am aware that the 2024 Rule adds 45 C.F.R. § 164.509, which includes an attestation requirement for "protected health information potentially related to reproductive health care." "Reproductive health care" is defined broadly as "health care . . . that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes." 45 C.F.R. § 160.103.

3.  The rule is hindering the ability of my office to fulfill its federally-mandated responsibilities regarding the voluntary acknowledgment of paternity (AOP) program by causing undue delays in the oversight of this program.

4. 45 CFR § 303.5 requires states to have a statutory scheme to facilitate the voluntary AOP program. In Texas, Texas Family Code § 160.301, *et seq*. outlines the process for implementing this federal requirement.

5. Our office audits Texas hospitals' compliance with the AOP program and related statutory and regulatory requirements quarterly in accordance with 45 CFR § 303.5(g)(7). As part of these audits, random birth records are selected, where the hospital provides patient health information without authorization from the parent to the OAG. Until recently, this process ran smoothly, with hospitals providing necessary information to OAG staff upon request. Beginning December 2024, our office began receiving pushback from hospital staff in providing this routine information, citing the 2024 Rule. These hospitals now require an attestation from OAG staff that describes the requestor, the name of the hospital, patient identification, and the type of information being requested. Because it is not appropriate for front line staff to be signing these attestations without legal review, each instance of this requirement must be sent to OAG Child Support Division Legal Services attorneys to review prior to completion. This is causing unnecessary delays in routine program activities.

6. In addition, OAG is incurring compliance costs as a result of these regulations. OAG estimates it has already cost $900 (15 hours) in staff time associated with the review and completion of these attestations, and, should this trend continue and expand to all Texas birthing hospitals, would cost up to more than $26,000 per year. Further, the OAG estimates that it will cost $2,000 to develop/modify policies and procedures and train staff, in addition to the personnel time that is/will be lost responding to requests for the use or disclosure of protected health information for which an attestation is required. Every hour of time spent on these bureaucratic and burdensome activities takes time away from the essential work that furthers the child support mission.

7. All the facts and information contained within this declaration are within my personal knowledge and are true and correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day, June 2025, in Austin, Texas.



RUTH THORNTON

# EXHIBIT 2

United States District Court
Northern District of Texas
Lubbock Division

State of Texas,
　　　　*Plaintiff*,

v.

United States Department of Health and
Human Services; Xavier Becerra, in his
official capacity as Secretary of the United
States Department of Health and Human
Services; Melanie Fontes Rainer, in her
official capacity as Director of the
Department of Health and Human Services
Office for Civil Rights,
　　　　*Defendants.*

Civil Action No. 5:24-cv-00204

### DECLARATION OF MANDA HALL, M.D.

My name is Manda Hall, M.D., and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters stated herein, and they are true and correct.

1. I am the Deputy Commissioner of the Community Health Improvement (CHI) Division at the Texas Department of State Health Services (DSHS) at Texas Health and Human Services Commission (HHSC) and have been in my current position since October of 2017. In this capacity, I oversee and provide strategic direction to four sections and two offices within the Division:  Maternal and Child Health (MCH), Environmental Epidemiology and Disease Registries (EEDRS), Vital Statistics (VSS), Health Promotion and Chronic Disease Prevention (HPCDP), Office of the CHI Medical Director, and the Office of Data Analytics and Special Projects.  I have worked for DSHS since 2012.

2. I am aware of the existence of the "HIPAA Privacy Rule To Support Reproductive Health Care Privacy" (2024 Rule). 89 Fed. Reg. 32,976. I am aware that the 2024 Privacy Rule adds 45 C.F.R. § 164.509, which includes an attestation requirement for "protected health information potentially related to reproductive health care." "Reproductive health care" is defined broadly as "health care . . . that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes." 45 C.F.R. § 160.103.

3. The rule is hindering the ability of the Maternal and Child Health program at DSHS to receive records to prepare cases for review by the legislatively mandated Maternal Mortality and Morbidity Review Committee (MMMRC) as required by Chapter 34 of the Health and Safety Code. The MMMRC is statutorily charged with making recommendations to help reduce the incidence of pregnancy-related deaths and severe maternal morbidity in Texas. Tex. Health & Safety Code § 34.005(4). The MMMRC is administered by DSHS. *Id.* § 34.002. It is statutorily charged with studying and reviewing (A) cases of pregnancy-related deaths; (B) trends, rates, or disparities in pregnancy-related deaths and severe maternal morbidity; (C) health conditions and factors that disproportionately affect the most at-risk population; and (D) best practices and programs operating in other states that have reduced rates of pregnancy-related deaths. *Id.* § 34.005(1). The Texas Health & Safety Code requires DSHS to "obtain information relevant" to a pregnancy-related death or severe maternal morbidity for review to allow MMMRC to review the case. *Id.* § 34.008(a). On DSHS's request, "a hospital, birthing center, or other custodian of the requested information shall provide the information to [DSHS]" for MMMRC to review. *Id.* § 34.008(b)(2).

4. The 2024 Rule is impacting the ability of the MMMRC to study and review specific cases of pregnancy-related deaths and make required recommendations to the legislature to help reduce the incidence of pregnancy-related deaths and severe maternal morbidity in this state. DSHS has received requests to execute attestation forms from covered entities in response to DSHS's requests for patient records. MMMRC's study and review of specific cases has been delayed while DSHS seeks legal counsel on the implications of signing the attestations.

5. The rule is hindering the ability of the Birth Defects Epidemiology and Surveillance Branch at DSHS to complete review of medical records for public health activities for the Texas Birth Defects Registry for those facilities requiring the attestation as required by Chapter 87 of the Texas Health and Safety Code. Under the Texas Health & Safety Code, HHSC's executive commissioner is required to establish a program to identify and investigate certain birth defects in children and maintain a central registry of cases of birth defects. Tex. Health & Safety Code § 87.021(a). The Birth Defects Epidemiology and Surveillance Branch at DSHS fulfills this role. The Texas Health & Safety Code requires "a health facility, health professional, or midwife to make available for review by the department or by an authorized agent medical records or other information that is in the facility's, professional's, or midwife's custody or control and that relates to the occurrence of a birth defect." *Id.* § 87.022(a). DSHS has received requests to execute attestation forms from covered entities in response requests for medical records. This impacts the ability of the program to complete legislatively mandated activities, respond timely to public health concerns in the state as it relates to birth defects, and provide case coordination, such as referral to departmental social workers for guidance in applying for financial or medical

assistance available under state and federal programs, for specific birth defects such as Spina Bifida and Down Syndrome.

6. The rule is hindering the ability of the Environmental Surveillance and Toxicology Branch at DSHS to complete legislatively mandated activities for surveillance of reportable occupational conditions and impacts the ability to respond to emerging public health concerns as required by Chapters 84 and 161 of the Health and Safety Code.

7. The 2024 Rule is creating unnecessary barriers to DSHS's ability to fulfill its statutory obligations.

8. All the facts and information contained within this declaration are within my personal knowledge and are true and correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day, June 2025, in Austin, Texas.

Manda Hall, MD

Digitally signed by Manda Hall, MD
Date: 2025.06.09 19:06:57 -05'00'

Manda Hall, M.D.

# EXHIBIT 3

United States District Court
Northern District of Texas
Lubbock Division

State of Texas,
     *Plaintiff*,

v.

United States Department of Health and
Human Services; Xavier Becerra, in his
official capacity as Secretary of the United
States Department of Health and Human
Services; Melanie Fontes Rainer, in her
official capacity as Director of the
Department of Health and Human Services
Office for Civil Rights,
     *Defendants*.

Civil Action No. 5:24-cv-00204

### DECLARATION OF CHELSEA WALLACE

My name is Chelsea Wallace, and I am over the age of 18 and fully competent in all respects to make this declaration. I have personal knowledge of the matters stated herein, and they are true and correct.

1. I am Deputy Inspector General, Surveillance Utilization Review Division, for the Texas Health and Human Services Commission Office of Inspector General (HHSC OIG). I oversee and manage the HHSC OIG division responsible for conducting Texas Medicaid program health oversight activities, including, but not limited to, hospital utilization reviews of Texas Medicaid hospital claims as required by Title 42, Part 456, of the Code of Federal Regulations and Chapter 544, Texas Government Code. I am familiar with the records and the manner in which such records are created and maintained by my division by virtue of my duties and responsibilities.

2. Attached are 3 pages of records I received from Layna C. Rush of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, who represents Lake Granbury Medical Center (LGMC), in response to a request for records sent to LGMC by a member of my staff. The request sought medical records associated with five admissions for which reimbursements were made to LGMC under the Texas Medicaid program. Each of the records attached hereto are the original records or exact duplicates of the original records.

3. These records were made at or near the time of each act or event set forth therein.

1

4.  These records were made by, or from information transmitted by, persons with knowledge of the matters set forth therein.

5.  It is the regular practice of HHSC OIG to maintain these records in the course of its regularly-conducted business activities.

6.  All the facts and information contained within this declaration are within my personal knowledge and are true and correct. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___8___ day of June, 2025, in Austin, Texas.

_____
Chelsea Wallace

SWORN TO AND SUBSCRIBED before me on this the ___8th___ day of ___June___, 20 _25_.

_____
Notary Public Signature
SEAL BELOW:

Elizabeth A. Saunders
Notary Printed Name
COMMISSION EXP: _01/04/27_



ELIZABETH A. SAUNDERS
My Notary ID #.131158174
Expires January 4, 2027

2

# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MARYLAND • MISSISSIPPI • SOUTH CAROLINA • TENNESSEE • TEXAS • VIRGINIA • WASHINGTON, D.C.

| New Fax Message | |
|---|---|
| To: | 18173218113 |
| Fax Number: | 18173218113 |
| From: | BatoTeamFax |
| Date: | 05-30-2025 3:08 PM CT |
| Subject: | Ltr to Chelsea Wallace re records request to LGMC_.docx |
| No of Pages with Cover: | 3 |

Please see the attached correspondence from Layna Rush regarding the above referenced matter.

Thank you for your attention.

**Deborah D. Kirkland**

Legal Support Coordinator to

Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C.
II Rivermark Centre

450 Laurel Street, 21st Floor

Baton Rouge, Louisiana 70801

Phone 225.381.7014

Fax 225.343-3612

dkirkland@bakerdonelson.com

www.bakerdonelson.com



*Note: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer are not the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited. If you have received this facsimile in error, please immediately notify the person named above at once by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.*
*Unless otherwise expressly stated, nothing in this cover sheet or in any attachment hereto is intended to or can be used by any recipient to avoid the imposition of federal tax penalties.*

Appx. 011

# BAKER DONELSON
### BEARMAN, CALDWELL & BERKOWITZ, PC

II RIVERMARK CENTRE
450 LAUREL STREET
21ST FLOOR
BATON ROUGE, LOUISIANA 70801
PHONE: 225.381.7000
FAX:   225.343.3612

LAYNA RUSH, SHAREHOLDER
**Direct Dial**: 225.381.7043
**Direct Fax**: 225.382.0243
**E-Mail Address**: lrush@bakerdonelson.com

www.bakerdonelson.com

May 30, 2025

**VIA U.S. MAIL AND FAX** – *817-321-8113*

Ms. Chelsea Wallace
Deputy Inspector General, Surveillance Utilization Review
Office of Inspector General
Texas Health and Human Services
P.O. Box 85200
Austin, Texas 78708

      Re:    Notice of Request for Medical Records to Lake Granbury Medical Center

Dear Ms. Wallace

Please be advised that the undersigned and the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represent Lake Granbury Medical Center in regard to the request received for certain patient records from the Texas Health and Human Services, Office of the Inspector General dated May 8, 2025.

Lake Granbury Medical Center is a covered entity subject to the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations (collectively "HIPAA"). Pursuant to HIPAA, specifically, 45 C.F.R. § 164.509:

> A covered entity or business associate may not use or disclose protected health information potentially related to reproductive health care for purposes specified in § 164.512(d), (e),(f), or (g)(1), without obtaining an attestation that is valid under paragraph(b)(1) of this section from the person requesting the use or disclosure and complying with all applicable conditions of this part.

Section 164.512(d) specifies the purpose of health oversight activities. As such, Lake Granbury Medical Center cannot disclose protected health information related to reproductive health care for purposes of health oversight activities without obtaining a valid attestation, as provided for in the regulations. Moreover, HIPAA provides that state laws that are contrary to HIPAA are preempted by the federal requirements unless a specific exemption applies. 45 C.F.R. § 160.203. Unfortunately, HIPAA does not include an exemption for a disclosure made for health oversight activities pursuant to a state statute or a contractual relationship.

Appx. 012

May 30, 2025
Page 2

A review of the requested records determined that the records include protected health information related to reproductive health care as defined in 45 C.F.R. § 160.103. Thus, Lake Granbury Medical Center is constrained by federal law and cannot provide the requested records without either a valid attestation as provided for in 45 C.F.R. § 164.509 or a valid authorization from the patient as provided for in 45 C.F.R. §164.508. (The Office for Civil Rights has stated that a regulated entity can make a disclosure pursuant to the patient's authorization without the attestation.  89 FR 32976, 33008 (Apr. 26, 2024).)

Lake Granbury Medical Center values its relationship with the Texas Department of Health and Human Services and is prepared to provide the requested records upon receipt of the attestation or authorizations that are required by HIPAA.  We hope you will appreciate that Lake Granbury Medical Center has a legal duty to comply with federal law.

Should you have any questions regarding the foregoing, please contact the undersigned.

Sincerely,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

By:      _Layna C. Rush_

Layna C. Rush

# EXHIBIT 4

Appx. 014

10/17/2024 10:45 Electronically Served
Filed: 10/18/2024 10:54 AM
District Clerk
Collin County, Texas
By Jessica Peltier Deputy
Envelope ID: 93309242

CAUSE NO. 493-07676-2024 _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST
### FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.     The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.     Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.     The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.      Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.     Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON,  complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

Electronically Served
10/18/2024 10:54 AM

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6.    Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7.    Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8.    Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I.    PARTIES

9.    Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

Appx. 016

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano.

Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II.    DISCOVERY CONTROL PLAN

10.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III.    JURISDICTION AND VENUE

12.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV.    PUBLIC INTEREST

14.    Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15.    Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

Appx. 017

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V. TRADE AND COMMERCE

16.    At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI. NO NOTICE BEFORE SUIT

17.    The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18.    The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII. APPLICABLE LAW

19.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20.    Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

Appx. 018

## VIII.    FACTUAL BACKGROUND

A.    *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.    On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.    Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.    The effective date for SB14 was September 1, 2023.

24.    Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.    Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

Appx. 019

26.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27.     Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.     *The Texas Supreme Court Held That SB 14 is Constitutional.*

28.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id*.

30.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id*.

31.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id*.

32.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id*. at 239.

Appx. 020

C.    *Lau is a Radical Gender Activist.*

33.    Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.    Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.    Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

    i.    Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

    ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

    iii.    Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

    iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

    v.    Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.    Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

Appx. 021

37.    On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C, gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 wherein they asserted:

    i.    That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

    ii.    That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

    iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

    iv.    That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

    v.    That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

    vi.    That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

    vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

    viii.    That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

Appx. 022

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix.    "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38.    Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39.    Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40.    Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41.    Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

Appx. 023

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*,

UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.     Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.     VIOLATIONS OF SB 14.

43.     Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.     *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.     High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.     High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.     As a result of the hormones, the child will develop secondary sex characteristics.

47.     Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.     Testosterone is a Schedule III controlled substance.

49.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

10

Appx. 024

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50.    WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B.    Lau's Testosterone Prescribing

51.    WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52.    WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53.    WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54.    A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

11

Appx. 025

secondary sex characteristics. **This medicine is not for use in female patients**.”
TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added),
https://tinyurl.com/558b8fcv.

55.    The Federal and Drug Administration warns that testosterone cypionate “**is
contraindicated in pregnant women and not indicated for use in females**.” TESTOSTERONE
CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.    Lau has violated the law by providing, prescribing, administering, or dispensing
testosterone to minor patients for the purposes of transitioning their biological sex or affirming
their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.    Patient One resides in Collin County, TX.

58.    Patient One was 17 years old during the relevant time.

59.    Lau identifies Patient One as a biological female.

60.    On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a
prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.    The prescriptions purpose is for transitioning her biological sex or affirming her
belief that her gender identity is inconsistent with her biological sex.

62.    On October 12, 2023, Patient One filled the prescription at a pharmacy located in
Collin County, TX.

63.    Later, Patient One turned 18 years old and, thereafter, Lau continued to provide,
prescribe, administer, or dispense testosterone**.**

---

[1]    Pseudonyms are used throughout to protect the identity of the victim minor patients.

Appx. 026

64.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.     Patient Two resides in Collin County, TX.

66.     Patient Two was 17 years old during the relevant time.

67.     Lau identifies Patient Two as a biological female.

68.     On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.     The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.     Patient Three resides in Denton County, TX.

72.     Patient Three was 17 years old during the relevant time.

73.     Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.     On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 027

76.    On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77.    On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79.    On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80.    Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82.    Patient Four resides in Dallas County, TX.

83.    Patient Four was 16 during the relevant time.

84.    Lau identifies Patient Four as a biological female.

85.    On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86.    The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87.    On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

Appx. 028

88.     On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89.     On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90.     On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91.     On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92.     Patient Five resides in Collin County, TX.

93.     Patient Five was 16 years old at the relevant time.

94.     Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95.     On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97.     On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98.     On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

Appx. 029

99.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100.    The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101.    On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102.    On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103.    On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104.    On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105.    On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108.    On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109.    On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

Appx. 030

**Patient Six**

110.   Patient Six resides in Collin County, TX.

111.   Patient Six was 17 years old at the relevant time.

112.   Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113.   On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114.   The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115.   On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116.   On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117.   Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118.   The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119.   Patient Seven resided in Wise County, TX.

120.   Patient Seven was 17 at the relevant time.

121.   Lau identifies Patient Seven as a biological female.

Appx. 031

122.    On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125.    Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127.    Patient Eight resides in Dallas County, TX.

128.    Patient Eight was 16 years old at the relevant time.

129.    Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130.    On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132.    On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

Appx. 032

**Patient Nine**

133.    Patient Nine resides in Dallas County, TX.

134.    Patient Nine was 14 years old at the relevant time.

135.    Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136.    On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138.    On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139.    Patient Ten resides in Tarrant County, TX.

140.    Patient Ten was 14 years old at the relevant time.

141.    Lau identifies Patient Ten as a biological female.

142.    On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

Appx. 033

145.    On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146.    On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147.    On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148.    On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149.    Patient Eleven resides in Kaufman County, TX.

150.    Patient Eleven was 14 years old at the relevant time.

151.    Lau identifies Patient Eleven as a biological female.

152.    On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155.    On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

Appx. 034

156.    On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.    On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

## Patient Twelve

158.    Patient Twelve resides in Rockwall County, TX.

159.    Patient Twelve was 14 years old at the relevant time.

160.    Lau identifies Patient Twelve as a biological female.

161.    On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

## Patient Thirteen

164.    Patient Thirteen resides in Dallas County, TX.

165.    Patient Thirteen was 15 years old at the relevant date.

166.    Lau identifies Patient Thirteen as a biological female.

167.    On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

Appx. 035

168.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170.    Patient Fourteen resides in Denton County, TX.

171.    Patient Fourteen was 15 years old at the relevant time.

172.    Lau identifies Patient Fourteen as a biological female.

173.    On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174.    The purpose  is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175.    On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176.    Patient Fifteen resides in Dallas County, TX.

177.    Patient Fifteen was 15 years old at the relevant time.

178.    Lau identifies Patient Fifteen as a biological female.

179.    On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 036

181.    On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182.    Patient Sixteen resides in Tarrant County, TX.

183.    Patient Sixteen was 15 years old at the relevant time.

184.    Lau identifies Patient Sixteen as a biological female.

185.    On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187.    On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188.    Patient Seventeen resides in Potter County, TX.

189.    Patient Seventeen was sixteen years old at the relevant time.

190.    Lau identifies Patient Seventeen as a biological female.

191.    On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193.    On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

Appx. 037

Electronically Served
10/18/2024 10:54 AM

**Patient Eighteen**

194.    Patient Eighteen resides in Collin County, TX.

195.    Patient Eighteen was 16 years old at the relevant time.

196.    Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.    On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.    On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.    Patient Nineteen resides in Collin County, TX.

201.    Patient Nineteen was 16 years old at the relevant time.

202.    Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.    On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 038

205.    On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206.    Patient Twenty resides in Dallas County, TX.

207.    Patient Twenty was 17 years old at the relevant time.

208.    Lau identifies Patient Twenty as a biological female.

209.    On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211.    On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212.    Patient Twenty-one resides in Dallas County, TX.

213.    Patient Twenty-one was 17 years old at the relevant time.

214.    Lau identifies Patient Twenty-one as a biological female.

215.    On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 039

217.    On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218.    Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

\* \* \*

219.    Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220.    Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221.    Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

Appx. 040

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222.    Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

223.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224.    Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226.    As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227.    Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

Appx. 041

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228.    Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229.    As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230.    Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231.    As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 042

A.    *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 043

239.    Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240.    The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241.    Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242.    Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243.    "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 044

244.    The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245.    The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246.    The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247.    Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248.    An endocrine disorder results from the improper function of the endocrine system.

249.    Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250.    Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

Appx. 045

their belief that their gender identity is inconsistent with their biological sex in violation of Tex.

Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.    Texas incorporates and adopts by reference the allegations contained in each and

every preceding paragraph of this Petition.

252.    Texas has reason to believe that Lau is engaging in, has engaged in, or is about to

engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3)

and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the

public interest.

253.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to

Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.    Cessation of unlawful conduct by Lau shall not render such court action moot under

any circumstances. *Id.*

255.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code §

65.011 *et seq*. and Tex. R. Civ. P. 680 *et seq*., to preserve the status quo pending a full trial on the

merits, *see Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney

General's Office request a temporary injunction against Lau that enjoins her from the following

until final resolution of this matter:

      i.   Prescribing supraphysiologic doses of testosterone and estrogen to minors
           for the purpose of transitioning their biological sex; and

      ii.  Deceptively misleading pharmacies, insurance providers, and/or the
           patients as to the correct medical diagnosis by writing prescriptions and
           billing for treatments to transition a child's biological sex under false

Appx. 046

Electronically Served
10/18/2024 10:54 AM

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

257.    NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

i.    Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

i.    Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

ii.    Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

iii.    Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

iv.    Grant all other and further relief Texas may show itself entitled to.

Appx. 047

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

34

Electronically Served
10/18/2024 10:54 AM

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.


/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

Appx. 049

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Emily Samuels on behalf of David Shatto
Bar No. 24104114
emily.samuels@oag.texas.gov
Envelope ID: 93309242
Filing Code Description: Plaintiff's Original Petition (OCA)
Filing Description: Plaintiff's Verified Original Petition and Request for an Application for Temporary and Permanent Injunctions
Status as of 10/18/2024 10:26 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Matthew T.Kennedy | | matt.kennedy@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Zoann Willis | | zoann.willis@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 10/18/2024 9:47:53 AM | SENT |

# EXHIBIT 5

Filed: 2/14/2025 2:28 PM
Michael Gould
District Clerk
Collin County, Texas
By Selene Hernandez Deputy
Envelope ID: 97406810

## CAUSE NO. 493-07676-2024

| | | |
|---|---|---|
| STATE, | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 493RD JUDICIAL DISTRICT |
| | § | |
| MARY C. LAU, M.D., | § | |
| | § | |
| DEFENDANT. | § | COLLIN COUNTY, TEXAS |

## NON-PARTY CHILDREN'S HEALTH'S
## OBJECTIONS TO SUBPOENAS FOR PRODUCTION OF DOCUMENTS,
## AND MOTION FOR PROTECTIVE ORDER

**TO THE HONORABLE JUDGE OF SAID COURT:**

Non-Party Movant Children's Health objects to the Plaintiff's Subpoena for Production of Documents (the "Subpoena"), pursuant to rule 176.6(d) of the Texas Rules of Civil Procedure, and, to the extent this Court determines it has subject-matter jurisdiction, moves to quash the subpoena, moves this Court to grant it a protective order, pursuant to rule 176.6(e) of the Texas Rules of Civil Procedure, that the discovery should not be permitted. In support of its Objections and Motion, Movant respectfully alleges as follows:

### I.     BACKGROUND

On October 17, 2024, Plaintiff filed its Verified Original Petition and Request for Temporary Injunction and Permanent Injunctions against Mary Lau, MD, ("Dr. Lau"), (the "Lau Petition"). In this action, Plaintiff alleges that Drs. Lau violated TEX. HEALTH & SAFETY CODE § 161.702 and TX. BUS. & COM. CODE § 17.46(a)-(b) and seeks injunctive relief in connection with Dr. Lau's practice of medicine, including care and treatment of minor patients, as well as civil penalties and attorneys' fees. (Lau Pet. at p. 33).

On December 6, 2024, Dr. Lau filed a Motion to Transfer Venue. Seeking to transfer the case to Dallas or Travis Counties based on the mandatory venue provision in TEX. HEALTH & SAFETY CODE § 161.706(b). They contend that the subject health care and treatment occurred in Dallas County and that as such, proper venue can only be Travis or Dallas County.    Per the Court's docket, a hearing on Dr. Lau's venue motion is scheduled for February 26, 2025.

On January 24, 2025 and January 27, 2025, Plaintiff served Movant with two distinct Subpoenas Duces Tecum seeking the production of documents.  One subpoena (the "Medical Records" subpoena – Exhibit A) seeks production of "documents related to the care and treatment of" 21 different minor patients.    The second subpoena (the "Credentialing and Communications" subpoena – Exhibit B) seeks various documents, including credentialing and licensing information for Dr. Lau, as well as communications "to, from, or including" multiple different providers and relating to a multiple topics including "SB14, gender dysphora, transgender or transitioning the biological sex of minors as determined by their sex organs, chromosomes and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex."   These requests for communications covered a time period from April 1, 2023 through the present.

Initially, Plaintiff unilaterally indicated that he due date for each subpoena was "within seven days of receipt of this subpoena."  See Ex A and B. Through communications between Plaintiff and outside counsel for Movant, the deadlines were extended to February 14, 2025 and February 17, 2025, respectively, for the Medical Records subpoena and the Credentialing and Communications subpoena.   Plaintiff is taking the position that this extension applied to responses only and did not extent the time frame during which Movant could object or move for protection.  Movant disputes this position and, based on the objections and arguments set out

below, moves to quash both subpoenas and requests that a Motion for Protective Order be executed as to same.

Alternatively, Movant requests that the Court abate or extend the deadline applicable to objections and responding to each subpoena to ensure that (1) this Court has appropriate jurisdiction and/or Movant is authorized to respond in light of the pending Motion to Transfer Venue and a Motion for Protection filed on behalf of multiple patients currently pending in Dallas County[1]; (2) appropriate notice is provided to the affected parties; (2) the production of protected health information and handled consistent with the requirements of the Health Insurance Portability and Accountability Act ("HIPAA") and Texas law; (3) the parties follow the appropriate steps related to e-discovery as mandated by the Texas Rules of Civil Procedure; and (4) reasonable time is given to respond to the voluminous requests as required by the Texas Rules of Civil Procedure.

## II.    OBJECTIONS TO SUBPOENAS

As authorized by rule 176.6(d) of the Texas Rules of Civil Procedure, Movant asserts the following objections to Plaintiff's subpoenas.

### A.    The Medical Records Subpoena

Movant objects to the Medical Records subpoena, as a whole, on the basis that it lacks appropriate authorization or court order pursuant to HIPAA to allow for access to and/or the production of the protected health information being sought.

---

[1] On February 3, 2025, 8 of the 21 patients filed a Petition for Motion for Protection from Discovery Subpoenas (Cause No. DC-25-01823, pending in the 95th Judicial District Court of Dallas County, TX). The Medical Records Subpoena served on Movant is one of the "discovery subpoenas" at issue in this Petition (or the "Dallas County matter"). No hearings have been set in this matter.

Appx. 054

Movant also objects to this subpoena on the basis that appropriate notice was not provided as required by Rule 205.3 of the Texas Rules of Civil Procedure and threshold requirements of 45 CFR 164.509 were not met.

Rule 205.2 states:

A party seeking discovery by subpoena from a nonparty must serve, on the nonparty and all parties, a copy of the form of notice required under the rules governing the applicable form of discovery. A notice of oral or written deposition must be served before or at the same time that a subpoena compelling attendance or production under the notice is served. A notice to produce documents or tangible things under Rule 205.3 must be served at least 10 days before the subpoena compelling production is served.

Federal regulation 45 CFR 164.509, which states in relevant part:

A covered entity or business associate may not use or disclose protected health information potentially related to reproductive health care for purposes specified in § 164.512(d), (e), (f), or (g)(1), without obtaining an attestation that is valid under paragraph (b)(1) of this section from the person requesting the use or disclosure and complying with all applicable conditions of this part.

Plaintiff failed to comply with Texas state law and Federal regulations governing this exact type of discovery and as such, the subpoenas are invalid.

Movant also objects to the subpoenas on the basis that Plaintiff's unilaterally-chosen deadline for responding is not reasonable pursuant to the Texas Rules of Civil Procedure.

Moreover, Movant objects to the subpoenas to the extent that it is not permitted to respond and/or the Court lacks jurisdiction based on the pending question of jurisdiction and venue.

Further, Movant objects to the extent a response is premature or not permitted in light of the pending Motion for Protection applicable to the Medical Records subpoena that has been filed by various patients in Dallas County.

### B.    The Credentialing and Communications Subpoena

Movant objects to Plaintiff's Credentialing and Communications subpoena on the basis that deadline for responding is unreasonable pursuant to the Texas Rules of Civil Procedure.

More specifically, Movant objects to Requests 1-4 of the Credentialing and Communications subpoena on the basis that these requests, on their face, seek the production of documents that are protected by the peer review and/or medical committee privileges. TEX. OCC. CODE ANN. §§ 160.007, 303.006, and the TEX. HEALTH & SAFETY CODE ANN. §161.032(a); *see also In re Living Ctrs. of Tex., Inc.,* 175 S.W.3d 253 (Tex. 2005); *In re Intracare Hosp*., 2007 Tex. App. LEXIS 7488 (Tex. App. -- Houston (14th Dist.) 2007); *In re Rio Grande Regional Hospital*, 2011 WL 1844453 (Tex.App.—Corpus Christi 2011); *Memorial Hospital-the Woodlands v. McCown*, 927 S.W.2d 1 (Tex. 1996).

Movant also objects to Requests 9-14 of the Credentialing and Communications subpoena on the basis that Requests are overly broad, vague, and unduly burdensome.  With respect to breadth, these Requests seek access to and production of protected health information of minor children, some of whom have challenged the validity of the subpoenas and are seeking a Protective Order.  Accordingly, with respect to these Requests, Movant incorporates each of the Medical Records Subpoena objections set forth above, to the extent applicable.

With respect to burden and breadth, Plaintiff's Requests 9-14 are not reasonably limited in time and scope.  Further, these requests, which call for the production of electronically stored information ("ESI"), are unduly burdensome in terms of the time, manpower, and expense that will be necessary to identify, process, and produce potentially responsive documents.  These Requests do not satisfy the requirements for proportionality, particularly given that Movant is a non-party to the State's actions against Drs, Lau and Cooper. *In re Weekley Homes,* 295 S.W.3d 309;  *In re State Farm Lloyds,* 520 S.W.3d 595 (Tex. 2017); TEX. R. CIV. P. 192.4 and 196.4.

Based on the overbreadth and burden, an ESI protocol for the identification, collection, review, and production is appropriate and contemplated under the Texas Rules of Civil Procedure and related case law. *See id.*

### III.    <u>MOTION FOR PROTECTIVE ORDER</u>

A court has the authority to limit the scope or distribution of discovery based on the needs and circumstances of the case. See TEX. R. CIV. P.. 192.6. Further, Courts have the right to exercise discretion in granting a protective order and controlling the nature and form of discovery. *Masinga v. Whittington,* 790 S.W.3d 940 (Tex. 1990).

Upon motion by a person from whom discovery is sought, or any person affected by the discovery requests, a court may enter an order to protect the movant from the discovery sought. TEX. R. CIV. P. 192.6(a). A court has broad discretion to protect a person from discovery with a protective order. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990). A protective order is available, in the interest of justice, to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." TEX. R. CIV. P. 192.6(b). In its order, the court can, among other things, prohibit the discovery sought and make any other order in the interest of justice. *Id.*

As authorized by rules 176.6(e) and 192.6(a) of the Texas Rules of Civil Procedure, and for the reasons asserted above, Movants request that the Court enter a protective order against production of the documents sought by each of the two subpoenas served by Plaintiff. Alternatively, requests that the Court enter an order abating or extending the deadline to respond until the venue and Dallas County issues are resolved and to allow the parties time to work on an appropriate ESI protocol.

Movant would show that this Motion is not brought for the purposes of delay, but rather is being done in protection of the patient's whose protected health information is being sought, to ensure that all parties are in compliance with state and federal law and in the interest of judicial and financial economy.

**THEREFORE**, non-party Children's Health respectfully prays this Court sustain its objections to the Subpoena, grant its motions to quash and for protective order denying the requested production of documents, and grant it all such other and further relief as this Court deems just.

Respectfully submitted,

**COOPER & SCULLY, P.C.**

By:   _/s/ Cory M. Sutker_
**CORY M. SUTKER**
Texas Bar No. 24037569
cory.sutker@cooperscully.com
**JACKIE S. COOPER**
Texas Bar No. 24050861
jackie.cooper@cooperscully.com

900 Jackson Street, Suite 900
Dallas, TX 75202
Phone: 214-712-9500
Facsimile: 214-712-9540

**ATTORNEYS FOR NON-PARTY MOVANT
CHILDREN'SS HEALTH**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of February 2025, a true and correct copy of the foregoing document was served on counsel of record *via* the Court's ECF filing service.

_/s/ Cory M. Sutker_
**CORY M. SUTKER**

Filed: 2/5/2025 1:34 PM
Mitchell Goudeau
District Clerk
Collin County, Texas
By Selene Hernandez Deputy
Envelope ID: 97015121

**EXHIBIT A**

**CAUSE NO. 493-07676-2024**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 23, 2025, 3:07 pm**,

**SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205,**

and was executed at **1999 Bryan Street Suite 900, Dallas, TX 75201** within the county of **Dallas** at **08:38 AM** on **Mon, Jan 27 2025**, by delivering a true copy to the within named

**CHILDREN'S HEALTH SYSTEM OF TEXAS C/O CT CORPORATION SYSTEM**
accepted by Intake Specialist: Zachary Rouse
$1 Witness Fee Attached

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
**Certification Number: PSC-1689**
**Certification Expiration: 8/31/2026**

**BEFORE ME,** a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON _____1/27/2025_____

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

## THE STATE OF TEXAS

### SUBPOENA DUCES TECUM
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

CAUSE NO.  493-07676-2024       IN THE 493rd JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

### Office of the Attorney General
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 16, 2025,** at the request the request of the State of Texas.

Appx. 060

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to the care and treatment of ███████████ (DOB: ███████
   ███), including medical and billing records, psychotherapy notes, and correspondence from
   January 1, 2021, through the present.

2. Produce documents relating to the care and treatment of █████████ (DOB: ███████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

3. Produce documents relating to the care and treatment of █████████ (DOB: ███████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

4. Produce documents relating to the care and treatment of ███████████ (DOB: ███████
   ███), including medical and billing records, psychotherapy notes, and correspondence from
   January 1, 2021, through the present.

5. Produce documents relating to the care and treatment of ███████████ (DOB: ████████
   ███), including medical and billing records, psychotherapy notes, and correspondence from
   January 1, 2021, through the present.

6. Produce documents relating to the care and treatment of █████████ (DOB: █████████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

7. Produce documents relating to the care and treatment of ███████████ (DOB: ████████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

8. Produce documents relating to the care and treatment of █████████ (DOB: ████████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

9. Produce documents relating to the care and treatment of ██████████ (DOB: █████████████),
   including medical and billing records, psychotherapy notes, and correspondence from January
   1, 2021, through the present.

10. Produce documents relating to the care and treatment of █████████ (DOB: █████████████),
    including medical and billing records, psychotherapy notes, and correspondence from January
    1, 2021, through the present.

11. Produce documents relating to the care and treatment of ██████████ (DOB: █████████████),
    including medical and billing records, psychotherapy notes, and correspondence from January
    1, 2021, through the present.

12. Produce documents relating to the care and treatment of ███████████ (DOB: ████████ ███), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

13. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

14. Produce documents relating to the care and treatment of ████████████ (DOB: ██████ ███ including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

15. Produce documents relating to the care and treatment of █████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

16. Produce documents relating to the care and treatment of ████████████ (DOB: ██████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

17. Produce documents relating to the care and treatment of █████████ (DOB: █████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

18. Produce documents relating to the care and treatment of █████████ (DOB: █████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

19. Produce documents relating to the care and treatment of ████████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

20. Produce documents relating to the care and treatment of █████████████ (DOB: ████████████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

21. Produce documents relating to the care and treatment of ████████████ (DOB: ██████████ ████), including medical and billing records, psychotherapy notes, and correspondence from January 1, 2021, through the present.

## WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at ____ o'clock, ___ .M. and executed the _____ day of _____, 2025, at ____ o'clock, ___ .M. by delivering to the within named _____ in person at _____ in _____ County, TX, a true copy of this Subpoena, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, TX.

Sheriff/Constable:_____, _____ County, TX.

**OR**

By:
      Person who is not a party to the suit and is not less than 18 years of age.

**ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.**

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt.  Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____          _____
SIGNATURE                                 DATE

Filed: 1/13/2025 10:18 AM
Mike Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

**Cause No. 493-07676-2024**

| | | |
|---|---|---|
| The State of Texas, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Collin County, Texas |
| | § | |
| May C. Lau, M.D., | § | |
| *Defendant.* | § | 493rd Judicial District |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

## I. Definitions:

(A)   As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)   The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)   The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

## II.    <u>General Provisions</u>:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 066

(B)     **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)     **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

**III.     Provisions Governing Use and Disclosure of Classified Information:**

Appx. 067

(A)    The parties may not use or disclose classified information for any purpose other

than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions

of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this

Order the material to be disclosed may only be used for purposes of preparing and presenting

evidence in this litigation and must be kept confidential. No classified information may be disclosed

to any person identified in this Order unless such person first is given a copy of this Order and

advised that the information contained in the document is classified information and informed that

an unauthorized disclosure of the information in the document may constitute contempt of this

Court. Each person to whom classified information is disclosed shall execute an acknowledgement

in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to

receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

- 5 -

Appx. 069

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

## IV.    **Challenging Classified Information Designations:**

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

## V.    **Destruction of Classified Information at Completion of Litigation:**

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

Appx. 070

(B)     All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)     This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.     Miscellaneous Provisions:

(A)     **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)     **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

Appx. 072

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

 (G) **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

 (H) Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 073

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

## VII.    No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.    No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE
1|13|25

Appx. 075

# EXHIBIT A

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

- 13 -

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Matthew T.Kennedy | | matt.kennedy@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Drew Padley | | dpadley@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Admin Leboeuflaw | | admin@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Tina White | | tiwhite@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Case Contacts

| Melinda Pate | | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
|---|---|---|---|---|
| Steptoe Docketing | | docketing@steptoe.com | 1/13/2025 10:18:45 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Emily Samuels on behalf of Rob Farquharson
Bar No. 24100550
emily.samuels@oag.texas.gov
Envelope ID: 97015121
Filing Code Description: Subpoena Return - Not DC Issued
Filing Description: Affidavit of Service- Children's Health System of Texas
Status as of 2/6/2025 8:56 AM CST

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 2/5/2025 1:34:50 PM | SENT |
| W. Henry Legg | | wlegg@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Drew Padley | | dpadley@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Evelyn M.Hudson | | ehudson@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 2/5/2025 1:34:50 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Deb Hardy | | dhardy@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Emily Samuels on behalf of Rob Farquharson
Bar No. 24100550
emily.samuels@oag.texas.gov
Envelope ID: 97015121
Filing Code Description: Subpoena Return - Not DC Issued
Filing Description: Affidavit of Service- Children's Health System of Texas
Status as of 2/6/2025 8:56 AM CST

Case Contacts

| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
|---|---|---|---|---|
| Admin Leboeuflaw | | admin@leboeuflaw.com | 2/5/2025 1:34:50 PM | SENT |
| Tina White | | tiwhite@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Steptoe Docketing | | docketing@steptoe.com | 2/5/2025 1:34:50 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 2/5/2025 1:34:50 PM | SENT |

Filed: 1/24/2025 5:05 PM
Mitchell Gober
District Clerk
Collin County, Texas
By Emily Hamilton Deputy
Envelope ID: 96592424

**EXHIBIT B**

**CAUSE NO. 493-07676-2024**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jan 23, 2025, 2:37 pm**,

SUBPOENA DUCES TECUM PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205, SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED,

and was executed at **1999 BRYAN STREET SUITE 900, DALLAS, TX 75201** within the county of **DALLAS** at **08:30 AM** on **Fri, Jan 24 2025**, by delivering a true copy to the within named

CHILDREN'S HEALTH SYSTEM OF TEXAS, BY SERVING REGISTERED AGENT, CT CORPORATION SYSTEM
accepted by Intake Specialist Zachary Rouse
$1.00 Witness Fee Attached

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

BEFORE ME, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON    1/24/2025

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**THE STATE OF TEXAS**

**SUBPOENA DUCES TECUM**
**PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205**

CAUSE NO.  493-07676-2024          IN THE 493rd JUDICIAL DISTRICT COURT OF
                                   COLLIN COUNTY, TEXAS

*State of Texas vs. Defendant May C. Lau, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN RULE 176 T.R.C.P.**

**YOU ARE HEREBY COMMANDED TO SUMMON** Children's Health System of Texas c/o CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street
Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN SEVEN DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street, 9th Floor, Austin, TX 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on January 10, 2025,** at the request the request of the State of Texas.

*/s/ Johnathan Stone*

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
Deputy Chief, Consumer Protection Division
State Bar No. 15092619

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR TEXAS**

## SUBPOENA DUCES TECUM—DOCUMENTS REQUESTED

1. Produce documents relating to reports of misconduct involving May C. Lau, M.D., from July 1, 2021, through the present.

2. Produce documents relating to investigations involving May C. Lau, M.D., from July 1, 2021, through the present.

3. Produce documents relating to any disciplinary or administrative action taken against May C. Lau, M.D., from July 1, 2021, through the present.

4. Produce credentialing and licensing information for May C. Lau, M.D., from July 1, 2021, through the present.

5. Produce communications to, from, and between Children's Health System of Texas and May C. Lau, M.D., regarding Subchapter X, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" of the Health and Safety Code ("SB 14"), including but not limited to its implementation and compliance with its requirements, from April 1, 2023, through the present.

6. Produce communications relating to May C. Lau, M.D.'s compliance with SB14 from April 1, 2023, through the present.

7. Produce Children's Health System of Texas policies and procedures relating to compliance with SB 14 and its requirements.

8. Produce exemplars or communications by Children's Health System of Texas to patients and staff relating to compliance with SB 14 and its requirements.

9. Produce communications to, from, and between M. Brett Cooper, M.D., and May C. Lau, M.D., relating to SB14, gender dysphoria, transgender, or transitioning the biological sex of minors as determined by their sex organs, chromosomes, and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex from April 1, 2023, through the present.

10. Produce communications to, from, or including May C. Lau, M.D., relating to SB14, gender dysphoria, transgender, or transitioning the biological sex of minors as determined by their sex organs, chromosomes, and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex from April 1, 2023, through the present.

11. Produce communications to, from, or including Perrin White, M.D., that reference May C. Lau, M.D. and involve SB14, gender dysphoria, transgender, or transitioning the biological sex of minors as determined by their sex organs, chromosomes, and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex from April 1, 2023, through the present.

Electronically Served
1/10/2025 5:16 PM

12.  Produce communications to, from, or including Richard Adams, M.D., that reference May C. Lau, M.D. and involve SB14, gender dysphoria, transgender, or transitioning the biological sex of minors as determined by their sex organs, chromosomes, and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex from April 1, 2023, through the present.

13.  Produce communications to, from, or including Jason Jarin, M.D. that reference May C. Lau, M.D. and involve SB14, gender dysphoria, transgender, or transitioning the biological sex of minors as determined by their sex organs, chromosomes, and endogenous profile or to affirm their perception of their sex, if inconsistent with their biological sex from April 1, 2023, through the present.

## WITNESS SUBPOENA RETURN

Came to hand the _____ day of _____, 2025, at ____ o'clock, ___ .M. and executed the _____ day of _____, 2025, at ____ o'clock, ___ .M. by delivering to the within named _____ in person at _____ in _____ County, TX, a true copy of this Subpoena, and tendering said witness the sum of $ _____.

By Deputy: _____, _____ County, TX.
Sheriff/Constable:_____, _____ County, TX.

### OR

By:
       Person who is not a party to the suit and is not less than 18 years of age.

## ACCEPTANCE OF SERVICE OF SUBPOENA BY WITNESS PER RULE 176 T.R.C.P.

I, the undersigned witness named in the Subpoena acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

_____    _____
SIGNATURE                                      DATE

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Johnathan Stone
Bar No. 24071779
pauline.sisson@oag.texas.gov
Envelope ID: 96592424
Filing Code Description: Subpoena Return - Not DC Issued
Filing Description: Subpoena Duces Tecum Pursuant To Texas Rules of Civil Procedure 176 and 205, Subpoena Duces Tecum- Documents Requested
Status as of 1/28/2025 9:04 AM CST

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 1/24/2025 5:05:26 PM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 1/24/2025 5:05:26 PM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 1/24/2025 5:05:26 PM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 1/24/2025 5:05:26 PM | SENT |
| Drew Padley | | dpadley@steptoe.com | 1/24/2025 5:05:26 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Admin Leboeuflaw | | admin@leboeuflaw.com | 1/24/2025 5:05:26 PM | SENT |
| Tina White | | tiwhite@steptoe.com | 1/24/2025 5:05:26 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Pauline Sisson on behalf of Johnathan Stone
Bar No. 24071779
pauline.sisson@oag.texas.gov
Envelope ID: 96592424
Filing Code Description: Subpoena Return - Not DC Issued
Filing Description: Subpoena Duces Tecum Pursuant To Texas Rules of Civil Procedure 176 and 205, Subpoena Duces Tecum- Documents Requested
Status as of 1/28/2025 9:04 AM CST

Case Contacts

| Tina White | | tiwhite@steptoe.com | 1/24/2025 5:05:26 PM | SENT |
|---|---|---|---|---|
| Steptoe Docketing | | docketing@steptoe.com | 1/24/2025 5:05:26 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 1/24/2025 5:05:26 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tiffany Riley on behalf of Jackie Cooper
Bar No. 24050861
tiffany.riley@cooperscully.com
Envelope ID: 97406810
Filing Code Description: Objection
Filing Description: Non-Party Children's Health's Objections to Subpoena and Motion for Protective Order
Status as of 2/17/2025 10:14 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Christopher Molak | | christopher.molak@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 2/14/2025 2:28:38 PM | SENT |
| W. Henry Legg | | wlegg@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 2/14/2025 2:28:38 PM | SENT |
| Drew Padley | | dpadley@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Evelyn M.Hudson | | ehudson@steptoe.com | 2/14/2025 2:28:38 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Deb Hardy | | dhardy@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Tiffany Riley on behalf of Jackie Cooper
Bar No. 24050861
tiffany.riley@cooperscully.com
Envelope ID: 97406810
Filing Code Description: Objection
Filing Description: Non-Party Children's Health's Objections to Subpoena
and Motion for Protective Order
Status as of 2/17/2025 10:14 AM CST

Case Contacts

| Pauline Sisson | | pauline.sisson@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
|---|---|---|---|---|
| Emily Samuels | | emily.samuels@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 2/14/2025 2:28:38 PM | SENT |
| Admin Leboeuflaw | | admin@leboeuflaw.com | 2/14/2025 2:28:38 PM | SENT |
| Tina White | | tiwhite@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Steptoe Docketing | | docketing@steptoe.com | 2/14/2025 2:28:38 PM | SENT |
| Cory Sutker | | Cory.Sutker@cooperscully.com | 2/14/2025 2:28:38 PM | SENT |
| Jackie Cooper | | Jackie.Cooper@cooperscully.com | 2/14/2025 2:28:38 PM | SENT |

# EXHIBIT 6

FILED
5/21/2025 9:28 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

CAUSE NO. _DC-25-08179_____

| | | |
|---|---|---|
| *In the matter of* | § | IN THE DISTRICT COURT |
| | § | |
| ESI Mail Pharmacy Service, Inc. | § | |
| | § | |
| Movant, | § | |
| | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | |
| | § | __162nd___ JUDICIAL DISTRICT |
| | § | |

## ESI MAIL PHARMACY SERVICE, INC.'S
## RULE 176.6(e) MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

ESI Mail Pharmacy Service, Inc. ("ESI Pharmacy") timely seeks protection from compliance with the attached non-party subpoena ("Subpoena") served by the State of Texas in *State of Texas v. Mary C. Lau, M.D.,* Cause No. 493-07676-2024, 493rd Judicial District, Collin County, Texas ("*State v. Lau*").[1] In compliance with Tex. R. Civ. P. 176.6(e), this motion for protection under Rule 192.6(b) is filed in the district court in the county where the Subpoena was served. This motion is not brought for the purposes of delay but is filed to protect movant from the improper Subpoena, from non-party discovery that is, in part, not relevant to any claim or defense in the *State v. Lau* action, and to protect it from a Subpoena that puts movant at risk of noncompliance with federal law. Relevant to this motion are:

Exhibit A    State's Notice of Subpoena Duces Tecum (with attachments)

Exhibit B    Subpoena (with attachments)

Exhibit C    Proof of Service on "Express Scripts"[2]

---

[1] By filing this motion, movant does not waive any right to specially appear or its arguments herein about lack of enforceability of the Subpoena. *See Hotel Partners v. Craig,* 993 S.W.2d 123 (Tex. App.–Dallas 1994, pet. denied) (holding that filing of a motion for a protective order does not waive special appearance).

[2] The Subpoena incorrectly names "Express Scripts." The accurate entity name is ESI Mail Pharmacy Service, Inc.

Appx. 093

I.    THE SUBPOENA AND SUMMARY OF THE ARGUMENT

The attached Subpoena relates to the State's lawsuit against a physician for alleged violations of the state's law restricting gender affirming care for minors. The State's action against Dr. Lau is pending in Collin County. *See State of Texas v. Mary C. Lau, M.D.,* Cause No. 493-07676-2024, 493rd Judicial District, Collin County, Texas. The Subpoena in essence seeks:

1. ESI Pharmacy's own policies sufficient to show its compliance with the Texas law on gender affirming care (commonly referred to as "SB14");

2. Records related to certain prescriptions Dr. Lau may have written for "Patient One;" and

3. De-identified records showing any refusal by ESI Pharmacy to fill prescriptions by Dr. Lau due to perceived violation of SB14.

For the myriad reasons below—including that the Subpoena is unenforceable—movant seeks complete protection. Alternatively, movant seeks complete protection from the Subpoena's Request No. 1 and additional time as to Request Nos. 2 and 3 so that an attestation required by federal law can be provided and so that a supplemental Protective Order that complies with applicable federal law can be issued before ESI Pharmacy is ordered to produce patient information. Request No. 3 should also be narrowed. Protection to permit additional time for these issues to be addressed is particularly important given that at least four other motions for protection pertaining to other similar pharmacy subpoenas have recently been filed in various counties across Texas. Further, a related 15th Court of Appeals opinion will be forthcoming on whether the Collin County Court has dominant jurisdiction over other courts deciding such Rule 176.6(e) motions for protection, as the State suggests it does. In support of this motion, movant shows the following:

## II.    BACKGROUND

As best movant can piece together in a short period of time, the following relevant events occurred leading up to the issuance of the Subpoena at issue in this motion.

In late 2024, the State sued Mary Lau, MD, alleging she violated Tex. Health & Safety Code § 161.702(3) (commonly referred to as Texas Senate Bill 14 or "SB14") and falsified records to intentionally conceal her allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). Dr. Lau filed a motion to transfer venue to Dallas County, which was denied. Soon thereafter, the State served subpoenas on Children's Health System of Texas and UT Southwestern Medical Center, seeking information about Dr. Lau's purported gender affirming care and treatment of various patients. In response, those hospital systems filed motions for protection, and many affected, represented patients filed a Rule 176.6(e) motion for protection in Dallas County seeking certain protection of their health information. The Collin County Court subsequently entered an order requiring production, in part. Interlocutory and mandamus proceedings followed, and on 05/20/2025, the 15th Court of Appeals heard related oral arguments. *See* Case Numbers 15-25-00023-CV, 15-25-0031-CV, 15-25-0032-CV, and 15-25-0039-CV, In the Court of Appeals for the Fifteenth Judicial District.

Around the time that the State served the non-party hospital systems with subpoenas, the Collin County Court in *State v. Lau* entered a 01/13/2025 confidentiality Protective Order to "adequately protect individually identifiable health information and other information entitled to be kept confidential." Exhibit B (Protective Order attached thereto at 1). When the State served the instant Subpoena on movant it attached the confidentiality Protective Order. It makes the following clear:

- Confidential health information that gets produced by parties or non-parties **may be disclosed to non-parties** if the requirements of the Protective Order are followed. *See id.* at Section II(A).

- In accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information the producing party **may completely exclude from production** any information afforded heightened protection by such federal, state, or local laws. *See id.* at Section VI(G).

- There's **no good cause to excuse the parties from the patient notification requirements** in Tex. R. Civ. P. 196.1(c), unless it relates to a limited motion to transfer venue discovery. *See id.* at Section VII.

The *State v. Lau* confidentiality Protective Order makes another finding, however, that is not clear and that appears to contradict the heightened protection provision in Section VI(G). The finding also appears to deny the notion that the State's action against Dr. Lau and the information it seeks via its Subpoena is for the purpose of pursuing civil liability for her facilitating gender affirming care, which is "potentially related" to reproductive health care (mandating heightened protection under federal law):

> The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

*Id.* at Section VIII.

The State recently issued other non-party subpoenas to at least four other pharmacies (Walgreens, CVS, HEB, and Amazon), which may have some or all the same questions and concerns as movant. Further, the same impacted, represented patients have filed Rule 176.6(e) motions for protection as to those subpoenas, filing them in the counties where those subpoenas were served (Travis County, Dallas County, and Bexar County). *See, e.g., Nonparty Patient Nos. 1-2 v. The State of Texas,* Cause DC-25-07810, 95th Judicial District Court, Dallas County,

Texas (filed 05/19/2025); *Nonparty Patient No. 1 v. The State of Texas*, Cause No. 2025-CI-11287,  Judicial District Court, Bexar County, Texas (filed 05/19/2025).

III.    ARGUMENT AND AUTHORITIES

A court has the authority to limit the scope or distribution of discovery based on the needs and circumstances of the case. *See* Tex. R. Civ. P. 192.6. Further, Courts have the right to exercise discretion in granting a protective order and controlling the nature and form of discovery. *Masinga v. Whittington*, 790 S.W.3d 940 (Tex. 1990).

Upon motion by a person from whom discovery is sought, or any person affected by the discovery requests, a court may enter an order to protect the movant from the discovery sought. Tex. R. Civ. P. 192.6(a). A court has broad discretion to protect a person from discovery with a protective order. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990). A protective order is available, in the interest of justice, to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." Tex. R. Civ. P. 192.6(b). In its order, the court can, among other things, prohibit the discovery sought and make any other order in the interest of justice. *Id.*

As authorized by Rules 176.6 and 192.6, movant seeks complete protection from compliance with the Subpoena attached as Exhibit B. Alternatively, movant seeks protection from Request No. 1 and additional time as to Request Nos. 2 and 3 so that a required attestation can be provided, a sufficient Protective Order that complies with applicable federal law can be issued, and so that Request No. 3 can be narrowed before ESI Pharmacy is ordered to produce patient information. Protection to permit additional time for these issues to be addressed is particularly important given that at least four other motions for protection pertaining to other similar pharmacy subpoenas (served on Walgreens, CVS, HEB, and Amazon pharmacies) have

just recently been filed in various counties, and a related, potentially pertinent 15th Court of Appeals opinion will be forthcoming.

A.  The Subpoena is not enforceable.

ESI Pharmacy objects to and seeks protection from the Subpoena on the grounds that it impermissibly compels the production of documents more than 150 miles from where it resides or where it was served, in direct violation of Rule 176.3(a). This rule provides that a "person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served;" *see also In re FedEx Ground Package Sys., Inc.,* 609 S.W.3d 153, 160 (Tex. App.-Houston [14th Dist.] 2020, pet. filed). Here, the Subpoena requested that documents be produced at the Attorney General's office in Austin, Texas. Exhibit B. However, ESI Pharmacy *resides* in St. Louis, Missouri and it was *served* with the Subpoena in Dallas, Texas—both of which are more than 150 miles away from Austin.[3] Accordingly, the Subpoena directly contravenes Texas Rule of Civil Procedure 176.3 and is unenforceable.

Additionally, the Subpoena is procedurally defective because it was not properly domesticated in Missouri. ESI Pharmacy is a Delaware corporation headquartered in St. Louis, Missouri. The documents responsive to the Subpoena, if any, would be maintained at ESI Pharmacy's headquarters in St. Louis County, Missouri, and the custodians of these documents reside there as well. To obtain a subpoena for use in a foreign jurisdiction, Missouri procedure is for a party to apply to the circuit court in the county where the company is found for an order

---

[3] St. Louis, Missouri and Dallas, Texas are 824.6 miles and 195 miles from Austin, Texas, respectively.

directing the issuance of a subpoena. *See* Mo. Sup. Ct. R. 57.08; 57.09. Because the Subpoena

was issued from a Texas court to a corporation residing in Missouri, it should not be enforced.[4]

> B. <u>The State has not provided a 45 CFR § 164.509 attestation, and the confidentiality Protective Order entered in *State v. Lau* is unclear and/or insufficient in that regard</u>.

Federal law requires that when the State seeks private health information in a judicial

proceeding that is "potentially related" to reproductive healthcare it must provide an attestation

that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *Purl*

*v. U.S. Dep't Health Hum. Servs*., No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that the

requirement remains in effect). Further, and similarly, a covered entity such as movant may

presume that care potentially related to reproductive healthcare is lawful, may not disclose the

information for any prohibited use, and when the information is requested for judicial (and other)

proceedings the covered entity must secure an attestation that the information is not for a

prohibited use before it can disclose the information. 45 CFR § 164.502.

Prohibited use includes, use of the information "[t]o conduct a criminal, civil, or

administrative investigation into any person for the mere act of seeking, obtaining, providing, or

facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on

any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health

---

[4] Neither Texas nor Missouri have adopted the Uniform Interstate Deposition and Discovery Act ("UIDDA"). The primary intent of the UIDDA is to establish a uniform procedure for subpoenaing depositions and obtaining discoverable materials from out-of-state individuals. *See Catalina Mktg. Corp. v. Hudyman*, 459 N.J. Super. 613, 618, 212 A.3d 997, 1000 (App. Div. 2019). The UIDDA also aims to protect non-party witnesses in the discovery state from unreasonable or unduly burdensome discovery requests. *Quinn v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 134 Nev. 25, 30, 410 P.3d 984, 988 (2018) (stating that "the subpoena power of Nevada courts over nonparty deponents does not extend beyond state lines"). The discovery state has a significant interest in safeguarding its residents who become non-party witnesses in actions pending in foreign jurisdictions. *Id.* In the absence of UIDDA adoption by either state, the correct process was for the State to apply to a Missouri court for issuance of a Missouri subpoena, pursuant to Missouri Supreme Court Rules 57.08 and 57.09. No such domestication occurred here. Without domestication in Missouri or compliance with Rule 176.3, the subpoena is procedurally and jurisdictionally defective and should not be enforced.

---

MOTION FOR PROTECTIVE ORDER                                                    PAGE 7

Appx. 099

care"; or "to identify any person" for those purposes. 45 CFR § 164.502. The State has not provided this attestation to movant.

The confidentiality Protective Order entered in *State v. Lau* is unclear regarding this heightened federal regulatory requirement. On the one hand, it acknowledges the heightened federal protection provision, stating the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws. Exhibit B (attachment at Section VI(G)). On the other hand, in the final paragraph it finds the attestation provision in federal law is not applicable and that the parties are excused from the attestation requirement contained in 45 C.F.R. § 164.509(a). *Id.* at Section VIII. At best these provisions are difficult to reconcile.

The confidentiality Protective Order also appears, in part, to deny the notion that the State's action against Dr. Lau (and by extension the information it seeks via its Subpoena) is for civil liability for facilitating gender affirming care, which is "potentially related" to reproductive health care. In sum, movant should be protected entirely from disclosing the requested information in Request Nos. 2 and 3, or alternatively the State must be required to provide an attestation and a supplemental Protective Order should be entered before movant is required to produce any documents potentially responsive to Request Nos. 2 and 3.

C.  Movant seeks protection as to each specific request.

The Subpoena has three requests. **Request No. 1** seeks ESI Pharmacy's own policies sufficient to show it is following SB14. Movant's own compliance is not relevant to any claim of the State or defense of Dr. Lau in the *State v. Lau* action and is therefore outside the scope of discovery. *See* Tex. R. Civ. P. 192.3(a), 192.4(b). Request No. 1 similarly fails to satisfy the

requirements for proportionality, particularly given that movant is a non-party. *In re Weekley Homes*, 295 S.W.3d 309; *In re State Farm Lloyds*, 520 S.W.3d 595 (Tex. 2017).

**Request No. 2** seeks records related to certain prescriptions Dr. Lau may have written for "Patient One." <u>Exhibit B</u>. Rules 196.1(c) and 205.3(c) of the Texas Rules of Civil Procedure required the State to serve the nonparty "Patient One" (identified by name and date of birth in Request No. 2) with notice of its intent to serve the Subpoena on movant. The State filed its Notice of Subpoena Duces Tecum on 04/15/2025 and served it on movant. *See* <u>Exhibit A</u>. But the State does not appear to have filed any proof of service on "Patient One" such that movant can be confident the patient received notice and an opportunity to be heard. Although redacted in the Exhibits here to protect the patient's identity, it appears "Patient One" is currently an underage minor, so there's even further question as to who the State should have served with notice (i.e., the minor him/herself and/or a legal guardian or parent). Unless or until the State provides documented confirmation that timely and sufficient notice was provided to the patient identified in Request No. 2 (and/or to their legal guardian), movant should be protected from responding with any documentation that may exist reflecting Patient One's care or treatment.

Further, Request No. 2 seeks information that is not reasonably available given the time frame identified, and it triggers the regulatory attestation requirement articled herein, which the State has not provided. *See* 45 CFR § 164.509.

**Request No. 3** purports to request "de-identified" records showing any refusal by ESI Pharmacy to fill prescriptions by Dr. Lau due to perceived violation of SB14. The request is vague, overly broad, and improperly seeks or assumes a professional and legal opinion because it seeks records related to prescriptions ESI Pharmacy may have refused to fill due to its opinion that Dr. Lau was noncompliant with SB14. This request is also burdensome on a nonparty when

(presumably) the same or similar data can be obtained from a party to the suit. Furthermore, the heightened protections under federal law outlined above prohibit disclosure absent the required attestation by the State, and a supplemental Protective Order should entered.

### IV.    CONCLUSION AND PRAYER

THEREFORE, non-party ESI Mail Pharmacy Service, Inc. respectfully prays this Court grant its motion for complete protection from the Subpoena. Alternatively, movant seeks complete protection from the Subpoena's Request No. 1 and additional time as to Request Nos. 2 and 3 so that an attestation required by federal law can be provided and so that a supplemental Protective Order that complies with applicable federal law can be issued before ESI Pharmacy is ordered to produce patient information. Request No. 3 should also be narrowed.

If complete protection is not afforded, protection to permit additional time for these issues to be addressed is particularly important given that at least four other motions for protection pertaining to other similar pharmacy subpoenas (served on Walgreens, CVS, HEB, and Amazon pharmacies) have just recently been filed in various counties. And, a related 15th Court of Appeals opinion will be forthcoming on whether the Collin County Court has dominant jurisdiction over other courts deciding such Rule 176.6(e) motions for protection, as the State suggests it does. Finally, movant seeks all such other and further relief as this Court deems just, including but not limited to a supplemental Protective Order that provides heightened protection. As it stands, the confidential Protective Order in *State v. Lau* permits certain nonparties who sign the exhibit thereto to be in possession of the requested information. Such limited protection is insufficient given the sensitive nature of the information sought.

Date:  May 21, 2025                          Respectfully submitted,

                              By:      */s/ Lorinda Holloway*
                                       Lorinda Holloway
                                       State Bar No. 00798264
                                       Maya Dokic
                                       State Bar No. 24136813

                                       **HUSCH BLACKWELL LLP**
                                       111 Congress Avenue, Suite 1400
                                       Austin, Texas 78701
                                       (512) 472-5456
                                       (512) 479-1101 *facsimile*
                                       Lorinda.Holloway@huschblackwell.com
                                       Maya.Dokic@huschblackwell.com


<u>CERTIFICATE OF CONFERENCE</u>

Counsel for movant has personally attempted to contact counsel for the State of Texas to resolve the matters presented as follows: May 19, 2025 at 5:03 pm (seeking a 30-day extension of time for any/all objections, challenges, responses, motion for protective order); May 21, 2025 at 1:15 pm (seeking again a 30-day extension or alternatively a meet and confer at the end of the day after client confirmation on basis for motion was concluded); May 21, 2025 at 1:58 pm (asking if anyone on the State's team was available for a meet and confer at the end of the day). An emergency exists of such nature that further delay would cause irreparable harm to the movant as follows: the response deadline is today so further delay puts movant at risk of noncompliance or waiver of its rights to seek court relief. The 10-day Notice of Subpoena was served April 16, 2025, but the undersigned was not contacted until May 7, 2025, so the full (but arbitrary 21 days to respond) was not available. The undersigned immediately contacted the State the same day as learning of the matter, first to determine the real response date (over which there had been confusion because the Notice of Subpoena attached a Subpoena issued on April 16, 2025 rather than one *to be* issued). Since then, it's taken significant time to confer with the client, review information and the law, and to review the many filings described herein so that informed decisions could be made.

Certified to the Day of May 21, 2025 by:

                                       */s/ Lorinda Holloway*
                                       Lorinda Holloway

Appx. 103

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of May 2025, a true and correct copy of the foregoing document was served on counsel of record who appeared in *State of Texas v. Mary C. Lau, M.D.,* Cause No. 493-07676-2024, 493rd Judicial District, Collin County, Texas *via* the Court's ECF filing service.

 */s/ Lorinda Holloway*
Lorinda Holloway

# EXHIBIT A

® Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
04/16/2025
CT Log Number 548909718

## Service of Process Transmittal Summary

**TO:**    Shayla Graham
Cigna Companies
900 COTTAGE GROVE RD
BLOOMFIELD, CT 06002-2920

**RE:**    **Process Served in Texas**

**FOR:**    Express Scripts  (Assumed Name)  (Domestic State: DE)
ESI Mail Pharmacy Service, Inc. (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | THE STATE OF TEXAS vs. MAY C. LAU |
| **DOCUMENT(S) SERVED:** | Notice, Subpoena Duces Tecum, Attachment(s), Return, Order, Exhibit, Certification, Certificate(s) |
| **COURT/AGENCY:** | 493rd Judicial District of Collin County, Texas, TX<br>Case # 493076762024 |
| **NATURE OF ACTION:** | Subpoena - Pharmacy Records - Pertaining to May C. Lau |
| **PROCESS SERVED ON:** | C T Corporation System, Dallas, TX |
| **DATE/METHOD OF SERVICE:** | By Process Server on 04/16/2025 at 14:05 |
| **JURISDICTION SERVED:** | Texas |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days of receipt of this subpoena (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | AMY PLETSCHER<br>Consumer Protection Division<br>P.O. Box 12548<br>Austin, TX 78711<br>512-963-2613 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/17/2025, Expected Purge Date: 04/22/2025<br><br>Image SOP<br><br>Email Notification,  Incoming Legal  legalandpublicaffairs-incominglegal@evernorth.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>877-564-7529<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other

Appx. 106

information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

## PROCESS SERVER DELIVERY DETAILS

**Date:**                          Wed, Apr 16, 2025
**Server Name:**                   Mauricio Segovia

| Entity Served | Express Scripts |
|---|---|
| Case Number | 493-07676-2024 |
| Jurisdiction | TX |

| Inserts |
|---|
|  |



Cause No. 493-07676-2024

| | | |
|---|---|---|
| THE STATE OF TEXAS., | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| MAY C. LAU, | § | |
| *Defendant.* | § | 493rd JUDICIAL DISTRICT |

## STATE'S NOTICE OF SUBPOENA DUCES TECUM

To:    Express Scripts c/o C T Corporation System, located at 1999 Bryan St. Ste 900, Dallas, TX 75201.

Please take notice that pursuant to Tex. R. Civ. P. 205, the State of Texas gives you ten (10) days' notice of its intent to serve the attached subpoena duces tecum. The State has complied with all requirements in Tex. R. Civ. P. 205 and that the attached Protective Order has been entered in the case.

Please take further notice that the Court expressly finding that attestations are not required. *See* Prot. Ord. at 10.

April 15, 2025                                Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

Mauricio Segovia
PSC1689  08/31/2024
2025/04/16 14:05:12

App. 109

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

*/s/ Amy Pletscher*
AMY PLETSCHER
Assistant Attorney General
State Bar No. 24113663

Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.shatto@oag.texas.gov
Amy.Pletscher@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF
TEXAS**


## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, a copy of the foregoing document was served to

all counsel of record in accordance with the Texas Rules of Civil Procedure.

*/s/ Amy Pletscher*
AMY PLETSCHER
Assistant Attorney General
State Bar No. 24113663

**THE STATE OF TEXAS**

*SUBPOENA DUCES TECUM*
**PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205**

**CAUSE NO.:** 493-07676-2024    IN THE 493RD JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*The State of Texas v. May C. Lau*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** Express Scripts c/o C T Corporation System, located at 1999 Bryan St. Ste 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 15, 2025**, at the request the request of the State of Texas.

JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

*/s/ Amy Pletscher*
AMY PLETSCHER
Assistant Attorney General
State Bar No. 24113663
Consumer Protection Division
P.O. Box 12548 (MC-010), Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Amy.Pletscher@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

### *SUBPOENA DUCES TECUM*

### INSTRUCTIONS

1.      "You" and "Your" means Express Scripts, including each of the individual Express Scripts locations identified in these requests.

2.      A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.      The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.      The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See* Pl.s' Am. Pet. ¶¶ 195-199; *Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.      The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.      You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.      Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.      You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

    a.  The State alleges that Lau was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pls' Am. Pet.¶¶ 44-222.

        i.  There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that she was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

    b.  The State also alleges that Lau is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl.s' Am. Pet. ¶¶223-250.

      i.  Lau asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires her to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. First Am. Ans. Aff. Def. ¶ 3 (citing Tex. Bus. & Com. Code § 17.49(c)).

    c.  Finally, the State alleges that Lau, in the course of her medical practice, prescribed, dispensed, and administered testosterone, a controlled substance, without a valid medical purpose and, in violation of Tex. Health & Safety Code § 481.071. *Id.* at ¶¶ 251-254.

9.    In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.    "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.    Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.    Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, from January 1, 2022, through the present that were filled by the Express Scripts located at 4600 Hanley Rd., Saint Louis, Missouri 63134.

3.    Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where an Express Scripts refused to fill a prescription written by May C. Lau, from September 1, 2023, through the present, because the pharmacist or any other Express Scripts employee believed that doing so could violate SB14.

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, and executed the _____ day of _____, 2025, at _____ o'clock, by delivering to the within named _____ in person at _____ in _____ County, TX, a true copy of this *Subpoena*, and tendering said witness the sum of $_____.

By Deputy: _____, _____ County, Texas.

Sheriff/Constable: _____, _____ County, Texas.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____ DATE _____

Appx. 116

Electronically Served
Filed: 1/13/2025 10:18 AM
1/17/2025 4:38 PM

Case 5:24-cv-00204-H     Document 58     Filed 06/09/25     Page 117 of 249  PageID 54856

District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

<u>Cause No. 493-07676-2024</u>

| | | |
|---|---|---|
| **The State of Texas,** | § | **In the District Court of** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Collin County, Texas** |
| | § | |
| **May C. Lau, M.D.,** | § | |
| *Defendant.* | § | **493rd Judicial District** |

## <u>PROTECTIVE ORDER</u>

After considering the parties' motions, any responses thereto, and arguments of counsel, the

Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-

2024.

To adequately protect individually identifiable health information and other information

entitled to be kept confidential, the Court orders as follows:

**I.     <u>Definitions</u>:**

(A)     As used in this Order, the term **"party"** shall mean all named parties to any action

in the above-captioned litigation, including any named party added or joined to any complaint in

this action.

(B)     The term **"third-party"** shall mean any individual, corporation, other natural

person or entity, or any state, federal, or local government agency.

(C)     The term **"documents"** as used herein is intended to be comprehensive and

includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and

shall include all written, oral, recorded, or graphic material, however produced or reproduced,

including, but not limited to, all written or printed matter of any kind, computer data, all graphic

or manual records or representations of any kind, and electronic, mechanical, or electric records

or representations of any kind.

(D)    As used in this Order, the term "**confidential health information**" means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

II.    **General Provisions**:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 118

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

**III.    Provisions Governing Use and Disclosure of Classified Information:**

Appx. 119

(A)    The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)     No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)     **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)     **Identification of Patients and Their Confidential Health Information.**   In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Appx. 121

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

## IV.  <u>Challenging Classified Information Designations:</u>

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

## V.  <u>Destruction of Classified Information at Completion of Litigation:</u>

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

(B)      All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)      This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.    Miscellaneous Provisions:

(A)      **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)      **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

Appx. 123

(C)     **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)     **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)     **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)     **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

Appx. 124

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 125

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

## VII.    No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.    No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

Electronically Served
1/17/2025 4:38 PM

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

Appx. 127

Electronically Served
1/17/2025 4:38 PM

# EXHIBIT A

Appx. 128

## **CERTIFICATION**

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where ***Texas v. Lau***, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in ***Texas v. Lau*** occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

Appx. 129

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| David G. Shatto | | david.shatto@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Matthew T.Kennedy | | matt.kennedy@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser | | csmyser@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Drew Padley | | dpadley@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Amy S.Ooi | | amy@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Admin Leboeuflaw | | admin@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Tina White | | tiwhite@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Case Contacts

| Melinda Pate | | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
|---|---|---|---|---|
| Steptoe Docketing | | docketing@steptoe.com | 1/13/2025 10:18:45 AM | SENT |

# EXHIBIT B

**THE STATE OF TEXAS**

*SUBPOENA DUCES TECUM*
**PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205**

**CAUSE NO.:** 493-07676-2024       IN THE 493RD JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*The State of Texas v. May C. Lau*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** Express Scripts c/o C T Corporation System, located at 1999 Bryan St. Ste 900, Dallas, TX 75201, to provide documents to the

**Office of the Attorney General**
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

Appx. 133

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Division Chief
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711-2548
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

## *SUBPOENA DUCES TECUM*

## INSTRUCTIONS

1.    "You" and "Your" means Express Scripts, including each of the individual Express Scripts locations identified in these requests.

2.    A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.    The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.    The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.    The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.    You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.      Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.      You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

a.      The State alleges that Lau was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pl's Am. Pet.¶¶ 44-222.

i.      There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that she was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

b.      The State also alleges that Lau is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl's Am. Pet. ¶¶223-250.

       i.   Lau asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires her to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. First Am. Ans. Aff. Def. ¶ 3 (citing Tex. Bus. & Com. Code § 17.49(c)).

9.      In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.      "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.      Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, from January 1, 2022, through the present that were filled by the Express Scripts located at 4600 Hanley Rd., Saint Louis, Missouri 63134.

3.      Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where an Express Scripts refused to fill a prescription written by May C. Lau, from September 1, 2023, through the present, because the pharmacist or any other Express Scripts employee believed that doing so could violate SB14.

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, and executed the _____ day of _____, 2025, at _____ o'clock, by delivering to the within named _____ in person at _____ in_____ County, TX, a true copy of this *Subpoena*, and tendering said witness the sum of $_____.

By Deputy:_____,_____County, Texas.

Sheriff/Constable:_____, _____ County, Texas.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____DATE_____

Electronically Served
Filed: 1/13/2025 10:18 AM 1/17/2025 4:38 PM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

### Cause No. 493-07676-2024

| | | |
|---|---|---|
| The State of Texas,<br>*Plaintiff,* | §<br>§<br>§ | **In the District Court of** |
| v. | §<br>§ | **Collin County, Texas** |
| May C. Lau, M.D.,<br>*Defendant.* | §<br>§<br>§ | **493rd Judicial District** |

### PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

**I.**    **Definitions**:

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

## II.    <u>General Provisions</u>:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 140

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

III.    **Provisions Governing Use and Disclosure of Classified Information:**

Appx. 141

(A)    The parties may not use or disclose classified information for any purpose other

than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions

of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this

Order the material to be disclosed may only be used for purposes of preparing and presenting

evidence in this litigation and must be kept confidential. No classified information may be disclosed

to any person identified in this Order unless such person first is given a copy of this Order and

advised that the information contained in the document is classified information and informed that

an unauthorized disclosure of the information in the document may constitute contempt of this

Court. Each person to whom classified information is disclosed shall execute an acknowledgement

in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to

receiving any classified information. Copies of the executed Certifications, and a current log of the

Appx. 142

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Appx. 143

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

### IV.    Challenging Classified Information Designations:

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

### V.    Destruction of Classified Information at Completion of Litigation:

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

(B)     All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)     This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.    Miscellaneous Provisions:

(A)     **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)     **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

Electronically Served
1/17/2025 4:38 PM

(C)     **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)     **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)     **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)     **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

Appx. 146

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 147

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

### VII.  No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

### VIII.  No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.



Appx. 148

Electronically Served
1/17/2025 4:38 PM

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

Appx. 149

Electronically Served
1/17/2025 4:38 PM

# EXHIBIT A

Appx. 150

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

Appx. 151

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | 24103982 | clayton.watkins@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| David G. Shatto |  | david.shatto@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Rob Farquharson |  | rob.farquharson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Matthew T.Kennedy |  | matt.kennedy@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Johnathan Stone |  | johnathan.stone@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

Associated Case Party: MayCLau

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Smyser |  | csmyser@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Alexander Wolf |  | awolf@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Nicole LeBoeuf | 791091 | nicole@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Drew Padley |  | dpadley@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Amy S.Ooi |  | amy@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pauline Sisson |  | pauline.sisson@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Admin Leboeuflaw |  | admin@leboeuflaw.com | 1/13/2025 10:18:45 AM | SENT |
| Tina White |  | tiwhite@steptoe.com | 1/13/2025 10:18:45 AM | SENT |
| Emily Samuels |  | emily.samuels@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
| Melinda Pate |  | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 96128789
Filing Code Description: Order
Filing Description: Protective Order
Status as of 1/14/2025 9:29 AM CST

Case Contacts

| Melinda Pate | | melinda.pate@oag.texas.gov | 1/13/2025 10:18:45 AM | SENT |
|---|---|---|---|---|
| Steptoe Docketing | | docketing@steptoe.com | 1/13/2025 10:18:45 AM | SENT |

# EXHIBIT C

CAUSE NO. 493-07676-2024

| The State of Texas | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| May C. Lau, M.D. | § | |
| Defendant. | § | 493RD JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

On this day personally appeared **Mauricio Segovia** who, being by me duly sworn, deposed and said:

"The following came to hand on **Apr 28, 2025, 3:00 pm**,

**SUBPOENA DUCES TECUM, PROTECTIVE ORDER, EXHIBIT A,**

and was executed at **1999 Bryan St Suite 900, Dallas, TX 75201** within the county of **Dallas** at **10:44 AM** on **Wed, Apr 30 2025**, by delivering a true copy to the within named

**EXPRESS SCRIPTS C/O C T CORPORATION SYSTEM**
**accepted by Intake Specialist, George Martinez**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

Mauricio Segovia
Certification Number: PSC-1689
Certification Expiration: 8/31/2026

**BEFORE ME**, a Notary Public, on this day personally appeared **Mauricio Segovia**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON    4/30/2025

MARIA M. SEGOVIA
My Notary ID # 129480220
Expires July 5, 2025

Notary Public, State of Texas

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Denee Elliott Modgling on behalf of Lorinda Holloway
Bar No. 798264
denee.elliottmodgling@huschblackwell.com
Envelope ID: 101136259
Filing Code Description: Original Petition
Filing Description: ESI MAIL PHARMACY SERVICE INC RULE 176.6e
MOTION FOR PROTECTIVE ORDER
Status as of 5/27/2025 4:24 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clayton Watkins | | clayton.watkins@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Matthew Kennedy | | matt.kennedy@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Amy Ooi | | amy@leboeuflaw.com | 5/21/2025 9:28:47 PM | SENT |
| Drew Padley | | dpadley@steptoe.com | 5/21/2025 9:28:47 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Tina White | | tiwhite@steptoe.com | 5/21/2025 9:28:47 PM | SENT |
| Nicole Lebouef | | nicole@leboeuflaw.com | 5/21/2025 9:28:47 PM | SENT |
| Alexander Wolf | | awolf@steptoe.com | 5/21/2025 9:28:47 PM | SENT |
| Craig Smyser | | csmyser@steptoe.com | 5/21/2025 9:28:47 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Amy Pletscher | | Amy.Pletscher@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Scott Froman | | scott.froman@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| David Shatto | | david.shatto@oag.texas.gov | 5/21/2025 9:28:47 PM | SENT |
| Elizabeth Spivey | | elizabeth.spivey@huschblackwell.com | 5/21/2025 9:28:47 PM | SENT |
| Denee Elliott Modgling | | denee.elliottmodgling@huschblackwell.com | 5/21/2025 9:28:47 PM | SENT |
| Maya Dokic | | Maya.Dokic@huschblackwell.com | 5/21/2025 9:28:47 PM | SENT |
| Lorinda Holloway | | lorinda.holloway@huschblackwell.com | 5/21/2025 9:28:47 PM | SENT |

# EXHIBIT 7

FILED
5/19/2025 5:36 PM
FELICIA PITRE
Case 5:24-cv-00204-H    Document 58    Filed 06/09/25    Page 158 of 249    PageID 5489 RICT CLERK
ESERVE CITATION
DALLAS CO., TEXAS
Connie Jones DEPUTY

DC-25-07810

**Cause No.** _____

| | |
|---|---|
| Nonparty Patient No. 1 and<br>Nonparty Patient No. 2,<br><br>                        Petitioners-Movants,<br><br>vs.<br><br>The State of Texas,<br><br>                     Respondent. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br>95th<br>____ JUDICIAL DISTRICT |

## PETITION FOR MOTION FOR PROTECTION
## FROM PHARMACY DISCOVERY SUBPOENA

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move

for protection from a discovery subpoena ("Subpoena") that the State of Texas served on CVS

Pharmacy (the "Pharmacy"). Ex. A. This Petition is related to a pending case in the 95th Judicial

District about discovery requests from the State in the same underlying litigation. *Nonparty Patient*

*No. 1 et al. v. State*, No. DC-25-01823. The Nonparty Patients would respectfully show as follows:

### I.    INTRODUCTION

1.    The State has brought a lawsuit in the 493rd Judicial District in Collin County,

Texas (the "Lau Litigation"), alleging, among other things, that Dr. May C. Lau violated provisions

in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender

affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Friday, April 28, 2025, the State served a

Subpoena in Dallas County on the Pharmacy, demanding medical records (e.g., prescription

---

[1] Pursuant to the Collin County District Court's Protective Order§ III(F) (attached as Exhibit B),
the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their
identities as patients related to that litigation. Ex. C at ¶ 4. Consistent with the Protective Order,
the Nonparty Patients may be identified in camera or as otherwise ordered by the Court. *Id.*

records, pharmacists' notes, and communications about patient care) for 3 individuals, including the Nonparty Patients. Ex. A at 6–7. The State did not properly serve notice of this Subpoena on the Nonparty Patients, despite a clear obligation to do so under the Texas Rules of Civil Procedure. See, e.g., Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

2.    The Nonparty Patients' materials within the scope of the State's subpoena, such as pharmacists' notes, prescription records, and communications about patients' medical treatments are privileged under Texas law. *See, e.g.*, 31 Tex. Admin. Code § 201.1 (2005) (reciting that pharmacy records "are privileged"); Tex. R. Evid. 509; Tex. R. Evid. 510. The Nonparty Patients also enjoy a right to privacy for their private health information under U.S. and Texas law that must be balanced against any potential production. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977) (describing "constitutionally protected 'zone of privacy'" regarding the "disclosure of personal matters"); *James v. Kloos*, 75 S.W.3d 153, 157 (Tex. App.—Fort Worth 2002, no pet.) ("Texas courts have recognized that the medical records of an individual are within the zone of privacy protected by the United States Constitution. Likewise, the Texas Constitution has been construed to recognize an individual's right to privacy.").

3.    These privileges acknowledge, among other things, that meaningful healthcare requires allowing patients to talk freely with their doctors and pharmacists on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g., R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information.").

2

4.      Moreover, Federal law requires that when the State seeks private health information "potentially related" to reproductive healthcare it must provide an attestation that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *see also* Def.'s Resp. to Court's May 5, 2025, Order, *Purl v. U.S. Dep't Health Hum. Servs*., No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that requirement remains in effect). Such prohibited use includes, "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; or "to identify any person" for those purposes. 45 CFR § 164.502. Upon information and belief, the State has refused to provide this attestation.

5.      The Nonparty Patients have thus filed this Motion in Dallas County, where the Subpoena was served, seeking (1) to quash the subpoena for failure to serve notice on the Nonparty Patients, or (2) a protective order protecting against an overbroad production and giving the Nonparty Patients a reasonable opportunity to review any proposed production and withhold or redact documents (e.g., for privilege or relevance), as appropriate.

## II.      JURISDICTION

6.      The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) . . . in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a patient about whom the State has sought medical records and other information from the Pharmacy in the Subpoena. The Nonparty Patients thus have standing to seek "an order protecting [the Nonparty Patients] from the discovery sought" because each is "a person affected by the subpoena." Tex. R. Civ. P. 176.6(e); Tex. R. Civ. P. 192.6(a). Upon information and belief, the Pharmacy was served

3

the Subpoena in Dallas County. Ex. A at 1 (directing summons to "CVS Pharmacy c/o C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201").

7.    If the State asserts it enjoys sovereign immunity from the Nonparty Patients' petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC*, 2025 WL 258715 (Tex. App.—15th Dist., Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule").

8.    The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("[W]here the Legislature has given no indication to the contrary the State must abide by the same rules to which private litigants are beholden");

4

*see also id*. (Boyd, J., concurring) ("Although the State enjoys unique immunities, it is subject to [procedural rules] as any other litigant." (citing *Lowe*, 540 S.W.2d at 301)).

9.    Furthermore, sovereign immunity is an inapplicable framework because its primary justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patients do not seek an entry of a money judgment against the State. They simply seek the protection of their health records. Moreover, a Court in this District has already rejected the same arguments from the State in a related case (*see* May 6, 2025, Order, *Nonparty Patient No. 1 et al. v. State*, No. DC-25-02658 (Tex. Dist. Ct.—Dallas [95th Dist.]), from which the State has filed an interlocutory appeal (*State v. Nonparty Patients Nos. 1–11*, Case No. 15-25-00023-CV (Tex. App.—Austin [15th Dist.])).

### III.    BACKGROUND

10.    In the Lau Litigation, the State's allegations largely center on Dr. Lau's purported prescription of medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id*. ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender- affirming care to circumvent the restrictions in SB14. *Id*. ¶¶ 224-50.

11.    On April 28, 2025, the State served the Subpoena on CVS. Ex. A. Among other things, the Subpoena requests "pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records" for the Nonparty Patients. Ex. A at 5-6. However, the Subpoena includes no instructions that would provide the Nonparty Patients an opportunity to

5

review the documents prior to production and withhold or redact materials that contain superfluous or privileged information that does not fall within the scope of an exception to the Nonparty Patients' privileges and rights.

## IV.   INSUFFICIENT SERVICE

12.    Before issuing the Subpoena to the Pharmacy, the State was required to **serve** notice of the subpoena in the manner described under Rule 205.2. Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

13.    In sum, the Texas Rules of Civil Procedure require that the State adhere to the following protocol for serving subpoenas on producing nonparties (here, the Pharmacy) and interested nonparties (here, the Nonparty Patients):

a.    First, the State must serve a *notice* on the producing nonparty. That notice informs the producing nonparty that a *forthcoming* subpoena will arrive. *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served . . . before the subpoena compelling production is served."); *see also* Tex. R. Civ. P. 205.3(a) (acknowledging a notice of a forthcoming subpoena and a subpoena are distinct documents that must each be served). This notice not only informs the producing nonparty that a subpoena will arrive at a later date, but it also specifies the time for production and what documents the State seeks. Tex. R. Civ. P. 205.3(b).

b.    The State must also serve this same notice on nonparties whose medical or mental health records are implicated (here, the Nonparty Patients). Tex. R. Civ. P. 205.3(c).

c.    After serving notice, the State must wait 10 days before serving the subpoenas on the producing nonparty (here, the Pharmacy). *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served 10 days before the subpoena compelling production is served.").

d.    What is more, Texas law requires that service be done in a specific fashion: A state sheriff, state constable, or a person who is over 18 years of age and not involved in the lawsuit must personally deliver the applicable documents to the nonparty. Tex. R. Civ. P. 176.5(a).

6

      e.     To prove the State perfected service, the State must file one of two documents: (1) either a signed written memorandum from the recipient, in which the recipient confirms service, or (2) a statement from the person serving the document. Tex. R. Civ. P. 176.5(b). A statement under the second method must include the date, time, and manner of personal service, as well as the name of the recipient.

      f.     Texas does not allow the State to pursue alternative forms of service on nonparties. *See In re Berry*, 578 S.W.3d 173, 179 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

      14.     *In re Berry* demonstrates the operation of these rules. 578 S.W.3d 173 (Tex. App.—

Corpus Christi-Edinburg 2019, no pet.). There, the plaintiff filed a motion for substituted service

of a nonparty after four unsuccessful attempts to personally serve a subpoena at his residence. *Id.*

at 175–76. In support of the motion, the plaintiff relied on Texas Rule of Civil Procedure 106,

which governs service of citation. *Id.* at 175. The trial court granted the motion, authorizing service

by leaving a copy of the documents with someone over the age of 16 at the nonparty's residence

or attaching a subpoena to his front door. *Id.* at 177. The court of appeals conditionally granted the

petition for mandamus that followed, holding that "the Texas Rules of Civil Procedure do not

authorize this procedure for discovery from a nonparty witness." *Id.* at 175.

      15.     The court of appeals rejected the plaintiff's reliance on Rule 106 and looked to

Rules 176.5 and 205 instead. *Id.* at 179–80. The court reasoned that Rule 106 is located in Section

5 of the Texas Rules of Civil Procedure, and by its terms applies only to service of citation, while

Rule 205 "governs discovery from nonparties." *Id.* at 179; *Zanchi v. Lane*, 408 S.W.3d 373, 380

(Tex. 2013) (holding that "Rule 106 by its terms applies solely to service of citation"). The court

emphasized that "the Texas Rules of Civil Procedure generally treat nonparties differently from

parties or those subject to a party's control . . . Nonparty witnesses stand in a different position

before the court than do parties to the litigation, over whom the court has both personal and subject

matter jurisdiction." *Id.* at 180.

16.    Here, the State issued a subpoena to the Pharmacy seeking medical records of the Nonparty Patients, and the State was therefore required to serve the Nonparty Patients, via personal service, with notice as required by Rules. The State failed to do so. Its Subpoena should be quashed. *See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

## V.    ARGUMENT AND AUTHORITIES

17.    If the Court does not quash the Subpoena, the Court should enter a protective order providing the Nonparty Patients with an opportunity to review, and if necessary, redact or withhold, materials responsive to the Subpoena. As written, the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under 31 Tex. Admin. Code § 201.1, the Physician-Patient Privilege (Tex. R. Evid. 509), the Mental Health Information Privilege (Tex. R. Evid. 510), and the Nonparty Patients' rights to privacy under the U.S. and Texas Constitutions. Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192, cmt. 7.

18.    Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(l).

19.     It is self-evident from the State's Subpoena that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Documents relating to the care and treatment of the Nonparty Patients, such as prescription records, pharmacy notes, and communications between the Nonparty Patients' doctors and pharmacy, will necessarily include confidential communications between the Nonparty Patients and their physicians and/or professionals, along with records of the Nonparty Patients' identities, diagnoses, evaluations, and treatments that were created or maintained in the course of physical or mental health care. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

20.     The Nonparty Patients therefore respectfully request an opportunity to review any proposed productions from the Pharmacy to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Pharmacy would produce to the State so that they may "segregate and produce the documents to the court" for in camera review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for in camera review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an in camera inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

9

21.     The Nonparty Patients further respectfully request that the Court's protective order include a requirement that the State provide an attestation that conforms to 45 CFR § 164.509.

## VI.    CONCLUSION

22.     The Court should therefore enter an order quashing the Subpoena for failure to serve notice on the Nonparty Patients or, in the alternative, enter a protective order: (1) providing the Nonparty Patients an opportunity to review any production before it is provided to the State so that they may withhold or redact irrelevant, superfluous, or privileged materials and, if needed, request that the Court conduct an *in camera* review; and (2) requiring that the State provides an attestation that conforms to 45 CFR § 164.509.

## VII.    PRAYER FOR RELIEF

23.     For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: May 19, 2025                    Respectfully submitted,

                                       */s/ William M. Logan*
                                       Jervonne D. Newsome
                                       Texas Bar No. 24094869
                                       Thanh D. Nguyen
                                       Texas Bar No. 2412 6931
                                       Jonathan Hung
                                       Texas Bar No. 24143033
                                       jnewsome@winston.com
                                       tdnguyen@winston.com
                                       johung@winston.com
                                       **WINSTON & STRAWN LLP**
                                       2121 N. Pearl St., 9th Floor
                                       Dallas, TX 75201
                                       Telephone: (214) 453-6500

                                       William M. Logan
                                       Texas Bar No. 24106214
                                       Evan D. Lewis
                                       Texas Bar No. 2411 6670

10

Olivia A. Wogon
Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

11

## CERTIFICATE OF CONFERENCE

Counsel for movant has personally attempted to contact counsel for respondent, as follows: By email on May 19, 2025 at 1:51 PM, but no response was received by 5:14 PM. An emergency exists of such a nature that further delay would cause irreparable harm to the movant, as follows: Despite not having properly served prior notice on the Nonparty Patients, the State has required compliance on May 19, 2025, leaving no further time for attempts to confer. However, counsel for the Nonparty Patients will continue attempting to confer with counsel for the State in good faith.

Certified to the Day of May 19, 2025 by:

*/s/ Evan D. Lewis*
Evan D. Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, an electronic copy of this Petition was served on counsel of record via email. I also certify that I electronically served counsel for the State and Pharmacy by emailing this petition-motion to the following attorneys:

| | |
|---|---|
| Johnathan Stone | johnathan.stone@oag.texas.gov |
| Rob Farquharson | rob.farquharson@oag.texas.gov |
| David Shatto | david.shatto@oag.texas.gov |
| Amy Pletscher | amy.pletscher@oag.texas.gov |
| Robert Steiner | rsteiner@kelleydrye.com |
| Ashley Czechowski | aczechowski@kelleydrye.com |
| Alysa Hutnik | ahutnik@kelleydrye.com |
| Paul Singer | psinger@kelleydrye.com |
| Beth Chun | bchun@kelleydrye.com |

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen

12

# Exhibit A

## THE STATE OF TEXAS

## *SUBPOENA DUCES TECUM*
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

**CAUSE NO.:** 493-07676-2024        IN THE 493RD JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*The State of Texas v. May C. Lau*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** CVS Pharmacy c/o C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201; or

CVS Pharmacy, Inc., c/o CVS Privacy Office, located at One CVS Drive, Woonsocket, RI 02895, to provide documents to the

### Office of the Attorney General
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

Received

MAY 0 6 2025

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

Appx. 172

## *SUBPOENA DUCES TECUM*

### INSTRUCTIONS

1.      "You" and "Your" means CVS Pharmacy, including each of the individual CVS pharmacies identified in these requests.

2.      A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.      The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.      The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.      The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.      You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

3

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional," "patient," and "the patient's representative").

7.      Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.      You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

- a.  The State alleges that Lau was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pl's Am. Pet. ¶¶ 44-222.

    - i.  There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that she was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

- b.  The State also alleges that Lau is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl's Am. Pet. ¶¶223-250.

4                                               Appx. 174

      i. Lau asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires her to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. First Am. Ans. Aff. Def. ¶ 3 (citing Tex. Bus. & Com. Code § 17.49(c)).

9.    In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.    "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.    Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.    Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau for ▆▆▆▆▆▆▆▆▆▆▆▆▆ from January 1, 2022, through the present that were filled at the CVS pharmacy located at 2200 Coit Rd., Plano, Texas 75075.

3.    Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ▆▆▆▆▆▆▆▆▆▆▆ from January 1, 2022, through the present that were filled at the CVS pharmacy located at 3430 Lakeview Pkwy., Rowlett, Texas 75088.

4.    Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ▆▆▆▆▆▆▆▆▆▆▆ from January 1, 2022, through the present that were filled at the CVS pharmacy located at 3430 Lakeview Pkwy., Rowlett, Texas 75088.

5.  Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where a CVS pharmacy located in Texas refused to fill a prescription written by May C. Lau, from September 1, 2023, through the present, because the pharmacist or any other CVS employee believed that doing so could violate SB14.

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock, and

executed the _____ day of _____, 2025, at _____ o'clock, by delivering to the within

named _____ in person at _____

in _____ County, TX, a true copy of this *Subpoena*, and tendering said witness the

sum of $_____.

By Deputy: _____, _____ County, Texas.

Sheriff/Constable: _____, _____ County, Texas.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

## ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____ DATE _____

Appx. 177

# Exhibit B

Appx. 178

Filed: 1/13/2025 10:18 AM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

**Cause No. 493-07676-2024**

| | | |
|---|---|---|
| **The State of Texas,** | § | **In the District Court of** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Collin County, Texas** |
| | § | |
| **May C. Lau, M.D.,** | § | |
| *Defendant.* | § | **493rd Judicial District** |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

I.    <u>Definitions</u>:

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

(D)    As used in this Order, the term "**confidential health information**" means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

II.    **General Provisions**:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

- 2 -

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

## III.   Provisions Governing Use and Disclosure of Classified Information:

- 3 -

(A)    The parties may not use or disclose classified information for any purpose other

than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions

of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this

Order the material to be disclosed may only be used for purposes of preparing and presenting

evidence in this litigation and must be kept confidential. No classified information may be disclosed

to any person identified in this Order unless such person first is given a copy of this Order and

advised that the information contained in the document is classified information and informed that

an unauthorized disclosure of the information in the document may constitute contempt of this

Court. Each person to whom classified information is disclosed shall execute an acknowledgement

in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to

receiving any classified information. Copies of the executed Certifications, and a current log of the

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Appx. 183

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

IV.    **Challenging Classified Information Designations:**

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

V.    **Destruction of Classified Information at Completion of Litigation:**

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

(B)    All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)    This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.    Miscellaneous Provisions:

(A)    **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)    **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d).  The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

Appx. 186

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 187

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

**VII.    No Good Cause to Excuse Patient Notification:**

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

**VIII.    No Attestation Required:**

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE
1/13/25

Appx. 189

# EXHIBIT A

## <u>CERTIFICATION</u>

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.


_____
Date

_____
[Printed Name]

_____
[Signature]

- 13 -

# Exhibit C

Cause No. _____

Nonparty Patient No. 1, and
Nonparty Patient No. 2,

             Petitioners-Movants,

vs.

The State of Texas,

             Respondents.

IN THE DISTRICT COURT OF

DALLAS COUNTY, TEXAS

____ JUDICIAL DISTRICT

## DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS

1.     I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoena") to CVS Pharmacy (the "Pharmacy"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2.     Each of the Nonparty Patients is one of 3 individuals about whom the State has sought documents via the Subpoenas related to medical care and treatment received at the Pharmacy, including prescription records, pharmacists' notes, and communications about patient care.

3.     A true and correct copy of the subpoena to the Pharmacy is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

4.     The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is

1

attached to the Petition as Exhibit B. To comply with § III(F) of the Protective Order, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

5.    A true and correct copy of the State's Verified Original Petition in Collin County, Cause No. 493-07676-2024, is attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on May 19, 2025.

/s/*William M. Logan*

2

# Exhibit D

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.      The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.      Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.      The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.      Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.      Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON,  complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6.      Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7.      Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8.      Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I.      PARTIES

9.      Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

2

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano. Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II.    DISCOVERY CONTROL PLAN

10.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III.    JURISDICTION AND VENUE

12.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV.    PUBLIC INTEREST

14.    Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15.    Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

3

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V.    TRADE AND COMMERCE

16.    At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI.    NO NOTICE BEFORE SUIT

17.    The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18.    The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.    APPLICABLE LAW

19.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20.    Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

4

## VIII.    FACTUAL BACKGROUND

A.    *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.    On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.    Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.    The effective date for SB14 was September 1, 2023.

24.    Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.    Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

5

26.    Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27.    Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.    *The Texas Supreme Court Held That SB 14 is Constitutional.*

28.    Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29.    On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

30.    Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

31.    On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

32.    On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.    *Lau is a Radical Gender Activist.*

33.    Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.    Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.    Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

        i.     Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

        ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

        iii.   Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

        iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

        v.    Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.    Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

7

37.    On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C,

gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020),

https://tinyurl.com/mkt4pzs3 wherein they asserted:

i.    That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

ii.    That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

iv.    That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

v.    That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

vi.    That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

viii.    That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

8

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix.   "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38.   Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39.   Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40.   Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41.   Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

9

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.     Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.     VIOLATIONS OF SB 14.

43.     Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.     *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.     High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.     High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.     As a result of the hormones, the child will develop secondary sex characteristics.

47.     Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.     Testosterone is a Schedule III controlled substance.

49.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

10

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50. WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B. Lau's Testosterone Prescribing

51. WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52. WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53. WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54. A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

11

secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

55.    The Federal and Drug Administration warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.    Lau has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.    Patient One resides in Collin County, TX.

58.    Patient One was 17 years old during the relevant time.

59.    Lau identifies Patient One as a biological female.

60.    On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.    The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

62.    On October 12, 2023, Patient One filled the prescription at a pharmacy located in Collin County, TX.

63.    Later, Patient One turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone.

---

[1]    Pseudonyms are used throughout to protect the identity of the victim minor patients.

12

64.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.     Patient Two resides in Collin County, TX.

66.     Patient Two was 17 years old during the relevant time.

67.     Lau identifies Patient Two as a biological female.

68.     On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.      The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.     The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.     Patient Three resides in Denton County, TX.

72.     Patient Three was 17 years old during the relevant time.

73.     Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.     On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.      The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 208

76.     On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77.     On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79.     On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80.     Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82.     Patient Four resides in Dallas County, TX.

83.     Patient Four was 16 during the relevant time.

84.     Lau identifies Patient Four as a biological female.

85.     On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86.     The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87.     On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

14

88.    On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89.    On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90.    On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91.    On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92.    Patient Five resides in Collin County, TX.

93.    Patient Five was 16 years old at the relevant time.

94.    Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95.    On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97.    On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98.    On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

15

99.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100.    The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101.    On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102.    On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103.    On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104.    On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105.    On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108.    On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109.    On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

**Patient Six**

110.    Patient Six resides in  Collin County, TX.

111.    Patient Six was 17 years old at the relevant time.

112.    Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113.    On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115.    On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116.    On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117.    Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119.    Patient Seven resided in Wise County, TX.

120.    Patient Seven was 17 at the relevant time.

121.    Lau identifies Patient Seven as a biological female.

17

122.    On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125.    Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127.    Patient Eight resides in Dallas County, TX.

128.    Patient Eight was 16 years old at the relevant time.

129.    Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130.    On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132.    On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

133.    Patient Nine resides in Dallas County, TX.

134.    Patient Nine was 14 years old at the relevant time.

135.    Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136.    On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138.    On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139.    Patient Ten resides in Tarrant County, TX.

140.    Patient Ten was 14 years old at the relevant time.

141.    Lau identifies Patient Ten as a biological female.

142.    On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

145.    On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146.    On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147.    On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148.    On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149.    Patient Eleven resides in Kaufman County, TX.

150.    Patient Eleven was 14 years old at the relevant time.

151.    Lau identifies Patient Eleven as a biological female.

152.    On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155.    On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

20

156.    On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.    On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158.    Patient Twelve resides in Rockwall County, TX.

159.    Patient Twelve was 14 years old at the relevant time.

160.    Lau identifies Patient Twelve as a biological female.

161.    On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164.    Patient Thirteen resides in Dallas County, TX.

165.    Patient Thirteen was 15 years old at the relevant date.

166.    Lau identifies Patient Thirteen as a biological female.

167.    On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

168.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170.    Patient Fourteen resides in Denton County, TX.

171.    Patient Fourteen was 15 years old at the relevant time.

172.    Lau identifies Patient Fourteen as a biological female.

173.    On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174.    The purpose  is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175.    On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176.    Patient Fifteen resides in Dallas County, TX.

177.    Patient Fifteen was 15 years old at the relevant time.

178.    Lau identifies Patient Fifteen as a biological female.

179.    On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

181.    On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182.    Patient Sixteen resides in Tarrant County, TX.

183.    Patient Sixteen was 15 years old at the relevant time.

184.    Lau identifies Patient Sixteen as a biological female.

185.    On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187.    On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188.    Patient Seventeen resides in Potter County, TX.

189.    Patient Seventeen was sixteen years old at the relevant time.

190.    Lau identifies Patient Seventeen as a biological female.

191.    On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193.    On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

**Patient Eighteen**

194.    Patient Eighteen resides in Collin County, TX.

195.    Patient Eighteen was 16 years old at the relevant time.

196.    Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.    On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.    On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.    Patient Nineteen resides in Collin County, TX.

201.    Patient Nineteen was 16 years old at the relevant time.

202.    Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.    On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

24

205.    On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206.    Patient Twenty resides in Dallas County, TX.

207.    Patient Twenty was 17 years old at the relevant time.

208.    Lau identifies Patient Twenty as a biological female.

209.    On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211.    On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212.    Patient Twenty-one resides in Dallas County, TX.

213.    Patient Twenty-one was 17 years old at the relevant time.

214.    Lau identifies Patient Twenty-one as a biological female.

215.    On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

217.    On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218.    Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

* * *

219.    Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220.    Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221.    Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

26

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222.    Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

223.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224.    Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226.    As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227.    Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

27

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228.    Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229.    As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230.    Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231.    As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

28

A.    *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

29

239.    Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240.    The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241.    Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242.    Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243.    "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

30

244.    The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245.    The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246.    The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247.    Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248.    An endocrine disorder results from the improper function of the endocrine system.

249.    Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250.    Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

31

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252.    Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.    Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id.*

255.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

> i.    Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and
>
> ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

32

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII.   PRAYER FOR RELIEF

257.    NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i.   Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.   Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii.   Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.   Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv.   Grant all other and further relief Texas may show itself entitled to.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

34

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.


/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

35

# EXHIBIT 8

FILED
5/19/2025 9:35 PM
Gloria A. Martinez
Bexar County District Clerk
Accepted By: Brenda Carrillo
Bexar County - 285th District Court

**2025CI11287**

Cause No. _____

| | |
|---|---|
| Nonparty Patient No. 1, | |
| Petitioners-Movant, | IN THE DISTRICT COURT OF |
| vs. | BEXAR COUNTY, TEXAS |
| The State of Texas, | ____ JUDICIAL DISTRICT |
| Respondent. | |

## PETITION FOR MOTION FOR PROTECTION
## FROM PHARMACY DISCOVERY SUBPOENA

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Petitioner-Movant ("Nonparty Patient")[1] moves for protection from a discovery subpoena ("Subpoena") that the State of Texas served on H-E-B Pharmacy (the "Pharmacy"). Ex. A. This Petition is related to a pending case in the 95th Judicial District about discovery requests from the State in the same underlying litigation. *Nonparty Patient No. 1 et al. v. State*, No. DC-25-01823. The Nonparty Patient would respectfully show as follows:

### I.    INTRODUCTION

1.    The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging, among other things, that Dr. May C. Lau violated provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Friday, April 28, 2025, the State served a

---

[1] Pursuant to the Collin County District Court's Protective Order§ III(F) (attached as Exhibit B), the Nonparty Patient has filed this Motion using a generic reference to avoid disclosing their identity as a patient related to that litigation. Ex. C at ¶4. Consistent with the Protective Order, the Nonparty Patient may be identified in camera or as otherwise ordered by the Court. *Id.*

Copy from re:SearchTX

Subpoena in Bexar County on the Pharmacy, demanding medical records (e.g., prescription records, pharmacists' notes, and communications about patient care) for the Nonparty Patient. Ex. A at 6–7. The State did not properly serve notice of this Subpoena on the Nonparty Patient, despite a clear obligation to do so under the Texas Rules of Civil Procedure. *See, e.g.*, Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

2. The Nonparty Patient's materials within the scope of the State's subpoena, such as pharmacists' notes, prescription records, and communications about the patient's medical treatments are privileged under Texas law. *See, e.g.*, 31 Tex. Admin. Code § 201.1 (2005) (reciting that pharmacy records "are privileged"); Tex. R. Evid. 509; Tex. R. Evid. 510. The Nonparty Patient also enjoys a right to privacy for their private health information under U.S. and Texas law that must be balanced against any potential production. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977) (describing "constitutionally protected 'zone of privacy'" regarding the "disclosure of personal matters"); *James v. Kloos*, 75 S.W.3d 153, 157 (Tex. App.—Fort Worth 2002, no pet.) ("Texas courts have recognized that the medical records of an individual are within the zone of privacy protected by the United States Constitution. Likewise, the Texas Constitution has been construed to recognize an individual's right to privacy.").

3. These privileges acknowledge, among other things, that meaningful healthcare requires allowing patients to talk freely with their doctors and pharmacists on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g.*, *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full

2

Copy from re:SearchTX

communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information.").

4.    Moreover, Federal law requires that when the State seeks private health information "potentially related" to reproductive healthcare it must provide an attestation that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *see also* Def.'s Resp. to Court's May 5, 2025, Order, *Purl v. U.S. Dep't Health Hum. Servs*., No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that requirement remains in effect). Such prohibited use includes, "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; or "to identify any person" for those purposes. 45 CFR § 164.502. Upon information and belief, the State has refused to provide this attestation.

5.    The Nonparty Patient has thus filed this Motion in Bexar County, where the Subpoena was served, seeking (1) to quash the subpoena for failure to serve notice on the Nonparty Patient, or (2) a protective order protecting against an overbroad production and giving the Nonparty Patient a reasonable opportunity to review any proposed production and withhold or redact documents (e.g., for privilege or relevance), as appropriate.

## II.    JURISDICTION

6.    The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) . . . in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patient is not a party to the Lau Litigation but is a patient about whom the State has sought medical records and other information from the Pharmacy in the Subpoena. The Nonparty Patient thus has standing to seek "an order protecting [the Nonparty Patients] from the

3

Copy from re:SearchTX

discovery sought" because they are "a person affected by the subpoena." Tex. R. Civ. P. 176.6(e); Tex. R. Civ. P. 192.6(a). Upon information and belief, the Pharmacy was served the Subpoena in Bexar County. Ex. A at 1 (directing summons to "H-E-B Pharmacy c/o Abel Martinez, located at 646 South Flores St., San Antonio, TX 78204").

7.    If the State asserts it enjoys sovereign immunity from the Nonparty Patient's petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC*, 2025 WL 258715 (Tex. App.—15th Dist., Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule").

8.    The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("[W]here the Legislature has given no indication

4

Copy from re:SearchTX

to the contrary the State must abide by the same rules to which private litigants are beholden"); *see also id*. (Boyd, J., concurring) ("Although the State enjoys unique immunities, it is subject to [procedural rules] as any other litigant." (citing *Lowe*, 540 S.W.2d at 301)).

9.     Furthermore, sovereign immunity is an inapplicable framework because its primary justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patient does not seek an entry of a judgment against the State. They simply seek the protection of their health records. Moreover, a Court in a sister District has already rejected the same arguments from the State in a related case (*see* May 6, 2025, Order, *Nonparty Patient No. 1 et al. v. State*, No. DC-25-02658 (Tex. Dist. Ct.—Dallas [95th Dist.]), from which the State has filed an interlocutory appeal (*State v. Nonparty Patients Nos. 1–11*, Case No. 15-25-00023-CV (Tex. App.—Austin [15th Dist.])).

## III.    BACKGROUND

10.     In the Lau Litigation, the State's allegations largely center on Dr. Lau's purported prescription of medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id*. ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender- affirming care to circumvent the restrictions in SB14. *Id*. ¶¶ 224-50.

11.     On April 28, 2025, the State served the Subpoena on H-E-B Pharmacy. Ex. A. Among other things, the Subpoena requests "pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records" for the Nonparty Patient. Ex. A at 5-6.

5

Copy from re:SearchTX

However, the Subpoena includes no instructions that would provide the Nonparty Patient an opportunity to review the documents prior to production and withhold or redact materials that contain superfluous or privileged information that does not fall within the scope of an exception to the Nonparty Patient's privileges and rights.

### IV.    INSUFFICIENT SERVICE

12.    Before issuing the Subpoena to the Pharmacy, the State was required to **<u>serve</u>** notice of the subpoena in the manner described under Rule 205.2. Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

13.    In sum, the Texas Rules of Civil Procedure require that the State adhere to the following protocol for serving subpoenas on producing nonparties (here, the Pharmacy) and interested nonparties (here, the Nonparty Patient):

a.    First, the State must serve a *notice* on the producing nonparty. That notice informs the producing nonparty that a *forthcoming* subpoena will arrive. *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served . . . before the subpoena compelling production is served."); *see also* Tex. R. Civ. P. 205.3(a) (acknowledging a notice of a forthcoming subpoena and a subpoena are distinct documents that must each be served). This notice not only informs the producing nonparty that a subpoena will arrive at a later date, but it also specifies the time for production and what documents the State seeks. Tex. R. Civ. P. 205.3(b).

b.    The State must also serve this same notice on nonparties whose medical or mental health records are implicated (here, the Nonparty Patient). Tex. R. Civ. P. 205.3(c).

c.    After serving notice, the State must wait 10 days before serving the subpoenas on the producing nonparty (here, the Pharmacy). *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served 10 days before the subpoena compelling production is served.").

d.    What is more, Texas law requires that service be done in a specific fashion: A state sheriff, state constable, or a person who is over 18 years of age and not involved in the lawsuit must personally deliver the applicable documents to the nonparty. Tex. R. Civ. P. 176.5(a).

6

Copy from re:SearchTX

e.  To prove the State perfected service, the State must file one of two documents: (1) either a signed written memorandum from the recipient, in which the recipient confirms service, or (2) a statement from the person serving the document. Tex. R. Civ. P. 176.5(b). A statement under the second method must include the date, time, and manner of personal service, as well as the name of the recipient.

f.  Texas does not allow the State to pursue alternative forms of service on nonparties. *See In re Berry*, 578 S.W.3d 173, 179 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

14.  *In re Berry* demonstrates the operation of these rules. 578 S.W.3d 173 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.). There, the plaintiff filed a motion for substituted service of a nonparty after four unsuccessful attempts to personally serve a subpoena at his residence. *Id*. at 175–76. In support of the motion, the plaintiff relied on Texas Rule of Civil Procedure 106, which governs service of citation. *Id*. at 175. The trial court granted the motion, authorizing service by leaving a copy of the documents with someone over the age of 16 at the nonparty's residence or attaching a subpoena to his front door. *Id*. at 177. The court of appeals conditionally granted the petition for mandamus that followed, holding that "the Texas Rules of Civil Procedure do not authorize this procedure for discovery from a nonparty witness." *Id*. at 175.

15.  The court of appeals rejected the plaintiff's reliance on Rule 106 and looked to Rules 176.5 and 205 instead. *Id*. at 179–80. The court reasoned that Rule 106 is located in Section 5 of the Texas Rules of Civil Procedure, and by its terms applies only to service of citation, while Rule 205 "governs discovery from nonparties." *Id*. at 179; *Zanchi v. Lane*, 408 S.W.3d 373, 380 (Tex. 2013) (holding that "Rule 106 by its terms applies solely to service of citation"). The court emphasized that "the Texas Rules of Civil Procedure generally treat nonparties differently from parties or those subject to a party's control . . . Nonparty witnesses stand in a different position before the court than do parties to the litigation, over whom the court has both personal and subject

7

Copy from re:SearchTX

matter jurisdiction." *Id*. at 180.

16.    Here, the State issued a subpoena to the Pharmacy seeking medical records of the Nonparty Patient, and the State was therefore required to serve the Nonparty Patient, via personal service, with notice as required by Rules. The State failed to do so. Its Subpoena should be quashed. *See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.) (holding substituted service insufficient for discovery from a nonparty witness).

## V.    ARGUMENT AND AUTHORITIES

17.    If the Court does not quash the Subpoena, the Court should enter a protective order providing the Nonparty Patient with an opportunity to review, and if necessary, redact or withhold, materials responsive to the Subpoena. As written, the State's request is overly broad, seeks irrelevant materials, and demands materials that are protected from disclosure under 31 Tex. Admin. Code § 201.1, the Physician-Patient Privilege (Tex. R. Evid. 509), the Mental Health Information Privilege (Tex. R. Evid. 510), and the Nonparty Patient's right to privacy under the U.S. and Texas Constitutions. Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192, cmt. 7.

18.    Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

8

Copy from re:SearchTX

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(l).

19.    It is self-evident from the State's Subpoena that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Documents relating to the care and treatment of the Nonparty Patient, such as prescription records, pharmacy notes, and communications between the Nonparty Patient's doctors and pharmacy, will necessarily include confidential communications between the Nonparty Patient and their physicians and/or professionals, along with records of the Nonparty Patient's identity, diagnoses, evaluations, and treatments that were created or maintained in the course of physical or mental health care. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus where district court ordered production of mental health records when record failed to show satisfaction of *R.K. Ramirez* requirements for production of medical records).

20.    The Nonparty Patient therefore respectfully requests an opportunity to review any proposed productions from the Pharmacy to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patient thus requires a reasonable opportunity to review any documents that the Pharmacy would produce to the State so that they may "segregate and produce the documents to the court" for in camera review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for in camera review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be

9

Copy from re:SearchTX

redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an in camera inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

21.     The Nonparty Patient further respectfully requests that the Court's protective order include a requirement that the State provide an attestation that conforms to 45 CFR § 164.509.

## VI.    CONCLUSION

22.     The Court should therefore enter an order quashing the Subpoena for failure to serve notice on the Nonparty Patient or, in the alternative, enter a protective order: (1) providing the Nonparty Patient an opportunity to review any production before it is provided to the State so that they may withhold or redact irrelevant, superfluous, or privileged materials and, if needed, request that the Court conduct an *in camera* review; and (2) requiring that the State provides an attestation that conforms to 45 CFR § 164.509.

## VII.    PRAYER FOR RELIEF

23.     For the foregoing reasons, the Nonparty Patient respectfully requests that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: May 19, 2025                    Respectfully submitted,

                                       */s/ William M. Logan*
                                       Jervonne D. Newsome
                                       Texas Bar No. 24094869
                                       Thanh D. Nguyen
                                       Texas Bar No. 2412 6931
                                       Jonathan Hung
                                       Texas Bar No. 24143033
                                       jnewsome@winston.com
                                       tdnguyen@winston.com
                                       johung@winston.com
                                       **WINSTON & STRAWN LLP**
                                       2121 N. Pearl St., 9th Floor
                                       Dallas, TX 75201

10

Copy from re:SearchTX

Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 2411 6670
Olivia A. Wogon
Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

11

Copy from re:SearchTX

## CERTIFICATE OF CONFERENCE

For four other related cases involving subpoenas served on CVS and Walgreens, counsel for movant personally attempted to contact counsel for respondent, as follows: By email on May 19, 2025 at 1:51 PM, regarding substantially identical subpoenas served on similarly situated Nonparty Patients but no response was received by 7:07 PM.

An emergency exists of such a nature that further delay would cause irreparable harm to the movant, as follows: Despite not having properly served prior notice on the Nonparty Patients, the State has required compliance on May 19, 2025, leaving no further time for attempts to confer. However, counsel for the Nonparty Patients will continue attempting to confer with counsel for the State in good faith. The movants have good reason to believe any conference would be futile.

Certified to the Day of May 19, 2025 by:

/s/ Evan D. Lewis
Evan D. Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, an electronic copy of this Petition was served on counsel of record via email. I also certify that I electronically served counsel for the State and Pharmacy by emailing this petition-motion to the following attorneys:

Johnathan Stone       johnathan.stone@oag.texas.gov
Rob Farquharson       rob.farquharson@oag.texas.gov
David Shatto          david.shatto@oag.texas.gov
Amy Pletscher         amy.pletscher@oag.texas.gov
Jason Powers          jpowers@velaw.com
Chelsea Teague        cteague@velaw.com

/s/ Thanh D. Nguyen
Thanh D. Nguyen

Copy from re:SearchTX

# Exhibit A

Copy from re:SearchTX

## THE STATE OF TEXAS

### *SUBPOENA DUCES TECUM*
### PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

**CAUSE NO.:** 493-07676-2024    IN THE 493RD JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*The State of Texas v. May C. Lau*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** H-E-B Pharmacy c/o Abel Martinez, located at 646 South Flores St., San Antonio, TX 78204, to provide documents to the

### Office of the Attorney General
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

1

Copy from re:SearchTX

Appx. 245

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

2

Copy from re:SearchTX

*SUBPOENA DUCES TECUM*

## INSTRUCTIONS

1.    "You" and "Your" means H-E-B Pharmacy, including each of the individual H-E-B pharmacies identified in these requests.

2.    A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.    The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.    The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.    The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.    You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

3

Copy from re:SearchTX

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.     Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.     You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

    a.   The State alleges that Lau was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pl's Am. Pet.¶¶ 44-222.

         i.   There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that she was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

    b.   The State also alleges that Lau is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl's Am. Pet. ¶¶223-250.

Copy from re:SearchTX

         i.  Lau asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires her to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. First Am. Ans. Aff. Def. ¶ 3 (citing Tex. Bus. & Com. Code § 17.49(c)).

9.      In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.      "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.      Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau for ███████████████, from January 1, 2022, through the present that were filled at the H-E-B pharmacy located at 4800 Main St., Frisco, Texas 75033.

3.      Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where a H-E-B pharmacy located in Texas refused to fill a prescription written by May C. Lau, from September 1, 2023, through the present, because the pharmacist or any other H-E-B employee believed that doing so could violate SB14.

Copy from re:SearchTX