## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock,  and

executed the _____ day of _____, 2025, at _____ o'clock, by delivering to the within

named _____ in person at _____

in _____ County, TX, a true copy of this *Subpoena*, and tendering said witness the

sum of $_____.


By Deputy: _____, _____ County, Texas.


Sheriff/Constable: _____, _____ County, Texas.


**OR**


By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*


SIGNATURE _____ DATE _____

Appx. 250

Copy from re:SearchTX

# Exhibit B

Appx. 251

Copy from re:SearchTX

Filed: 1/13/2025 10:18 AM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

Cause No. 493-07676-2024

| | | |
|---|---|---|
| The State of Texas,<br>*Plaintiff,* | §<br>§<br>§ | In the District Court of |
| v. | §<br>§ | Collin County, Texas |
| May C. Lau, M.D.,<br>*Defendant.* | §<br>§<br>§ | 493rd Judicial District |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

I.   **Definitions**:

(A)   As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)   The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)   The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

Copy from re:SearchTX

(D)     As used in this Order, the term "**confidential health information**" means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)     The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)     The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

II.     **General Provisions**:

(A)     **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 253

Copy from re:SearchTX

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

## III.    <u>Provisions Governing Use and Disclosure of Classified Information:</u>

Appx. 254

Copy from re:SearchTX

(A)    The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

Copy from re:SearchTX

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Appx. 256

Copy from re:SearchTX

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

IV. **Challenging Classified Information Designations:**

    (A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

V. **Destruction of Classified Information at Completion of Litigation:**

    (A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

Appx. 257

Copy from re:SearchTX

(B)    All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)    This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.    Miscellaneous Provisions:

(A)    **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)    **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

Copy from re:SearchTX

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

- 8 -

Appx. 259

Copy from re:SearchTX

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 260

Copy from re:SearchTX

(I)     Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)     The provisions of this Order shall survive the conclusion of this action.

## VII.   No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.  No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

Copy from re:SearchTX

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

Copy from re:SearchTX

## EXHIBIT A

Appx. 263

Copy from re:SearchTX

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.


_____
Date

_____
[Printed Name]


_____
[Signature]

Copy from re:SearchTX

Appx. 264

# Exhibit C

Copy from re:SearchTX

Cause No. _____

| | |
|---|---|
| Nonparty Patient No. 1, | |
|                     Petitioner-Movant, | IN THE DISTRICT COURT OF |
|    vs. | |
| | BEXAR COUNTY, TEXAS |
| The State of Texas, | |
|                   Respondents. | _____ JUDICIAL DISTRICT |

### DECLARATION IN SUPPORT OF THE NONPARTY PATIENT'S PETITION FOR PROTECTION FROM DISCOVERY SUBPOENA

1.     I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioner ("Nonparty Patient") in responding to the State of Texas's subpoena ("Subpoena") to HEB Pharmacy (the "Pharmacy"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patient's Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2.     The Nonparty Patient is an individual about whom the State has sought documents via the Subpoena related to medical care and treatment received at the Pharmacy, including prescription records, pharmacists' notes, and communications about patient care.

3.     A true and correct copy of the subpoena to the Pharmacy is attached as Exhibit A to the Petition, with redactions to safeguard the identity and confidential health information of the patient identified therein.

4.     The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit B. To comply with § III(F) of the Protective Order, to safeguard

1

Copy from re:SearchTX

the identity of the patient at issue in the Collin County litigation, and to preserve the confidential

health information of the Nonparty Patient, the Petition has been filed using a generic reference

for the Nonparty Patient. Also consistent with the Protective Order, in the event the Court wishes

to identify the Nonparty Patient, they may be identified *in camera* or as otherwise ordered by the

Court.

5.     A true and correct copy of the State's Verified Original Petition in Collin County,

Cause No. 493-07676-2024, is attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on May 19, 2025.


　　　　　　　　　　　　　__/s/*William M. Logan*__

2

Copy from re:SearchTX

# Exhibit D

Appx. 268

Copy from re:SearchTX

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

### PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.      The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.      Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.      The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.       Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.      Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON,  complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

Copy from re:SearchTX

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6.     Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7.     Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8.     Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I.     PARTIES

9.     Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

2

Copy from re:SearchTX

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano.

Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II.    DISCOVERY CONTROL PLAN

10.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III.    JURISDICTION AND VENUE

12.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV.    PUBLIC INTEREST

14.    Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15.    Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

Copy from re:SearchTX

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of

the opinion that these proceedings are in the public interest.

## V.    TRADE AND COMMERCE

16.    At all times described below, Lau engaged in conduct, the purported practice of

medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code §

17.45(6).

## VI.    NO NOTICE BEFORE SUIT

17.    The Consumer Protection Division has reason to believe that Lau "is engaging in,

has engaged in, or is about to engage in any act or practice declared to be unlawful … and that

proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18.    The Consumer Protection Division did not contact Lau before filing suit to notify

her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer

Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were

made." *Id.*

## VII.    APPLICABLE LAW

19.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts

or practices in the conduct of any trade or commerce."

20.    Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to

bring an action for temporary and permanent injunction whenever it has reason to believe that

any person is engaged in, in has engaged in, or is about to engage in any act or practice declared

unlawful under Chapter 17 of the Business and Commerce Code.

4

Copy from re:SearchTX

## VIII.   FACTUAL BACKGROUND

A.   *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.    On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.    Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.    The effective date for SB14 was September 1, 2023.

24.    Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.    Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

Copy from re:SearchTX

26.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27.     Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.     *The Texas Supreme Court Held That SB 14 is Constitutional.*

28.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id*.

30.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id*.

31.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id*.

32.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id*. at 239.

Copy from re:SearchTX

Appx. 274

C.    *Lau is a Radical Gender Activist.*

33.    Lau "specializes in adolescent female and male sexual and reproductive health, including … gender dysphoria …." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.    Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.    Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

i.    Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

iii.    Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

v.    Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.    Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

Copy from re:SearchTX

Appx. 275

37.    On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C, gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 wherein they asserted:

i.    That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

ii.    That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

iv.    That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

v.    That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

vi.    That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

viii.    That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

8

Copy from re:SearchTX

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix.    "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38.    Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39.    Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40.    Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41.    Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

Copy from re:SearchTX

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.  Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

### IX.  VIOLATIONS OF SB 14.

43.  Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.  *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.  High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.  High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.  As a result of the hormones, the child will develop secondary sex characteristics.

47.  Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.  Testosterone is a Schedule III controlled substance.

49.  Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

Copy from re:SearchTX

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50.    WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B.    Lau's Testosterone Prescribing

51.    WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52.    WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id*.

53.    WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id*.

54.    A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

11

Copy from re:SearchTX

secondary sex characteristics. **This medicine is not for use in female patients**."

TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added),

https://tinyurl.com/558b8fcv.

55.     The Federal and Drug Administration warns that testosterone cypionate "**is**

**contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE

CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.     Lau has violated the law by providing, prescribing, administering, or dispensing

testosterone to minor patients for the purposes of transitioning their biological sex or affirming

their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.     Patient One resides in Collin County, TX.

58.     Patient One was 17 years old during the relevant time.

59.     Lau identifies Patient One as a biological female.

60.     On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a

prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.     The prescriptions purpose is for transitioning her biological sex or affirming her

belief that her gender identity is inconsistent with her biological sex.

62.     On October 12, 2023, Patient One filled the prescription at a pharmacy located in

Collin County, TX.

63.     Later, Patient One turned 18 years old and, thereafter, Lau continued to provide,

prescribe, administer, or dispense testosterone**.**

---

[1]     Pseudonyms are used throughout to protect the identity of the victim minor patients.

Copy from re:SearchTX

64.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.     Patient Two resides in Collin County, TX.

66.     Patient Two was 17 years old during the relevant time.

67.     Lau identifies Patient Two as a biological female.

68.     On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.     The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.     The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.     Patient Three resides in Denton County, TX.

72.     Patient Three was 17 years old during the relevant time.

73.     Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.     On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 281

Copy from re:SearchTX

76.     On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77.     On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79.     On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80.     Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82.     Patient Four resides in Dallas County, TX.

83.     Patient Four was 16 during the relevant time.

84.     Lau identifies Patient Four as a biological female.

85.     On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86.     The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87.     On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

14

Copy from re:SearchTX

88.     On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89.     On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90.     On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91.     On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92.     Patient Five resides in Collin County, TX.

93.     Patient Five was 16 years old at the relevant time.

94.     Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95.     On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97.     On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98.     On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

Copy from re:SearchTX

99. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100. The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101. On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102. On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103. On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104. On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105. On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106. The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107. On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108. On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109. On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

Copy from re:SearchTX

**Patient Six**

110.    Patient Six resides in  Collin County, TX.

111.    Patient Six was 17 years old at the relevant time.

112.    Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113.    On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115.    On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116.    On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117.    Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119.    Patient Seven resided in Wise County, TX.

120.    Patient Seven was 17 at the relevant time.

121.    Lau identifies Patient Seven as a biological female.

Copy from re:SearchTX

122.    On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125.    Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127.    Patient Eight resides in Dallas County, TX.

128.    Patient Eight was 16 years old at the relevant time.

129.    Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130.    On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132.    On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

Appx. 286

Copy from re:SearchTX

**Patient Nine**

133.    Patient Nine resides in Dallas County, TX.

134.    Patient Nine was 14 years old at the relevant time.

135.    Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136.    On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138.    On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139.    Patient Ten resides in Tarrant County, TX.

140.    Patient Ten was 14 years old at the relevant time.

141.    Lau identifies Patient Ten as a biological female.

142.    On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

Copy from re:SearchTX

145.    On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146.    On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147.    On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148.    On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149.    Patient Eleven resides in Kaufman County, TX.

150.    Patient Eleven was 14 years old at the relevant time.

151.    Lau identifies Patient Eleven as a biological female.

152.    On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155.    On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

20

Copy from re:SearchTX

156.    On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.    On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158.    Patient Twelve resides in Rockwall County, TX.

159.    Patient Twelve was 14 years old at the relevant time.

160.    Lau identifies Patient Twelve as a biological female.

161.    On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164.    Patient Thirteen resides in Dallas County, TX.

165.    Patient Thirteen was 15 years old at the relevant date.

166.    Lau identifies Patient Thirteen as a biological female.

167.    On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

21

Copy from re:SearchTX

168.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170.    Patient Fourteen resides in Denton County, TX.

171.    Patient Fourteen was 15 years old at the relevant time.

172.    Lau identifies Patient Fourteen as a biological female.

173.    On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174.    The purpose  is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175.    On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176.    Patient Fifteen resides in Dallas County, TX.

177.    Patient Fifteen was 15 years old at the relevant time.

178.    Lau identifies Patient Fifteen as a biological female.

179.    On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

181.    On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182.    Patient Sixteen resides in Tarrant County, TX.

183.    Patient Sixteen was 15 years old at the relevant time.

184.    Lau identifies Patient Sixteen as a biological female.

185.    On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187.    On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188.    Patient Seventeen resides in Potter County, TX.

189.    Patient Seventeen was sixteen years old at the relevant time.

190.    Lau identifies Patient Seventeen as a biological female.

191.    On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193.    On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

Copy from re:SearchTX

**Patient Eighteen**

194.    Patient Eighteen resides in Collin County, TX.

195.    Patient Eighteen was 16 years old at the relevant time.

196.    Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.    On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.    On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.    Patient Nineteen resides in Collin County, TX.

201.    Patient Nineteen was 16 years old at the relevant time.

202.    Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.    On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

205.    On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206.    Patient Twenty resides in Dallas County, TX.

207.    Patient Twenty was 17 years old at the relevant time.

208.    Lau identifies Patient Twenty as a biological female.

209.    On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211.    On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212.    Patient Twenty-one resides in Dallas County, TX.

213.    Patient Twenty-one was 17 years old at the relevant time.

214.    Lau identifies Patient Twenty-one as a biological female.

215.    On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

25

Copy from re:SearchTX

217.    On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218.    Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

* * *

219.    Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220.    Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221.    Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

Copy from re:SearchTX

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222.    Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

223.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224.    Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226.    As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227.    Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

Appx. 295

Copy from re:SearchTX

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228.    Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229.    As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230.    Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231.    As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

28

Appx. 296

Copy from re:SearchTX

A.    *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

239.    Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240.    The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241.    Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242.    Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243.    "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

30

Copy from re:SearchTX

244.    The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245.    The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246.    The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247.    Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248.    An endocrine disorder results from the improper function of the endocrine system.

249.    Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250.    Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

Copy from re:SearchTX

Appx. 299

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252.    Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.    Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id.*

255.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code § 65.011 *et seq*. and Tex. R. Civ. P. 680 *et seq*., to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

> i.    Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and
>
> ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

Copy from re:SearchTX

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

257.    NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i.  Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii.  Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.  Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii.  Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.  Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv.  Grant all other and further relief Texas may show itself entitled to.

Appx. 301

Copy from re:SearchTX

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

34

Copy from re:SearchTX

## <u>DECLARATION</u>

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.


/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

35

Appx. 303

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jamie Vargo on behalf of William Logan
Bar No. 24106214
JVargo@winston.com
Envelope ID: 101026680
Filing Code Description: Petition
Filing Description:
Status as of 5/20/2025 8:51 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 5/19/2025 9:35:11 PM | SENT |

Copy from re:SearchTX

# EXHIBIT 9

5/19/2025 6:23 PM
District Clerk
Travis County
D-1-GN-25-003645
Ana Henriquez Quesada

**Cause No. _____**    D-1-GN-25-003645

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5, and<br>Nonparty Patient No. 6,<br><br>        Petitioners-Movants,<br><br>   vs.<br><br>The State of Texas,<br><br>        Respondent. | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>\_\_\_\_ JUDICIAL DISTRICT<br><br>250TH, DISTRICT COURT |

## PETITION FOR MOTION FOR PROTECTION
## FROM PHARMACY DISCOVERY SUBPOENA

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from a discovery subpoena ("Subpoena") that the State of Texas served on Walgreens Pharmacy (the "Pharmacy"). Ex. A. This Petition is related to a pending case in the 95th Judicial District about discovery requests from the State in the same underlying litigation. *Nonparty Patient No. 1 et al. v. State*, No. DC-25-01823. The Nonparty Patients would respectfully show as follows:

### I.    INTRODUCTION

1.    The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Lau Litigation"), alleging, among other things, that Dr. May C. Lau violated provisions

---

[1] Pursuant to the Collin County District Court's Protective Order§ III(F) (attached as Exhibit B), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C at ¶4. Consistent with the Protective Order, the Nonparty Patients may be identified in camera or as otherwise ordered by the Court. *Id.*

Copy from re:SearchTX

in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 43. On Friday, April 28, 2025, the State served a Subpoena in Travis County on the Pharmacy, demanding medical records (e.g., prescription records, pharmacists' notes, and communications about patient care) for 9 individuals, including the Nonparty Patients. Ex. A at 6–7. The State did not properly serve notice of this Subpoena on the Nonparty Patients, despite a clear obligation to do so under the Texas Rules of Civil Procedure. See, e.g., Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

2. The Nonparty Patients' materials within the scope of the State's subpoena, such as pharmacists' notes, prescription records, and communications about patients' medical treatments are privileged under Texas law. *See, e.g.*, 31 Tex. Admin. Code § 201.1 (2005) (reciting that pharmacy records "are privileged"); Tex. R. Evid. 509; Tex. R. Evid. 510. The Nonparty Patients also enjoy a right to privacy for their private health information under U.S. and Texas law that must be balanced against any potential production. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977) (describing "constitutionally protected 'zone of privacy'" regarding the "disclosure of personal matters"); *James v. Kloos*, 75 S.W.3d 153, 157 (Tex. App.—Fort Worth 2002, no pet.) ("Texas courts have recognized that the medical records of an individual are within the zone of privacy protected by the United States Constitution. Likewise, the Texas Constitution has been construed to recognize an individual's right to privacy.").

3. These privileges acknowledge, among other things, that meaningful healthcare requires allowing patients to talk freely with their doctors and pharmacists on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g.*, *R.K. v. Ramirez*, 887 S.W.2d

2

Copy from re:SearchTX

836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information.").

4.    Moreover, Federal law requires that when the State seeks private health information "potentially related" to reproductive healthcare it must provide an attestation that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *see also* Def.'s Resp. to Court's May 5, 2025, Order, *Purl v. U.S. Dep't Health Hum. Servs.*, No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that requirement remains in effect). Such prohibited use includes, "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; or "to identify any person" for those purposes. 45 CFR § 164.502. Upon information and belief, the State has refused to provide this attestation.

5.    The Nonparty Patients have thus filed this Motion in Travis County, where the Subpoena was served, seeking (1) to quash the subpoena for failure to serve notice on the Nonparty Patients, or (2) a protective order protecting against an overbroad production and giving the Nonparty Patients a reasonable opportunity to review any proposed production and withhold or redact documents (e.g., for privilege or relevance), as appropriate.

## II.    JURISDICTION

6.    The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) ... in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Lau Litigation but are each a patient about whom the State has sought medical records and other information from the Pharmacy in the

3

Copy from re:SearchTX

Subpoena. The Nonparty Patients thus have standing to seek "an order protecting [the Nonparty Patients] from the discovery sought" because each is "a person affected by the subpoena." Tex. R. Civ. P. 176.6(e); Tex. R. Civ. P. 192.6(a). Upon information and belief, the Pharmacy was served the Subpoena in Travis County. Ex. A at 1 (directing summons to "Walgreens Pharmacy c/o CSC-Lawyers Incorporating Service Company, located at 211 E. 7th St., Ste. 620, Austin, TX 78701").

7.      If the State asserts it enjoys sovereign immunity from the Nonparty Patients' petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC*, 2025 WL 258715 (Tex. App.—15th Dist., Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule").

8.      The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also*

4

Copy from re:SearchTX

*State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("[W]here the Legislature has given no indication to the contrary the State must abide by the same rules to which private litigants are beholden"); *see also id.* (Boyd, J., concurring) ("Although the State enjoys unique immunities, it is subject to [procedural rules] as any other litigant." (citing *Lowe*, 540 S.W.2d at 301)).

9.      Furthermore, sovereign immunity is an inapplicable framework because its primary justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patients do not seek an entry of a judgment against the State. They simply seek the protection of their health records. Moreover, a Court in this District has already rejected the same arguments from the State in a related case (*see* May 6, 2025, Order, *Nonparty Patient No. 1 et al. v. State*, No. DC-25-02658 (Tex. Dist. Ct.—Dallas [95th Dist.]), from which the State has filed an interlocutory appeal (*State v. Nonparty Patients Nos. 1–11*, Case No. 15-25-00023-CV (Tex. App.—Austin [15th Dist.])).

### III.    BACKGROUND

10.     In the Lau Litigation, the State's allegations largely center on Dr. Lau's purported prescription of medicines to teenage patients, including testosterone. Ex. D ¶ 56. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id*. ¶¶ 23, 222. The State also alleges that Dr. Lau engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender- affirming care to circumvent the restrictions in SB14. *Id*. ¶¶ 224-50.

11.     On April 28, 2025, the State served the Subpoena on Walgreens. Ex. A. Among other things, the Subpoena requests "pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records" for the Nonparty Patients. Ex. A at 5-6. However,

5

Copy from re:SearchTX

the Subpoena includes no instructions that would provide the Nonparty Patients an opportunity to review the documents prior to production and withhold or redact materials that contain superfluous or privileged information that does not fall within the scope of an exception to the Nonparty Patients' privileges and rights.

## IV.    INSUFFICIENT SERVICE

12.    Before issuing the Subpoena to the Pharmacy, the State was required to **serve** notice of the subpoena in the manner described under Rule 205.2. Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

13.    In sum, the Texas Rules of Civil Procedure require that the State adhere to the following protocol for serving subpoenas on producing nonparties (here, the Pharmacy) and interested nonparties (here, the Nonparty Patients):

a.    First, the State must serve a *notice* on the producing nonparty. That notice informs the producing nonparty that a *forthcoming* subpoena will arrive. *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served . . . before the subpoena compelling production is served."); *see also* Tex. R. Civ. P. 205.3(a) (acknowledging a notice of a forthcoming subpoena and a subpoena are distinct documents that must each be served). This notice not only informs the producing nonparty that a subpoena will arrive at a later date, but it also specifies the time for production and what documents the State seeks. Tex. R. Civ. P. 205.3(b).

b.    The State must also serve this same notice on nonparties whose medical or mental health records are implicated (here, the Nonparty Patients). Tex. R. Civ. P. 205.3(c).

c.    After serving notice, the State must wait 10 days before serving the subpoenas on the producing nonparty (here, the Pharmacy). *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served 10 days before the subpoena compelling production is served.").

d.    What is more, Texas law requires that service be done in a specific fashion: A state sheriff, state constable, or a person who is over 18 years of age and not involved in the lawsuit must personally deliver the applicable documents to the nonparty. Tex. R. Civ. P. 176.5(a).

Copy from re:SearchTX

e.   To prove the State perfected service, the State must file one of two documents: (1) either a signed written memorandum from the recipient, in which the recipient confirms service, or (2) a statement from the person serving the document. Tex. R. Civ. P. 176.5(b). A statement under the second method must include the date, time, and manner of personal service, as well as the name of the recipient.

f.   Texas does not allow the State to pursue alternative forms of service on nonparties. *See In re Berry*, 578 S.W.3d 173, 179 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

14.   *In re Berry* demonstrates the operation of these rules. 578 S.W.3d 173 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.). There, the plaintiff filed a motion for substituted service of a nonparty after four unsuccessful attempts to personally serve a subpoena at his residence. *Id.* at 175–76. In support of the motion, the plaintiff relied on Texas Rule of Civil Procedure 106, which governs service of citation. *Id.* at 175. The trial court granted the motion, authorizing service by leaving a copy of the documents with someone over the age of 16 at the nonparty's residence or attaching a subpoena to his front door. *Id.* at 177. The court of appeals conditionally granted the petition for mandamus that followed, holding that "the Texas Rules of Civil Procedure do not authorize this procedure for discovery from a nonparty witness." *Id.* at 175.

15.   The court of appeals rejected the plaintiff's reliance on Rule 106 and looked to Rules 176.5 and 205 instead. *Id.* at 179–80. The court reasoned that Rule 106 is located in Section 5 of the Texas Rules of Civil Procedure, and by its terms applies only to service of citation, while Rule 205 "governs discovery from nonparties." *Id.* at 179; *Zanchi v. Lane*, 408 S.W.3d 373, 380 (Tex. 2013) (holding that "Rule 106 by its terms applies solely to service of citation"). The court emphasized that "the Texas Rules of Civil Procedure generally treat nonparties differently from parties or those subject to a party's control . . . Nonparty witnesses stand in a different position before the court than do parties to the litigation, over whom the court has both personal and subject

7

Copy from re:SearchTX

matter jurisdiction." *Id*. at 180.

16.     Here, the State issued a subpoena to the Pharmacy seeking medical records of the

Nonparty Patients, and the State was therefore required to serve the Nonparty Patients, via personal

service, with notice as required by Rules. The State failed to do so. Its Subpoena should be quashed.

*See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.) (holding

substituted service insufficient for discovery from a nonparty witness).

## V.     ARGUMENT AND AUTHORITIES

17.     If the Court does not quash the Subpoena, the Court should enter a protective order

providing the Nonparty Patients with an opportunity to review, and if necessary, redact or withhold,

materials responsive to the Subpoena. As written, the State's requests are overly broad, seek

irrelevant materials, and demand materials that are protected from disclosure under 31 Tex. Admin.

Code § 201.1, the Physician-Patient Privilege (Tex. R. Evid. 509), the Mental Health Information

Privilege (Tex. R. Evid. 510), and the Nonparty Patients' rights to privacy under the U.S. and Texas

Constitutions. Courts may enter orders protecting individuals from discovery by subpoena to

prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b);

Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based

on the needs and circumstances of the case. Tex. R. Civ. P. 192, cmt. 7.

18.     Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose

and to prevent any other person from disclosing: (1) a confidential communication between a

physician and the patient that relates to or was made in connection with any professional services

the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation,

or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the

Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent

any other person from disclosing: (A) a confidential communication between the patient and a

8

Copy from re:SearchTX

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(l).

19.    It is self-evident from the State's Subpoena that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Documents relating to the care and treatment of the Nonparty Patients, such as prescription records, pharmacy notes, and communications between the Nonparty Patients' doctors and pharmacy, will necessarily include confidential communications between the Nonparty Patients and their physicians and/or professionals, along with records of the Nonparty Patients' identities, diagnoses, evaluations, and treatments that were created or maintained in the course of physical or mental health care. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus where district court ordered production of mental health records when record failed to show satisfaction of *R.K. Ramirez* requirements for production of medical records).

20.    The Nonparty Patients therefore respectfully request an opportunity to review any proposed productions from the Pharmacy to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Pharmacy would produce to the State so that they may "segregate and produce the documents to the court" for in camera review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for in camera review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be

9

Copy from re:SearchTX

redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an in camera inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

21.    The Nonparty Patients further respectfully request that the Court's protective order include a requirement that the State provide an attestation that conforms to 45 CFR § 164.509.

## VI.    CONCLUSION

22.    The Court should therefore enter an order quashing the Subpoena for failure to serve notice on the Nonparty Patients or, in the alternative, enter a protective order: (1) providing the Nonparty Patients an opportunity to review any production before it is provided to the State so that they may withhold or redact irrelevant, superfluous, or privileged materials and, if needed, request that the Court conduct an *in camera* review; and (2) requiring that the State provides an attestation that conforms to 45 CFR § 164.509.

## VII.    PRAYER FOR RELIEF

23.    For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: May 19, 2025              Respectfully submitted,

                                 */s/ William M. Logan*
                                 Jervonne D. Newsome
                                 Texas Bar No. 24094869
                                 Thanh D. Nguyen
                                 Texas Bar No. 2412 6931
                                 Jonathan Hung
                                 Texas Bar No. 24143033
                                 jnewsome@winston.com
                                 tdnguyen@winston.com
                                 johung@winston.com
                                 **WINSTON & STRAWN LLP**
                                 2121 N. Pearl St., 9th Floor
                                 Dallas, TX 75201

10

Copy from re:SearchTX

Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 2411 6670
Olivia A. Wogon
Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

11

Copy from re:SearchTX

## CERTIFICATE OF CONFERENCE

Counsel for movant has personally attempted to contact counsel for respondent, as follows: By email on May 19, 2025 at 1:51 PM, but no response was received by 5:37 PM. An emergency exists of such a nature that further delay would cause irreparable harm to the movant, as follows: Despite not having properly served prior notice on the Nonparty Patients, the State has required compliance on May 19, 2025, leaving no further time for attempts to confer. However, counsel for the Nonparty Patients will continue attempting to confer with counsel for the State in good faith.

Certified to the Day of May 19, 2025 by:

/s/ Evan D. Lewis
Evan D. Lewis


## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, an electronic copy of this Petition was served on counsel of record via email. I also certify that I electronically served counsel for the State and Pharmacy by emailing this petition-motion to the following attorneys:

| | |
|---|---|
| Johnathan Stone | johnathan.stone@oag.texas.gov |
| Rob Farquharson | rob.farquharson@oag.texas.gov |
| David Shatto | david.shatto@oag.texas.gov |
| Amy Pletscher | amy.pletscher@oag.texas.gov |
| Robert Steiner | rsteiner@kelleydrye.com |
| Ashley Czechowski | aczechowski@kelleydrye.com |
| Alysa Hutnik | ahutnik@kelleydrye.com |
| Paul Singer | psinger@kelleydrye.com |
| Beth Chun | bchun@kelleydrye.com |

/s/ Thanh D. Nguyen
Thanh D. Nguyen

Copy from re:SearchTX

# Exhibit A

Appx. 318

Copy from re:SearchTX

**THE STATE OF TEXAS**

***SUBPOENA DUCES TECUM***
**PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205**

**CAUSE NO.:** 493-07676-2024       IN THE 493RD JUDICIAL DISTRICT COURT OF
COLLIN COUNTY, TEXAS

*The State of Texas v. May C. Lau*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** Walgreens Pharmacy c/o CSC-Lawyers Incorporating Service Company, located at 211 E. 7th St., Ste. 620, Austin, TX 78701, to provide documents to the

**Office of the Attorney General**
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

Copy from re:SearchTX

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

Copy from re:SearchTX

Appx. 320

## *SUBPOENA DUCES TECUM*

## INSTRUCTIONS

1.      "You" and "Your" means Walgreens Pharmacy, including each of the individual Walgreens pharmacies identified in these requests.

2.      A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.      The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.      The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.      The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.      You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

3

Copy from re:SearchTX

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.     Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.     You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

    a.  The State alleges that Lau was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pl's Am. Pet.¶¶ 44-222.

        i.  There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that she was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

    b.  The State also alleges that Lau is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl's Am. Pet. ¶¶223-250.

Copy from re:SearchTX

      i. Lau asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires her to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. First Am. Ans. Aff. Def. ¶ 3 (citing Tex. Bus. & Com. Code § 17.49(c)).

9.      In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.      "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.      Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau for ████████████ ██████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 225 E. FM 544 Ste 100, Murphy, Texas 75094.

3.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ███████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 7930 Belt Line Road, Dallas, Texas 75254.

4.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ████████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 6551 Forest Hill Drive, Forest Hill, Texas 76140.

Copy from re:SearchTX

5.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ███████████████████████ from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 2007 N. Goliad Street, Rockwall, Texas 75087.

6.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ███████████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 3400 N. Belt Line Road, Irving, Texas 75062.

7.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ██████████████████████████ from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 6048 S. Hulen St., Fort Worth, Texas 76132.

8.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ██████████████ from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 4504 S. Western St, Amarillo, Texas 79109.

9.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ████████████████████████ from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 1651 W. University Dr., McKinney, Texas 75069.

10. Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by May C. Lau, for ████████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 1306 N. Beckley Ave., Dallas, Texas 75203.

11. Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where a Walgreens pharmacy located in Texas refused to fill a prescription written by May C. Lau, from September 1, 2023, through the present, because the pharmacist or any other Walgreens employee believed that doing so could violate SB14.

Copy from re:SearchTX

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock,  and

executed the _____day of _____, 2025, at _____ o'clock, by delivering to the within

named _____ in person at_____

in_____ County, TX, a true copy of this *Subpoena*, and tendering said witness the

sum of $_____.

By Deputy:_____,_____County, Texas.

Sheriff/Constable:_____, _____ County, Texas.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____ DATE_____

Appx. 325

Copy from re:SearchTX

# Exhibit B

Appx. 326

Copy from re:SearchTX

Filed: 1/13/2025 10:18 AM
Michael Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128789

Cause No. 493-07676-2024

| The State of Texas, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Collin County, Texas |
| | § | |
| May C. Lau, M.D., | § | |
| *Defendant.* | § | 493rd Judicial District |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

I.    <u>Definitions</u>:

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

Appx. 327

Copy from re:SearchTX

(D)     As used in this Order, the term "**confidential health information**" means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)     The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)     The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

II.    **General Provisions**:

(A)     **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections**. Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 328

Copy from re:SearchTX

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

**III.    Provisions Governing Use and Disclosure of Classified Information:**

Appx. 329

Copy from re:SearchTX

(A)    The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)    Classified information may be disclosed only to the following qualified persons:

1.    This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.    Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.    Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.    Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.    Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.    The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)    No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

Appx. 330

Copy from re:SearchTX

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.**  In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Appx. 331

Copy from re:SearchTX

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

**IV.    Challenging Classified Information Designations:**

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

**V.    Destruction of Classified Information at Completion of Litigation:**

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

Appx. 332

Copy from re:SearchTX

(B)   All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)   This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.   Miscellaneous Provisions:

(A)   **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)   **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

Copy from re:SearchTX

Appx. 333

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

- 8 -

Copy from re:SearchTX

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

- 9 -

Copy from re:SearchTX

(I)     Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)     The provisions of this Order shall survive the conclusion of this action.

**VII.**    **No Good Cause to Excuse Patient Notification:**

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

**VIII.**   **No Attestation Required:**

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

Copy from re:SearchTX

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

1/13/25

Appx. 337

Copy from re:SearchTX

# EXHIBIT A

Appx. 338

Copy from re:SearchTX

## <u>CERTIFICATION</u>

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Lau*, **No. 493-07676-2024** is pending at the time of enforcement or where the trial in *Texas v. Lau* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____
Date

_____
[Printed Name]

_____
[Signature]

- 13 -

Copy from re:SearchTX

Appx. 339

Exhibit C

Copy from re:SearchTX

Cause No. _____

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5,<br>Nonparty Patient No. 6, and<br>Nonparty Patient No. 7,<br><br>   Petitioners-Movants,<br><br> vs.<br><br>The State of Texas,<br><br>   Respondents. | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>_____ JUDICIAL DISTRICT |

## DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS

1. I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoena") to Walgreens Pharmacy (the "Pharmacy"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2. Each of the Nonparty Patients is one of 9 individuals about whom the State has sought documents via the Subpoenas related to medical care and treatment received at the Pharmacy, including prescription records, pharmacists' notes, and communications about patient care.

1

Copy from re:SearchTX

Appx. 341

3.      A true and correct copy of the subpoena to the Pharmacy is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

4.      The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit B. To comply with § III(F) of the Protective Order, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

5.      A true and correct copy of the State's Verified Original Petition in Collin County, Cause No. 493-07676-2024, is attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on May 19, 2025.


__/s/*William M. Logan*__

2

Copy from re:SearchTX

Appx. 342

# Exhibit D

Copy from re:SearchTX

CAUSE NO. _____

| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| MAY C. LAU, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR AN APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

1.      The debate in Texas on the legality of dangerous and experimental medical procedures seeking to transition or affirm a child's belief that their gender identity is inconsistent with their biological sex is over.

2.      Texas law prohibits surgeries, puberty blockers, and cross-sex hormones for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex. Tex. Health & Safety Code § 161.702.

3.      The Supreme Court of Texas held that the law was constitutional. *State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

4.      Today, enforcement begins against those who have violated the law by providing, prescribing, administering, or dispensing cross-sex hormones to minors for the purposes of transitioning their biological sex or affirming the child's belief that their gender identity is inconsistent with their biological sex.

5.      Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON,  complains of Defendant, MAY C. LAU, M.D. and will show Lau has engaged in deceptive trade practices, including by misleading pharmacies, insurance providers, and/or

1

Copy from re:SearchTX

patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

6.    Lau is a scofflaw who is putting the health and safety of minors at risk by prescribing testosterone, a controlled substance, to biological female minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See* Tex. Occ. Code § 164.052(a)(24) (each violation separately violates the Texas Medical Practice Act); *see also* Tex. Occ. Code § 164.0552 (each violation serves as an independent ground for revocation of Lau's medical license).

7.    Lau is also violating Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that her testosterone prescriptions are for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex.

8.    Lau must be held accountable for her use, on at least 21 minor patients, of these illegal, dangerous, and experimental medical procedures for the purposes of transitioning their biological sex or affirming their belief that their gender identities are inconsistent with their biological sex.

## I.    PARTIES

9.    Defendant is MAY C. LAU, M.D. (NPI# 1750351375), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. She

2

Copy from re:SearchTX

holds hospital privileges at Childrens Medical Center Dallas and Children's Medical Center Plano.

Lau may be served with process at UT Southwestern, 5323 Harry Hines Blvd. Dallas, TX 75390.

## II.    DISCOVERY CONTROL PLAN

10.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

11.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

## III.    JURISDICTION AND VENUE

12.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

13.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas and Lau's unlawful conduct occurred in Collin County, Texas.

## IV.    PUBLIC INTEREST

14.    Lau violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

15.    Texas has reason to believe that Lau is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Lau has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore,

Copy from re:SearchTX

the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

## V.      TRADE AND COMMERCE

16.      At all times described below, Lau engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

## VI.      NO NOTICE BEFORE SUIT

17.      The Consumer Protection Division has reason to believe that Lau "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

18.      The Consumer Protection Division did not contact Lau before filing suit to notify her "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Lau likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.      APPLICABLE LAW

19.      Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

20.      Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, in has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

Copy from re:SearchTX

Appx. 347

## VIII.   FACTUAL BACKGROUND

A.   *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

21.     On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *Loe*, 692 S.W.3d at 223.

22.     Senate Bill 14 prohibits physician and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

23.     The effective date for SB14 was September 1, 2023.

24.     Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

25.     Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

5

Copy from re:SearchTX

Appx. 348

26.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

27.     Finally, SB14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board *shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.      *The Texas Supreme Court Held That SB 14 is Constitutional.*

28.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

29.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id*.

30.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id*.

31.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id*.

32.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id*. at 239.

Appx. 349

Copy from re:SearchTX

C.    *Lau is a Radical Gender Activist.*

33.    Lau "specializes in adolescent female and male sexual and reproductive health, including ... gender dysphoria ...." *Biography of May Lau, M.D.*, UT Southwestern (accessed October 8, 2024), https://tinyurl.com/259556bc.

34.    Lau serves as "Medical Director of the Adolescent and Young Adult clinic at Children's Medical Center Dallas." *Id.*

35.    Lau has published extensively advocating for the medical transition of children's biological sex, contributing to the following:

    i.    Tri Pham, *et al.*, *Transition from Pediatric to Adult Care for Transgender Youth: A Qualitative Study of Patient, Parent, and Provider Perspectives*, LGBT Health (May-Jun 2021), https://tinyurl.com/5n8jbc6n.

    ii.    Bethany G. Hart, *et al.*, *Developing a Curriculum on Transgender Health Care for Physician Assistant Students*, Journal of Physician Assistant Education (Mar. 2021), https://tinyurl.com/mvbhyp8e.

    iii.    Lauren R. Shaffer, *et al.*, *Gender-affirming hormone therapy in cystic fibrosis – A case of new Pseudomonas infection*, Respiratory Medicine Case Reports (2021), https://tinyurl.com/mv4jp85.

    iv.    Laura E. Kuper, *et al.*, *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, Pediatrics (2020), https://tinyurl.com/5n8s75v8.

    v.    Laura E. Kuper, *et al.*, *Baseline Mental Health and Psychosocial Functioning of Transgender Adolescents Seeking Gender-Affirming Hormone Therapy*, Journal of Developmental and Behavioral Pediatrics (Oct/Nov 2019), https://tinyurl.com/4wxxzes5.

36.    Approximately 20% of the publications listed in Lau's biography relate to gender transitioning. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

Copy from re:SearchTX

Appx. 350

37.     On January 8, 2020, Lau and her physician's assistant, Patti Pagels MPAS, PA-C, gave a presentation entitled *Transgender Care of Adolescents and Adults*, Youtube (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 wherein they asserted:

    i.    That Lau alters her patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her patients. 20:59-22:40.

    ii.    That "adolescents' gender identity is fluid so from one day or one point in time they say no, I'm this, I'm female, but then realize later on that I'm male." 28:08-28.

    iii.    That "we're not sure about the safety and long-term effects of puberty suppression in youth with gender dysphoria we do know that this is safe to use in youth with precocious puberty, but we don't know if we can translate those side effects and the long-term effects to those with gender dysphoria and who are using puberty suppression for those reasons." 28:28-46.

    iv.    That "some of the consequences of hormonotherapy are permanent." 29:57-30:09.

    v.    That biological females that take testosterone to transition their biological sex "will get some atrophy of the vagina … [and thereafter for the duration of their life] they'll need some sort of water-based lubricant if they're going to still use the vagina as part of sex …." 32:41-52.

    vi.    That "it's so important that these folks get identified in childhood because when they come to me and are 30 or 40 years old and they've been under the influence of their gender hormones all this time it's very hard to reverse it. I can't take somebody that's, you know, five-foot ten and very muscular uh and make them a woman overnight even if they use the clothing and so forth "33:05-39.

    vii.    That "testosterone is a powerful hormone, so I tell them that the effect of estrogen is like a feather, you know, just it's just a whiff and whereas testosterone you give a little bit [and] you get a lot of effect." 33:39-59.

    viii.    That "I want you to look at the graphic to see that the number of surgeries has increased and continue to increase and many of our patients … are getting them done. There are more surgeries for the affirm females than the affirm males and we may not know how many people actually are getting gender affirming surgery because some of them are going to Thailand,

8

Copy from re:SearchTX

they're going to Europe, they're going to other counties to get this done because its much cheaper." 37:37-38:13.

ix.    "There's a recent study May 2018 that suggests the timing of top surgery or breast surgery for affirm males should be based on physical and mental health status of the youth not by a specific age and *I will tell you that we have had youth in our clinic come in who have had top surgery before they have even started hormone treatment.*" 39:39-40:05 (emphasis added).

38.    Lau was previously associated with the now dissolved Gender Education and Care Interdisciplinary Support (GENECIS) Program, which was dedicated to using medical interventions to transition the biological sex of children or affirm a child's beliefs that their gender identity is inconsistent with their biological sex. May Lau, M.D., and Patti Pagels MPAS, PA-C, *Transgender Care of Adolescents and Adults*, Mid-Atlantic Chapter of the Medical Library Association (Jan. 8, 2020), https://tinyurl.com/mry8wtv9.

39.    Ximena Lopez, M.D., the founder of the GENECIS, shuttered the program and high-tailed it to California shortly after SB 14 was enacted. Paul Hunter, *Texas ban on gender-affirming care leaves trans teens without options*, CBC News (July 5, 2023), https://tinyurl.com/4r6c8kr5 (Lopez declaring that medically transitioning children is "one of the most important things I've done in my life" and stating that she was leaving Texas because she thinks the whole state is "crazy.").

40.    Lopez and Lau are co-authors on several publications advocating for the medical transition of minors diagnosed with gender dysphoria. *Biography of May Lau, M.D.*, https://tinyurl.com/259556bc.

41.    Lau and the staff of GENECIS were thanked for assisting with a medical student's dissertation on transitioning minors from their biological sex. Antoinette Moore, *Health Related*

Copy from re:SearchTX

*Quality of Life of Transgender Adolescents Undergoing Hormonal Transition or Elective Pubertal Delay*, UT Southwestern (2018), https://tinyurl.com/3y6jwv7y.

42.     Lau's practices, publications, and presentations betrays an entrenched commitment to a gender ideology that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.    VIOLATIONS OF SB 14.

43.     Lau has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.    *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

44.     High dose cross-sex hormones are commonly used by gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

45.     High dose cross-sex hormones are prescribed to induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

46.     As a result of the hormones, the child will develop secondary sex characteristics.

47.     Testosterone is a cross-sex hormone that is prescribed to transition biological females to biological females with irreversible male secondary sex characteristics.

48.     Testosterone is a Schedule III controlled substance.

49.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the World Professional Association of Transgender Health (WPATH) as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and dangerous to trans youth*, NPR (Apr. 29,

10

Copy from re:SearchTX

2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

50.    WPATH recommends that a doctor transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex prescribe enough testosterone to induce the same level that would be present in a biological male. Standards of Care 8, WPATH pg. 110 (2023), https://tinyurl.com/32z3bnhr.

B.    Lau's Testosterone Prescribing

51.    WPATH recommends transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate at 100-200 mg. so as to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, *Standards of Care 8*, WPATH App'x C, https://tinyurl.com/32z3bnhr.

52.    WPATH recommends "induction of male puberty" in a biological female minor by prescribing testosterone esters at "$25mg/m^2/2$ weeks (or alternatively half this dose weekly). Increase by 25 $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*

53.    WPATH alternatively recommends the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." *Id.*

54.    A "testosterone cypionate injection is use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism. Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of

11

Copy from re:SearchTX

secondary sex characteristics. **This medicine is not for use in female patients**."

TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added),

https://tinyurl.com/558b8fcv.

55.      The Federal and Drug Administration warns that testosterone cypionate "**is**

**contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE

CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

56.      Lau has violated the law by providing, prescribing, administering, or dispensing

testosterone to minor patients for the purposes of transitioning their biological sex or affirming

their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[1]

57.      Patient One resides in Collin County, TX.

58.      Patient One was 17 years old during the relevant time.

59.      Lau identifies Patient One as a biological female.

60.      On October 2, 2023, after SB 14 went into effect, Lau wrote Patient One a

prescription for a 14-day supply of 200 mg/ml of testosterone cypionate.

61.      The prescriptions purpose is for transitioning her biological sex or affirming her

belief that her gender identity is inconsistent with her biological sex.

62.      On October 12, 2023, Patient One filled the prescription at a pharmacy located in

Collin County, TX.

63.      Later, Patient One turned 18 years old and, thereafter, Lau continued to provide,

prescribe, administer, or dispense testosterone**.**

---

[1]      Pseudonyms are used throughout to protect the identity of the victim minor patients.

12

Copy from re:SearchTX

64.    The prescriptions purpose is for transitioning her biological sex or affirming her belief that their gender identity is inconsistent with her biological sex.

**Patient Two**

65.    Patient Two resides in Collin County, TX.

66.    Patient Two was 17 years old during the relevant time.

67.    Lau identifies Patient Two as a biological female.

68.    On October 9, 2023, after SB 14 went into effect, Lau wrote Patient Two a prescription for a 90-day supply of 200 mg/ml of testosterone cypionate.

69.    The prescriptions purpose is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

70.    The same day, Patient Two filled the prescription at a pharmacy located in Collin County, TX.

**Patient Three**

71.    Patient Three resides in Denton County, TX.

72.    Patient Three was 17 years old during the relevant time.

73.    Lau identifies Patient Three as a biological male, but upon information and belief, Patient Three may be a biological female.

74.    On August 25, 2023, Lau wrote Patient Three a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

75.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

13

Copy from re:SearchTX

76.     On January 7, 2024, 135-days after the prescription was written and after SB 14 went into effect, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

77.     On February 23, 2024, Lau wrote Patient Three a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate.

78.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

79.     On February 25, 2024, Patient Three filled the prescription at a pharmacy located in Denton County, TX.

80.     Later, Patient Three turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

81.     The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Four**

82.     Patient Four resides in Dallas County, TX.

83.     Patient Four was 16 during the relevant time.

84.     Lau identifies Patient Four as a biological female.

85.     On August 31, 2023, Lau wrote Patient Four two prescriptions for a 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

86.     The prescriptions purposes is for transitioning her biological sex or affirming her belief that her gender identity is inconsistent with her biological sex.

87.     On September 1, 2023, after SB 14 went into effect, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

Appx. 357

Copy from re:SearchTX

88.    On October 28, 2023, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

89.    On March 26, 2024, Lau wrote Patient Four two prescriptions for a 28-day supply of 200 mg/ml of testosterone cypionate.

90.    On March 28, 2024, Patient Four filled the prescription at a pharmacy located in Travis County, TX.

91.    On July 26, 2024, Patient Four refilled the prescription at a pharmacy located in Travis County, TX.

**Patient Five**

92.    Patient Five resides in Collin County, TX.

93.    Patient Five was 16 years old at the relevant time.

94.    Lau identifies Patient Five as a biological male, but upon information and belief, Patient Five may be a biological female.

95.    On August 17, 2023, Lau wrote Patient Five a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription both before and after SB 14 took effect.

96.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

97.    On October 7, 2023, after SB 14 went into effect, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

98.    On November 14, 2023, Lau wrote Patient Five a prescription with five refills for 28-day supplies of 200 mg/ml of testosterone cypionate.

Copy from re:SearchTX

99.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

100.    The same day, Patient Five filled the prescription at a pharmacy located in Collin County, TX.

101.    On December 11, 2023, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

102.    On January 17, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

103.    On March 11, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

104.    On April 12, 2024, Patient Five refilled the prescription at a pharmacy located in Collin County, TX.

105.    On June 21, 2024, Lau wrote Patient Five multiple prescriptions for 22-day supplies of 200 mg/ml of testosterone cypionate.

106.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On June 24, 2024, Patient Five filled the prescription a pharmacy located in Collin County, TX.

108.    On July 13, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

109.    On August 18, 2024, Patient Five refilled the prescription a pharmacy located in Collin County, TX.

Copy from re:SearchTX

Appx. 359

**Patient Six**

110.    Patient Six resides in  Collin County, TX.

111.    Patient Six was 17 years old at the relevant time.

112.    Lau identifies Patient Six as a biological male, but upon information and belief, Patient Six may be a biological female.

113.    On August 30, 2023, Lau wrote Patient Six one prescription with one refill for 84-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

114.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

115.    On October 24, 2023, 55-days after Lau wrote the prescription and after SB 14 went into effect, Patient Six filled the prescription at a pharmacy located in Collin County, TX.

116.    On January 22, 2024, Patient Six refilled the prescription at a pharmacy located in Collin County, TX.

117.    Later, Patient Six turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

118.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Seven**

119.    Patient Seven resided in Wise County, TX.

120.    Patient Seven was 17 at the relevant time.

121.    Lau identifies Patient Seven as a biological female.

Appx. 360

Copy from re:SearchTX

122.    On August 31, 2023, Lau wrote Patient Seven a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

123.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 1, 2023, after SB 14 went into effect, Patient Seven filled the prescription at a pharmacy located in Wise County, TX.

125.    Later, Patient Seven turned 18 years old and, thereafter, Lau continued to provide, prescribe, administer, or dispense testosterone to them.

126.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

**Patient Eight**

127.    Patient Eight resides in Dallas County, TX.

128.    Patient Eight was 16 years old at the relevant time.

129.    Lau identifies Patient Eight as a biological male, but upon information and belief, Patient Eight may be a biological female.

130.    On August 28, 2023, Lau wrote Patient Eight a prescription for a 28-day supply of 200 mg/ml of Depo-testosterone with orders to fill the prescription after SB 14 took effect.

131.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

132.    On October 16, 2023, 61-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

18

Copy from re:SearchTX

Appx. 361

**Patient Nine**

133.    Patient Nine resides in Dallas County, TX.

134.    Patient Nine was 14 years old at the relevant time.

135.    Lau identifies Patient Nine as a male, but upon information and belief, Patient Nine may be a biological female.

136.    On July 5, 2023, Lau wrote Patient Nine a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

137.    The prescriptions purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

138.    On October 27, 2023, 114-days after Lau wrote the prescription and after SB 14 went into effect, Patient Nine filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Ten**

139.    Patient Ten resides in Tarrant County, TX.

140.    Patient Ten was 14 years old at the relevant time.

141.    Lau identifies Patient Ten as a biological female.

142.    On August 29, 2023, Lau wrote Patient Ten two prescriptions for either a 7-day or 28-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

143.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On October 2, 2023, after SB 14 went into effect, Patient Ten filled the prescription at a pharmacy located in Tarrant County, TX.

Copy from re:SearchTX

145.    On November 1, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

146.    On December 4, 2023, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

147.    On January 5, 2024, Patient Ten filled the second prescription at a pharmacy located in Tarrant County, TX.

148.    On February 12, 2024, Patient Ten refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Eleven**

149.    Patient Eleven resides in Kaufman County, TX.

150.    Patient Eleven was 14 years old at the relevant time.

151.    Lau identifies Patient Eleven as a biological female.

152.    On August 29, 2023, Lau wrote Patient Eleven four prescriptions for 28-day supplies of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

153.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On September 5, 2023, after SB 14 went into effect, Patient Eleven filled the prescription at a pharmacy located in Kaufman County, TX.

155.    On October 15, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

Appx. 363

Copy from re:SearchTX

156.    On November 17, 2023, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

157.    On January 7, 2024, Patient Eleven refilled the prescription at a pharmacy located in Kaufman County, TX.

**Patient Twelve**

158.    Patient Twelve resides in Rockwall County, TX.

159.    Patient Twelve was 14 years old at the relevant time.

160.    Lau identifies Patient Twelve as a biological female.

161.    On August 31, 2023, Lau wrote Patient Twelve a prescription for a 90-day supply of testosterone 1.62% Gel Pump with orders to fill the prescription after SB 14 took effect.

162.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On January 19, 2024, 141-days after Lau wrote the prescription and after SB 14 took effect, Patient Twelve filled the prescription at a pharmacy located in Rockwall County, TX.

**Patient Thirteen**

164.    Patient Thirteen resides in Dallas County, TX.

165.    Patient Thirteen was 15 years old at the relevant date.

166.    Lau identifies Patient Thirteen as a biological female.

167.    On July 11, 2023, Lau wrote Patient Thirteen several prescriptions for a 90-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

Copy from re:SearchTX

Appx. 364

168.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On October 13, 2023, 94-days after Lau wrote the prescription and after SB 14 went into effect, Patient Thirteen refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Fourteen**

170.    Patient Fourteen resides in Denton County, TX.

171.    Patient Fourteen was 15 years old at the relevant time.

172.    Lau identifies Patient Fourteen as a biological female.

173.    On August 21, 2023, Lau wrote Patient Fourteen a prescription for a 34-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

174.    The purpose  is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

175.    On October 27, 2023, 67-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fourteen filled the prescription at a pharmacy located in Denton County, TX.

**Patient Fifteen**

176.    Patient Fifteen resides in Dallas County, TX.

177.    Patient Fifteen was 15 years old at the relevant time.

178.    Lau identifies Patient Fifteen as a biological female.

179.    On June 23, 2023, Lau wrote Patient Fifteen a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

180.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 365

Copy from re:SearchTX

181.    On September 11, 2023, 80-days after Lau wrote the prescription and after SB 14 went into effect, Patient Fifteen filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Sixteen**

182.    Patient Sixteen resides in Tarrant County, TX.

183.    Patient Sixteen was 15 years old at the relevant time.

184.    Lau identifies Patient Sixteen as a biological female.

185.    On August 23, 2023, Lau wrote Patient Sixteen a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

186.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

187.    On January 7, 2024, 137-days after Lau wrote the prescription and after SB 14 went into effect, Patient Sixteen filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Seventeen**

188.    Patient Seventeen resides in Potter County, TX.

189.    Patient Seventeen was sixteen years old at the relevant time.

190.    Lau identifies Patient Seventeen as a biological female.

191.    On August 31, 2023, Lau wrote Patient Seventeen a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

192.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

193.    On September 1, 2023, after SB 14 went into effect, Patient Seventeen filled the prescription at a pharmacy located in Potter County, TX.

Copy from re:SearchTX

**Patient Eighteen**

194.    Patient Eighteen resides in Collin County, TX.

195.    Patient Eighteen was 16 years old at the relevant time.

196.    Lau identifies Patient Eighteen as a biological male, but upon information and belief, Patient Eighteen may be a biological female.

197.    On August 24, 2023, Lau wrote Patient Eighteen a prescription for an 80-day supplies of 200 mg/ml of testosterone 12.5 mg/1.25 g with orders to fill the prescription after SB 14 took effect.

198.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

199.    On October 27, 2023, 64-days after Lau wrote the prescription and after SB 14 went into effect, Patient Eighteen filled the prescription at a pharmacy located in Saint Louis County, MO.

**Patient Nineteen**

200.    Patient Nineteen resides in Collin County, TX.

201.    Patient Nineteen was 16 years old at the relevant time.

202.    Lau identifies Patient Nineteen as a biological male, but upon information and belief, Patient Nineteen may be a biological female.

203.    On August 31, 2023, Lau wrote Patient Nineteen a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

204.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

205.    On October 24, 2023, 54- days after Lau wrote the prescription and after SB 14 went into effect, Patient Nineteen filled the prescription at a pharmacy located in Collin County, TX.

**Patient Twenty**

206.    Patient Twenty resides in Dallas County, TX.

207.    Patient Twenty was 17 years old at the relevant time.

208.    Lau identifies Patient Twenty as a biological female.

209.    On August 31, 2023, Lau wrote Patient Twenty a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

210.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

211.    On November 22, 2023, 83-days after Lau wrote the prescription and after SB 14 went into effect, Patient Twenty filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Twenty-One**

212.    Patient Twenty-one resides in Dallas County, TX.

213.    Patient Twenty-one was 17 years old at the relevant time.

214.    Lau identifies Patient Twenty-one as a biological female.

215.    On August 15, 2023, Lau wrote Patient Twenty-one a prescription for a 14-day supply of 200 mg/ml of testosterone cypionate with orders to fill the prescription after SB 14 took effect.

216.    The purpose is for transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 368

Copy from re:SearchTX

217.    On September 10, 2023, after SB 14 went into effect, Patient Twenty-one filled the prescription at a pharmacy located in Dallas County, TX.

218.    Later, Lau identifies the now 18-year-old Patient Twenty-one, as a biological male.

\* \* \*

219.    Paragraphs 58-219 describe 21 minor patients who Lau has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

220.    Some of Lau's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, **all of these patients are biological females** and Lau is prescribing to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex. *See also supra* ¶ 37(i) (Lau admitting that she commonly changes the biological sex of her patients in her medical records).

221.    Lau cannot circumvent SB 14 by writing prescriptions to her patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, see 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Lau is "providing" the

Copy from re:SearchTX

Appx. 369

prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

222.    Each and every prescription written by Lau after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

223.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

224.    Lau, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

225.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

226.    As illustrated in the representative example below, Lau deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that the use of puberty blockers for minor patients are for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

227.    Lau also likely deceptively misled pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions and billing records to indicate the use of Testosterone for minor Patients One through Twenty-one for something other than

Appx. 370

Copy from re:SearchTX

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

228.     Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

229.     As illustrated in the representative example below, Lau deceptively represents that goods or services have approval, characteristics, uses, or benefits which they do not or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have by falsifying patient medical records, prescriptions, and billing records for something other than transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

230.     Texas Bus. & Com. Code § 17.46(b)(24) prohibits "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

231.     As illustrated in the representative example below, Lau deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to indicate that treatments are for something other than transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 371

Copy from re:SearchTX

A.    *Lau uses false diagnoses and billing codes on transgender patients.*

**Patient Twenty-Two**

232.    Patient Twenty-Two, a 15-year-old minor, was first seen by Lau in January 2023.

233.    Lau represented that Twenty-two was identified in the medical records as a male at the time.

234.    Lau falsely billed Patient Twenty-Two's insurance using the diagnostic code for an endocrine disorder, unspecified (E349).

235.    In fact, Lau diagnosed Twenty-two with gender dysphoria and began "treatment" for that condition by prescribing and inserting a puberty blocker device in the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

236.    On August 3, 2023, Lau changed Twenty-two's sex to female in the medical and billing records—further proof that Lau was transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

237.    Less than a week later, Twenty-two met with Lowell, the founder of Queer Med and who exclusively treats transgender patients, *see What We Do*, QueerMed (accessed October 8, 2024), https://tinyurl.com/2rr2ff7e, for a fertility preservation counseling visit.

238.    Lowell used the same false diagnostic billing code for endocrine disorder, unspecified (E349), when she was actually providing treatment to Patient Twenty-Two for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 372

Copy from re:SearchTX

239.    Two weeks later, on August 18, 2023, Twenty-two visited Lau who falsely billed for the removal and reinsertion of a puberty blocker for the treatment of an endocrine disorder, unspecified (E349)—when in fact Lau was using puberty blockers for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

240.    The same day, Twenty-two was seen by a different provider at Children's Medical Center of Dallas who correctly used billing codes for gender identity disorder, unspecified (F649).

241.    Patient Twenty-Two had follow up visits with Lowell of QueerMed in January and March 2024, where her diagnosis was again falsely billed as an endocrine disorder, unspecified (E349).

242.    Thus, even prior to September 1, 2023, and despite other providers correctly diagnosing Twenty-two with gender identity disorder, unspecified (F649), Drs. Lau and Lowell demonstrated a pattern of false, misleading, and deceptive acts by choosing to falsify Patient Twenty-Two's biological sex, medical records, diagnoses, treatment plan, prescriptions, and billing records to conceal that they were transitioning Patient Twenty-Two's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

B.    *Gender dysphoria is not an endocrine disorder.*

243.    "Insurance Coding Alternatives for Trans Healthcare," Campaign for Southern Equality (accessed October 8, 2024), https://tinyurl.com/5ce62v2d, purports to assist healthcare providers with instructions on how to use false billing codes to provide medical treatments for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

30

Appx. 373

Copy from re:SearchTX

244.    The fact sheet claims that it is intended to "assist trans people in advocating for themselves with their healthcare providers and insurance companies" and discusses "insurance codes for trans healthcare that are commonly accepted and rejected." *Id.*

245.    The fact sheet notes certain billing codes that are commonly rejected by insurance providers include the F64 set of codes for gender dysphoria or gender identity disorder. *Id.*

246.    The fact sheet recommends billing for hormone replacement therapy to transition a minor's biological sex as an endocrine disorder, unspecified (E34.9).

247.    Upon information and belief, Lau is using this diagnostic billing code to falsely represent that she's treating patients for an unspecified endocrine disorder, when in fact she is transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex—something that is *not* an endocrine disorder.

248.    An endocrine disorder results from the improper function of the endocrine system.

249.    Children normally enter puberty reflecting their biological sex. There is no disorder at all. Rather, the disorder results when a physician intervenes in a child's natural puberty to induce through puberty blockers and cross-sex hormones a state of puberty naturally occurring in the opposite sex. Such physician *causes a disorder* rather than treats one, by introducing supraphysiological dose of a cross-sex hormone to force a child's body (a biological reality) to fit that child's gender identity (a mental construct).

250.    Here, Lau is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using the endocrine disorder, unspecified, code instead of the F64 gender related diagnosis codes to conceal that she is transitioning their biological sex or affirming

Appx. 374

Copy from re:SearchTX

their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24).

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

251.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

252.    Texas has reason to believe that Lau is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), and believes these proceedings to be in the public interest.

253.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

254.    Cessation of unlawful conduct by Lau shall not render such court action moot under any circumstances. *Id.*

255.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

256.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac.  Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Lau that enjoins her from the following until final resolution of this matter:

> i.    Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex; and
>
> ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false

Copy from re:SearchTX

diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

257.    NOW THEREFORE Texas prays that Lau be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Lau and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24), including but not limited to:

    i.   Prescribing supraphysiologic doses of testosterone and estrogen to minors for the purpose of transitioning their biological sex;

    ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for treatments to transition a child's biological sex under false diagnoses, such as endocrine disorder, unspecified, rather than gender dysphoria (or other similarly related diagnosis).

258.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.   Adjudge against Lau civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17. 46(a), (b)(5), (24);

    ii.   Order Lau to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.   Order Lau to pay both pre-judgment ad post-judgment interest on all money awards as provided by law; and

    iv.   Grant all other and further relief Texas may show itself entitled to.

Appx. 376

Copy from re:SearchTX

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301
**ATTORNEYS FOR TEXAS**

34

Copy from re:SearchTX

## <u>DECLARATION</u>

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Texas Rule of Civil Procedure 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 17th day of October, 2024.


*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

35

Copy from re:SearchTX

Appx. 378

# EXHIBIT 10

Appx. 379

Filed: 11/4/2024 10:03 AM
Mischell Goulet
District Clerk
Collin County, Texas
By Jessica Peltier Deputy
Envelope ID: 93879102

493-08026-2024

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>*Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | COLLIN COUNTY, TEXAS |
| M. BRETT COOPER, M.D.,<br>*Defendant.* | §<br>§<br>§ | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS[1]

Defendant, M. BRETT COOPER, M.D., is a scofflaw who is harming the health and safety of Texas children by providing cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3), and falsifying medical records, prescriptions, and billing records to intentionally conceal the unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).[2]

Cross-sex hormones, when used for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex, interfere with a child's normal physical development and result in long-term harm to the child, including *inter alia,* sterilization, loss of bone density, and the development of irreversible secondary opposite sex characteristics. Children, by definition, lack the cognitive maturity to

---

[1]    Pursuant to Local Rule 2.3, the State hereby notifies the district clerk that this litigation involves claims and parties related to the pending litigation, *State of Texas v. Lau,* Case No. 493-07676-2024 (493rd Dist. Ct., Collin County); therefore, the State requests that this matter be assigned and/or transferred to that court for future proceedings.

[2]    Each prescription for cross-sex hormones for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex also serves as an independent ground for the Texas Medical Board to revoke Cooper's medical license under Tex. Occ. Code §§ 164.052(a)(24), .0552.

Appx. 380

provide informed consent/assent to these harmful and irreversible, life-altering decisions. Therefore, the Texas legislature chose to prohibit physicians and health care providers from providing, prescribing, administering, or dispensing puberty blockers and cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex. By banning these dangerous and experimental treatments for minors, Texas is ensuring that children receive the opportunity to resolve temporary feelings of discomfort and confusion about their biological sex with time and therapeutic support—without being pressured by radical gender activists to undergo irreversible medical procedures before they are capable of comprehending the significant life-long consequences. The prohibition took effect on September 1, 2023.

Despite the enactment of the law, Cooper continues to prescribe and distribute cross-sex hormones to his minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex—writing unlawful prescriptions for the drugs as recently as **September 25, 2024,** with patients filling those unlawful prescriptions as recently as **October 8, 2024**.

Cooper, additionally, engaged in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to conceal that his treatments and prescriptions were for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5).

Appx. 381

Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, has a vested interest in ensuring that medical treatments provided to minors are safe, evidence-based, and in the best interest of the child's physical and emotional development. Texas is prioritizing the safety and well-being of children by holding Cooper accountable for violating state laws prohibiting deceptive trade practices and providing cross-sex hormones to minors for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex.

## I.    PARTIES

1.    Defendant is M. BRETT COOPER, M.D. (NPI# 1477819241; TX Lic.# Q4928), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. He has hospital privileges at Children's Medical Center Dallas and is an Associate Professor at UT Southwestern Medical Center. Cooper may be served with process at Children's Health Specialty Center, 7609 Preston Road, 3rd Floor, Plano, Texas 75024, or wherever he may be found.

## II.    DISCOVERY CONTROL PLAN

2.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

3.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

3

### III.    JURISDICTION AND VENUE

4.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

5.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas. Also, Cooper practices at UT Southwestern Pediatric Group at Plano in Collin County and Cooper's unlawful conduct occurred in Collin County, Texas.

### IV.    PUBLIC INTEREST

6.    Cooper violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

7.    Texas has reason to believe that Cooper is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Cooper has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore, the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

### V.    TRADE AND COMMERCE

8.    At all times described below, Cooper engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

Appx. 383

## VI.    NO NOTICE BEFORE SUIT

9.    The Consumer Protection Division has reason to believe that Cooper "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

10.    The Consumer Protection Division did not contact Cooper before filing suit to notify him "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Cooper likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.    APPLICABLE LAW

11.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

12.    Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

## VIII.    FACTUAL BACKGROUND

A.    *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

13.    On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *State v. Loe*, 692 S.W.3d 223 (Tex. 2024).

Appx. 384

14.    Senate Bill 14 prohibits physicians and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

15.    The effective date for SB 14 was September 1, 2023.

16.    Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

17.    Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

18.    Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

Appx. 385

19.     Finally, SB 14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.     *The Texas Supreme Court Held That SB 14 is Constitutional.*

20.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

21.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

22.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

23.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

24.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.     *Cooper is a Radical Gender Activist.*

25.     In his own words, Cooper makes clear that he is an advocate for transitioning the biological sex or affirming their belief that children's gender identities are inconsistent with their biological sex.

26.     Cooper said, in a Physicians for Reproductive Health *Meet Our Advocates* article: "I try to actively encourage all of our [physician] trainees to find some way to incorporate advocacy

Appx. 386

into their professional careers." Cooper added that the most important policy issue for him is "[l]egislators trying to criminalize the provision of gender affirming medical care for patients under 18." https://tinyurl.com/4bj646e6, last updated December 22, 2020.

27.     Here, Cooper's following contributions align with his call for activism:

  i.     M. Brett Cooper, Resources for LGBTQ youth during challenging times, (Feb. 14, 2023), https://tinyurl.com/yck9f2y7;

  ii.     M. Brett Cooper, *Incorporating LGBT Health in an Undergraduate Medical Education Curriculum Through the Construct of Social Determinants of Health*, 14 MedEdPORTAL (Dec. 7, 2018) (power point presentation slides include statements that "our internal gender identity is essentially formed and stays consistent by the age of 7," and falsely claiming that Texas physicians "are required to notify CPS for all minors who have sex with someone of the same gender."), https://tinyurl.com/3a7c8nrs;

  iii.     Laura E. Kuper, *Supporting and Advocating for Transgender and Gender Diverse Youth and their Families Within the Sociopolitical Context of Widespread Discriminatory Legislation and Politics*, Clinical Practice in Pediatric Psychology 3, 336 (2022), https://tinyurl.com/bdabj3ra;

  iv.     Lauren T. Roth, *Developing an Entrustable Professional Activity to Improve the Care of LGBTQ+ Youth* 23 Academic Pediatrics. 4, 697 (May 1, 2023), https://tinyurl.com/56bk9hdz;

  v.     M. Brett Cooper, *Welcoming LGBTQ Patients*, Pediatric News (Apr. 17, 2024), https://tinyurl.com/3vyxr9ae;

  vi.     M. Brett Cooper, *LGBTQ+ Youth Consult Questions remain over use of sex hormone therapy*, Pediatric News (Apr. 13, 2023), https://tinyurl.com/54yecjdd;

  vii.     M. Brett Cooper, *The WPATH guidelines for treatment of adolescents with gender dysphoria have changed*, Pediatric News (Oct. 17, 2022), https://tinyurl.com/53txa22h;

  viii.     M. Brett Cooper, *How gender-affirming care is provided to adolescents in the United States*, Pediatric News (Apr. 22, 2022), https://tinyurl.com/3yv3n6nj;

8

ix.    M. Brett Cooper, *Call them by their names in your office*, Pediatric News (Oct. 14, 2021), https://tinyurl.com/2swpe6vf;

x.    M. Brett Cooper, *Advocate for legislation to improve, protect LGBTQ lives*, Pediatric News (Dec. 11, 2020), https://tinyurl.com/zruxkhmf;

xi.    M. Brett Cooper, *Back to school: How pediatricians can help LGBTQ youth*, Pediatric News (Aug. 11, 2020), https://tinyurl.com/36wf2xyy;

xii.    Cooper submitted a sworn affidavit on behalf of the Plaintiffs in the *Loe* suit wherein he stated that "SB 14 thus not only endangers the health and wellbeing of my patients, but also places me in the unsustainable position of having to choose between providing my patients with the medical care that they need and deserve and having to comply with a discriminatory law like SB 14. I have an ethical duty to provide my patients with the best medical care for their conditions, if it is medically indicated for them. I consider the provision of gender-affirming medical care to treat a transgender adolescent's gender dysphoria to be the best medical care for my patients when medically indicated"; and,

xiii.    Cooper is also prolific on X under the handle "TeenDocMBC." His presence on X reveals that he infuses his medical practice with radical gender activism and exercises poor judgment, as exemplified by the following set of representative tweets:



 **M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                                          ...

Today is a sad day for transgender Texans.   Yet again, the #txlege inserts
themselves in the doctor-patient relationship, not because of science,
but because of political ideology. This is despite testimony of physicians
and major medical organizations.
cnn.com/2023/08/31/pol…

2:25 PM · Sep 1, 2023 · **201** Views

💬            🔁            ♡ 1            🔖            📤

 **M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                                          ...

Perhaps Ken Paxton needs to worry about his own problems in Texas
and stop trying to patrol people's bodies and healthcare across the
country....


> dallasnews.com
> Texas AG Ken Paxton seeks gender-affirming care records fr...
> In the complaint, the Seattle hospital argues Texas
> authorities don't have jurisdiction over these Washington ...

12:39 PM · Dec 22, 2023 · **72** Views

 **M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                                          ...

Honored to be a part of this story.  TX is losing doctors each year (and
having trouble recruiting new ones) due to the regressive policies of our
state government.  The Lege doesn't belong in the doctor-patient
relationship #patientsoverpolitics @texmed


"Unbearable": Doctors treating trans kids are leaving Texas, exacerba...
From texastribune.org

8:24 PM · Jul 18, 2023 · **519** Views

10

Appx. 389

28.     Cooper's practices, publications, and social media presence reveal an entrenched commitment to a gender ideology advocacy that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.     VIOLATIONS OF SB 14.

29.     Cooper has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.     *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

30.     High dose cross-sex hormones are commonly used by certain gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

31.     Cross-sex hormones induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

32.     As a result of the cross-sex hormones, the child will develop secondary sex characteristics.

33.     Testosterone is a cross-sex hormone that is used to induce irreversible male secondary sex characteristics in biological females.

34.     Testosterone is a Schedule III controlled substance.

35.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the WPATH as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and*

11

Appx. 390

*dangerous to trans youth*, NPR (Apr. 29, 2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

36.    WPATH recommends transitioning the biological sex of a child or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, WPATH SOC at App'x C.

37.    WPATH and the Endocrine Society Guidelines recommends "induction of male puberty" in a biological female minor by prescribing "$25mg/m^2/2$ weeks (or alternatively half this dose weekly) [of testosterone]. Increase by $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*; Endocrine Society Guidelines at 3884, Tbl. 8 (same).

38.    WPATH and the Endocrine Society Guidelines alternatively recommend the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." WPATH SOC at App'x C; Endocrine Society Guidelines at 3887, Tbl. 11 (same).

B.    *Testosterone is not FDA approved for biological females.*

39.    The FDA has *not approved* testosterone for the treatment of any medical conditions in biological females.

40.    Indeed, the FDA warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

41.    Under appropriate medical practices, testosterone is, instead, "use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism.

12

Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

42.     **There is no valid medical reason within the standard of care to prescribe testosterone to a minor biological female.** *See e.g.*, Gary Donovitz, *et.al.*, *Testosterone Insufficiency and Treatment in Women: International Expert Consensus*, Medicina y Salud Pública (Sept. 4, 2019) (noting that some physicians use *low-dose* testosterone off-label to treat certain conditions in *adult* females associated with menopause), https://tinyurl.com/2ay9wsav.

43.     **The only reasons to prescribe testosterone to a minor biological female is for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex**.

C.     *Cooper's Testosterone Prescribing*

44.     Radical gender activists in the medical profession, like Cooper, habitually alter the biological sex of their transgender patients in their medical records. *See e.g.*, May C. Lau, M.D., *Transgender Care of Adolescents and Adults*, Youtube 20:59-22:40 (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 (Cooper's hospital colleague doctor May C. Lau admitting that she alters patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her minor transgender patients).

Appx. 392

45.   Cooper has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[3]

46.   Patient One resides in Collin County, TX.

47.   Patient One was 17 years old during the relevant time.

48.   Cooper's records identify Patient One as a biological female.

49.   On September 25, 2024, over a year after SB 14 went into effect, Cooper wrote Patient One a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

50.   The same day, Patient One filled the prescription at a pharmacy located in Collin County, TX.

**Patient Two**

55.   Patient Two resides in Dallas County, TX.

56.   Patient Two was approximately 16 years old at the relevant time.

57.   Cooper's records identify Patient Two as a biological female.

58.   On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Two a prescription for a 7-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

---

[3]   Pseudonyms are used throughout to protect the identity of the victim minor patients.

Appx. 393

59.     On the same day, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

60.     On December 16, 2023, Cooper wrote Patient Two a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

61.     On December 16, 2023, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

62.     On February 20, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

63.     On March 26, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

64.     On June 1, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Three**

65.     Patient Three resides in Tarrant County, TX.

66.     Patient Three was 16 years old at the relevant time.

67.     Cooper's records identify Patient Three as a biological female.

68.     On August 6, 2024, after SB 14 went into effect, Cooper wrote Patient Three a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 394

69.     On August 8, 2024, Patient Three filled the prescription at a pharmacy located in Tarrant County, TX.

70.     On September 18, 2024, Patient Three refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Four**

71.     Patient Four resides in Dallas County, TX.

72.     Patient Four was 16 years old at the relevant time.

73.     Cooper's records identify Patient Four as a biological female.

74.     On February 12, 2024, after SB 14 went into effect, Cooper wrote Patient Four a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

75.     On the same day, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

76.     On August 7, 2024, Cooper wrote Patient Four a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

77.     On August 7, 2024, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Five**

78.     Patient Five resides in Denton County, TX.

79.     Patient Five was approximately 15 years old at the relevant time.

16

80.     Cooper's records identify Patient Five as a biological female.

81.     On November 20, 2023, Cooper wrote Patient Five a prescription for a 24-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

82.     On December 13, 2023, Patient Five filled the prescription at a pharmacy located in Denton County, TX.

83.     On January 25, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

84.     On February 29, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

85.     On May 5, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

86.     On May 20, 2024, Cooper wrote Patient Five a 90-day supply of 1,000 mg/5 ml testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

87.     On May 22, 2024, Patient Five filled the prescription at a pharmacy in Denton County, TX.

**Patient Six**

88.     Patient Six resides in Nueces County, TX.

89.     Patient Six was 14 years old at the relevant time.

90.     Cooper's records identify Patient Six as a biological female.

17

Appx. 396

91.    On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Six a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

92.    On the same day, Patient Six filled the prescription at a pharmacy located in Johnson County, TX.

93.    On January 12, 2024, Patient Six refilled the prescription at a pharmacy located in Johnson County, TX.

**Patient Seven**

94.    Patient Seven resides in Collin County, TX.

95.    Patient Seven was 17 during the relevant time.

96.    Some of Cooper's records identify Patient Seven's gender as "unknown."

97.    Some of Cooper's records identify Patient Seven as a biological female.

98.    On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Seven a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

99.    On September 26, 2023, Patient Seven filled the prescription at a pharmacy located in Illinois.

100.    On January 29, 2024, Cooper wrote Patient Seven a prescription for an 87-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

101.    On the same day, Patient Seven filled the prescription at a pharmacy located in Collin County, TX.

**Patient Eight**

102.    Patient Eight resides in Dallas County, TX.

103.    Patient Eight was approximately 17 years old during the relevant time.

104.    Some of Cooper's record's identify Patient Eight as a biological female.

105.    Later, Cooper's records change Patient Eight's sex to biological male, but upon information and belief, Patient Eight is a biological female.

106.    On January 10, 2024, after SB 14 went into effect, Cooper wrote Patient Eight two prescriptions, each for a 14-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On January 10, 2024, Patient Eight filled the first prescription at a pharmacy located in Dallas County, TX.

108.    On March 6, 2024, after SB 14 went into effect, Patient Eight filled the second prescription at a pharmacy located in Dallas County, TX.

109.    On August 31, 2024, Cooper wrote Patient Eight a prescription for a 42-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

110.    On the same day, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

111.    Patient Nine resides in Collin County, TX.

112.    Patient Nine was approximately 16 years old at the relevant time.

113.    Some of Cooper's record's identify Patient Nine as a biological female.

114.    Later, Cooper's records change Patient Nine's sex to biological male, but upon information and belief, Patient Eight is a biological female.

115.    On December 22, 2023, after SB 14 went into effect, Cooper wrote Patient Nine two prescriptions, each for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

116.    On the same day, Patient Nine filled the first prescription at a pharmacy located in Collin County, TX.

117.    On May 7, 2024, Patient Nine filled the second prescription at a pharmacy located in Collin County, TX.

118.    On July 3, 2024, Cooper wrote Patient Nine two prescriptions, each for an 84 and 63-day supply of 200 mg/ml testosterone cypionate, respectively, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

119.    On August 3, 2024, Patient Nine filled the first prescription at a pharmacy in Collin County, TX.

120.    On August 5, 2024, Patient Nine filled the second prescription at a pharmacy in Collin County, TX.

Appx. 399

**Patient Ten**

120.    Patient Ten resides in Collin County, TX.

121.    Patient Ten was 16 years old at the relevant time.

122.    Cooper's records identify Patient Ten as a biological male, but upon information and belief, Patient Ten is a biological female.

123.    On September 6, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 30-day supply of 1,000 mg/5ml of testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 7, 2023 Patient Ten filled the prescription at a pharmacy located in Collin County, TX.

125.    On December 15, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 90-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

126.    On the same day, Patient Ten filled the prescription at a pharmacy in Collin County, TX.

127.    On June 7, 2024, Cooper wrote Patient Ten a prescription for a supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

128.    On the same day, Patient Ten filled an 84-day supply of the prescription at a pharmacy in Collin County, TX.

21

129.    On October 8, 2024, Patient Ten refilled a 28-day supply of the prescription at a pharmacy in Collin County, TX.

**Patient Eleven**

130.    Patient Eleven resides in Tarrant County, TX.

131.    Patient Eleven was 17 years old during the relevant time.

132.    Cooper's records identify Patient Eleven as a biological male, but upon information and belief, Patient Eleven is a biological female.

133.    On December 18, 2023, after SB 14 went into effect, Cooper wrote Patient Eleven a prescription for a 28-day supply of XYOSTED 50 mg/0.5 ml Auto-Injection of testosterone enanthate, an alternative to testosterone cypionate, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

134.    On December 20, 2023, Patient Eleven filled the prescription at a pharmacy located in Tarrant County, TX.

135.    On January 19, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

136.    On February 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

137.    On March 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

138.    On April 22, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

139.    On May 24, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Twelve**

140.    Patient Twelve resides in Tarrant County, TX.

141.    Patient Twelve was 16 years old at the relevant time.

142.    Cooper's records identify Patient Twelve as a biological male, but upon information and belief, Patient Twelve is a biological female.

143.    On February 26, 2024, after SB 14 went into effect, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On February 26, 2024, Patient Twelve filled the prescription at a pharmacy in Tarrant County, TX.

145.    On April 17, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

146.    On May 29, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

147.    On July 15, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

148.    On August 7, 2024, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Appx. 402

149.    On the same day, Patient Twelve filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Thirteen**

150.    Patient Thirteen resides in Denton County, TX.

151.    Patient Thirteen was 17 years old at the relevant time.

152.    Cooper's records identify Patient Thirteen as a biological male, but upon information and belief, Patient Thirteen is a biological female.

153.    On March 19, 2024, after SB 14 went into effect, Cooper wrote Patient Thirteen a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On the same day, Patient Thirteen filled the prescription at a pharmacy located in Denton County, TX.

155.    On April 19, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

156.    On May 14, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

157.    On July 10, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

158.    On August 11, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

**Patient Fourteen**

159.    Patient Fourteen resides in Collin County, TX.

160.    Patient Fourteen was approximately 15 years old at the relevant time.

161.    Cooper's records identify Patient Fourteen as a biological male, but upon information and belief, Patient Fourteen is a biological female.

162.    On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Fourteen two prescriptions, each for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

164.    On November 17, 2023, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

165.    On December 28, 2023, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

166.    On January 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

167.    On February 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

168.    On April 8, 2024, Cooper wrote Patient Fourteen three prescriptions, the first was for a 30-day supply and the second and third were for a 7-day supply of 200 mg/ml of testosterone

25

cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

170.    On May 24, 2024, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

171.    On June 29, 2024, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

172.    On August 2, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

173.    On September 1, 2024, Patient Fourteen filled the third prescription at a pharmacy located in Collin County, TX.

174.    On October 2, 2024, Patient Fourteen refilled the third prescription at a pharmacy located in Collin County, TX.

**Patient Fifteen**

175.    Patient Fifteen resides in Collin County, TX.

176.    Patient Fifteen was approximately 16 years old at the relevant time.

177.    Cooper's records identify Patient Fifteen as a biological male, but upon information and belief, Patient Fifteen is a biological female.

178.    On October 22, 2023, after SB 14 went into effect, Cooper wrote Patient Fifteen a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of

Appx. 405

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

179.    On October 23, 2023, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

180.    On January 14, 2024, Patient Fifteen refilled the prescription at a pharmacy in Collin County, TX.

181.    On April 9, 2024, Cooper wrote Patient Fifteen a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

182.    On the same day, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

* * *

183.    Paragraphs 46-182 describe 15 minor patients who Cooper has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

184.    Some of Cooper's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, all of these patients are biological females and some of Cooper's medical records indicate that the patient's sex has been recorded first as female and then as male. The result is a clear indication that Cooper is prescribing testosterone to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

27

185.    Each of Cooper's prescriptions above were written and filled after SB 14 went into effect. Even so, for any prescriptions that were written prior to SB 14, Cooper cannot circumvent the law by writing prescriptions to his patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, *see* 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Cooper is "providing" the prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

186.    Each and every prescription written by Cooper after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

187.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

188.    According to gender dysphoria providers, many insurance companies will not accept transgender related billing codes when coupled with prescriptions for testosterone because testosterone is not Federal and Drug Administration ("FDA") approved for use in the treatment

28

of gender dysphoria for minors. *See e.g.*, Stephen Rosenthal, *Insurance Coverage and Coding Considerations in Gender Affirming Hormonal Care for Adolescents & Young Adults*, WPATH ppt 12 (Jul. 28, 2021), https://tinyurl.com/4vycb29r.

189.    Upon information and belief, Cooper regarded Patients One through Fifteen as transgender patients and he evaluated, diagnosed, and treated them for gender dysphoria, while falsely, misleadingly, and deceptively, diagnosing, billing, and prescribing testosterone for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

190.    Cooper is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using precocious puberty or endocrine disorder, undefined codes, or similarly false codes, instead of gender dysphoria, or other gender related diagnosis codes,[4] to conceal that he is prescribing testosterone and treating the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

191.    Cooper, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

192.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

---

[4]    The *International Classification of Diseases, 10th Revision's* medical classification for gender identity disorders includes the following diagnosis codes: F64.0 Transsexualism, including other gender identity disorder and gender dysphoria in adolescents and adults; F64.1 Dual role transvestism; F64.2 Gender identity disorder of childhood; F64.8 Other gender identity disorders; and F64.9 Gender identity disorder, unspecified.

193.    Cooper deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that office visits and prescriptions written to minor patients are for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

194.    Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

195.    Cooper deceptively misleads pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate the use of testosterone are for the treatment of medical conditions the patient does not have when, in fact, the drugs are for the purposes of transitioning the minor patient's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

196.    Cooper deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to conceal that the treatments and prescriptions are for the unlawful purposes of transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

197.    Upon information in belief, Roberts is falsely diagnosing children with precocious puberty and/or other medical conditions to prescribe them puberty blockers and cross-sex

30

hormones for the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

197.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

198.    Texas has reason to believe that Cooper is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), and believes these proceedings to be in the public interest.

199.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

200.    Cessation of unlawful conduct by Cooper shall not render such court action moot under any circumstances. *Id.*

201.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

202.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac. Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Cooper that enjoins him from the following until final resolution of this matter:

> i.    Prescribing puberty blockers and testosterone or estrogen to minors for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

> ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or

Appx. 410

affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

203.    THEREFORE Texas prays that Cooper be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Cooper and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17.46(a), (b)(5), including but not limited to:

    i.    Prescribing puberty blockers and testosterone or estrogen to minors for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

    ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

204.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.    Adjudge against Cooper civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17.46(a), (b)(5);

    ii.    Order Cooper to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.    Order Cooper to pay both pre-judgment and post-judgment interest on all money awards as provided by law; and

    iv.    Grant all other and further relief Texas may show itself entitled to.

Appx. 411

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301

**ATTORNEYS FOR TEXAS**

## **DECLARATION**

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Tex. R. Civ. P. 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 4th day of November 2024.


*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

34

# EXHIBIT 11

FILED
5/19/2025 5:20 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Phyllis Vaughn DEPUTY

Case 5:24-cv-00204-H    Document 59    Filed 06/10/25    Page 166 of 318    PageID 5515

DC-25-07984

**Cause No. _____**

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4,<br>Nonparty Patient No. 5, and<br>Nonparty Patient No. 6,<br><br>        Petitioners-Movants,<br><br>    vs.<br><br>The State of Texas,<br><br>        Respondent. | IN THE DISTRICT COURT OF<br><br>DALLAS COUNTY, TEXAS<br>193rd<br>____ JUDICIAL DISTRICT |

## PETITION FOR MOTION FOR PROTECTION
## FROM PHARMACY DISCOVERY SUBPOENAS

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move

for protection from a discovery subpoena ("Subpoena") that the State of Texas served on CVS

Pharmacy (the "Pharmacy"). Ex. A. This Petition is related to a pending case in the 95th Judicial

District about discovery requests from the State in the same underlying litigation. *Nonparty Patient*

*No. 1 et al. v. State*, No. DC-25-02658. The Nonparty Patients would respectfully show as follows:

### I.    INTRODUCTION

1.      The State has brought a lawsuit in the 493rd Judicial District in Collin County,

Texas (the "Cooper Litigation"), alleging, among other things, that Dr. M. Brett Cooper violated

provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by

---

[1] Pursuant to the Collin County District Court's Protective Order§ III(F) (attached as Exhibit B), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C at ¶ 4. Consistent with the Protective Order, the Nonparty Patients may be identified in camera or as otherwise ordered by the Court. *Id.*

providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 29. On Friday, April 28, 2025, the State served a Subpoena in Dallas County on the Pharmacy, demanding medical records (e.g., prescription records, pharmacists' notes, and communications about patient care) for 7 individuals, including the Nonparty Patients. Ex. A at 6–7. The State did not properly serve notice of this Subpoena on the Nonparty Patients, despite a clear obligation to do so under the Texas Rules of Civil Procedure. *See, e.g.*, Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

2.      The Nonparty Patients' materials fall within the scope of the State's subpoenas, such as pharmacists' notes, prescription records, and communications about patients' medical treatments are privileged under Texas law. *See, e.g.*, 31 Tex. Admin. Code § 201.1 (2005) (reciting that pharmacy records "are privileged"); Tex. R. Evid. 509; Tex. R. Evid. 510. The Nonparty Patients also enjoy a right to privacy for their private health information under U.S. and Texas law that must be balanced against any potential production. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977) (describing "constitutionally protected 'zone of privacy'" regarding the "disclosure of personal matters"); *James v. Kloos*, 75 S.W.3d 153, 157 (Tex. App.—Fort Worth 2002, no pet.) ("Texas courts have recognized that the medical records of an individual are within the zone of privacy protected by the United States Constitution. Likewise, the Texas Constitution has been construed to recognize an individual's right to privacy.").

3.      These privileges acknowledge, among other things, that meaningful healthcare requires allowing patients to talk freely with their doctors and pharmacists on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g., R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full

2

communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information.").

4.    Moreover, Federal law requires that when the State seeks private health information "potentially related" to reproductive healthcare it must provide an attestation that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *see also* Def.'s Resp. to Court's May 5, 2025, Order, *Purl v. U.S. Dep't Health Hum. Servs.*, No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that requirement remains in effect). Such prohibited use includes, "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; or "to identify any person" for those purposes. 45 CFR § 164.502. Upon information and belief, the State has refused to provide this attestation.

5.    The Nonparty Patients have thus filed this Motion in Dallas County, where the Subpoenas were served, seeking (1) to quash the subpoena for failure to serve notice on the Nonparty Patients, or (2) a protective order protecting against an overbroad production and giving the Nonparty Patients a reasonable opportunity to review any proposed production and withhold or redact documents (e.g., for privilege or relevance), as appropriate.

## II.    JURISDICTION

6.    The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) . . . in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Cooper Litigation but are each a patient about whom the State has sought medical records and other information from the Pharmacy in the Subpoenas. The Nonparty Patients thus have standing to seek "an order protecting [the Nonparty

3

Patients] from the discovery sought" because each is "a person affected by the subpoena." Tex. R. Civ. P. 176.6(e); Tex. R. Civ. P. 192.6(a). Upon information and belief, the Pharmacy was served the Subpoena in Dallas County. Ex. A at 1 (directing summons to "CVS Pharmacy c/o C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201").

      7.     If the State asserts it enjoys sovereign immunity from the Nonparty Patients' petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC*, 2025 WL 258715 (Tex. App.—Austin [15th Dist.], Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule").

      8.     The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("[W]here the Legislature has given no indication

4

to the contrary the State must abide by the same rules to which private litigants are beholden");
*see also id.* (Boyd, J., concurring) ("Although the State enjoys unique immunities, it is subject to
[procedural rules] as any other litigant." (citing *Lowe*, 540 S.W.2d at 301)).

9.       Furthermore, sovereign immunity is an inapplicable framework because its primary
justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay
litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo
Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patients do
not seek an entry of a money judgment against the State. They simply seek the protection of their
health records. Moreover, a Court in this District has already rejected the same arguments from the
State in a related case (*see* May 6, 2025, Order, *Nonparty Patient No. 1 et al. v. State*, No. DC-25-
02658 (Tex. Dist. Ct.—Dallas [95th Dist.]), from which the State has filed an interlocutory appeal
(*State v. Nonparty Patients Nos. 1–11*, Case No. 15-25-00023-CV (Tex. App.—Austin [15th
Dist.])).

### III.       BACKGROUND

10.       In the Cooper Litigation, the State's allegations largely center on Dr. Cooper's
purported prescription of medicines to teenage patients, including testosterone. Ex. D ¶ 45. The
State alleges that such care became unlawful under SB14 on September 1, 2023. *Id.* ¶¶ 23, 186.
The State also alleges that Dr. Cooper engaged in false, misleading, or deceptive practices after or
around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients
into believing that the patients' testosterone treatments were for purposes other than gender-
affirming care to circumvent the restrictions in SB14. *Id.* ¶¶ 188-97.

11.       On April 28, 2025, the State served the Subpoena on CVS. Ex. A. Among other
things, the Subpoena requests "pharmacy records, controlled substance records, pharmacist notes,
prescription records, and billing records" for the Nonparty Patients. Ex. A at 5-6. However, the

5

Subpoena includes no instructions that would provide the Nonparty Patients an opportunity to review the documents prior to production and withhold or redact materials that contain superfluous or privileged information that does not fall within the scope of an exception to the Nonparty Patients' privileges and rights.

## IV.   INSUFFICIENT SERVICE

12.   Before issuing the Subpoena to the Pharmacy, the State was required to **serve** notice of the subpoena in the manner described under Rule 205.2. Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

13.   In sum, the Texas Rules of Civil Procedure require that the State adhere to the following protocol for serving subpoenas on producing nonparties (here, the Pharmacy) and interested nonparties (here, the Nonparty Patients):

a.   First, the State must serve a *notice* on the producing nonparty. That notice informs the producing nonparty that a *forthcoming* subpoena will arrive. *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served . . . before the subpoena compelling production is served."); *see also* Tex. R. Civ. P. 205.3(a) (acknowledging a notice of a forthcoming subpoena and a subpoena are distinct documents that must each be served). This notice not only informs the producing nonparty that a subpoena will arrive at a later date, but it also specifies the time for production and what documents the State seeks. Tex. R. Civ. P. 205.3(b).

b.   The State must also serve this same notice on nonparties whose medical or mental health records are implicated (here, the Nonparty Patients). Tex. R. Civ. P. 205.3(c).

c.   After serving notice, the State must wait 10 days before serving the subpoenas on the producing nonparty (here, the Pharmacy). *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served 10 days before the subpoena compelling production is served.").

d.   What is more, Texas law requires that service be done in a specific fashion: A state sheriff, state constable, or a person who is over 18 years of age and not involved in the lawsuit must personally deliver the applicable documents to the nonparty. Tex. R. Civ. P. 176.5(a).

6

e. To prove the State perfected service, the State must file one of two documents: (1) either a signed written memorandum from the recipient, in which the recipient confirms service, or (2) a statement from the person serving the document. Tex. R. Civ. P. 176.5(b). A statement under the second method must include the date, time, and manner of personal service, as well as the name of the recipient.

f. Texas does not allow the State to pursue alternative forms of service on nonparties. *See In re Berry*, 578 S.W.3d 173, 179 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

14. *In re Berry* demonstrates the operation of these rules. 578 S.W.3d 173 (Tex. App.—Corpus-Christi-Edinburg 2019, no pet.). There, the plaintiff filed a motion for substituted service of a nonparty after four unsuccessful attempts to personally serve a subpoena at his residence. *Id.* at 175–76. In support of the motion, the plaintiff relied on Texas Rule of Civil Procedure 106, which governs service of citation. *Id.* at 175. The trial court granted the motion, authorizing service by leaving a copy of the documents with someone over the age of 16 at the nonparty's residence or attaching a subpoena to his front door. *Id.* at 177. The court of appeals conditionally granted the petition for mandamus that followed, holding that "the Texas Rules of Civil Procedure do not authorize this procedure for discovery from a nonparty witness." *Id.* at 175.

15. The court of appeals rejected the plaintiff's reliance on Rule 106 and looked to Rules 176.5 and 205 instead. *Id.* at 179–80. The court reasoned that Rule 106 is located in Section 5 of the Texas Rules of Civil Procedure, and by its terms applies only to service of citation, while Rule 205 "governs discovery from nonparties." *Id.* at 179; *Zanchi v. Lane*, 408 S.W.3d 373, 380 (Tex. 2013) (holding that "Rule 106 by its terms applies solely to service of citation"). The court emphasized that "the Texas Rules of Civil Procedure generally treat nonparties differently from parties or those subject to a party's control . . . Nonparty witnesses stand in a different position before the court than do parties to the litigation, over whom the court has both personal and subject

7

matter jurisdiction." *Id*. at 180.

16.    Here, the State issued subpoenas to the Pharmacy seeking medical records of the Nonparty Patients, and the State was therefore required to serve the Nonparty Patients, via personal service, with notice as required by Rules. The State failed to do so. Its Subpoena should be quashed. *See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

## V.    ARGUMENT AND AUTHORITIES

17.    If the Court does not quash the Subpoena, the Court should enter a protective order providing the Nonparty Patients with an opportunity to review, and if necessary, redact or withhold, materials responsive to the Subpoena. As written, the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under 31 Tex. Admin. Code § 201.1, the Physician-Patient Privilege (Tex. R. Evid. 509), the Mental Health Information Privilege (Tex. R. Evid. 510), and the Nonparty Patients' rights to privacy under the U.S. and Texas Constitutions. Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192, cmt. 7.

18.    Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

8

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(l).

19.     It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Documents relating to the care and treatment of the Nonparty Patients, such as prescription records, pharmacy notes, and communications between the Nonparty Patients' doctors and pharmacy, will necessarily include confidential communications between the Nonparty Patients and their physicians and/or professionals, along with records of the Nonparty Patients' identities, diagnoses, evaluations, and treatments that were created or maintained in the course of physical or mental health care. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at \*4 (Tex. App. Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus when district court ordered production of mental health records).

20.     The Nonparty Patients therefore respectfully request an opportunity to review any proposed productions from the Pharmacy to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Pharmacy would produce to the State so that they may "segregate and produce the documents to the court" for in camera review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for in camera review); *R.K.*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an in camera

9

inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

21.    The Nonparty Patients further respectfully request that the Court's protective order include a requirement that the State provide an attestation that conforms to 45 CFR § 164.509.

## VI.    CONCLUSION

22.    The Court should therefore enter an order quashing the Subpoena for failure to serve notice on the Nonparty Patients or, in the alternative, enter a protective order: (1) providing the Nonparty Patients an opportunity to review any production before it is provided to the State so that they may withhold or redact irrelevant, superfluous, or privileged materials and, if needed, request that the Court conduct an *in camera* review; and (2) requiring that the State provides an attestation that conforms to 45 CFR § 164.509.

## VII.    PRAYER FOR RELIEF

23.    For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: May 19, 2025               Respectfully submitted,

                                   */s/ William M. Logan*
                                   Jervonne D. Newsome
                                   Texas Bar No. 24094869
                                   Thanh D. Nguyen
                                   Texas Bar No. 2412 6931
                                   Jonathan Hung
                                   Texas Bar No. 24143033
                                   jnewsome@winston.com
                                   tdnguyen@winston.com
                                   johung@winston.com
                                   **WINSTON & STRAWN LLP**
                                   2121 N. Pearl St., 9th Floor
                                   Dallas, TX 75201
                                   Telephone: (214) 453-6500

10

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 2411 6670
Olivia A. Wogon
Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

11

## CERTIFICATE OF CONFERENCE

Counsel for movant has personally attempted to contact counsel for respondent, as follows: By email on May 19, 2025 at 1:51 PM, but no response was received by 5:00 PM. An emergency exists of such a nature that further delay would cause irreparable harm to the movant, as follows: Despite not having properly served prior notice on the Nonparty Patients, the State has required compliance on May 19, 2025, leaving no further time for attempts to confer. However, counsel for the Nonparty Patients will continue attempting to confer with counsel for the State in good faith.

Certified to the Day of May 19, 2025 by:

*/s/ Evan D. Lewis*
Evan D. Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, an electronic copy of this Petition was served on counsel of record via email. I also certify that I electronically served counsel for the State and Pharmacy by emailing this petition-motion to the following attorneys:

| | |
|---|---|
| Johnathan Stone | johnathan.stone@oag.texas.gov |
| Rob Farquharson | rob.farquharson@oag.texas.gov |
| David Shatto | david.shatto@oag.texas.gov |
| Amy Pletscher | amy.pletscher@oag.texas.gov |
| Robert Steiner | rsteiner@kelleydrye.com |
| Ashley Czechowski | aczechowski@kelleydrye.com |
| Alysa Hutnik | ahutnik@kelleydrye.com |
| Paul Singer | psinger@kelleydrye.com |
| Beth Chun | bchun@kelleydrye.com |

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen

12

# Exhibit A

# THE STATE OF TEXAS

## *SUBPOENA DUCES TECUM*
## PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205

**CAUSE NO.:** 493-08026-2024     IN THE 493RD JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*The State of Texas v. M. Brett Cooper, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** CVS Pharmacy c/o C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201; or

CVS Pharmacy, Inc. c/o CVS Privacy Office, located at One CVS Drive, Woonsocket, RI 02895, to provide documents to the

### Office of the Attorney General
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

1

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Division Chief
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711-2548
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

## *SUBPOENA DUCES TECUM*

### INSTRUCTIONS

1.    "You" and "Your" means CVS Pharmacy, including each of the individual CVS pharmacies identified in these requests.

2.    A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.    The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.    The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See* Pl.s' Am. Pet. ¶¶ 195-199; *Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.    The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.    You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

3

<span style="color:red">Appx. 430</span>

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.      Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.      You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

a.  The State alleges that Cooper was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pls' Am. Pet.¶¶ 29-183.

i.  There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that he was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

b.  The State also alleges that Cooper is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that his testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl.s' Am. Pet. ¶¶184-194.

       i.   Cooper asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires him to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. Am. Ans. Aff. Def. ¶ 2 (citing Tex. Bus. & Com. Code § 17.49(c)).

   c.   Finally, the State alleges that Cooper, in the course of his medical practice, prescribed, dispensed, and administered testosterone, a controlled substance, without a valid medical purpose and, in violation of Tex. Health & Safety Code § 481.071. *Id.* at ¶¶ 195-199.

9.     In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.     "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.     Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.     Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████████ ██████, from January 1, 2022, through the present that were filled at the CVS pharmacy located at 8940 Coit Road, Plano, Texas 75025.

3.     Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for █████████████████████████ ██████, from January 1, 2022, through the present that were filled at the CVS pharmacy located at 11661 Preston Road, Suite 218, Dallas, Texas 75230.

4.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████ , from January 1, 2022, through the present that were filled at the CVS pharmacy located at 1421 S.W. Wilshire Boulevard, Burleson, Texas 76028.

5.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████ , from January 1, 2022, through the present that were filled at the CVS pharmacy located at 6401 Precinct Line Road, North Richland Hills, Texas 76182.

6.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████ , from January 1, 2022, through the present that were filled at the CVS pharmacy located at 7000 Justin Road, Lantana, Texas 76226.

7.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████ , from January 1, 2022, through the present that were filled at the CVS pharmacy located at 8900 State Highway 121, McKinney, Texas 75070.

8.  Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████ , from January 1, 2022, through the present that were filled at the CVS Caremark pharmacy located at 1780 Wall Street, Mount Prospect, Illinois 60056.

9.  Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where a CVS pharmacy located in Texas refused to fill a prescription written by M. Brett Cooper, M.D., from September 1, 2023, through the present, because the pharmacist or any other CVS employee believed that doing so could violate SB14.

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock,  and

executed the _____day of _____, 2025, at _____ o'clock, by delivering to the within

named _____in person at_____

in_____ County, TX, a true copy of this *Subpoena*, and tendering said witness the

sum of $_____.

By Deputy:_____, _____County, Texas.

Sheriff/Constable:_____, _____ County, Texas.

### OR

By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____DATE _____

Appx. 434

# Exhibit B

Filed: 1/13/2025 10:21 AM
Mike Gould
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128996

## Cause No. 493-08026-2024

| | | |
|---|---|---|
| The State of Texas,<br>*Plaintiff,* | §<br>§<br>§ | **In the District Court of** |
| v. | §<br>§ | **Collin County, Texas** |
| M. Brett Cooper, M.D.,<br>*Defendant.* | §<br>§<br>§ | **493rd Judicial District** |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

**I.    Definitions:**

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

**II.    General Provisions:**

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections.** Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 437

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

### III.    Provisions Governing Use and Disclosure of Classified Information:

Appx. 438

(A)     The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)     Classified information may be disclosed only to the following qualified persons:

1.     This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.     Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.     Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.     Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.     Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.     The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)     No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)  No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)  **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)  **Identification of Patients and Their Confidential Health Information.**  In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

- 5 -

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

## IV.   **Challenging Classified Information Designations:**

(A)   A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

## V.   **Destruction of Classified Information at Completion of Litigation:**

(A)   Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

Appx. 441

(B)    All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)    This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.    Miscellaneous Provisions:

(A)    **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)    **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

Appx. 442

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

Appx. 443

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

(G) **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

(H) Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Appx. 444

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

## VII.    No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

## VIII.    No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

- 10 -

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

# EXHIBIT A

Appx. 447

## CERTIFICATION

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Cooper*, **No. 493-08026-2024** is pending at the time of enforcement or where the trial in *Texas v. Cooper* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

_____            _____
Date                       [Printed Name]

_____
[Signature]

- 13 -

# Exhibit C

Cause No. _____

<table>
<tr><td>

Nonparty Patient No. 1,
Nonparty Patient No. 2,
Nonparty Patient No. 3,
Nonparty Patient No. 4,
Nonparty Patient No. 5, and
Nonparty Patient No. 6,

          Petitioners-Movants,

  vs.

The State of Texas,

          Respondents.

</td><td>

IN THE DISTRICT COURT OF

DALLAS COUNTY, TEXAS

____ JUDICIAL DISTRICT

</td></tr>
</table>

## DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS

1. I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoena") to CVS Pharmacy (the "Pharmacy"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2. Each of the Nonparty Patients is one of 7 individuals about whom the State has sought documents via the Subpoenas related to medical care and treatment received at the Pharmacy, including prescription records, pharmacists' notes, and communications about patient care.

3. A true and correct copy of the subpoena to the Pharmacy is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

1

Appx. 450

4.     The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit B. To comply with § III(F) of the Protective Order, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

5.     A true and correct copy of the State's Verified Original Petition in Collin County, Cause No. 493-08026-2024, is attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on May 19, 2025.

__/s/*William M. Logan*__

2

# Exhibit D

Filed: 11/4/2024 10:03 AM
Mike Gould
District Clerk
Collin County, Texas
By Jessica Peltier Deputy
Envelope ID: 93879102

493-08026-2024

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS[1]

Defendant, M. BRETT COOPER, M.D., is a scofflaw who is harming the health and safety of Texas children by providing cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3), and falsifying medical records, prescriptions, and billing records to intentionally conceal the unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).[2]

Cross-sex hormones, when used for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex, interfere with a child's normal physical development and result in long-term harm to the child, including *inter alia,* sterilization, loss of bone density, and the development of irreversible secondary opposite sex characteristics. Children, by definition, lack the cognitive maturity to

---

[1]  Pursuant to Local Rule 2.3, the State hereby notifies the district clerk that this litigation involves claims and parties related to the pending litigation, *State of Texas v. Lau*, Case No. 493-07676-2024 (493rd Dist. Ct., Collin County); therefore, the State requests that this matter be assigned and/or transferred to that court for future proceedings.

[2]  Each prescription for cross-sex hormones for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex also serves as an independent ground for the Texas Medical Board to revoke Cooper's medical license under Tex. Occ. Code §§ 164.052(a)(24), .0552.

Appx. 453

provide informed consent/assent to these harmful and irreversible, life-altering decisions. Therefore, the Texas legislature chose to prohibit physicians and health care providers from providing, prescribing, administering, or dispensing puberty blockers and cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex. By banning these dangerous and experimental treatments for minors, Texas is ensuring that children receive the opportunity to resolve temporary feelings of discomfort and confusion about their biological sex with time and therapeutic support—without being pressured by radical gender activists to undergo irreversible medical procedures before they are capable of comprehending the significant life-long consequences. The prohibition took effect on September 1, 2023.

Despite the enactment of the law, Cooper continues to prescribe and distribute cross-sex hormones to his minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex—writing unlawful prescriptions for the drugs as recently as **September 25, 2024,** with patients filling those unlawful prescriptions as recently as **October 8, 2024**.

Cooper, additionally, engaged in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to conceal that his treatments and prescriptions were for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5).

Appx. 454

Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, has a vested interest in ensuring that medical treatments provided to minors are safe, evidence-based, and in the best interest of the child's physical and emotional development. Texas is prioritizing the safety and well-being of children by holding Cooper accountable for violating state laws prohibiting deceptive trade practices and providing cross-sex hormones to minors for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex.

## I.   PARTIES

1.      Defendant is M. BRETT COOPER, M.D. (NPI# 1477819241; TX Lic.# Q4928), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. He has hospital privileges at Children's Medical Center Dallas and is an Associate Professor at UT Southwestern Medical Center. Cooper may be served with process at Children's Health Specialty Center, 7609 Preston Road, 3rd Floor, Plano, Texas 75024, or wherever he may be found.

## II.   DISCOVERY CONTROL PLAN

2.      Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

3.      Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

3

### III.    JURISDICTION AND VENUE

4.      Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

5.      Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas. Also, Cooper practices at UT Southwestern Pediatric Group at Plano in Collin County and Cooper's unlawful conduct occurred in Collin County, Texas.

### IV.    PUBLIC INTEREST

6.      Cooper violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

7.      Texas has reason to believe that Cooper is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Cooper has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore, the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

### V.    TRADE AND COMMERCE

8.      At all times described below, Cooper engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

4

## VI.    NO NOTICE BEFORE SUIT

9.    The Consumer Protection Division has reason to believe that Cooper "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

10.    The Consumer Protection Division did not contact Cooper before filing suit to notify him "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Cooper likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.    APPLICABLE LAW

11.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

12.    Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

## VIII.    FACTUAL BACKGROUND

A.    *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

13.    On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *State v. Loe*, 692 S.W.3d 223 (Tex. 2024).

5

14.     Senate Bill 14 prohibits physicians and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

15.     The effective date for SB 14 was September 1, 2023.

16.     Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

17.     Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

18.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

19.     Finally, SB 14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.     *The Texas Supreme Court Held That SB 14 is Constitutional.*

20.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

21.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id.*

22.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id.*

23.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id.*

24.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id.* at 239.

C.     *Cooper is a Radical Gender Activist.*

25.     In his own words, Cooper makes clear that he is an advocate for transitioning the biological sex or affirming their belief that children's gender identities are inconsistent with their biological sex.

26.     Cooper said, in a Physicians for Reproductive Health *Meet Our Advocates* article: "I try to actively encourage all of our [physician] trainees to find some way to incorporate advocacy

7

into their professional careers." Cooper added that the most important policy issue for him is

"[l]egislators trying to criminalize the provision of gender affirming medical care for patients under

18." https://tinyurl.com/4bj646e6, last updated December 22, 2020.

27.    Here, Cooper's following contributions align with his call for activism:

i.    M. Brett Cooper, Resources for LGBTQ youth during challenging times, (Feb. 14, 2023), https://tinyurl.com/yck9f2y7;

ii.    M. Brett Cooper, *Incorporating LGBT Health in an Undergraduate Medical Education Curriculum Through the Construct of Social Determinants of Health*, 14 MedEdPORTAL (Dec. 7, 2018) (power point presentation slides include statements that "our internal gender identity is essentially formed and stays consistent by the age of 7,"and falsely claiming that Texas physicians "are required to notify CPS for all minors who have sex with someone of the same gender."), https://tinyurl.com/3a7c8nrs;

iii.    Laura E. Kuper, *Supporting and Advocating for Transgender and Gender Diverse Youth and their Families Within the Sociopolitical Context of Widespread Discriminatory Legislation and Politics*, Clinical Practice in Pediatric Psychology 3, 336 (2022), https://tinyurl.com/bdabj3ra;

iv.    Lauren T. Roth, *Developing an Entrustable Professional Activity to Improve the Care of LGBTQ+ Youth* 23 Academic Pediatrics. 4, 697 (May 1, 2023), https://tinyurl.com/56bk9hdz;

v.    M. Brett Cooper, *Welcoming LGBTQ Patients*, Pediatric News (Apr. 17, 2024), https://tinyurl.com/3vyxr9ae;

vi.    M. Brett Cooper, *LGBTQ+ Youth Consult Questions remain over use of sex hormone therapy*, Pediatric News (Apr. 13, 2023), https://tinyurl.com/54yecjdd;

vii.    M. Brett Cooper, *The WPATH guidelines for treatment of adolescents with gender dysphoria have changed*, Pediatric News (Oct. 17, 2022), https://tinyurl.com/53txa22h;

viii.    M. Brett Cooper, *How gender-affirming care is provided to adolescents in the United States*, Pediatric News (Apr. 22, 2022), https://tinyurl.com/3yv3n6nj;

ix.   M. Brett Cooper, *Call them by their names in your office*, Pediatric News (Oct. 14, 2021), https://tinyurl.com/2swpe6vf;

x.   M. Brett Cooper, *Advocate for legislation to improve, protect LGBTQ lives*, Pediatric News (Dec. 11, 2020), https://tinyurl.com/zruxkhmf;

xi.   M. Brett Cooper, *Back to school: How pediatricians can help LGBTQ youth*, Pediatric News (Aug. 11, 2020), https://tinyurl.com/36wf2xyy;

xii.   Cooper submitted a sworn affidavit on behalf of the Plaintiffs in the *Loe* suit wherein he stated that "SB 14 thus not only endangers the health and wellbeing of my patients, but also places me in the unsustainable position of having to choose between providing my patients with the medical care that they need and deserve and having to comply with a discriminatory law like SB 14. I have an ethical duty to provide my patients with the best medical care for their conditions, if it is medically indicated for them. I consider the provision of gender-affirming medical care to treat a transgender adolescent's gender dysphoria to be the best medical care for my patients when medically indicated"; and,

xiii.   Cooper is also prolific on X under the handle "TeenDocMBC." His presence on X reveals that he infuses his medical practice with radical gender activism and exercises poor judgment, as exemplified by the following set of representative tweets:



This Post was deleted by the Post author. Learn more

**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                          ...

As a resident, I had a 17 yo masturbating in her ER room. Kept setting off alarm for bradycardia

12:41 PM · Sep 1, 2024 · **143** Views

**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                          ...

She may be the second patient I urge to get emancipated.  One of my trans guys I actually encouraged to move out of his mom's house at 17 and just get declared emancipated.

12:57 PM · Dec 3, 2020



**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                          ...

Today is a sad day for transgender Texans.  Yet again, the #txlege inserts themselves in the doctor-patient relationship, not because of science, but because of political ideology. This is despite testimony of physicians and major medical organizations.
cnn.com/2023/08/31/pol...

2:25 PM · Sep 1, 2023 · **201** Views

🗨        ⭮        ♡ 1        🔖        ⬆



**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                          ...

Perhaps Ken Paxton needs to worry about his own problems in Texas and stop trying to patrol people's bodies and healthcare across the country....



dallasnews.com
Texas AG Ken Paxton seeks gender-affirming care records fr·
In the complaint, the Seattle hospital argues Texas authorities don't have jurisdiction over these Washington ...

12:39 PM · Dec 22, 2023 · **72** Views

**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                          ...

Honored to be a part of this story. TX is losing doctors each year (and having trouble recruiting new ones) due to the regressive policies of our state government.  The Lege doesn't belong in the doctor-patient relationship #patientsoverpolitics @texmed



"Unbearable": Doctors treating trans kids are leaving Texas, exacerba...

From texastribune.org

8:24 PM · Jul 18, 2023 · **519** Views

10

28.    Cooper's practices, publications, and social media presence reveal an entrenched commitment to a gender ideology advocacy that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.    VIOLATIONS OF SB 14.

29.    Cooper has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.    *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

30.    High dose cross-sex hormones are commonly used by certain gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

31.    Cross-sex hormones induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

32.    As a result of the cross-sex hormones, the child will develop secondary sex characteristics.

33.    Testosterone is a cross-sex hormone that is used to induce irreversible male secondary sex characteristics in biological females.

34.    Testosterone is a Schedule III controlled substance.

35.    Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the WPATH as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and*

11

*dangerous to trans youth*, NPR (Apr. 29, 2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

36.     WPATH recommends transitioning the biological sex of a child or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, WPATH SOC at App'x C.

37.     WPATH and the Endocrine Society Guidelines recommends "induction of male puberty" in a biological female minor by prescribing "$25mg/m^2/2$ weeks (or alternatively half this dose weekly) [of testosterone]. Increase by $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*; Endocrine Society Guidelines at 3884, Tbl. 8 (same).

38.     WPATH and the Endocrine Society Guidelines alternatively recommend the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." WPATH SOC at App'x C; Endocrine Society Guidelines at 3887, Tbl. 11 (same).

B.     *Testosterone is not FDA approved for biological females.*

39.     The FDA has *not approved* testosterone for the treatment of any medical conditions in biological females.

40.     Indeed, the FDA warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

41.     Under appropriate medical practices, testosterone is, instead, "use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism.

Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

42.      **There is no valid medical reason within the standard of care to prescribe testosterone to a minor biological female.** *See e.g.*, Gary Donovitz, *et.al.*, *Testosterone Insufficiency and Treatment in Women: International Expert Consensus*, Medicina y Salud Pública (Sept. 4, 2019) (noting that some physicians use *low-dose* testosterone off-label to treat certain conditions in *adult* females associated with menopause), https://tinyurl.com/2ay9wsav.

43.      **The only reasons to prescribe testosterone to a minor biological female is for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex**.

C.      *Cooper's Testosterone Prescribing*

44.      Radical gender activists in the medical profession, like Cooper, habitually alter the biological sex of their transgender patients in their medical records. *See e.g.*, May C. Lau, M.D., *Transgender Care of Adolescents and Adults*, Youtube 20:59-22:40 (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 (Cooper's hospital colleague doctor May C. Lau admitting that she alters patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her minor transgender patients).

13

45.     Cooper has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[3]

46.     Patient One resides in Collin County, TX.

47.     Patient One was 17 years old during the relevant time.

48.     Cooper's records identify Patient One as a biological female.

49.     On September 25, 2024, over a year after SB 14 went into effect, Cooper wrote Patient One a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

50.     The same day, Patient One filled the prescription at a pharmacy located in Collin County, TX.

**Patient Two**

55.     Patient Two resides in Dallas County, TX.

56.     Patient Two was approximately 16 years old at the relevant time.

57.     Cooper's records identify Patient Two as a biological female.

58.     On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Two a prescription for a 7-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

---

[3]     Pseudonyms are used throughout to protect the identity of the victim minor patients.

14

59.     On the same day, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

60.     On December 16, 2023, Cooper wrote Patient Two a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

61.     On December 16, 2023, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

62.     On February 20, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

63.     On March 26, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

64.     On June 1, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Three**

65.     Patient Three resides in Tarrant County, TX.

66.     Patient Three was 16 years old at the relevant time.

67.     Cooper's records identify Patient Three as a biological female.

68.     On August 6, 2024, after SB 14 went into effect, Cooper wrote Patient Three a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

15

69.    On August 8, 2024, Patient Three filled the prescription at a pharmacy located in Tarrant County, TX.

70.    On September 18, 2024, Patient Three refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Four**

71.    Patient Four resides in Dallas County, TX.

72.    Patient Four was 16 years old at the relevant time.

73.    Cooper's records identify Patient Four as a biological female.

74.    On February 12, 2024, after SB 14 went into effect, Cooper wrote Patient Four a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

75.    On the same day, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

76.    On August 7, 2024, Cooper wrote Patient Four a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

77.    On August 7, 2024, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Five**

78.    Patient Five resides in Denton County, TX.

79.    Patient Five was approximately 15 years old at the relevant time.

16

80.     Cooper's records identify Patient Five as a biological female.

81.     On November 20, 2023, Cooper wrote Patient Five a prescription for a 24-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

82.     On December 13, 2023, Patient Five filled the prescription at a pharmacy located in Denton County, TX.

83.     On January 25, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

84.     On February 29, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

85.     On May 5, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

86.     On May 20, 2024, Cooper wrote Patient Five a 90-day supply of 1,000 mg/5 ml testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

87.     On May 22, 2024, Patient Five filled the prescription at a pharmacy in Denton County, TX.

**Patient Six**

88.     Patient Six resides in Nueces County, TX.

89.     Patient Six was 14 years old at the relevant time.

90.     Cooper's records identify Patient Six as a biological female.

17

91.     On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Six a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

92.     On the same day, Patient Six filled the prescription at a pharmacy located in Johnson County, TX.

93.     On January 12, 2024, Patient Six refilled the prescription at a pharmacy located in Johnson County, TX.

**Patient Seven**

94.     Patient Seven resides in Collin County, TX.

95.     Patient Seven was 17 during the relevant time.

96.     Some of Cooper's records identify Patient Seven's gender as "unknown."

97.     Some of Cooper's records identify Patient Seven as a biological female.

98.     On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Seven a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

99.     On September 26, 2023, Patient Seven filled the prescription at a pharmacy located in Illinois.

100.    On January 29, 2024, Cooper wrote Patient Seven a prescription for an 87-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

101.    On the same day, Patient Seven filled the prescription at a pharmacy located in Collin County, TX.

**Patient Eight**

102.    Patient Eight resides in Dallas County, TX.

103.    Patient Eight was approximately 17 years old during the relevant time.

104.    Some of Cooper's record's identify Patient Eight as a biological female.

105.    Later, Cooper's records change Patient Eight's sex to biological male, but upon information and belief, Patient Eight is a biological female.

106.    On January 10, 2024, after SB 14 went into effect, Cooper wrote Patient Eight two prescriptions, each for a 14-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On January 10, 2024, Patient Eight filled the first prescription at a pharmacy located in Dallas County, TX.

108.    On March 6, 2024, after SB 14 went into effect, Patient Eight filled the second prescription at a pharmacy located in Dallas County, TX.

109.    On August 31, 2024, Cooper wrote Patient Eight a prescription for a 42-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

110.    On the same day, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Nine**

111.    Patient Nine resides in Collin County, TX.

112.    Patient Nine was approximately 16 years old at the relevant time.

113.    Some of Cooper's record's identify Patient Nine as a biological female.

114.    Later, Cooper's records change Patient Nine's sex to biological male, but upon information and belief, Patient Eight is a biological female.

115.    On December 22, 2023, after SB 14 went into effect, Cooper wrote Patient Nine two prescriptions, each for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

116.    On the same day, Patient Nine filled the first prescription at a pharmacy located in Collin County, TX.

117.    On May 7, 2024, Patient Nine filled the second prescription at a pharmacy located in Collin County, TX.

118.    On July 3, 2024, Cooper wrote Patient Nine two prescriptions, each for an 84 and 63-day supply of 200 mg/ml testosterone cypionate, respectively, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

119.    On August 3, 2024, Patient Nine filled the first prescription at a pharmacy in Collin County, TX.

120.    On August 5, 2024, Patient Nine filled the second prescription at a pharmacy in Collin County, TX.

Appx. 472

**Patient Ten**

120.    Patient Ten resides in Collin County, TX.

121.    Patient Ten was 16 years old at the relevant time.

122.    Cooper's records identify Patient Ten as a biological male, but upon information and belief, Patient Ten is a biological female.

123.    On September 6, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 30-day supply of 1,000 mg/5ml of testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.    On September 7, 2023 Patient Ten filled the prescription at a pharmacy located in Collin County, TX.

125.    On December 15, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 90-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

126.    On the same day, Patient Ten filled the prescription at a pharmacy in Collin County, TX.

127.    On June 7, 2024, Cooper wrote Patient Ten a prescription for a supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

128.    On the same day, Patient Ten filled an 84-day supply of the prescription at a pharmacy in Collin County, TX.

21

129.    On October 8, 2024, Patient Ten refilled a 28-day supply of the prescription at a pharmacy in Collin County, TX.

**Patient Eleven**

130.    Patient Eleven resides in Tarrant County, TX.

131.    Patient Eleven was 17 years old during the relevant time.

132.    Cooper's records identify Patient Eleven as a biological male, but upon information and belief, Patient Eleven is a biological female.

133.    On December 18, 2023, after SB 14 went into effect, Cooper wrote Patient Eleven a prescription for a 28-day supply of XYOSTED 50 mg/0.5 ml Auto-Injection of testosterone enanthate, an alternative to testosterone cypionate, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

134.    On December 20, 2023, Patient Eleven filled the prescription at a pharmacy located in Tarrant County, TX.

135.    On January 19, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

136.    On February 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

137.    On March 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

138.    On April 22, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

22

139.    On May 24, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Twelve**

140.    Patient Twelve resides in Tarrant County, TX.

141.    Patient Twelve was 16 years old at the relevant time.

142.    Cooper's records identify Patient Twelve as a biological male, but upon information and belief, Patient Twelve is a biological female.

143.    On February 26, 2024, after SB 14 went into effect, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On February 26, 2024, Patient Twelve filled the prescription at a pharmacy in Tarrant County, TX.

145.    On April 17, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

146.    On May 29, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

147.    On July 15, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

148.    On August 7, 2024, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

23

149.    On the same day, Patient Twelve filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Thirteen**

150.    Patient Thirteen resides in Denton County, TX.

151.    Patient Thirteen was 17 years old at the relevant time.

152.    Cooper's records identify Patient Thirteen as a biological male, but upon information and belief, Patient Thirteen is a biological female.

153.    On March 19, 2024, after SB 14 went into effect, Cooper wrote Patient Thirteen a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On the same day, Patient Thirteen filled the prescription at a pharmacy located in Denton County, TX.

155.    On April 19, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

156.    On May 14, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

157.    On July 10, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

158.    On August 11, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

**Patient Fourteen**

159.    Patient Fourteen resides in Collin County, TX.

160.    Patient Fourteen was approximately 15 years old at the relevant time.

161.    Cooper's records identify Patient Fourteen as a biological male, but upon information and belief, Patient Fourteen is a biological female.

162.    On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Fourteen two prescriptions, each for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

164.    On November 17, 2023, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

165.    On December 28, 2023, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

166.    On January 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

167.    On February 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

168.    On April 8, 2024, Cooper wrote Patient Fourteen three prescriptions, the first was for a 30-day supply and the second and third were for a 7-day supply of 200 mg/ml of testosterone

cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.   On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

170.   On May 24, 2024, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

171.   On June 29, 2024, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

172.   On August 2, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

173.   On September 1, 2024, Patient Fourteen filled the third prescription at a pharmacy located in Collin County, TX.

174.   On October 2, 2024, Patient Fourteen refilled the third prescription at a pharmacy located in Collin County, TX.

**Patient Fifteen**

175.   Patient Fifteen resides in Collin County, TX.

176.   Patient Fifteen was approximately 16 years old at the relevant time.

177.   Cooper's records identify Patient Fifteen as a biological male, but upon information and belief, Patient Fifteen is a biological female.

178.   On October 22, 2023, after SB 14 went into effect, Cooper wrote Patient Fifteen a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

179.    On October 23, 2023, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

180.    On January 14, 2024, Patient Fifteen refilled the prescription at a pharmacy in Collin County, TX.

181.    On April 9, 2024, Cooper wrote Patient Fifteen a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

182.    On the same day, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

* * *

183.    Paragraphs 46-182 describe 15 minor patients who Cooper has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

184.    Some of Cooper's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, all of these patients are biological females and some of Cooper's medical records indicate that the patient's sex has been recorded first as female and then as male. The result is a clear indication that Cooper is prescribing testosterone to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

27

185.     Each of Cooper's prescriptions above were written and filled after SB 14 went into effect. Even so, for any prescriptions that were written prior to SB 14, Cooper cannot circumvent the law by writing prescriptions to his patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, *see* 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Cooper is "providing" the prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

186.     Each and every prescription written by Cooper after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

187.     Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

188.     According to gender dysphoria providers, many insurance companies will not accept transgender related billing codes when coupled with prescriptions for testosterone because testosterone is not Federal and Drug Administration ("FDA") approved for use in the treatment

of gender dysphoria for minors. *See e.g.*, Stephen Rosenthal, *Insurance Coverage and Coding Considerations in Gender Affirming Hormonal Care for Adolescents & Young Adults*, WPATH ppt 12 (Jul. 28, 2021), https://tinyurl.com/4vycb29r.

189.    Upon information and belief, Cooper regarded Patients One through Fifteen as transgender patients and he evaluated, diagnosed, and treated them for gender dysphoria, while falsely, misleadingly, and deceptively, diagnosing, billing, and prescribing testosterone for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

190.    Cooper is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using precocious puberty or endocrine disorder, undefined codes, or similarly false codes, instead of gender dysphoria, or other gender related diagnosis codes,[4] to conceal that he is prescribing testosterone and treating the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

191.    Cooper, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

192.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

---

[4]    The *International Classification of Diseases, 10ᵗʰ Revision's* medical classification for gender identity disorders includes the following diagnosis codes: F64.0 Transsexualism, including other gender identity disorder and gender dysphoria in adolescents and adults; F64.1 Dual role transvestism; F64.2 Gender identity disorder of childhood; F64.8 Other gender identity disorders; and F64.9 Gender identity disorder, unspecified.

193.     Cooper deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that office visits and prescriptions written to minor patients are for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

194.     Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

195.     Cooper deceptively misleads pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate the use of testosterone are for the treatment of medical conditions the patient does not have when, in fact, the drugs are for the purposes of transitioning the minor patient's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

196.     Cooper deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to conceal that the treatments and prescriptions are for the unlawful purposes of transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

197.     Upon information in belief, Roberts is falsely diagnosing children with precocious puberty and/or other medical conditions to prescribe them puberty blockers and cross-sex

Appx. 482

hormones for the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

## XI.    APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

197.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

198.    Texas has reason to believe that Cooper is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), and believes these proceedings to be in the public interest.

199.    Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

200.    Cessation of unlawful conduct by Cooper shall not render such court action moot under any circumstances. *Id.*

201.    Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

202.    In addition to the above-requested relief, pursuant to Tex. Civ. Prac. Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Cooper that enjoins him from the following until final resolution of this matter:

      i.    Prescribing puberty blockers and testosterone or estrogen to minors for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

      ii.   Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or

affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

203.    THEREFORE Texas prays that Cooper be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Cooper and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), including but not limited to:

i.    Prescribing puberty blockers and testosterone or estrogen to minors for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

204.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

i.    Adjudge against Cooper civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17.46(a), (b)(5);

ii.    Order Cooper to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

iii.    Order Cooper to pay both pre-judgment and post-judgment interest on all money awards as provided by law; and

iv.    Grant all other and further relief Texas may show itself entitled to.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301

**ATTORNEYS FOR TEXAS**

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Tex. R. Civ. P. 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 4th day of November 2024.

/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

# EXHIBIT 12

5/19/2025 10:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-003646
Ana Henriquez Quesada

Cause No. _____   D-1-GN-25-003646

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4, and<br>Nonparty Patient No. 5,<br><br>               Petitioners-Movants,<br><br>   vs.<br><br>The State of Texas,<br><br>               Respondent. | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>____ JUDICIAL DISTRICT<br><br>261ST, DISTRICT COURT |

## PETITION FOR MOTION FOR PROTECTION
## FROM PHARMACY DISCOVERY SUBPOENAS

To the Honorable Judge of this Court:

Pursuant to Texas Rule of Civil Procedure 176.6(e), Plaintiffs ("Nonparty Patients")[1] move for protection from a discovery subpoena ("Subpoena") that the State of Texas served on Walgreens Pharmacy (the "Pharmacy"). Ex. A. This Petition is related to a pending case in the 95th Judicial District about discovery requests from the State in the same underlying litigation. *Nonparty Patient No. 1 et al. v. State*, No. DC-25-02658. The Nonparty Patients would respectfully show as follows:

### I.     INTRODUCTION

1.     The State has brought a lawsuit in the 493rd Judicial District in Collin County, Texas (the "Cooper Litigation"), alleging, among other things, that Dr. M. Brett Cooper violated

---

[1] Pursuant to the Collin County District Court's Protective Order§ III(F) (attached as Exhibit B), the Nonparty Patients have filed this Motion using a generic reference to avoid disclosing their identities as patients related to that litigation. Ex. C at ¶ 4. Consistent with the Protective Order, the Nonparty Patients may be identified in camera or as otherwise ordered by the Court. *Id.*

Appx. 488

Copy from re:SearchTX

provisions in Senate Bill 14 ("SB14") and engaged in false, misleading, or deceptive acts by providing gender affirming care to teenage patients. Ex. D ¶¶ 23, 29. On Friday, April 28, 2025, the State served a Subpoena in Travis County on the Pharmacy, demanding medical records (e.g., prescription records, pharmacists' notes, and communications about patient care) for 5 individuals, including the Nonparty Patients. Ex. A at 6–7. The State did not properly serve notice of this Subpoena on the Nonparty Patients, despite a clear obligation to do so under the Texas Rules of Civil Procedure. See, e.g., Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

2.    The Nonparty Patients' materials within the scope of the State's subpoenas, such as pharmacists' notes, prescription records, and communications about patients' medical treatments are privileged under Texas law. *See, e.g.*, 31 Tex. Admin. Code § 201.1 (2005) (reciting that pharmacy records "are privileged"); Tex. R. Evid. 509; Tex. R. Evid. 510. The Nonparty Patients also enjoy a right to privacy for their private health information under U.S. and Texas law that must be balanced against any potential production. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 598–99 (1977) (describing "constitutionally protected 'zone of privacy'" regarding the "disclosure of personal matters"); *James v. Kloos*, 75 S.W.3d 153, 157 (Tex. App.—Fort Worth 2002, no pet.) ("Texas courts have recognized that the medical records of an individual are within the zone of privacy protected by the United States Constitution. Likewise, the Texas Constitution has been construed to recognize an individual's right to privacy.").

3.    These privileges acknowledge, among other things, that meaningful healthcare requires allowing patients to talk freely with their doctors and pharmacists on sensitive topics without fear of disclosure, or repercussions from the State. *See, e.g.*, *R.K. v. Ramirez*, 887 S.W.2d

2

Copy from re:SearchTX

836, 843 (Tex. 1994) ("The basis for the privileges is twofold: (1) to encourage the full communication necessary for effective treatment, . . . and (2) to prevent unnecessary disclosure of highly personal information.").

4.    Moreover, Federal law requires that when the State seeks private health information "potentially related" to reproductive healthcare it must provide an attestation that the private health information will not be used for a prohibited use. 45 CFR § 164.509; *see also* Def.'s Resp. to Court's May 5, 2025, Order, *Purl v. U.S. Dep't Health Hum. Servs.*, No. 5:24-cv-204 (N.D. Tex. May 12, 2025) (noting that requirement remains in effect). Such prohibited use includes, "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; "[t]o impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care"; or "to identify any person" for those purposes. 45 CFR § 164.502. Upon information and belief, the State has refused to provide this attestation.

5.    The Nonparty Patients have thus filed this Motion in Travis County, where the Subpoenas were served, seeking (1) to quash the subpoena for failure to serve notice on the Nonparty Patients, or (2) a protective order protecting against an overbroad production and giving the Nonparty Patients a reasonable opportunity to review any proposed production and withhold or redact documents (e.g., for privilege or relevance), as appropriate.

## II.    JURISDICTION

6.    The Court has jurisdiction over this matter under Texas Rules of Civil Procedure 176.6 and 192.6(a). A "[p]erson affected by the subpoena, may move for a protective order under Rule 192.6(b) ... in a district court in the county where the subpoena was served." Tex. R. Civ. P. 176.6(e). The Nonparty Patients are not parties to the Cooper Litigation but are each a patient about whom the State has sought medical records and other information from the Pharmacy in the

Copy from re:SearchTX

Subpoenas. The Nonparty Patients thus have standing to seek "an order protecting [the Nonparty Patients] from the discovery sought" because each is "a person affected by the subpoena." Tex. R. Civ. P. 176.6(e); Tex. R. Civ. P. 192.6(a). Upon information and belief, the Pharmacy was served the Subpoena in Travis County. Ex. A at 1 (directing summons to "Walgreens Pharmacy c/o CSC-Lawyers Incorporating Service Company, located at 211 E. 7th St., Ste. 620, Austin, TX 78701").

7.      If the State asserts it enjoys sovereign immunity from the Nonparty Patients' petition for protection, it is wrong. "[W]here a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defendants will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense . . . germane to the matter in controversy." *Anderson, Clayton & Co. v. State ex rel. Allred*, 62 S.W.2d 107, 110 (Comm'n App. 1933); *see also Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) ("When the state becomes a party to a suit it is subject to the same rules that govern other parties and a judgment for or against it must be given the same effect as would be given if it were an individual litigant.") (emphasis added); *State v. Zanco's Heirs*, 44 S.W. 527, 529 (Tex. Civ. App. 1898) ("When the state of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants"); *accord In re Google LLC*, 2025 WL 258715 (Tex. App.—15th Dist., Jan. 16, 2025, no pet.) (granting mandamus against Attorney General's Office after finding the Office is not protected by sovereign immunity under Rule 199 and noting that "[w]hen interpreting a procedural rule, we first look to the plain language of the rule").

8.      The State has made no showing that it is exempt from the Rules of Procedure. This is unsurprising, because it has no such exemption. Courts in the State of Texas have routinely emphasized this point: "[T]he State is not exempt from these rules of procedure but is subject to them as any other litigant." *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976); *see also*

4

Copy from re:SearchTX

*State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015) ("[W]here the Legislature has given no indication to the contrary the State must abide by the same rules to which private litigants are beholden"); *see also id.* (Boyd, J., concurring) ("Although the State enjoys unique immunities, it is subject to [procedural rules] as any other litigant." (citing *Lowe*, 540 S.W.2d at 301)).

9.      Furthermore, sovereign immunity is an inapplicable framework because its primary justification is to "protect[] the public fisc by shielding tax resources from being diverted to pay litigation costs and money judgments[.]" *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation District No. 1*, 669 S.W.3d 178, 183 (Tex. 2023). Here, the Nonparty Patients do not seek an entry of a judgment against the State. They simply seek the protection of their health records. Moreover, a Court in this District has already rejected the same arguments from the State in a related case (*see* May 6, 2025, Order, *Nonparty Patient No. 1 et al. v. State*, No. DC-25-02658 (Tex. Dist. Ct.—Dallas [95th Dist.]), from which the State has filed an interlocutory appeal (*State v. Nonparty Patients Nos. 1–11*, Case No. 15-25-00023-CV (Tex. App.—Austin [15th Dist.])).

### III.    BACKGROUND

10.     In the Cooper Litigation, the State's allegations largely center on Dr. Cooper's purported prescription of medicines to teenage patients, including testosterone. Ex. D ¶ 45. The State alleges that such care became unlawful under SB14 on September 1, 2023. *Id*. ¶¶ 23, 186. The State also alleges that Dr. Cooper engaged in false, misleading, or deceptive practices after or around the enactment of SB14, purportedly to mislead pharmacies, insurance providers, or patients into believing that the patients' testosterone treatments were for purposes other than gender-affirming care to circumvent the restrictions in SB14. *Id*. ¶¶ 188-97.

11.     On April 28, 2025, the State served the Subpoena on Walgreens. Ex. A. Among other things, the Subpoena requests "pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records" for the Nonparty Patients. Ex. A at 5-6. However,

5

Copy from re:SearchTX

the Subpoena includes no instructions that would provide the Nonparty Patients an opportunity to review the documents prior to production and withhold or redact materials that contain superfluous or privileged information that does not fall within the scope of an exception to the Nonparty Patients' privileges and rights.

## IV.    INSUFFICIENT SERVICE

12.    Before issuing the Subpoena to the Pharmacy, the State was required to **<u>serve</u>** notice of the subpoena in the manner described under Rule 205.2. Tex. R. Civ. P. 205.2 ("If a party requests a nonparty to produce medical or mental health records of another nonparty, the requesting party must serve the nonparty whose records are sought with the notice required under this rule").

13.    In sum, the Texas Rules of Civil Procedure require that the State adhere to the following protocol for serving subpoenas on producing nonparties (here, the Pharmacy) and interested nonparties (here, the Nonparty Patients):

a.    First, the State must serve a *notice* on the producing nonparty. That notice informs the producing nonparty that a *forthcoming* subpoena will arrive. *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served . . . before the subpoena compelling production is served."); *see also* Tex. R. Civ. P. 205.3(a) (acknowledging a notice of a forthcoming subpoena and a subpoena are distinct documents that must each be served). This notice not only informs the producing nonparty that a subpoena will arrive at a later date, but it also specifies the time for production and what documents the State seeks. Tex. R. Civ. P. 205.3(b).

b.    The State must also serve this same notice on nonparties whose medical or mental health records are implicated (here, the Nonparty Patients). Tex. R. Civ. P. 205.3(c).

c.    After serving notice, the State must wait 10 days before serving the subpoenas on the producing nonparty (here, the Pharmacy). *See* Tex. R. Civ. P. 205.2 ("A notice to produce documents . . . must be served 10 days before the subpoena compelling production is served.").

d.    What is more, Texas law requires that service be done in a specific fashion: A state sheriff, state constable, or a person who is over 18 years of age and not involved in the lawsuit must personally deliver the applicable documents to the nonparty. Tex. R. Civ. P. 176.5(a).

Copy from re:SearchTX

e.    To prove the State perfected service, the State must file one of two documents: (1) either a signed written memorandum from the recipient, in which the recipient confirms service, or (2) a statement from the person serving the document. Tex. R. Civ. P. 176.5(b). A statement under the second method must include the date, time, and manner of personal service, as well as the name of the recipient.

f.    Texas does not allow the State to pursue alternative forms of service on nonparties. *See In re Berry*, 578 S.W.3d 173, 179 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.).

14.    *In re Berry* demonstrates the operation of these rules. 578 S.W.3d 173 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.). There, the plaintiff filed a motion for substituted service of a nonparty after four unsuccessful attempts to personally serve a subpoena at his residence. *Id.* at 175–76. In support of the motion, the plaintiff relied on Texas Rule of Civil Procedure 106, which governs service of citation. *Id.* at 175. The trial court granted the motion, authorizing service by leaving a copy of the documents with someone over the age of 16 at the nonparty's residence or attaching a subpoena to his front door. *Id.* at 177. The court of appeals conditionally granted the petition for mandamus that followed, holding that "the Texas Rules of Civil Procedure do not authorize this procedure for discovery from a nonparty witness." *Id.* at 175.

15.    The court of appeals rejected the plaintiff's reliance on Rule 106 and looked to Rules 176.5 and 205 instead. *Id.* at 179–80. The court reasoned that Rule 106 is located in Section 5 of the Texas Rules of Civil Procedure, and by its terms applies only to service of citation, while Rule 205 "governs discovery from nonparties." *Id.* at 179; *Zanchi v. Lane*, 408 S.W.3d 373, 380 (Tex. 2013) (holding that "Rule 106 by its terms applies solely to service of citation"). The court emphasized that "the Texas Rules of Civil Procedure generally treat nonparties differently from parties or those subject to a party's control . . . Nonparty witnesses stand in a different position before the court than do parties to the litigation, over whom the court has both personal and subject

7

Copy from re:SearchTX

matter jurisdiction." *Id*. at 180.

16.     Here, the State issued subpoenas to the Pharmacy seeking medical records of the Nonparty Patients, and the State was therefore required to serve the Nonparty Patients, via personal service, with notice as required by Rules. The State failed to do so. Its Subpoena should be quashed. *See In re Berry*, 578 S.W.3d 173, 180 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.) (holding substituted service insufficient for discovery from a nonparty witness).

## V.     ARGUMENT AND AUTHORITIES

17.     If the Court does not quash the Subpoena, the Court should enter a protective order providing the Nonparty Patients with an opportunity to review, and if necessary, redact or withhold, materials responsive to the Subpoena. As written, the State's requests are overly broad, seek irrelevant materials, and demand materials that are protected from disclosure under 31 Tex. Admin. Code § 201.1, the Physician-Patient Privilege (Tex. R. Evid. 509), the Mental Health Information Privilege (Tex. R. Evid. 510), and the Nonparty Patients' rights to privacy under the U.S. and Texas Constitutions. Courts may enter orders protecting individuals from discovery by subpoena to prevent an invasion of personal rights, including privacy and privileges. Tex. R. Civ. P. 192.6(b); Tex. R. Civ. P. 176.6(e), 176.7. Courts also have the authority to limit the scope of discovery based on the needs and circumstances of the case. Tex. R. Civ. P. 192, cmt. 7.

18.     Under the Physician-Patient Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician." Tex. R. Evid. 509(c). Similarly, under the Mental Health Information Privilege, "a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a

Copy from re:SearchTX

professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional." Tex. R. Evid. 510(b)(l).

19.     It is self-evident from the State's Subpoenas that the documents sought are subject to the Physician-Patient Privilege and the Mental Health Information Privilege. Documents relating to the care and treatment of the Nonparty Patients, such as prescription records, pharmacy notes, and communications between the Nonparty Patients' doctors and pharmacy, will necessarily include confidential communications between the Nonparty Patients and their physicians and/or professionals, along with records of the Nonparty Patients' identities, diagnoses, evaluations, and treatments that were created or maintained in the course of physical or mental health care. *See generally In re Irvin*, No. 05-98-01771-CV, 1998 WL 908955, at *4 (Tex. App.—Dallas Dec. 31, 1998, no pet.) (finding abuse of discretion and granting mandamus where district court ordered production of mental health records when record failed to show satisfaction of *R.K. Ramirez* requirements for production of medical records).

20.     The Nonparty Patients therefore respectfully request an opportunity to review any proposed productions from the Pharmacy to evaluate the documents produced for privilege before they are provided to the State. For claims of privilege, "the documents themselves may constitute the only evidence substantiating the claim of privilege." *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). The Nonparty Patients thus require a reasonable opportunity to review any documents that the Pharmacy would produce to the State so that they may "segregate and produce the documents to the court" for in camera review to ensure that only relevant materials subject to the applicable privilege exception are produced, with appropriate redactions. *See id.* (providing for in camera review); *R.K. Ramirez*, 887 S.W.2d at 843 ("Even when a document includes some information meeting this standard, any information not meeting this standard remains privileged

9

Copy from re:SearchTX

and must be redacted or otherwise protected.") ("[W]hen requested, the trial court must perform an in camera inspection of the documents produced to assure that the proper balancing of interests, which we have described, occurs before production is ordered.").

21.    The Nonparty Patients further respectfully request that the Court's protective order include a requirement that the State provide an attestation that conforms to 45 CFR § 164.509.

## VI.    CONCLUSION

22.    The Court should therefore enter an order quashing the Subpoena for failure to serve notice on the Nonparty Patients or, in the alternative, enter a protective order: (1) providing the Nonparty Patients an opportunity to review any production before it is provided to the State so that they may withhold or redact irrelevant, superfluous, or privileged materials and, if needed, request that the Court conduct an *in camera* review; and (2) requiring that the State provides an attestation that conforms to 45 CFR § 164.509.

## VII.    PRAYER FOR RELIEF

23.    For the foregoing reasons, the Nonparty Patients respectfully request that the Court set this Motion for hearing and, after the hearing, issue an order granting the relief requested herein.

DATED: May 19, 2025              Respectfully submitted,

*/s/ William M. Logan*
Jervonne D. Newsome
Texas Bar No. 24094869
Thanh D. Nguyen
Texas Bar No. 2412 6931
Jonathan Hung
Texas Bar No. 24143033
jnewsome@winston.com
tdnguyen@winston.com
johung@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201

10

Copy from re:SearchTX

Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
Evan D. Lewis
Texas Bar No. 2411 6670
Olivia A. Wogon
Texas Bar No. 24137299
wlogan@winston.com
edlewis@winston.com
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

**ATTORNEYS FOR NONPARTY PATIENTS**

11

Appx. 498

## CERTIFICATE OF CONFERENCE

Counsel for movant has personally attempted to contact counsel for respondent, as follows: By email on May 19, 2025 at 1:51 PM, but no response was received by 5:20 PM. An emergency exists of such a nature that further delay would cause irreparable harm to the movant, as follows: Despite not having properly served prior notice on the Nonparty Patients, the State has required compliance on May 19, 2025, leaving no further time for attempts to confer. However, counsel for the Nonparty Patients will continue attempting to confer with counsel for the State in good faith.

Certified to the Day of May 19, 2025 by:

*/s/ Evan D. Lewis*
Evan D. Lewis


## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, an electronic copy of this Petition was served on counsel of record via email. I also certify that I electronically served counsel for the State and Pharmacy by emailing this petition-motion to the following attorneys:

| | |
|---|---|
| Johnathan Stone | johnathan.stone@oag.texas.gov |
| Rob Farquharson | rob.farquharson@oag.texas.gov |
| David Shatto | david.shatto@oag.texas.gov |
| Amy Pletscher | amy.pletscher@oag.texas.gov |
| Robert Steiner | rsteiner@kelleydrye.com |
| Ashley Czechowski | aczechowski@kelleydrye.com |
| Alysa Hutnik | ahutnik@kelleydrye.com |
| Paul Singer | psinger@kelleydrye.com |
| Beth Chun | bchun@kelleydrye.com |

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen

Appx. 499

Copy from re:SearchTX

# Exhibit A

Appx. 500

Copy from re:SearchTX

**THE STATE OF TEXAS**

***SUBPOENA DUCES TECUM***
**PURSUANT TO TEXAS RULES OF CIVIL PROCEDURE 176 AND 205**

**CAUSE NO.:** 493-08026-2024      IN THE 493RD JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS

*The State of Texas v. M. Brett Cooper, M.D.*

**TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS OR OTHER PERSON AUTHORIZED TO SERVE AND EXECUTE SUBPOENAS AS PROVIDED IN T.R.C.P. 176**

**YOU ARE HEREBY COMMANDED TO SUMMON** Walgreens Pharmacy c/o CSC-Lawyers Incorporating Service Company, located at 211 E. 7th St., Ste. 620, Austin, TX 78701., to provide documents to the

**Office of the Attorney General**
300 West 15th Street, Austin, Texas 78701

**SAID ABOVE NAMED IS FURTHER COMMANDED** to produce the documents listed in the attachment **WITHIN TWENTY-ONE (21) DAYS OF RECEIPT OF THIS SUBPOENA** with an accompanying business records affidavit for inspection and copying during normal business hours at the Office of the Attorney General or send the documents electronically or by certified mail to the Office of the Attorney General, 300 W. 15th Street | 9th Floor | Austin, Texas 78701. If providing documents electronically, please provide them to Rozanne Lopez at Rozanne.Lopez@oag.texas.gov.

**FAILURE BY ANY PERSON** without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

**DO NOT FAIL** to return this writ to said Court, with return thereon, showing the manner of execution.

**ISSUED on April 28, 2025**, at the request the request of the State of Texas.

Copy from re:SearchTX

Appx. 501

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation


*/s/ Johnathan Stone*
JOHNATHAN STONE
Division Chief
State Bar No. 24071779

ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550

DAVID SHATTO
Assistant Attorney General
State Bar No. 24104114

Office of the Attorney General
Consumer Protection Division
P.O. Box 12548 (MC-010)
Austin, Texas 78711-2548
Johnathan.Stone@oag.texas.gov
Rob.Farquharson@oag.texas.gov
David.Shatto@oag.texas.gov
Telephone: (512) 963-2613
Facsimile: (512) 473-8301

**ATTORNEYS FOR THE STATE OF TEXAS**

Copy from re:SearchTX

*SUBPOENA DUCES TECUM*

### INSTRUCTIONS

1.      "You" and "Your" means Walgreens Pharmacy, including each of the individual Walgreens pharmacies identified in these requests.

2.      A copy of the Notice, Subpoena, and Protective Order have been served on the patients, if unrepresented, and on counsel for the patients, if they are represented, as required by the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 196.1(c), 205.3(c).

3.      The attached Protective Order satisfies all requirements in HIPAA, and you are required to produce responsive records. *See* 45 C.F.R. § 164.512(e)(1)(ii).

4.      The information sought falls within Tex. Occ. Code § 562.052(4) exception to the pharmacist-patient privilege because the Attorney General's Office is a law enforcement agency, and it is investigating a suspected violation of Chapter 481 if the Texas Health and Safety Code. *See* Pl.s' Am. Pet. ¶¶ 195-199; *Riley v. Walgreen Co.*, 233 F.R.D. 496, 501 (S.D. Tex. 2005) (recognizing the statutorily created pharmacist-patient privilege).

5.      The information sought also falls within Tex. Occ. Code § 562.052(3) exception to the pharmacist-patient privilege because the Attorney General's Office is authorized by law to obtain the responsive information. *See e.g. Swate v. Tex. Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *6 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (state subpoenaing pharmacy records); *see also* Tex. Health & Safety Code § 481.128(e) (authorizing the Attorney General to bring enforcement actions for violations of Chapter 481).

6.      You *cannot* assert the physician-patient and mental-health information privileges on behalf of the patients because you are not an individual permitted by the Texas Rules of Evidence

3

Copy from re:SearchTX

to assert either privilege *See* Tex. R. Civ. P. 509(a) (defining "physician" and "patient"), 510(a) (defining "professional, "patient," and "the patient's representative").

7.    Even if you could assert the physician-patient and mental-health information privileges—which you cannot—the information sought is narrowly tailored to only information that is likely to lead to the discovery of admissible evidence and that is expressly excepted from the physician-patient and mental-health information privileges.

8.    You are instructed to produce *only* responsive documents containing information about "the patient's physical, mental, or emotional condition as a part of the party's claim or defense and the communication or record is relevant to that condition" and to redact or withhold all other information. Tex. R. Evid. 509(e)(4), 510(d)(5); *see also In re Richardson Motorsports, Ltd.*, 690 S.W.3d 42, 53-58 (Tex. 2024). The claims and defenses at issue in this suit are as follows:

   a.  The State alleges that Cooper was unlawfully prescribing testosterone, a controlled substance, or puberty blockers minors for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3). *See e.g.* Pls' Am. Pet.¶¶ 29-183.

      i.  There is a safe harbor for prescriptions that were part of a course of treatment began before June 1, 2023, and the patient attended 12 or more mental health counseling or psychotherapy sessions during a six-month period prior to the date the course of treatment began, and that he was weaning the patients off the drugs in a manner "safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b).

   b.  The State also alleges that Cooper is violating the Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5), (24), by engaging in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to represent that his testosterone prescriptions are or were for something other than transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex (such as treating an undefined endocrine disorder). *See e.g.* Pl.s' Am. Pet. ¶¶184-194.

Copy from re:SearchTX

     i.    Cooper asserts the professional services exception to the alleged violations of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), (24), which requires him to prove he was "rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." Df. Am. Ans. Aff. Def. ¶ 2 (citing Tex. Bus. & Com. Code § 17.49(c)).

   c.   Finally, the State alleges that Cooper, in the course of his medical practice, prescribed, dispensed, and administered testosterone, a controlled substance, without a valid medical purpose and, in violation of Tex. Health & Safety Code § 481.071. *Id.* at ¶¶ 195-199.

9.     In the unlikely event you refuse to produce responsive documents subject to a privilege exception, please produce a privilege log with your response as required by Tex. R. Civ. P. 193.3(b).

## DEFINITIONS

1.     "SB14" means Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children" that was added pursuant to the Act of May 17, 2023, 88th Leg., R.S., ch. 335. *See also State v. Loe*, 692 S.W.3d 215 (Tex. 2024).

## DOCUMENTS REQUESTED

1.     Produce documents sufficient to show the policies, procedures, and/or processes that you adopted to comply with SB14.

2.     Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 9937 Garland Road, Dallas, Texas 75218.

3.     Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ██████████████████████ ██████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 2141 N. Josey Lane, Carrollton, Texas 75006.

Copy from re:SearchTX

4.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ███████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 225 E. FM 544 Ste 100, Murphy, Texas 75094.

5.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ██████████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 901 Legacy Drive, Plano, Texas 75023.

6.      Produce pharmacy records, controlled substance records, pharmacist notes, prescription records, and billing records for each testosterone and/or puberty blocker prescription written by M. Brett Cooper, M.D., for ██████████████, from January 1, 2022, through the present that were filled at the Walgreens pharmacy located at 4994 W. University Drive, McKinney, Texas 75071.

7.      Produce **de-identified** pharmacy records, controlled substance records, pharmacist notes, and prescription records that show each instance where a Walgreens pharmacy located in Texas refused to fill a prescription written by M. Brett Cooper, M.D., from September 1, 2023, through the present, because the pharmacist or any other Walgreens employee believed that doing so could violate SB14.

Copy from re:SearchTX

## WITNESS *SUBPOENA* RETURN

Came to hand the _____ day of _____, 2025, at _____ o'clock,  and

executed the _____ day of _____, 2025, at _____ o'clock, by delivering to the within

named _____ in person at _____

in_____ County, TX, a true copy of this *Subpoena*, and tendering said witness the

sum of $_____.

By Deputy:_____,_____County, Texas.

Sheriff/Constable:_____, _____ County, Texas.

**OR**

By:

Person who is not a party to the suit and is not less than 18 years of age.

### ACCEPTANCE OF SERVICE OF *SUBPOENA* BY WITNESS PER T.R.C.P. 176

I, the undersigned witness named in the *Subpoena* acknowledge receipt of a copy thereof, and hereby accept service of the attached subpoena, and will appear in said court on said date and time directed in this subpoena.

*Rule 176.8(a) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.*

SIGNATURE _____ DATE _____

Copy from re:SearchTX

Appx. 507

# Exhibit B

Copy from re:SearchTX

Filed: 1/13/2025 10:21 AM
Mitchell Court
District Clerk
Collin County, Texas
By Elizabeth Anderson Deputy
Envelope ID: 96128996

Cause No. 493-08026-2024

| | | |
|---|---|---|
| The State of Texas,<br>*Plaintiff*, | §<br>§<br>§ | In the District Court of |
| v. | §<br>§ | Collin County, Texas |
| M. Brett Cooper, M.D.,<br>*Defendant*. | §<br>§ | 493rd Judicial District |

## PROTECTIVE ORDER

After considering the parties' motions, any responses thereto, and arguments of counsel, the Court hereby enters the following protective order in Case Nos. 493-08026-2024 and 493-07676-2024.

To adequately protect individually identifiable health information and other information entitled to be kept confidential, the Court orders as follows:

**I.    Definitions:**

(A)    As used in this Order, the term **"party"** shall mean all named parties to any action in the above-captioned litigation, including any named party added or joined to any complaint in this action.

(B)    The term **"third-party"** shall mean any individual, corporation, other natural person or entity, or any state, federal, or local government agency.

(C)    The term **"documents"** as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Tex. R. Civ. P. 192.3(b), and shall include all written, oral, recorded, or graphic material, however produced or reproduced, including, but not limited to, all written or printed matter of any kind, computer data, all graphic or manual records or representations of any kind, and electronic, mechanical, or electric records or representations of any kind.

Copy from re:SearchTX

(D)    As used in this Order, the term **"confidential health information"** means "protected health information" as defined in the Texas Medical Records Privacy Act (TMRPA), Tex. Health & Safety Code Ch. 181 and the Health Insurance Portability and Accountability Act (HIPAA) of 1996, 45 C.F.R § 164.501 ("protected health information") and 160.103 ("individually identifiable health information").

(E)    The term **"confidential information"** means information (regardless of how it is generated, stored or maintained) or tangible things that contain or reflect confidential, non-public, proprietary, commercially sensitive, and/or private information of a n individual or entity. confidential information includes, but is not limited to, confidential health information.

(F)    The term **"classified information"** refers to all documents designated as "confidential information" or "confidential health information."

## II.    <u>General Provisions</u>:

(A)    **Production of Health Information That May Be Subject To 5 U.S.C. § 552a, to 45 C.F.R. §§ 164.102-164.534, or to 42 U.S.C. § 1306, or Other Privacy Protections.** Documents produced during discovery in the above-captioned litigation may contain information subject to provisions of state and federal privacy laws governing health information. In order to facilitate the production of these records and to protect their confidentiality, the requested or subpoenaed parties are permitted to produce these documents to any party of the litigation in an unredacted form to the extent permitted by law. Upon producing these documents, the producing party shall designate them as "confidential health information" in the manner set forth below. All parties receiving these documents may use such designated records only for purposes of the above-captioned litigation and may disclose them to non-parties to this litigation only as specified within this Order and only if the non-party signs the form of acknowledgment attached to this Order as set forth below.

Appx. 510

Copy from re:SearchTX

(B)    **Designation of Material Subject to this Protective Order.** To designate Confidential Information produced in Documentary form (e.g., paper or electronic Documents), the Producing Party shall so designate on the material itself or in an accompany cover letter using the following designations, as appropriate: "CONFIDENTIAL" or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." If only a portion or portions of the material on a page qualifies for protection, and it is feasible and not unduly burdensome to do so, the Producing Party also must clearly identify the protected portions and must specify, for each portion, the protection being asserted. For testimony given in deposition or in other pretrial or trial 4 proceedings, that the Designating Party when practical identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the protection being asserted. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards, that the entire transcript or any portion thereof shall be treated as "CONFIDENTIAL," or "CONFIDENTIAL HEALTH INFORMATION – SUBJECT TO PROTECTIVE ORDER." Parties shall give the other Parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Confidential Information so that the other Parties can ensure that only authorized individuals who have signed the "Certification" (Exhibit A) are present at those proceedings.

(C)    **Scope of Order.** The terms and conditions of this Order shall govern all documents designated as classified information. Should a document or record contain information that is protected under the terms and conditions of this Order as well as the terms and conditions of any other Protective Order entered in the above-captioned litigation, the terms and conditions of this Order shall govern in the event of any conflict between the Orders.

III.    **Provisions Governing Use and Disclosure of Classified Information:**

Copy from re:SearchTX

Appx. 511

(A)     The parties may not use or disclose classified information for any purpose other than use in the above-captioned litigation.

(B)     Classified information may be disclosed only to the following qualified persons:

1.     This Court and all persons assisting this Court in this action, including court reporters taking testimony involving such information, and necessary stenographic and clerical personnel;

2.     Persons retained as consultants or experts for any party and principals and employees of the firms with which consultants or experts are associated;

3.     Persons other than consultants or experts, who are employed by counsel to provide purely administrative assistance to counsel for any party for the purpose of this action, including litigation support services and outside copying services;

4.     Any person who may testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in this action, and for the purpose of assisting in the preparation or examination of the witness;

5.     Any other person hereafter designated by written stipulation of the parties and, if applicable, the third-party who produced or supplied the confidential health information, or by further order of this Court; and

6.     The parties, the parties' counsel and their partners, associates, paralegals, and clerical and support personnel.

(C)     No classified information may be disclosed to any person pursuant to the provisions of paragraph III. (B) of this Order unless counsel first informs such person that pursuant to this Order the material to be disclosed may only be used for purposes of preparing and presenting evidence in this litigation and must be kept confidential. No classified information may be disclosed to any person identified in this Order unless such person first is given a copy of this Order and advised that the information contained in the document is classified information and informed that an unauthorized disclosure of the information in the document may constitute contempt of this Court. Each person to whom classified information is disclosed shall execute an acknowledgement in the form of attached hereto as Exhibit A and shall agree to be bound by this Order prior to receiving any classified information. Copies of the executed Certifications, and a current log of the

- 4 -

Copy from re:SearchTX

materials containing confidential health information disclosed to each person executing a Certification, shall be retained by counsel for the party or parties who disclosed the confidential health information to such persons.

(D)    No person, firm, corporation, or other entity subject to this Order shall give, show, disclose, make available, or communicate classified information to any person, firm, corporation, or other entity not expressly authorized by this Order to receive such classified information.

(E)    **Use of Classified Information in Court.** In the event any party wishes to use classified information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the classified information, such as redacting the personal identifiable information, including patient names, names of family members, social security numbers, patient numbers, addresses, phone numbers, email addresses, or other contact information. In the event this Court wishes to review the redacted material, this Court may review the redacted material in camera or order that the documents or transcript of any hearing containing classified information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

(F)    **Identification of Patients and Their Confidential Health Information.** In the event any party wishes to identify any patient or their confidential health information in motions, affidavits, briefs, exhibits, or other documents and admitted during proceedings in this action, such party shall take appropriate steps to safeguard the identities and confidential health information of each patient, by referring to the patient through a generic reference, as follows: "Patient One," "Patient Two," etc. In the event this Court wishes to know the identification of the patient, this Court may review the identification of each patient in camera or order that the documents or

Copy from re:SearchTX

transcript of any hearing containing the identities of the patient and their confidential health information be filed under seal. Alternatively, the parties may file such affidavits, briefs, exhibits, or documents under seal with this Court. The Clerk of Court shall accept for filing under seal any documents or filings so marked by the parties pursuant to this paragraph.

**IV.    Challenging Classified Information Designations:**

(A)    A party shall not be obligated to challenge the propriety of a classified information designation at the time such designation is made and a failure to do so shall not preclude a subsequent challenge to the designation. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation of any information as classified information, the objecting party may invoke this Protective Order by objecting in writing to the party who designated the document or information as classified information. The designating party shall then have fourteen (14) days to move the court for an order preserving the designated status of the disputed information. The disputed information shall remain classified information unless and until the court orders otherwise, except that the failure of the designating party to request and obtain a setting seeking an order within thirty days of moving the court for an order shall constitute a termination of the status of such item as classified information.

**V.    Destruction of Classified Information at Completion of Litigation:**

(A)    Within sixty (60) days after the final resolution of the above-captioned action, including resolution of all appellate proceedings, all documents and copies of documents in the Attorney General's possession, which are designated as containing classified information, as well as notes, memoranda, and summaries taken or made of such documents that contain classified information, shall either be returned to the producing party or third party or destroyed.

Copy from re:SearchTX

Appx. 514

(B)     All counsel of record who received documents that contain classified information shall certify compliance herewith and shall deliver the same to the producing party or third party not more than sixty (60) days after the final resolution of this action. The return of documents or certifications of destruction relating to documents produced by the State of Texas shall be provided to Office of the Attorney General, Consumer Protection Division.

(C)     This provision does not apply to patient medical records that are already existing in the patient's medical chart and may remain in the patient's medical chart for the purpose of continuing healthcare and must be preserved according to the physician's obligations to the patient and medical board.

## VI.   Miscellaneous Provisions:

(A)     **No Waiver.** The failure to designate any materials shall not constitute a waiver of the assertion that the materials are covered by this Protective Order.

(B)     **Third-Party Request or Demand for Disclosure.** Should any party bound by this Order receive a subpoena, civil investigative demand, or other process from a third-party seeking, requesting, or requiring disclosure of classified information in any form, such person shall give notice immediately to the producing party so that the producing party may seek appropriate relief, if any. Notice shall be made within ten (10) days of receiving the request for production and shall be in writing. Notice to the State of Texas shall take the form of written notification to the Office of the Attorney General, Consumer Protection Division. No person bound by this Order who receives a subpoena, civil investigative demand, other process from a third-party seeking, requesting, or requiring the disclosure of classified information shall produce or disclose such documents or information unless and until a) ordered by a court having competent jurisdiction, or b) such production or disclosure is in accordance with the provisions herein and is expressly consented to by the producing party.

- 7 -

Appx. 515

Copy from re:SearchTX

(C)    **Inadvertent Failures to Designate.** An inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this Order for such material. Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

(D)    **Storage and Maintenance of Classified Information.** Classified information must be stored and maintained by a receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any person in possession of classified information will maintain appropriate administrative, technical, and organizational safeguards ("Safeguards") that protect the security and privacy of classified information. The Safeguards will meet or exceed relevant industry standards and limit the collection, storage, disclosure, use of, or access to classified information solely to personnel and purposes authorized by this Order.

(E)    **Inadvertent Production of Privileged Material.** When a producing party gives notice of receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set in the Texas Rules of Civil Procedure, including Texas Rule of Civil Procedure 193.3(d). The production or disclosure of any material that is attorney-client privileged, physician-patient privileged, work-product-protected, or otherwise privileged under Texas law shall not result in the waiver of any claim of privilege or work product protection associated with such information, regardless of the circumstances of such production or disclosure.

(F)    **Unauthorized Disclosure of Classified Information.** If a receiving party learns that, by inadvertence or otherwise, it has disclosed classified information to any person or in any circumstance not authorized under this Order, the receiving party must immediately (a) notify in

- 8 -

Copy from re:SearchTX

writing the designating party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the classified information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Certification" that is attached hereto as Exhibit A. If a receiving party or person authorized to access classified information ("Authorized Recipient") discovers any loss of classified information or a breach of security, including any actual or suspected unauthorized access, relating to another party's classified information, the receiving party or authorized recipient shall: (1) promptly stop the unauthorized breach; (2) promptly (within 72 hours) provide written notice to the designating party of such breach, including information regarding the size and scope of the breach; and (3) investigate and make reasonable efforts to remediate the effects of the breach. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate any unauthorized access.

      (G)    **The Application of Other Privacy Provisions of Law.** Notwithstanding any provision of this Order to the contrary, in accordance with any applicable federal, state, or local laws that afford heightened protection to certain categories of confidential health information including, but not limited to records or diagnosis or treatment for alcohol or substance abuse, certain sexually transmitted diseases such as HIV/AIDS, mental health, minors, and research pertaining to genetic testing, the producing party may completely exclude from production any information afforded heightened protection by such federal, state, or local laws.

      (H)    Nothing in this Order shall affect the rights of the parties or third parties to object to discovery on grounds other than those related to the protection of confidential health information, nor shall it preclude any party or third-party from seeking further relief of protective orders from this Court as may be appropriate under the Texas Rules of Civil Procedure.

Copy from re:SearchTX

Appx. 517

(I)    Any person requiring further protection of confidential health information may petition this Court for a separate order governing the disclosure of its information.

(J)    The provisions of this Order shall survive the conclusion of this action.

### VII.    No Good Cause to Excuse Patient Notification:

This Court does not find that good cause exists to excuse the parties from the patient notification requirements in Tex. R. Civ. P. 196.1(c); save and except, as to the identified limited motion to transfer venue discovery (date, location of treatment, location of filling of prescription) which the parties agree falls within 196.1(c)(2)(B). (Parties agree all other information will be wholly redacted).

### VIII.    No Attestation Required:

This Court finds that the allegations in this suit involve the prescribing of puberty blockers and/or cross-sex hormones for the purposes of transitioning a minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code §161.702(3), and alleged falsification of medical records, prescriptions, and billing records to intentionally conceal the allegedly unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5). See generally Tex. Orig. Pet.

The Court finds the attestation provision is not applicable in this cause, including but not limited for the reason the information is not sought for a prohibited purpose. The parties are, therefore, excused from the attestation requirement contained in 45 C.F.R. § 164.509(a), to the extent such requirements exist.

SIGNED on this 13th day of January, 2025.

Copy from re:SearchTX

Appx. 518

CHRISTINE A. NOWAK
DISTRICT COURT JUDGE

Copy from re:SearchTX

# EXHIBIT A

Copy from re:SearchTX

Appx. 520

## <u>CERTIFICATION</u>

I certify that I have read the attached Agreed Protective Order (the Order), and I agree that I will not use or disclose classified information or individually identifiable health information for any purpose other than this litigation and that, within sixty days (60) after the final resolution of this action, I will either return all classified information to the party that produced such information or destroy such classified information. I will otherwise keep all classified information in accordance with this Order. I agree that the 493rd District Court in Collin County Texas has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I agree that the court where *Texas v. Cooper*, **No. 493-08026-2024** is pending at the time of enforcement or where the trial in *Texas v. Cooper* occurred has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.


_____
Date

_____
[Printed Name]


_____
[Signature]

- 13 -

Copy from re:SearchTX

Appx. 521

# Exhibit C

Copy from re:SearchTX

Cause No. _____

| | |
|---|---|
| Nonparty Patient No. 1,<br>Nonparty Patient No. 2,<br>Nonparty Patient No. 3,<br>Nonparty Patient No. 4, and<br>Nonparty Patient No. 5,<br><br>               Petitioners-Movants,<br><br>    vs.<br><br>The State of Texas,<br><br>            Respondents. | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>_____ JUDICIAL DISTRICT |

**DECLARATION IN SUPPORT OF THE NONPARTY PATIENTS' PETITION FOR PROTECTION FROM DISCOVERY SUBPOENAS**

1.      I am an attorney at the law firm of Winston & Strawn LLP. I represent the Petitioners ("Nonparty Patients") in responding to the State of Texas's subpoenas ("Subpoena") to Walgreens Pharmacy (the "Pharmacy"). I am a member in good standing of the State Bar of Texas. I provide this declaration in support of The Nonparty Patients' Amended Petition for Protection from Discovery Subpoenas ("Petition"). I have personal knowledge of the facts stated herein, and I could and would testify completely thereto if called as a witness in this matter.

2.      Each of the Nonparty Patients is one of 5 individuals about whom the State has sought documents via the Subpoenas related to medical care and treatment received at the Pharmacy, including prescription records, pharmacists' notes, and communications about patient care.

3.      A true and correct copy of the subpoena to the Pharmacy is attached as Exhibit A to the Petition, with redactions to safeguard the identities and confidential health information of the patients identified therein.

1

Copy from re:SearchTX

4.      The Subpoenas were accompanied by a Protective Order issued by the 493rd Judicial District in Collin County, Texas. A true and correct copy of that Protective Order is attached to the Petition as Exhibit B. To comply with § III(F) of the Protective Order, to safeguard the identity of the patients at issue in the Collin County litigation, and to preserve the confidential health information of the Nonparty Patients, the Petition has been filed using a generic reference for the Nonparty Patients. Also consistent with the Protective Order, in the event the Court wishes to identify one or more of the Nonparty Patients, they may be identified *in camera* or as otherwise ordered by the Court.

5.      A true and correct copy of the State's Verified Original Petition in Collin County, Cause No. 493-08026-2024, is attached as Exhibit D.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, on May 19, 2025.


    /s/ *William M. Logan*

2

Copy from re:SearchTX

Appx. 524

# Exhibit D

Copy from re:SearchTX

Filed: 11/4/2024 10:03 AM
Michael Gould
District Clerk
Collin County, Texas
By Jessica Peltier Deputy
Envelope ID: 93879102

493-08026-2024

CAUSE NO. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| | § | |
| M. BRETT COOPER, M.D., | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND
## REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIONS[1]

Defendant, M. BRETT COOPER, M.D., is a scofflaw who is harming the health and safety of Texas children by providing cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex in violation of Tex. Health & Safety Code § 161.702(3), and falsifying medical records, prescriptions, and billing records to intentionally conceal the unlawful conduct in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).[2]

Cross-sex hormones, when used for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex, interfere with a child's normal physical development and result in long-term harm to the child, including *inter alia,* sterilization, loss of bone density, and the development of irreversible secondary opposite sex characteristics. Children, by definition, lack the cognitive maturity to

---

[1]    Pursuant to Local Rule 2.3, the State hereby notifies the district clerk that this litigation involves claims and parties related to the pending litigation, *State of Texas v. Lau*, Case No. 493-07676-2024 (493rd Dist. Ct., Collin County); therefore, the State requests that this matter be assigned and/or transferred to that court for future proceedings.

[2]    Each prescription for cross-sex hormones for the purpose of transitioning a child's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex also serves as an independent ground for the Texas Medical Board to revoke Cooper's medical license under Tex. Occ. Code §§ 164.052(a)(24), .0552.

1

Appx. 526

Copy from re:SearchTX

provide informed consent/assent to these harmful and irreversible, life-altering decisions. Therefore, the Texas legislature chose to prohibit physicians and health care providers from providing, prescribing, administering, or dispensing puberty blockers and cross-sex hormones to children for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex. By banning these dangerous and experimental treatments for minors, Texas is ensuring that children receive the opportunity to resolve temporary feelings of discomfort and confusion about their biological sex with time and therapeutic support—without being pressured by radical gender activists to undergo irreversible medical procedures before they are capable of comprehending the significant life-long consequences. The prohibition took effect on September 1, 2023.

Despite the enactment of the law, Cooper continues to prescribe and distribute cross-sex hormones to his minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex—writing unlawful prescriptions for the drugs as recently as **September 25, 2024,** with patients filling those unlawful prescriptions as recently as **October 8, 2024.**

Cooper, additionally, engaged in false, misleading, and deceptive acts and practices to mislead pharmacies, insurance providers, and/or patients by falsifying medical records, prescriptions, and billing records to conceal that his treatments and prescriptions were for the purposes of transitioning a child's biological sex or affirming a child's belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17. 46(a), (b)(5).

Appx. 527

Copy from re:SearchTX

Plaintiff, STATE OF TEXAS, by and through the Attorney General of Texas, KEN PAXTON, has a vested interest in ensuring that medical treatments provided to minors are safe, evidence-based, and in the best interest of the child's physical and emotional development. Texas is prioritizing the safety and well-being of children by holding Cooper accountable for violating state laws prohibiting deceptive trade practices and providing cross-sex hormones to minors for the purpose of transitioning their biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex.

## I.    PARTIES

1.    Defendant is M. BRETT COOPER, M.D. (NPI# 1477819241; TX Lic.# Q4928), an employee of the University of Texas Southwestern Medical Center ("UT Southwestern") in Dallas, Texas. He has hospital privileges at Children's Medical Center Dallas and is an Associate Professor at UT Southwestern Medical Center. Cooper may be served with process at Children's Health Specialty Center, 7609 Preston Road, 3rd Floor, Plano, Texas 75024, or wherever he may be found.

## II.    DISCOVERY CONTROL PLAN

2.    Discovery in this case should be conducted under Level 3 pursuant to Tex. R. Civ. P. 190.4. This case is not subject to the restrictions of expedited discovery under Tex. R. Civ. P. 169 because Texas seeks nonmonetary injunctive relief.

3.    Additionally, Texas claims entitlement to monetary relief in an amount greater than **$1,000,000,** including civil penalties, reasonable attorney's fees, litigation expenses, restitution, and costs.

Copy from re:SearchTX

### III.    JURISDICTION AND VENUE

4.    Texas Occ. Code § 161.706(b) provides that venue is proper in "the county where the violation occurred or is about to occur."

5.    Venue of this suit lies in Collin County, Texas pursuant to Texas Bus. & Com. Code § 17.47(b), because transactions forming the basis of this suit occurred in Collin County, Texas. Also, Cooper practices at UT Southwestern Pediatric Group at Plano in Collin County and Cooper's unlawful conduct occurred in Collin County, Texas.

### IV.    PUBLIC INTEREST

6.    Cooper violated Tex. Health & Safety Code § 161.702, Tex. Bus. & Com. Code § 17.46(a) and is engaged in unlawful practices, as set forth in this petition.

7.    Texas has reason to believe that Cooper is engaging in, has engaged in or is about to engage in, the unlawful acts or practices set forth below. Texas has further reason to believe Cooper has caused injury, loss, and damage to Texas by endangering the health of its citizens. Therefore, the Consumer Protection Division of the Office of the Attorney General of the State of Texas is of the opinion that these proceedings are in the public interest.

### V.    TRADE AND COMMERCE

8.    At all times described below, Cooper engaged in conduct, the purported practice of medicine, which constitutes "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6).

4

Copy from re:SearchTX

## VI.    NO NOTICE BEFORE SUIT

9.      The Consumer Protection Division has reason to believe that Cooper "is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful … and that proceedings would be in the public interest…." Tex. Bus. & Com. Code § 17.47(a).

10.     The Consumer Protection Division did not contact Cooper before filing suit to notify him "in general of the alleged unlawful conduct" because it is the opinion of the Consumer Protection Division that Cooper likely "would destroy" or alter "relevant records if prior contact were made." *Id.*

## VII.    APPLICABLE LAW

11.     Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

12.      Texas Bus. & Com. Code § 17.47 authorizes the Consumer Protection Division to bring an action for temporary and permanent injunction whenever it has reason to believe that any person is engaged in, has engaged in, or is about to engage in any act or practice declared unlawful under Chapter 17 of the Business and Commerce Code.

## VIII.   FACTUAL BACKGROUND

A.      *Texas Prohibits the Provision of Puberty Blockers and Cross-Sex Hormones to Minors for the Treatment of Gender Dysphoria.*

13.     On May 17, 2023, the Legislature added Subchapter X to the Health and Safety Code, entitled "Gender Transitioning and Gender Reassignment Procedures and Treatments for Certain Children (SB 14)." Act of May 17, 2023, 88th Leg., R.S., ch. 335; *State v. Loe*, 692 S.W.3d 223 (Tex. 2024).

Appx. 530

Copy from re:SearchTX

14.     Senate Bill 14 prohibits physicians and health care providers from performing certain procedures or treatments when performed to (1) "transition[] a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child"; or (2) "affirm[] the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Tex. Health & Safety Code § 161.702.

15.     The effective date for SB 14 was September 1, 2023.

16.     Senate Bill 14 added Tex. Health & Safety Code § 161.702(3), which prohibits physicians from knowingly prescribing the following to transition a child's biological sex or affirm a child's perception of their sex if it is different from their biological sex: "(A) puberty suppression or blocking prescription drugs to stop or delay normal puberty; (B) supraphysiologic doses of testosterone to females; or (C) supraphysiologic doses of estrogen to males."

17.     Physicians were permitted to prescribe to patients already subject to a continuing course of treatment that began prior to June 1, 2023, and who attended at least 12 mental health counseling or psychotherapy sessions over a period of at least six months prior to starting treatment, provided that the prescriptions were for the purpose of "wean[ing] off the prescription drug over a period of time and in a manner that is safe and medically appropriate and that minimizes the risk of complications." Tex. Health & Safety Code § 161.703(b)-(c).

18.     Senate Bill 14 also added Tex. Occ. Code § 164.052(a)(24), which proscribed physicians from "perform[ing] a gender transitioning or gender reassignment procedure or treatment in violation of [Tex. Health & Safety Code § 161.702]."

Appx. 531

Copy from re:SearchTX

19.     Finally, SB 14 added Tex. Occ. Code § 164.0552, which commands that the Texas Medical Board "*shall revoke* the license or other authorization to practice medicine of a physician who violates [Tex. Health & Safety Code § 161.702]." (emphasis added).

B.     *The Texas Supreme Court Held That SB 14 is Constitutional.*

20.     Before SB 14 took effect several minors, parents of minors, and physicians brought suit in Travis County, TX, alleging a variety of constitutional challenges to the law. *Loe*, 692 S.W.3d at 222.

21.     On August 25, 2023, a Travis County District Court entered a temporary injunction enjoining enforcement of SB 14. *Id*.

22.     Texas appealed directly to the Texas Supreme Court, thereby dissolving the temporary injunction. *Id*.

23.     On September 1, 2023, the Texas Supreme Court allowed SB 14 to take effect during the pendency of the appeal. *Id*.

24.     On June 28, 2024, the Supreme Court of Texas reversed and vacated the trial court's Temporary Injunction Order after rejecting each of the plaintiffs' constitutional challenges to SB 14. *Id*. at 239.

C.     *Cooper is a Radical Gender Activist.*

25.     In his own words, Cooper makes clear that he is an advocate for transitioning the biological sex or affirming their belief that children's gender identities are inconsistent with their biological sex.

26.     Cooper said, in a Physicians for Reproductive Health *Meet Our Advocates* article: "I try to actively encourage all of our [physician] trainees to find some way to incorporate advocacy

7

Copy from re:SearchTX

into their professional careers." Cooper added that the most important policy issue for him is

"[l]egislators trying to criminalize the provision of gender affirming medical care for patients under

18." https://tinyurl.com/4bj646e6, last updated December 22, 2020.

27.    Here, Cooper's following contributions align with his call for activism:

    i.    M. Brett Cooper, Resources for LGBTQ youth during challenging times, (Feb. 14, 2023), https://tinyurl.com/yck9f2y7;

    ii.    M. Brett Cooper, *Incorporating LGBT Health in an Undergraduate Medical Education Curriculum Through the Construct of Social Determinants of Health*, 14 MedEdPORTAL (Dec. 7, 2018) (power point presentation slides include statements that "our internal gender identity is essentially formed and stays consistent by the age of 7," and falsely claiming that Texas physicians "are required to notify CPS for all minors who have sex with someone of the same gender."), https://tinyurl.com/3a7c8nrs;

    iii.    Laura E. Kuper, *Supporting and Advocating for Transgender and Gender Diverse Youth and their Families Within the Sociopolitical Context of Widespread Discriminatory Legislation and Politics*, Clinical Practice in Pediatric Psychology 3, 336 (2022), https://tinyurl.com/bdabj3ra;

    iv.    Lauren T. Roth, *Developing an Entrustable Professional Activity to Improve the Care of LGBTQ+ Youth* 23 Academic Pediatrics. 4, 697 (May 1, 2023), https://tinyurl.com/56bk9hdz;

    v.    M. Brett Cooper, *Welcoming LGBTQ Patients*, Pediatric News (Apr. 17, 2024), https://tinyurl.com/3vyxr9ae;

    vi.    M. Brett Cooper, *LGBTQ+ Youth Consult Questions remain over use of sex hormone therapy*, Pediatric News (Apr. 13, 2023), https://tinyurl.com/54yecjdd;

    vii.    M. Brett Cooper, *The WPATH guidelines for treatment of adolescents with gender dysphoria have changed*, Pediatric News (Oct. 17, 2022), https://tinyurl.com/53txa22h;

    viii.    M. Brett Cooper, *How gender-affirming care is provided to adolescents in the United States*, Pediatric News (Apr. 22, 2022), https://tinyurl.com/3yv3n6nj;

Copy from re:SearchTX

ix.        M. Brett Cooper, *Call them by their names in your office*, Pediatric News (Oct. 14, 2021), https://tinyurl.com/2swpe6vf;

x.         M. Brett Cooper, *Advocate for legislation to improve, protect LGBTQ lives*, Pediatric News (Dec. 11, 2020), https://tinyurl.com/zruxkhmf;

xi.        M. Brett Cooper, *Back to school: How pediatricians can help LGBTQ youth*, Pediatric News (Aug. 11, 2020), https://tinyurl.com/36wf2xyy;

xii.       Cooper submitted a sworn affidavit on behalf of the Plaintiffs in the *Loe* suit wherein he stated that "SB 14 thus not only endangers the health and wellbeing of my patients, but also places me in the unsustainable position of having to choose between providing my patients with the medical care that they need and deserve and having to comply with a discriminatory law like SB 14. I have an ethical duty to provide my patients with the best medical care for their conditions, if it is medically indicated for them. I consider the provision of gender-affirming medical care to treat a transgender adolescent's gender dysphoria to be the best medical care for my patients when medically indicated"; and,

xiii.      Cooper is also prolific on X under the handle "TeenDocMBC." His presence on X reveals that he infuses his medical practice with radical gender activism and exercises poor judgment, as exemplified by the following set of representative tweets:



Copy from re:SearchTX


**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                    · · ·

Today is a sad day for transgender Texans.   Yet again, the #txlege inserts themselves in the doctor-patient relationship, not because of science, but because of political ideology. This is despite testimony of physicians and major medical organizations.
cnn.com/2023/08/31/pol...

2:25 PM · Sep 1, 2023 · **201** Views



---


**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                    · · ·

Perhaps Ken Paxton needs to worry about his own problems in Texas and stop trying to patrol people's bodies and healthcare across the country....


> dallasnews.com
> Texas AG Ken Paxton seeks gender-affirming care records fr
> In the complaint, the Seattle hospital argues Texas authorities don't have jurisdiction over these Washington ...

12:39 PM · Dec 22, 2023 · **72** Views

**M. Brett Cooper, MD, M.Ed.**
@teendocmbc                                    · · ·

Honored to be a part of this story.  TX is losing doctors each year (and having trouble recruiting new ones) due to the regressive policies of our state government.  The Lege doesn't belong in the doctor-patient relationship #patientsoverpolitics @texmed


| from 2023

"Unbearable": Doctors treating trans kids are leaving Texas, exacerba...
From texastribune.org

8:24 PM · Jul 18, 2023 · **519** Views

10

Copy from re:SearchTX

Appx. 535

28.     Cooper's practices, publications, and social media presence reveal an entrenched commitment to a gender ideology advocacy that desires to medically transition the biological sex of children or affirm the belief that a child's gender identity is inconsistent with their biological sex.

## IX.    VIOLATIONS OF SB 14.

29.     Cooper has knowingly violated Tex. Health & Safety Code § 161.702(3).

A.    *Cross-Sex Hormones to Transition Biological Sex or Affirm a Child's Belief that their Gender Identity is Inconsistent with their Biological Sex.*

30.     High dose cross-sex hormones are commonly used by certain gender activists to transition the biological sex of children or affirm a child's belief that their gender identity is inconsistent with their biological sex.

31.     Cross-sex hormones induce a supraphysiologic state where the hormone levels are greater than would otherwise normally be present in the child's body.

32.     As a result of the cross-sex hormones, the child will develop secondary sex characteristics.

33.     Testosterone is a cross-sex hormone that is used to induce irreversible male secondary sex characteristics in biological females.

34.     Testosterone is a Schedule III controlled substance.

35.     Radical gender activists within the medical profession rely on the so-called "Standards of Care" promulgated by the WPATH as guidelines for transitioning the biological sex of children or affirming a child's belief that their gender identity is inconsistent with their biological sex. *See e.g.* Selena Simmons-Duffin, *Rachel Levine calls state anti-LGBTQ bills disturbing and*

11

Appx. 536

Copy from re:SearchTX

*dangerous to trans youth*, NPR (Apr. 29, 2022) (claiming that the standard for treating gender dysphoria is set by the WPATH), https://tinyurl.com/3jxymtum.

36.     WPATH recommends transitioning the biological sex of a child or affirming a child's belief that their gender identity is inconsistent with their biological sex by prescribing injectable testosterone cypionate to induce a state of male puberty in a biological female such that she will develop irreversible male secondary sex characteristics, WPATH SOC at App'x C.

37.     WPATH and the Endocrine Society Guidelines recommends "induction of male puberty" in a biological female minor by prescribing "$25mg/m^2/2$ weeks (or alternatively half this dose weekly) [of testosterone]. Increase by $25mg/m^2/2$ weeks every 6 months until adult dose and target testosterone levels achieved." *Id.*; Endocrine Society Guidelines at 3884, Tbl. 8 (same).

38.     WPATH and the Endocrine Society Guidelines alternatively recommend the following testosterone regime for biological females to induce male secondary sex characteristics, "testosterone enanthate/cypionate 50-100 IM/SQ weekly or 100-200 IM every 2 weeks." WPATH SOC at App'x C; Endocrine Society Guidelines at 3887, Tbl. 11 (same).

B.     *Testosterone is not FDA approved for biological females.*

39.     The FDA has *not approved* testosterone for the treatment of any medical conditions in biological females.

40.     Indeed, the FDA warns that testosterone cypionate "**is contraindicated in pregnant women and not indicated for use in females**." TESTOSTERONE CYPIONATE INJECTION, FDA (June 2022) (emphasis added), https://tinyurl.com/4psvbdeb.

41.     Under appropriate medical practices, testosterone is, instead, "use[d] to treat **males** whose bodies do not make enough natural testosterone, a condition called hypogonadism.

Copy from re:SearchTX

Testosterone is a male hormone responsible for the growth and development of the male sex organs and maintenance of secondary sex characteristics. **This medicine is not for use in female patients**." TESTOSTERONE CYPIONATE, Mayo Clinic (accessed October 15, 2024) (emphasis added), https://tinyurl.com/558b8fcv.

42.    **There is no valid medical reason within the standard of care to prescribe testosterone to a minor biological female.** *See e.g.*, Gary Donovitz, *et.al.*, *Testosterone Insufficiency and Treatment in Women: International Expert Consensus*, Medicina y Salud Pública (Sept. 4, 2019) (noting that some physicians use *low-dose* testosterone off-label to treat certain conditions in *adult* females associated with menopause), https://tinyurl.com/2ay9wsav.

43.    **The only reasons to prescribe testosterone to a minor biological female is for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.**

C.    *Cooper's Testosterone Prescribing*

44.    Radical gender activists in the medical profession, like Cooper, habitually alter the biological sex of their transgender patients in their medical records. *See e.g.*, May C. Lau, M.D., *Transgender Care of Adolescents and Adults*, Youtube 20:59-22:40 (Jan. 8, 2020), https://tinyurl.com/mkt4pzs3 (Cooper's hospital colleague doctor May C. Lau admitting that she alters patient's medical records to reflect their preferred name, sex, and pronouns, which can change on a visit-to-visit basis, something that is apparently "fairly typical [and] kind of persists into adulthood" for her minor transgender patients).

13

Copy from re:SearchTX

45.     Cooper has violated the law by providing, prescribing, administering, or dispensing testosterone to minor patients for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex:

**Patient One**[3]

46.     Patient One resides in Collin County, TX.

47.     Patient One was 17 years old during the relevant time.

48.     Cooper's records identify Patient One as a biological female.

49.     On September 25, 2024, over a year after SB 14 went into effect, Cooper wrote Patient One a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

50.     The same day, Patient One filled the prescription at a pharmacy located in Collin County, TX.

**Patient Two**

55.     Patient Two resides in Dallas County, TX.

56.     Patient Two was approximately 16 years old at the relevant time.

57.     Cooper's records identify Patient Two as a biological female.

58.     On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Two a prescription for a 7-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

---

[3]     Pseudonyms are used throughout to protect the identity of the victim minor patients.

14

Copy from re:SearchTX

59.     On the same day, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

60.     On December 16, 2023, Cooper wrote Patient Two a prescription for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

61.     On December 16, 2023, Patient Two filled the prescription at a pharmacy located in Dallas County, TX.

62.     On February 20, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

63.     On March 26, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

64.     On June 1, 2024, Patient Two refilled the prescription at a pharmacy located in Dallas County, TX.

**Patient Three**

65.     Patient Three resides in Tarrant County, TX.

66.     Patient Three was 16 years old at the relevant time.

67.     Cooper's records identify Patient Three as a biological female.

68.     On August 6, 2024, after SB 14 went into effect, Cooper wrote Patient Three a prescription for a 42-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

15

Copy from re:SearchTX

69.     On August 8, 2024, Patient Three filled the prescription at a pharmacy located in Tarrant County, TX.

70.     On September 18, 2024, Patient Three refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Four**

71.     Patient Four resides in Dallas County, TX.

72.     Patient Four was 16 years old at the relevant time.

73.     Cooper's records identify Patient Four as a biological female.

74.     On February 12, 2024, after SB 14 went into effect, Cooper wrote Patient Four a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

75.     On the same day, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

76.     On August 7, 2024, Cooper wrote Patient Four a prescription for an 84-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

77.     On August 7, 2024, Patient Four filled the prescription at a pharmacy located in Dallas County, TX.

**Patient Five**

78.     Patient Five resides in Denton County, TX.

79.     Patient Five was approximately 15 years old at the relevant time.

16

Copy from re:SearchTX

80.    Cooper's records identify Patient Five as a biological female.

81.    On November 20, 2023, Cooper wrote Patient Five a prescription for a 24-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

82.    On December 13, 2023, Patient Five filled the prescription at a pharmacy located in Denton County, TX.

83.    On January 25, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

84.    On February 29, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

85.    On May 5, 2024, Patient Five refilled the prescription at a pharmacy located in Denton County, TX.

86.    On May 20, 2024, Cooper wrote Patient Five a 90-day supply of 1,000 mg/5 ml testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

87.    On May 22, 2024, Patient Five filled the prescription at a pharmacy in Denton County, TX.

**Patient Six**

88.    Patient Six resides in Nueces County, TX.

89.    Patient Six was 14 years old at the relevant time.

90.    Cooper's records identify Patient Six as a biological female.

Appx. 542

Copy from re:SearchTX

91.     On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Six a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

92.     On the same day, Patient Six filled the prescription at a pharmacy located in Johnson County, TX.

93.     On January 12, 2024, Patient Six refilled the prescription at a pharmacy located in Johnson County, TX.

**Patient Seven**

94.     Patient Seven resides in Collin County, TX.

95.     Patient Seven was 17 during the relevant time.

96.     Some of Cooper's records identify Patient Seven's gender as "unknown."

97.     Some of Cooper's records identify Patient Seven as a biological female.

98.     On September 25, 2023, after SB 14 went into effect, Cooper wrote Patient Seven a prescription for a 21-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

99.     On September 26, 2023, Patient Seven filled the prescription at a pharmacy located in Illinois.

100.    On January 29, 2024, Cooper wrote Patient Seven a prescription for an 87-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

101.    On the same day, Patient Seven filled the prescription at a pharmacy located in Collin County, TX.

**Patient Eight**

102.    Patient Eight resides in Dallas County, TX.

103.    Patient Eight was approximately 17 years old during the relevant time.

104.    Some of Cooper's record's identify Patient Eight as a biological female.

105.    Later, Cooper's records change Patient Eight's sex to biological male, but upon information and belief, Patient Eight is a biological female.

106.    On January 10, 2024, after SB 14 went into effect, Cooper wrote Patient Eight two prescriptions, each for a 14-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

107.    On January 10, 2024, Patient Eight filled the first prescription at a pharmacy located in Dallas County, TX.

108.    On March 6, 2024, after SB 14 went into effect, Patient Eight filled the second prescription at a pharmacy located in Dallas County, TX.

109.    On August 31, 2024, Cooper wrote Patient Eight a prescription for a 42-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

110.    On the same day, Patient Eight filled the prescription at a pharmacy located in Dallas County, TX.

Copy from re:SearchTX

Appx. 544

**Patient Nine**

111.    Patient Nine resides in Collin County, TX.

112.    Patient Nine was approximately 16 years old at the relevant time.

113.    Some of Cooper's record's identify Patient Nine as a biological female.

114.    Later, Cooper's records change Patient Nine's sex to biological male, but upon information and belief, Patient Eight is a biological female.

115.    On December 22, 2023, after SB 14 went into effect, Cooper wrote Patient Nine two prescriptions, each for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

116.    On the same day, Patient Nine filled the first prescription at a pharmacy located in Collin County, TX.

117.    On May 7, 2024, Patient Nine filled the second prescription at a pharmacy located in Collin County, TX.

118.    On July 3, 2024, Cooper wrote Patient Nine two prescriptions, each for an 84 and 63-day supply of 200 mg/ml testosterone cypionate, respectively, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

119.    On August 3, 2024, Patient Nine filled the first prescription at a pharmacy in Collin County, TX.

120.    On August 5, 2024, Patient Nine filled the second prescription at a pharmacy in Collin County, TX.

Appx. 545

Copy from re:SearchTX

**Patient Ten**

120.     Patient Ten resides in Collin County, TX.

121.     Patient Ten was 16 years old at the relevant time.

122.     Cooper's records identify Patient Ten as a biological male, but upon information and belief, Patient Ten is a biological female.

123.     On September 6, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 30-day supply of 1,000 mg/5ml of testosterone enanthate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

124.     On September 7, 2023 Patient Ten filled the prescription at a pharmacy located in Collin County, TX.

125.     On December 15, 2023, after SB 14 went into effect, Cooper wrote Patient Ten a prescription for a 90-day supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

126.     On the same day, Patient Ten filled the prescription at a pharmacy in Collin County, TX.

127.     On June 7, 2024, Cooper wrote Patient Ten a prescription for a supply of 200 mg/ml testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

128.     On the same day, Patient Ten filled an 84-day supply of the prescription at a pharmacy in Collin County, TX.

21

Copy from re:SearchTX

129.    On October 8, 2024, Patient Ten refilled a 28-day supply of the prescription at a pharmacy in Collin County, TX.

**Patient Eleven**

130.    Patient Eleven resides in Tarrant County, TX.

131.    Patient Eleven was 17 years old during the relevant time.

132.    Cooper's records identify Patient Eleven as a biological male, but upon information and belief, Patient Eleven is a biological female.

133.    On December 18, 2023, after SB 14 went into effect, Cooper wrote Patient Eleven a prescription for a 28-day supply of XYOSTED 50 mg/0.5 ml Auto-Injection of testosterone enanthate, an alternative to testosterone cypionate, for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

134.    On December 20, 2023, Patient Eleven filled the prescription at a pharmacy located in Tarrant County, TX.

135.    On January 19, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

136.    On February 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

137.    On March 20, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

138.    On April 22, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

22

Copy from re:SearchTX

Appx. 547

139.    On May 24, 2024, Patient Eleven refilled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Twelve**

140.    Patient Twelve resides in Tarrant County, TX.

141.    Patient Twelve was 16 years old at the relevant time.

142.    Cooper's records identify Patient Twelve as a biological male, but upon information and belief, Patient Twelve is a biological female.

143.    On February 26, 2024, after SB 14 went into effect, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

144.    On February 26, 2024, Patient Twelve filled the prescription at a pharmacy in Tarrant County, TX.

145.    On April 17, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

146.    On May 29, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

147.    On July 15, 2024, Patient Twelve refilled the prescription at a pharmacy in Tarrant County, TX.

148.    On August 7, 2024, Cooper wrote Patient Twelve a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

149.    On the same day, Patient Twelve filled the prescription at a pharmacy located in Tarrant County, TX.

**Patient Thirteen**

150.    Patient Thirteen resides in Denton County, TX.

151.    Patient Thirteen was 17 years old at the relevant time.

152.    Cooper's records identify Patient Thirteen as a biological male, but upon information and belief, Patient Thirteen is a biological female.

153.    On March 19, 2024, after SB 14 went into effect, Cooper wrote Patient Thirteen a prescription for a 28-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

154.    On the same day, Patient Thirteen filled the prescription at a pharmacy located in Denton County, TX.

155.    On April 19, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

156.    On May 14, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

157.    On July 10, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

158.    On August 11, 2024, Patient Thirteen refilled the prescription at a pharmacy located in Denton County, TX.

Copy from re:SearchTX

**Patient Fourteen**

159.    Patient Fourteen resides in Collin County, TX.

160.    Patient Fourteen was approximately 15 years old at the relevant time.

161.    Cooper's records identify Patient Fourteen as a biological male, but upon information and belief, Patient Fourteen is a biological female.

162.    On October 11, 2023, after SB 14 went into effect, Cooper wrote Patient Fourteen two prescriptions, each for a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

163.    On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

164.    On November 17, 2023, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

165.    On December 28, 2023, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

166.    On January 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

167.    On February 28, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

168.    On April 8, 2024, Cooper wrote Patient Fourteen three prescriptions, the first was for a 30-day supply and the second and third were for a 7-day supply of 200 mg/ml of testosterone

Appx. 550

Copy from re:SearchTX

cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

169.    On the same day, Patient Fourteen filled the first prescription at a pharmacy located in Collin County, TX.

170.    On May 24, 2024, Patient Fourteen refilled the first prescription at a pharmacy located in Collin County, TX.

171.    On June 29, 2024, Patient Fourteen filled the second prescription at a pharmacy located in Collin County, TX.

172.    On August 2, 2024, Patient Fourteen refilled the second prescription at a pharmacy located in Collin County, TX.

173.    On September 1, 2024, Patient Fourteen filled the third prescription at a pharmacy located in Collin County, TX.

174.    On October 2, 2024, Patient Fourteen refilled the third prescription at a pharmacy located in Collin County, TX.

**Patient Fifteen**

175.    Patient Fifteen resides in Collin County, TX.

176.    Patient Fifteen was approximately 16 years old at the relevant time.

177.    Cooper's records identify Patient Fifteen as a biological male, but upon information and belief, Patient Fifteen is a biological female.

178.    On October 22, 2023, after SB 14 went into effect, Cooper wrote Patient Fifteen a prescription for an 84-day supply of 200 mg/ml testosterone cypionate for the purposes of

Copy from re:SearchTX

transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

179.    On October 23, 2023, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

180.    On January 14, 2024, Patient Fifteen refilled the prescription at a pharmacy in Collin County, TX.

181.    On April 9, 2024, Cooper wrote Patient Fifteen a 30-day supply of 200 mg/ml of testosterone cypionate for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

182.    On the same day, Patient Fifteen filled the prescription at a pharmacy in Collin County, TX.

\* \* \*

183.    Paragraphs 46-182 describe 15 minor patients who Cooper has unlawfully treated with testosterone for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of SB 14.

184.    Some of Cooper's medical records for the patients identified in the preceding paragraphs indicate that the patients are male, but upon information and belief, all of these patients are biological females and some of Cooper's medical records indicate that the patient's sex has been recorded first as female and then as male. The result is a clear indication that Cooper is prescribing testosterone to them for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

Copy from re:SearchTX

Appx. 552

185.    Each of Cooper's prescriptions above were written and filled after SB 14 went into effect. Even so, for any prescriptions that were written prior to SB 14, Cooper cannot circumvent the law by writing prescriptions to his patients *prior* to the SB 14 taking effect with orders to fill or refill the prescriptions *after* it takes effect, *see* 22 Tex. Admin. Code § 315.3(b)(2) (Schedule III Controlled Substances can be refilled up to five times within six months of the date of issuance), because a "prescription" order is not a singular discrete act, but a continuing act of treatment that begins with the prescription being written and continues through the pharmacist filling the prescription and the drug being used as directed by the patient, or until the written prescription expires or is cancelled, and *alternatively*, because by issuing prescriptions with orders to fill them after the effective date of SB 14 Cooper is "providing" the prescribed medication to the patient at the time they fill and use the prescription as directed, which they could not do otherwise without the prescription.

186.    Each and every prescription written by Cooper after September 1, 2023, or filled or taken as directed by a patient after September 1, 2023, for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex violates Tex. Health & Safety Code § 161.702(3).

## X.    FALSE, MISLEADING, OR DECEPTIVE ACTS

187.    Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

188.    According to gender dysphoria providers, many insurance companies will not accept transgender related billing codes when coupled with prescriptions for testosterone because testosterone is not Federal and Drug Administration ("FDA") approved for use in the treatment

Copy from re:SearchTX

of gender dysphoria for minors. *See e.g.*, Stephen Rosenthal, *Insurance Coverage and Coding Considerations in Gender Affirming Hormonal Care for Adolescents & Young Adults*, WPATH ppt 12 (Jul. 28, 2021), https://tinyurl.com/4vycb29r.

189.    Upon information and belief, Cooper regarded Patients One through Fifteen as transgender patients and he evaluated, diagnosed, and treated them for gender dysphoria, while falsely, misleadingly, and deceptively, diagnosing, billing, and prescribing testosterone for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

190.    Cooper is engaging in false, misleading, or deceptive practices, by falsely diagnosing and billing patients using precocious puberty or endocrine disorder, undefined codes, or similarly false codes, instead of gender dysphoria, or other gender related diagnosis codes,[4] to conceal that he is prescribing testosterone and treating the patient for the purposes of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

191.    Cooper, as alleged herein, has in the course of trade and commerce engaged in false, misleading, and deceptive acts and practices declared unlawful in violation of Tex. Bus. & Com. Code §§ 17.46(a), (b)(5).

192.    Texas Bus. & Com. Code § 17.46(a) prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

---

[4] The *International Classification of Diseases, 10th Revision's* medical classification for gender identity disorders includes the following diagnosis codes: F64.0 Transsexualism, including other gender identity disorder and gender dysphoria in adolescents and adults; F64.1 Dual role transvestism; F64.2 Gender identity disorder of childhood; F64.8 Other gender identity disorders; and F64.9 Gender identity disorder, unspecified.

Copy from re:SearchTX

193.    Cooper deceptively misleads pharmacies, insurance providers, and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate that office visits and prescriptions written to minor patients are for something other than the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

194.    Texas Bus. & Com. Code § 17.46(b)(5) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not."

195.    Cooper deceptively misleads pharmacies, insurance providers and/or the patients by falsifying patient medical records, prescriptions, and billing records to indicate the use of testosterone are for the treatment of medical conditions the patient does not have when, in fact, the drugs are for the purposes of transitioning the minor patient's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

196.    Cooper deceptively induces pharmacies, insurance providers, and/or the patients into entering into transactions by falsifying patient medical records, prescriptions, and billing records to conceal that the treatments and prescriptions are for the unlawful purposes of transitioning a child's biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

197.    Upon information in belief, Roberts is falsely diagnosing children with precocious puberty and/or other medical conditions to prescribe them puberty blockers and cross-sex

Appx. 555

Copy from re:SearchTX

hormones for the purpose of transitioning their biological sex or affirming their belief that their gender identity is inconsistent with their biological sex.

## XI.     APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS

197.     Texas incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this Petition.

198.     Texas has reason to believe that Cooper is engaging in, has engaged in, or is about to engage in acts and practices declared to be unlawful under Tex. Health & Safety Code § 161.702(3) and Tex. Bus. & Com. Code §§ 17.46(a), (b)(5), and believes these proceedings to be in the public interest.

199.     Texas is entitled to, and seeks, temporary and permanent injunctions pursuant to Tex. Health and Safety Code § 161.702 as well as Tex. Bus. & Com. Code § 17.47.

200.     Cessation of unlawful conduct by Cooper shall not render such court action moot under any circumstances. *Id.*

201.     Immediate injunctive relief is necessary to prevent continuing harm prior to trial.

202.     In addition to the above-requested relief, pursuant to Tex. Civ. Prac. Rem. Code § 65.011 *et seq.* and Tex. R. Civ. P. 680 *et seq.*, to preserve the status quo pending a full trial on the merits, *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002), the Texas Attorney General's Office request a temporary injunction against Cooper that enjoins him from the following until final resolution of this matter:

    i.     Prescribing puberty blockers and testosterone or estrogen to minors for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

    ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or

Copy from re:SearchTX

affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

## XII.    PRAYER FOR RELIEF

203.    THEREFORE Texas prays that Cooper be cited to appear and that after due notice and hearing, a temporary injunction be issued, and that upon final hearing a permanent injunction be issued, restraining and enjoining Cooper and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise from engaging in false, misleading or deceptive acts and practices declared to be unlawful by Tex. Health and Safety Code § 161.702 and Tex. Bus. & Com. Code § 17. 46(a), (b)(5), including but not limited to:

    i.    Prescribing puberty blockers and testosterone or estrogen to minors for the purpose of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex; and

    ii.    Deceptively misleading pharmacies, insurance providers, and/or the patients as to the correct medical diagnosis by writing prescriptions and billing for the purposes of transitioning the minor's biological sex or affirming their belief that their gender identity or sex is inconsistent with their biological sex under false diagnoses, such as precocious puberty or endocrine disorder, undefined, rather than gender dysphoria (or other similarly related diagnosis).

204.    TEXAS FURTHER PRAYS that upon final hearing, this Court order:

    i.    Adjudge against Cooper civil penalties in favor of the State in the amount of not more than $10,000 per violation of Tex. Bus. & Com. Code § 17.46(a), (b)(5);

    ii.    Order Cooper to pay Texas's attorneys' fees and costs of court pursuant to Tex. Gov't Code § 402.006(c);

    iii.    Order Cooper to pay both pre-judgment and post-judgment interest on all money awards as provided by law; and

    iv.    Grant all other and further relief Texas may show itself entitled to.

Appx. 557

Copy from re:SearchTX

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

MATTHEW KENNEDY
State Bar No. 24092619
Deputy Chief, Consumer Protection Division

Consumer Protection Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Johnathan.Stone@oag.texas.gov
Matt.Kennedy@oag.texas.gov
Telephone: 512-463-2185
Facsimile: 512-473-8301

**ATTORNEYS FOR TEXAS**

33

Copy from re:SearchTX

Appx. 558

## DECLARATION

Pursuant to Tex. Civ. Rem. & Prac. Code § 132.001(f), JOHNATHAN STONE submit this unsworn declaration in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by Tex. R. Civ. P. 682. I am an employee of the following governmental agency: Texas Office of the Attorney General. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the factual statements in the foregoing are true and correct.

Executed in Travis County, State of Texas, on the 4th day of November 2024.


/s/ *Johnathan Stone*
JOHNATHAN STONE
Chief, Consumer Protection Division
State Bar No. 24071779

34

Copy from re:SearchTX

# EXHIBIT 13

| From: | Schul, Julie K |
|---|---|
| To: | Amy Pletscher |
| Cc: | Thomas, Heather N |
| Subject: | RE: ENCRYPT - Re: Subpoena for Records |
| Date: | Saturday, May 31, 2025 4:03:45 PM |
| Attachments: | Attestation re Reproductive Health Care_Final 12202024.docx |
| | image003.png |
| | image004.png |
| | image005.png |

Good afternoon, Ms. Pletscher,

Kroger has received and reviewed the HIPAA protective order sent, thank you for providing.  Due to the nature of this case, Kroger will need for the attached attestation to be signed.  Page 2 of the document provides additional detail.  The signature requested is to verify that the request is not for a prohibited purpose.

Appreciate your assistance in this matter.

**Julie Schul** | **Sr. Manager HIPAA Compliance & Facility Licensing**
Regulatory Compliance | The Kroger Co.
Email: julie.schul@kroger.com
Phone: 513.587.5368

---

**From:** Amy Pletscher <Amy.Pletscher@oag.texas.gov>
**Sent:** Friday, May 9, 2025 12:19 PM
**To:** Thomas, Heather N <heather.thomas2@kroger.com>; RXHIPAA <RXHIPAA@kroger.com>
**Cc:** Pauline Sisson <Pauline.Sisson@oag.texas.gov>; Melinda Pate <Melinda.Pate@oag.texas.gov>; Emily Samuels <Emily.Samuels@oag.texas.gov>
**Subject:** ENCRYPT - Re: Subpoena for Records

> **[EXTERNAL EMAIL]:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning, Ms. Thomas:

I am in receipt of the below correspondence.

On or about 4/30/2025, you were served with a subpoena and a copy of a valid protective order.

As indicated on page 10 of the aforementioned protective order (section VIII, specifically), the Court has made a finding that the attestation requirement under 45 CFR§ 164.509 is not applicable to this case and thus, not required. I have attached the protective order again, for your convenience.

We look forward to your timely compliance.

Thank you,

Amy Pletscher



Amy Pletscher
Assistant Attorney General
Consumer Protection Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
Direct Line: 512-936-0850
Email: Amy.Pletscher@oag.texas.gov

---

**From:** RXHIPAA <RXHIPAA@kroger.com>
**Sent:** Wednesday, May 7, 2025 11:40 AM
**To:** Rozanne Lopez <Rozanne.Lopez@oag.texas.gov>
**Subject:** Subpoena for Records

Hello,

Please complete the attached attestation in regard to the subpoena for records of ███████ ████████ from Kroger Pharmacy.

**Heather Thomas** | HIPAA Compliance Lead
Kroger Heath | The Kroger Co.
Email: heather.thomas2@Kroger.com
Phone: 513-762-7058
Fax: 513-698-1997



---

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential and protected by law from unauthorized disclosure. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

---

This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is confidential and protected by law from unauthorized disclosure. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

Kroger health    The Little Clinic

## Attestation for Requested Use or Disclosure of Protected Health Information (PHI) Potentially Related to Reproductive Health Care

1. Specific name of person(s) or the class of persons to receive the requested PHI, for example name of investigator and/or agency making the request:

_____

2. Specific name of the person or class of persons from whom you are requesting the use or disclosure, for example., name of covered entity or business associate that maintains the PHI and/or name of their workforce member who handles requests for PHI:

_____

3. Description of specific PHI requested, including name(s) of individual(s), if practicable, or a description of the class of individuals, whose PHI you are requesting, for example visit summary for individual on date; list of individuals who obtained prescription medication between a date range:

_____

I attest that the use or disclosure of PHI that I am requesting is not for a purpose prohibited by the HIPAA Privacy Rule at 45 CFR 164.502(a)(5)(iii) because of one of the following (check one box):

☐ The purpose of the use or disclosure of protected health information is **not** to investigate or impose liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care or to identify any person for such purposes.

☐ The purpose of the use or disclosure of protected health information **is** to investigate or impose liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care, or to identify any person for such purposes, but the reproductive health care at issue was **not lawful** under the circumstances in which it was provided.

I understand that I may be subject to criminal penalties pursuant to 42 U.S.C. 1320d-6 if I knowingly and in violation of HIPAA obtain individually identifiable health information relating to an individual or disclose individually identifiable health information to another person.

*Signature of the person requesting the PHI*

_____    Date _____

*If you have signed as a representative of the person requesting* PHI, *provide a description of your authority to act for that person.*

_____



## Attestation for Requested Use or Disclosure of Protected Health Information (PHI) Potentially Related to Reproductive Health Care

### Form Instructions

When a HIPAA covered entity[1] or business associate[2] receives a request for protected health information (PHI)[3] potentially related to reproductive health care,[4] it must obtain a signed attestation that clearly states the requested use or disclosure is not for the prohibited purposes described below, where the request is for PHI for any of the following purposes:

- Health oversight activities[5]
- Judicial or administrative[6] proceedings
- Law enforcement[7]
- Regarding decedents, disclosures to coroners and medical examiners[8]

**Prohibited Purposes.** Covered entities and their business associates may not use or disclose PHI for the following purposes:
(1) To conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating lawful reproductive health care.
(2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating lawful reproductive health care.
(3) To identify any person for any purpose described in (1) or (2).[9]

**The prohibition applies when** the reproductive health care at issue (1) is lawful under the law of the state in which such health care is provided under the circumstances in which it is provided, (2) is protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided, or (3) is provided by another person and presumed lawful.[10]

#### Information for the Person Requesting the PHI

▶ By signing this attestation, you are verifying that you are not requesting PHI for a prohibited purpose and acknowledging that criminal penalties may apply if untrue.[11]

You may not add content that is not required or combine this form with another document except where another document is needed to support your statement that the requested disclosure is not for a prohibited purpose.[12] For example, if the requested PHI is potentially related to reproductive health care that was provided by someone other than the covered entity or business associate from whom you are requesting the PHI, you may submit a document that supplies information that demonstrates a substantial factual basis that the reproductive health care in question was not lawful under the specific circumstances in which it was provided.[13]

#### Information for the Covered Entity or Business Associate

▶ You may not rely on the attestation to disclose the requested PHI if any of the following is true:

■ It is missing any required element or statement or contains other content that is not required.[14]
■ It is combined with other documents, except for documents provided to support the attestation.[15]
■ You know that material information in the attestation is false.[16]
■ A reasonable covered entity or business associate in the same position would not believe the requestor's statement that the use or disclosure is not for a prohibited purpose as described above.[17]

▶ If you later discover information that reasonably shows that any representation made in the attestation is materially false, leading to a use or disclosure for a prohibited purpose as described above, you must stop making the requested use or disclosure.[18]

▶ You may not make a disclosure if the reproductive health care was provided by a person other than

Appx. 564

Kroger health    The Little Clinic

# Attestation for Requested Use or Disclosure of Protected Health Information (PHI) Potentially Related to Reproductive Health Care

yourself and the requestor indicates that the PHI requested is for a prohibited purpose as described above, unless the requestor supplies information that demonstrates a substantial factual basis that the reproductive health care was not lawful under the specific circumstances in which it was provided.[19]

▶ You must obtain a new attestation for each specific use or disclosure request.[20]

▶ You must maintain a written copy of the completed attestation and any relevant supporting documents.[21]

---

[1] *See* 45 CFR 160.103 (definition of "Covered entity").
[2] *See* 45 CFR 160.103 (definition of "Business associate").
[3] *See* 45 CFR 160.103 (definition of "Protected health information").
[4] *See* 45 CFR 160.103 (definition of "Reproductive health care").
[5] *See* 45 CFR 164.512(d).
[6] *See* 45 CFR 164.512(e).
[7] *See* 45 CFR 164.512(f).
[8] *See* 45 CFR 164.512(g)(1).
[9] *See* 45 CFR 164.502(a)(5)(iii)(A).
[10] *See* 45 CFR 164.502(a)(5)(iii)(B), (C). For more information on the presumption and when it applies, *see* 45 CFR64.502(a)(5)(iii)(C).
[11] *See* 42 U.S.C. 1320d–6.
[12] *See* 45 CFR 164.509(b)(3) and (c)(iv).
[13] *See* 45 CFR 164.502(a)(5)(iii)(B)(3), (C)(2).
[14] *See* 45 CFR 164.509(b)(2)(ii).
[15] *See* 45 CFR 164.509(b)(3).
[16] *See* 45 CFR 164.509(b)(2)(iv).
[17] See 45 CFR 164.509(b)(2)(v).
[18] *See* 45 CFR 164.509(d).
[19] *See* 45 CFR 164.502(a)(5)(iii)(B)(3), (C)(2).
[20] *See* 89 FR 32976, 33031.
[21] See 45 CFR 164.530(j).

---

*Confidential*
**Exhibit Reference #** Version

Printed copies are for reference only.
Refer to the electronic copy for the latest version.

Appx. 565

# EXHIBIT 14

6/9/25, 9:19 PM    Secretary Xavier Becerra on X: "Today, HHS announced a rule that prevents the weaponization of your medical information when yo…

Case 5:24-cv-00204-H    Document 59    Filed 06/10/25    Page 318 of 318    PageID 55306



← Post



**Secretary Xavier Becerra** ✔
@SecBecerra

Today, HHS announced a rule that prevents the weaponization of your medical information when you are, say, undergoing IVF, receiving support for miscarriage management, or seeking other lawful care.

We're making it clear: you have the right to privacy—Dobbs did not take it away.

**THE HHS OFFICE FOR CIVIL RIGHTS**

has issued a final rule that strengthens privacy protections for individuals, health care providers, and others who seek, obtain, provide, or facilitate lawful reproductive health care, including abortions.

ALT                                                                    HHS

10:32 AM · Apr 22, 2024 · **22.4K** Views

💬 13          ⟲ 46          ♡ 79          🔖 2                    ⬆

💬 Read 13 replies

**New to X?**

Sign up now to get your own personalized timeline!

G  Sign up with Google

🍎  Sign up with Apple

Create account

By signing up, you agree to the Terms of Service and Privacy Policy, including Cookie Use.

Something went wrong. Try reloading.

↻ Retry

Terms of Service  |  Privacy Policy  |  Cookie Policy
More •••   © 2025 X Corp.

**Don't miss what's happening**
People on X are the first to know.

Log in    Sign up

Appx. 567