IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| State of Texas,<br><br>    *Plaintiff*,<br>v.<br><br>United States Department of Health and Human Services, *et al.*,<br><br>    *Defendants*. | Civil Action No. 5:24-cv-00204-H |

### REPLY IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR LEAVE TO INTERVENE

Proposed Intervenors—the City of Columbus, Ohio, the City of Madison, Wisconsin, and Doctors for America ("DFA")—seek to defend two regulations enacted under the Health Insurance Portability and Accountability Act ("HIPAA," and regulations the "2000 Rule" and the "2024 Rule" together, the "Privacy Rules" or "Rules"). Defendants will not, and cannot, promise a fulsome defense of these Rules, precisely the scenario in which intervention by another interested party is necessary and appropriate. Proposed Intervenors, which are both regulated by and benefit from the Rules, have an interest in doing so, which they have substantiated with record evidence.

The Parties' arguments to the contrary misconstrue the requirements for Rule 24 as set out by the Fifth Circuit. As explained in their brief in support of their Motion for Leave to Intervene, ECF 27, and below, Proposed Intervenors satisfy all requirements for mandatory intervention, and, in the alternative, permissive intervention. A recent decision by another court in this district misapplied these requirements and should not impact the outcome here. Proposed Intervenors' motion should be granted.

1

I.     **The *Purl* decision does not compel denying intervention here.**

Proposed Intervenors have sought to intervene in four challenges to HIPAA and its Privacy Rules: the above-captioned case; *Purl v. HHS*, No. 2:24-cv-228 (N.D. Tex.); *Missouri v. HHS*, No. 4:25-cv-77 (E.D. Mo.); and *Tennessee v. HHS*, No. 3:25-cv-25 (E.D. Tenn.).[1] In this Court and the *Tennessee* and *Missouri* courts, the motions to intervene are pending. On April 15, 2025, in a decision not binding on this Court, the *Purl* court denied intervention on interest and adequacy grounds. *See Purl v. HHS*, 2025 WL 1117477, at *2 (N.D. Tex. Apr. 15, 2025). Not only does that case not address the 2000 Rule, but, respectfully, that decision was flawed in several respects: First, it did not offer sufficient support for its proposition that putative intervenors must be the intended beneficiaries of a regulatory scheme they seek to defend. *See id.* at *2. Second, it incorrectly concluded that future compliance costs only satisfy the interest prong under circumstances absent in that case. *See id.* at 3. Third, it ignored key facts and evidence in determining that Proposed Intervenors' interests in the provider-patient relationship and public health were too "general." *See id.* at *2–*4. Finally, in deciding that Proposed Intervenors failed to demonstrate inadequacy of representation—and denying permissive intervention—the *Purl* court failed to adhere to the minimal burden required for the adequacy prong of Rule 24's test. *See id.* at *4–*5. Proposed Intervenors have since filed notice of appeal in that case.

Two developments further emphasize that the *Purl* court reached the wrong result: First, the Fifth Circuit has since reaffirmed that Rule 24(a)'s requirements are to be "liberally construed." *Tex. Gen. Land Off. v. Trump*, 2025 WL 1410414, at *3 (5th Cir. May 15, 2025) (citation modified). Second, the government has continued to demonstrate its inadequate representation of Proposed Intervenors' interests.

---

[1] Plaintiffs in the three other cases challenge only the 2024 Rule.

Since the change in administration, every filing the government has submitted in related HIPAA cases has only raised jurisdictional challenges, not merit-based defenses of the 2024 Rule. *See* Appx. 1503–20 (*Purl*, ECF 70); Appx. 1520–34 (*Purl*, ECF 93); Appx. 1537–66 (*Tennessee*, ECF 65); Appx. 1577–78 (*Missouri*, ECF 30). This approach stands in contrast to that taken before January 20, 2025, and *Purl* provides a stark example. On January 17, 2025, the government moved to dismiss the challenge in that case and, in the alternative, for summary judgment, asserting that the plaintiffs lack standing and that the 2024 Rule is legal. *See* Appx. 1500–03 (*Purl*, ECF 39). But, at the close of the briefing in March, the government abandoned the merits arguments it had advanced in support of its summary judgment motion, arguing only that the plaintiffs lack standing and demand improperly scoped relief. *See* Appx. 1503–20 (*Purl*, ECF 70); Appx. 1520–34 (*Purl*, ECF 93); *see also* Appx. 1537–66 (*Tennessee*, ECF 65 (defending, in March, the 2024 Rule on only jurisdictional grounds in another case)). This change in defensive position demonstrates that the government will not and cannot adequately defend Proposed Intervenors' interests in the Privacy Rules—an argument that, as discussed below, the government concedes here.

II.  **Proposed Intervenors are entitled to intervention as of right under Rule 24(a).**

A. *Proposed Intervenors assert myriad direct, substantial, and legally protectable interests.*

The Parties do not meaningfully challenge Proposed Intervenors' showing that their interests are sufficient under Rule 24(a). Texas relies almost entirely on the assessment of the *Purl* court. *See* Texas Opp., ECF 55, at 5–7. The government, for its part, engages marginally with Proposed Intervenors' arguments, but relies heavily on out-of-circuit precedent and a cramped reading of Proposed Intervenors' filings. *See generally* Defs.' Opp., ECF 54. Both parties fail to engage with Proposed Intervenors' specific contentions—including as set out in multiple detailed

declarations. Especially given Rule 24(a)'s "minimal" interest burden, *Texas v. U.S.*, 805 F.3d 653, 661 (5th Cir. 2025) (citation modified), an even "more lenient standard" in public interest cases such as this one, *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014), Proposed Intervenors have clearly established adequate interest.

*First,* the Parties' assertion that Proposed Intervenors hold no cognizable interest in a regulatory scheme to which they are directly subject is wrong. Precedent is clear: Proposed Intervenors have an interest in a scheme that regulates them, as doctors and operators of covered entities. *See Wal-Mart v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 567 (5th Cir. 2016) (parties can intervene to "challeng[e] the regulatory scheme that governs" them); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 2022 WL 974335, at *5 (N.D. Tex. Mar. 31, 2022). The Parties cite no case—apart from *Purl*—for the proposition that *only* the "intended beneficiaries" of a law may intervene to defend it. As the Fifth Circuit has explained, "interest" for purposes of intervention, particularly in public interest cases, is analogous to the interest requirement under the "zone of interest" test in public law cases. *See Brumfield*, 749 F.3d at 344 (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464–65 (5th Cir. 1984) (en banc)). And the Fifth Circuit has reaffirmed not only that the zone-of-interest test is a liberal one, but also that doctors fall within the zone of interest of laws that "protect[] some aspects of the 'practitioner-patient relationship.'" *Apter v. HHS*, 80 F.4th 579, 592 (5th Cir. 2023). Further, in the context of Article III standing—a higher threshold than Rule 24—"there is ordinarily little question" that a plaintiff who is the "object of a regulation" has standing to sue. *Contender Farms, LLP v. USDA*, 779 F.3d 258, 264 (5th Cir. 2015) (citation modified).

And even if intervenors must be intended beneficiaries of a law they seek to defend (they need not), the Privacy Rules specifically identify health care providers and public health

authorities, like Proposed Intervenors, as intended beneficiaries. The text of the 2024 Rule plainly identifies how doctors and public health programs will benefit from it, including through "eliminat[ing] burdens" on health care providers. *See* Appx. 0798 (HIPAA Privacy Rule to Support Reproductive Health Care Privacy, 89 Fed. Reg. 32976, 32993 (Apr. 26, 2024)). Both rules reflect intent to benefit public health efforts. For example, the 2024 Rule intends to "protect against a decline in individual and population health outcomes," Appx. 0795 (89 Fed. Reg. at 32991), and the 2000 Rule's assertion that robust privacy protections improve accurate reporting and "[a]ccurate medical records assist communities in identifying troubling public health trends and in evaluating the effectiveness of various public health efforts." Appx. 0177 (Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82462, 82467 (Dec. 28, 2000)). The 2000 Rule also explains how although "[m]any plans, providers, and clearinghouses have taken steps to safeguard the privacy of individually identifiable health information," before the 2000 Rule was implemented, covered entities had to "rely on a patchwork of State laws and regulations that are incomplete and, at times, inconsistent." Appx. 0173–74 (65 Fed. Reg. at 82467). As a case relied on by the Fifth Circuit in *Wal-Mar*t put it, 834 F.3d at 567: Proposed Intervenors "seeking to preserve" a regulation that benefits them and "which may *in part* be intended to" do so satisfies Rule 24(a). *Massachusetts Food Ass'n v. Sullivan*, 184 F.R.D. 217, 222 (D. Mass. 1999), aff'd sub nom., *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560 (1st Cir. 1999) (emphasis added).

*Second*, and contrary to what the parties assert, vacatur of either or both of the Privacy Rules as a result of this lawsuit will harm Proposed Intervenors. The Parties have no persuasive arguments to counter the detailed affidavits that Proposed Intervenors have provided—from members and representatives who interact with patients and who help run public health

5

departments—which clearly articulate the consequences, both financial and otherwise, that will result if the Privacy Rules are vacated.

For example, Proposed Intervenors have offered declarations that discuss the key role that HIPAA and its regulations play to ensure patient trust in patient-provider confidentiality, which improves the provision of care and, for the cities, supports public health efforts. One doctor member of DFA described HIPAA and the Privacy Rules as "foundational" for building trust with patients, an "essential" component of her practice. *See* Appx. 0014 (Oller Decl. ¶¶ 10–11). Another stated: "Without the protections of the 2000 and 2024 Rules, providers would have less ability to protect the sensitive medical information they receive from misuse, and our members would face increased challenges in their ethical and professional duties to provide effective care to their patients." Appx. 0010 (Petrin Decl.¶ 17). Representatives from the cities of Columbus and Madison made similar attestations. *See, e.g.*, Appx. 0025 (Johnson Decl. ¶ 18) (explaining how "[t]he delivery of quality health care depends on individuals being willing to share the most intimate details of their lives with their health care providers" and HIPAA and its regulations, including the challenged Privacy Rules, are key to "increas[ing] patient trust"); Appx. 0033 (Heinrich Decl. ¶¶ 21–24). The cities have an additional interest in promoting public health. As the representatives of the Columbus and Madison health departments have explained, patient trust in clinicians is essential because accurate data allows public health departments to identify and address public health trends and evaluate the effectiveness of the solutions they implement. *See, e.g.*, Appx. 0026 (Johnson Decl. ¶ 22); Appx. 0034 (Heinrich Decl. ¶ 26).

Proposed Intervenors also have an interest in avoiding the costly consequences of overturning the Privacy Rules. This is especially true as to the 2000 Rule, which has been the bedrock of patient privacy for nearly 25 years, and upon which enormous reliance interests have

6

accrued.  There are also costs to overturning the 2024 Rule; for example, the City of Columbus has already devoted time and resources to implementing the 2024 Rule.  *See* Appx. 0020 (Mitchell Decl. ¶ 14).  Undoing that work would not only mean that money was "spent in vain," *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012), it would also require additional expenses as a result of compliance with the new legal landscape, *Britto v. ATF*, 2023 WL 11957195, at *3 (N.D. Tex. Apr. 14, 2023) (listing compliance costs as one interest sufficient for Rule 24(a)).  DFA has such an interest, too.  As an organization that devotes significant resources to improving the provision of health care, there is no doubt an end to either Rule through this litigation would "change[] the legal landscape " in which DFA (and its members) operate, in turn requiring it to "expend resources to educate their members on the shifting situation." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306, 307 (5th Cir. 2022).  The government's attempt to limit the *American Traffic Solutions* holding on the ground that the putative intervenors had been involved previously in the regulatory action is unpersuasive.  *See* Defs.' Opp. at 6 (citations omitted).  The Fifth Circuit has "continued to hold that economic interests can justify intervention when they are directly related to the litigation." *Wal-Mart*, 834 F.3d at 568 (citations omitted).

Further, Texas's assertion that Proposed Intervenors' interests are too generalized is wrong and misconstrues Rule 24(a)'s requirements.  Texas Opp. at 6 (citations omitted).  That Proposed Intervenors' interests may be shared by others subject to the Privacy Rules does not negate the sufficiency of their interests.  Rule 24(a) bars "generalized interest[s]"—that is, interests only in the outcome of the case—not specific interests that are common to regulated parties.  *See Texas*, 805 F.3d at 660; *La Union*, 29 F.4th at 305.  And unlike the government's contention, Proposed Intervenors have offered more than enough to show their interests warrant intervention,

7

particularly at this stage, where all "doubts" are "resolved in favor of the proposed intervenor," *Gen. Land Off.*, 2025 WL 1410414, at *3 (citation modified).

    B. *Resolution of this case in favor of Texas will impair Proposed Intervenors' ability to protect their interests.*

The government argues, in a footnote, that Proposed Intervenors' ability to protect their interests will not be impaired by the outcome of this litigation. Defs.' Opp. at 8 n.5. But this crabbed and legalistic reading of Proposed Intervenors' argument misses the point. As Proposed Intervenors explained in their opening brief, if Texas is afforded any part of its relief, Proposed Intervenors will have no mechanism to contest the outcome. *See* Mem. ISO Intervention at 15. Proposed Intervenors easily satisfy the low showing needed to satisfy this prong. *See La Union*, 29 F.4th at 307 (citing *Brumfield*, 749 F.3d at 344–45).

    C. *Proposed Intervenors have more than made the minimal showing required to satisfy the inadequacy showing.*

A key fact disposes of the inadequacy requirement in Proposed Intervenors' favor: The government has not represented that it will defend the Privacy Rules vigorously and in full. *See generally* Defs.' Opp.; *see also* Appx. 1566–77 (*Tennessee*, ECF 90) (doing the same in its intervention opposition in that case). Indeed, the government makes no argument on the adequacy prong because it cannot. Rather, the government's last substantive representation to this Court was that HHS leadership continues to "evaluate their position in this case and determine how best to proceed." ECF 39; *see also* ECF 44 (asking the Court, months later, to continue to stay the proceedings). On May 12, 2025, the government represented to the *Purl* court that HHS is continuing to assess the 2024 Rule. *See* Appx. 1534–37 (*Purl*, ECF 108). And, as discussed above, in the three other cases challenging the 2024 Rule, the government has stopped defending it on the merits. The administration's actions outside of litigation underscore this lack of defense; it has rescinded the Executive Order that required HHS to consider actions under HIPAA to

8

strengthen private healthcare information related to reproductive services. Appx. 1498–1500 (Exec. Order No. 14182, 90 Fed. Reg. 8751 (2025) (rescinding Exec. Order No. 14076, 87 Fed. Reg. 42053, 42054 (2022))). These suffice to demonstrate that the Proposed Intervenors' goal of defending at least one challenged rule at the very least *may* diverge from those of the government in the future, which is all that is needed under Rule 24(a) to support a finding of inadequacy here. *See Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002).

Given the government's silence, Texas's arguments carry little weight. Texas asserts that Defendants' major shift in litigation strategy—to focus solely on jurisdictional arguments—cannot be seen as Defendants "abandon[ing] the merits arguments" because they have not explicitly "disclaimed any of th[e] arguments" they previously made. Texas Opp. at 8. In doing so, Texas asks the Court to give no weight to a material change in position and to impose a heightened legal standard with respect to the presumption of adequate representation.

The Fifth Circuit's decision in *Louisiana v. Burgum*, 132 F.4th 918 (5th Cir. 2025), is instructive. In that case, in discussing the ultimate-objective presumption, the court determined that the putative intervenor had not demonstrated inadequate representation because it did not specify any action taken by the government defendant that was "adverse to its interests," even admitting that it "cannot know . . . what litigation position or defenses [the agency] will pursue." *Id.* at 923 (citation modified). Here, Proposed Intervenors have identified adversity. They plan to defend both Privacy Rules on their merits. The government has made amply clear that, at least as to one rule, it does not.

Proposed Intervenors have easily made the "minimal" showing—as to both the 2000 Rule and the 2024 Rule— that the government's representation of their interests "may be inadequate,"

9

a "showing [that] need not amount to a certainty." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (citation modified).

### III. Alternatively, this Court should permit intervention under Rule 24(b).

If this Court does not find that Proposed Intervenors have met their burden under 24(a)(2), it should nonetheless grant permissive intervention under Rule 24(b) because the Proposed Intervenors "ha[ve] a claim or defense that shares with the main action a common question of law or fact," and their participation will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (b)(3).

Proposed Intervenors satisfy all the requirements of permissive intervention. As explained in Proposed Intervenors' opening brief, Proposed Intervenors' motion is timely and intervention here would not cause any delay or prejudice, as Proposed Intervenors are adhering to the already-existing deadline the Court has set. Moreover, Proposed Intervenors seek to advance a defense of the challenged Privacy Rules that, at least as to one, Defendants have already effectively abandoned; namely, that the 2024 Rule is a proper exercise of the Department's lawful authority.

Texas does not contest that Proposed Intervenors and the government could share in a defense. The government does. But the cases that the government cites—a nonbinding concurrence and a case relying on it—have little bearing on this Court. This Court should exercise its discretion in permitting intervention here if it finds that intervention as of right is not warranted.

### CONCLUSION

For the foregoing reasons and those stated in their opening brief, Proposed Intervenors respectfully request that this Court grant their motion for leave to intervene.

<table>
<tr><td>Date:   June 17, 2025</td><td>Respectfully submitted,

*/s/ Emma R. Leibowitz*
Emma R. Leibowitz</td></tr>
<tr><td>

Shannon Rose Selden – *Admitted Pro Hac Vice*
Adam Aukland Peck – *Admitted Pro Hac Vice*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (phone)
(212) 909-6836 (fax)
srselden@debevoise.com
aauklandpeck@debevoise.com

*Counsel to Intervenor-Defendants*

-and-

Anna A. Moody – *Admitted Pro Hac Vice*
Gabriel A. Kohan – *Admitted Pro Hac Vice*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
amoody@debevoise.com
gakohan@debevoise.com

*Counsel to Intervenor-Defendants*

</td><td>

Carrie Y. Flaxman – *Admitted Pro Hac Vice*
Madeline H. Gitomer – *Admitted Pro Hac Vice*
Emma R. Leibowitz – *Admitted Pro Hac Vice*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090 (phone)
cflaxman@democracyforward.org
mgitomer@democracyforward.org
eleibowitz@democracyforward.org

*Counsel to Intervenor-Defendants*

-and-

Aisha Rich – *Admitted Pro Hac Vice*
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, California 94609
(510) 214-6960 (phone)
aisha@publicrightsproject.org

*Counsel to City of Columbus and City of Madison*


Jennifer R. Ecklund
THOMPSON COBURN LLP
2100 Ross Avenue Suite 3200
Dallas, Texas 75201
(972) 629-7100 (phone)
(972) 629-7171 (fax)
jecklund@thompsoncoburn.com

*Counsel to Intervenor-Defendants*

</td></tr>
</table>

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Emma R. Leibowitz*
Emma R. Leibowitz